## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO. LTD.<br>1-1, Doshomachi 4-chome<br>Chuo-ku, Osaka 540-8645 JAPAN<br><br>Plaintiff,<br><br>v.<br><br>HON. JON W. DUDAS<br>Under Secretary of Commerce for Intellectual<br>Property and Director of the United States<br>Patent and Trademark Office<br>Madison Building<br>600 Dulany Street<br>Alexandria, VA 22314,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Takeda Pharmaceutical Company Limited, for its complaint against defendant the Honorable Jon W. Dudas, states as follows:

1.     This case concerns innovative technology for a method of making organic cephem compounds and the denial by the United States Patent & Trademark Office ("PTO") of a patent owner's rights to that technology.  Specifically, this is an action by an applicant dissatisfied with a decision by the PTO Board of Patent Appeals and Interferences (the "Board of Appeals") in the reexamination of U.S. Patent No. 5,583,216.  Plaintiff is seeking a judgment that it is entitled to a Reexamination Certificate confirming its rights to a United States patent for its invention.

## I.    THE PARTIES

2.    Plaintiff Takeda Pharmaceutical Company Limited ("Takeda") is a corporation organized under the laws of Japan, having principle offices at 1-1, Doshomachi 4-chome, Chuo-ku, Osaka 540-8645 and having offices located throughout the United States.

3.    Defendant Jon W. Dudas is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, acting in his official capacity.

## II.    JURISDICTION AND VENUE

4.    This Court has jurisdiction and venue pursuant to 35 U.S.C. § 145.

5.    This Complaint is being timely filed in accordance with 37 C.F.R. §§ 1.304(a)(1) and 1.304(a)(3).

6.    The Board of Appeals decision was a final decision under 37 C.F.R. § 41.2.

7.    Plaintiffs have not appealed the decision of the Board of Appeals at issue in this matter to the United States Court of Appeals for the Federal Circuit.

## III.    BACKGROUND

8.    Michihiko Ochiai, Taiiti Okada, Osami Aki, Akira Morimoto, Kenji Kawakita and Yoshihiro Matsushita (the "Inventors") filed patent application number 462,492 with the PTO on January 8, 1990.  This application, which was based in part on an application originally filed in December 1975, issued on December 10, 1996 as U.S. Patent No. 5,583,216 ("the '216 patent").  The '216 patent issued with 5 claims, numbered 1-5.

9.    Plaintiff Takeda is the assignee of the '216 patent, as evidenced by records recorded in the PTO, and is the real party in interest in this case.

10.    On April 3, 1998 and on December 22, 1998, E. Thomas Wheelock, Esq., on behalf of an anonymous requester, filed two requests for reexamination under 35 U.S.C. § 302 of the '216 patent.

11.    The PTO granted both requests for reexamination under 35 U.S.C. § 303(a), assigning them Reexamination Control Nos. 90/005,200 and 90/004,950. The PTO merged both reexaminations into a consolidated reexamination proceeding.

12.    On May 11, 2005, the PTO, through Primary Examiner Emily Bernhardt, finally rejected all claims (claims 1-5) of the '216 patent in the reexamination.

13.    Examiner Bernhardt rejected claims 1-5 on multiple grounds based upon the doctrine of non-statutory, double patenting. A first double patenting rejection was based on Takeda's own prior U.S. Patent Nos. 4,298,606 ("the '606 patent"), 4,098,888 ("the '888 patent"), and 4,203,899 ("the '899 patent") in view of five additional prior art references. A second double patenting rejection was based only on Takeda's own prior '888 patent or its own prior '606 patent.

14.    Plaintiff appealed the final decision of Examiner Bernhardt to the Board of Appeals. On July 31, 2006, the Board of Appeals affirmed one of the double patenting rejections (copy attached as Exhibit A). Specifically, the Board of Appeals affirmed the rejection of claims 1-5 based upon the '606 patent standing alone, adopting new reasoning from that proffered by Examiner Bernhardt.

## IV.    SOLE COUNT

15.    Plaintiff incorporates by reference the allegations in paragraphs 1-14 above, as if fully set forth herein.

16.    The decision of the Board of Appeals affirming the double patenting rejections of claims 1-5 of the '216 patent based solely upon the '606 patent was unwarranted by the facts, unsupported by substantial evidence, in excess of statutory jurisdiction, authority or limitation, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

17.    Specifically, the Board of Appeals (a) failed to establish a *prima facie* case of non-statutory, double-patenting, (b) failed to give proper consideration to evidence demonstrating alternative ways to make the cephem products produced by claims 1-5 of the '216 patent submitted by applicants during the reexamination proceeding and (c) applied incorrect legal standards in ascertaining whether claims 1-5 of the '216 patent were invalid for non-statutory, double patenting over the '606 patent.

18.    Plaintiff is entitled to receive a Reexamination Certificate from the PTO confirming the patentability of claims 1-5 of the '216 patent.

WHEREFORE, Plaintiff respectfully prays as follows:

A.    For a decree that Plaintiff is entitled to receive a Reexamination Certificate from the PTO confirming the patentability of claims 1-5 of the '216 patent, in due form of law as prescribed by the Patent Statute, 35 U.S.C. § 1 *et seq*.

B.    For a decree pursuant to 35 U.S.C. § 145 authorizing the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark

Office to issue a Reexamination Certificate confirming the patentability of claims 1-5 of the '216

Patent in due form of law as prescribed by the Patent Statute, 35 U.S.C. § 1 *et seq*.

      C.     For such other and further relief as the nature of the case may admit or require and

as may be just and equitable.


Dated: September 22, 2006

                           Respectfully submitted,


                           C. Edward Polk, Jr. (DC Bar No. 472453)
                           FOLEY & LARDNER LLP
                           3000 K Street, N.W.
                           Washington, DC 20007
                           (202) 672-5300

                           Attorney for Plaintiff

Address for mail:
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2006, I caused copies of the foregoing Complaint and a Summons to be served on the following in the manner indicated:

Office of the General Counsel (by hand)
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

Office of the General Counsel (by registered mail)
United States Patent and Trademark Office
P.O. Box 15667
Arlington, VA 22215

Kenneth L. Wainstein (by hand)
United States Attorney for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20503

Alberto Gonzales (by registered mail)
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

I hereby certify that on September 22, 2006 I further caused copies of the foregoing Complaint and a Summons to be served on the following individual by first class mail as required by the reexamination statute:

E. Thomas Wheelock (by first class mail)
14188 Stanford Court
Los Altos Hills, CA 94022

C. Edward Polk, Jr.

# Exhibit A

The opinion in support of the decision being entered today
was <u>not</u> written for publication
and is <u>not</u> binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

———————

<u>Ex parte</u> MICHIHIKO OCHIAI, TAIITI OKADA,
OSAMI AKI, AKIRA MORIMOTO,
KENJI KAWAKITA and YOSHIHIRO MATSUSHITA

———————

Appeal  2006-1443
Reexamination  90/005,200
Patent  5,583,216
Technology Center 1600

———————

Appeal 2006-1465
Reexamination Control 90/004,950
Patent 5,583,216
Technology Center 1600

———————

Oral Argument:  26 June 2006
Decided:  31 July 2006

MAILED
JUL. 3 1 2006
PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

*Before*:  McKELVEY, *Senior Administrative Patent Judge*, and HANLON and
DELMENDO, *Administrative Patent Judges*.

McKELVEY, *Senior Administrative Patent Judge*.

**DECISION ON APPEAL UNDER 35 U.S.C. § 306**

**A.     Introduction**

The appeal is from a decision of the Examiner rejecting claims 1-5

of U.S. Patent 5,583,216 (Ochiai '216) in consolidated Reexamination

Proceedings 90/004,950 and 90/005,200.

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Claims 1-5 are the only claims in the patent.

2    The rejection is based on double patenting.

3    The real party in interest is Takeda Pharmaceutical Company Limited, which we

4    are told was formerly Takeda Chemical Industries, Ltd.

5    Reexamination was requested by E. Thomas Wheelock, Esq., of the firm of

6    Morrison & Foerster LLP (Palo Alto, CA).

7    Oral argument took place on 26 June 2006.

8    A transcript (Tr-) of oral argument has been made part of the record.

9    For reasons that follow, the decision of the Examiner rejecting claims 1-5 based

10   on double patenting is *affirmed*.

11
12   **B.    The "new evidence appendix"**

13   Following docketing of the appeal, the board requested that Appellants file a new

14   evidence appendix comprising documents having exhibit numbers beginning with

15   Exhibit 1001.

16   The Board appreciates Appellants' compliance with the request.

17   We have considered the following record in resolving the appeal:

18   (1)   The specification, including the claims, of the patent under

19         reexamination—Ochiai '216.

20   (2)   The appeal brief filed 2 September 2005.

21   (3)   The Examiner's answer entered 16 November 2005.

22   (4)   The new evidence appendix filed 20 June 2006, except as noted

23   below, but only to the extent that particular and specific portions of the documents have

24   been called to our attention in the appeal brief or a declaration. The mere fact that a

2

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   document containing many pages has been "cited" does not mean that we have

2   considered the entire document.  Rather, we consider only that portion of the document

3   called to our attention.  *DeSilva v. DiLeonardi*, 181 F.3d 865, 866-67 (7th Cir. 1999)

4   (court will not play archaeologist with the record); *Clintec Nutrition Co. v. Baxa Corp.*,

5   44 USPQ2d 1719, 1723 n.16 (N.D. Ill. 1977) (where party cites to a multi-page exhibit

6   without citing a specific portion or page, the court will not pour over the documents to

7   extract the relevant information).

8       We have not considered the following:

9           (1)   The reply brief, which was refused entry by the Examiner.  The

10  Chief Administrative Patent Judge invited Appellants to have the appeal remanded so that

11  the Director of Technology Center 1600 could entertain a petition to review the

12  Examiner's refusal to enter the reply brief.  Appellants declined the Chief Judge's

13  invitation, electing instead to go forward with oral argument.

14          (2)   Documents in the new evidence appendix which are not in English.

15
16  **C.   Findings of fact**

17      The record supports the following findings of fact by at least a preponderance of

18  the evidence.

19                  The patent under reexamination (Ochiai '216)

20      U.S. Patent 5,583,216 (Ochiai '216) under reexamination and now on appeal

21  issued on 10 December 1996.

22      Ochiai '216 is based on an application filed 8 January 1990, and claims benefit of

23  a series of applications, the first of which was filed on 19 December 1975 (Ochiai '888).

3

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    The Ochiai '216 is based on a pre-GATT application and therefore enjoys a

2    17-year term.

3    The patent contains claims 1-5 that are reproduced in Appendix 1 of this opinion.

4    According to Appellants, "all claims stand or fall with *** claim 1" (Appeal

5    Brief, filed 2 September 2005, page 6).  Accordingly, we select claim 1 as representative

6    of all of the appealed claims and confine our discussion to claim 1.  37 CFR

7    § 41.37(c)(1)(vii) (2005).

8    As is apparent from Appendix 1, Ochiai '216 claim 1 is directed to a method for

9    preparing organic "cephem" compounds having particular chemical structures.

10    We note that one feature of the cephem compound to be made by the process of

11    Ochiai '216 is the presence of a $-C(=NR^5)-$ group.

12    According to claim 1, the sole step in the process involves "introducing" (1) an

13    acyl group having a first particular chemical formula "into" (2) the amino group of a

14    "Molecule" having a second particular chemical formula.

15    The acyl group has a structure that includes, *e.g.*, (1) a $-COOH$ group or

16    (2) a $-COO^{-+}$salt (*e.g.*, $Na^+$) group.

17    The "Molecule" mentioned in claim 1 on appeal has an amino group, *i.e.*, a

18    chemical group having a structure which includes $-NH_2$.

19    It is known in the art that a compound with an acyl group can be made to react

20    with a molecule having an amino group to form an "amide", *e.g.*, the reaction:

21    $$R-COOH + H_2N-R' \longrightarrow R-CONH-R' + H_2O.$$

4

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1                            The Examiner's rejection

2          The Examiner rejected claims 1-5 as being unpatentable based on double

3    patenting.

4          We understand a "first" double patenting rejection to be bottomed on the claims

5    of each of

6              (1)    Ochiai U.S. Patent 4,298,606 ('606) (Ex. 1036) or

7              (2)    Ochiai U.S. Patent 4,098,888 ('888) (Ex. 1037) or

8              (3)    Ochiai U.S. Patent 4,203,899 ('899) (Ex. 1038)

9    "in view of"

10             (a)    Chauvette (Ex 1039),

11             (b)    Gottstein (Ex. 1040),

12             (c)    Cocker (Ex. 1041),

13             (d)    Fieser (Ex. 1042) and

14             (e)    Dolfini (Ex 1043).

15   Examiner's Answer entered 16 November 2005, page 3.

16         A "second" double patenting rejection is bottomed on the claims of either

17             (1) Ochiai '888 (Ex. 1037) or

18             (2) Ochiai '606 (Ex. 1036).

19   Examiner's Answer, page 16.

20                            Ochiai '606

21         Ochiai '606 issued on 3 November 1981 and accordingly has expired.

22         Ochiai '606 is based on an application filed 28 August 1979 and claims benefit of

23   at least an application filed 19 December 1975 (Ochiai '888).

5

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Claim 1 of Ochiai '606 is directed, *inter alia*, to cephem compounds having a

2    particular formula (Ochiai, col. 38, line 67 through col. 39, line 24).  *See* the (a) member

3    of the Markush group of claim 1.

4    The process of claim 1 on appeal can be used to make some of the cephems

5    covered by claim 1 of Ochiai '606, including cephems with a —$C(=NR^5)$— group.

6    The method of claim 1 on appeal can be used to make the cephems of claim 1 of

7    Ochiai '606 at least when:

8        (1)  $R^8$ of Ochiai '216 claim 1 is hydrogen (—H);

9        (2)  —$CH(R^2)$— of Ochiai '606 is —$C(=NR^5)$— and $R^5$ is hydroxyl

10            (—OH);

11        (3)  $R^3$ of both claim 1 on appeal and Ochiai '606 is hydrogen or

12            methoxy (— $OCH_3$); and

13        (4)  $R^4$ of both claim 1 on appeal and Ochiai '606 is hydrogen (—H)

14            or acetoxy.

15
16    Ochiai '606 claim 15 (1) is narrower than Ochiai '606 claim 1 and (2) is also

17    directed to cephem compounds which can be produced by the process of claim 1 on

18    appeal at least when:

19        (1)  $R^9$ of claim 15 of Ochiai '606 is amino (—$NH_2$);

20        (2)  $R^5$ of claim 15 of Ochiai '606 and claim 1 on appeal are hydroxyl;

21        (3)  $R^{11}$ of claim 15 of Ochiai '606 and $R^3$ of claim 1 on appeal are

22            hydrogen or methoxy; and

23        (4)  $R^4$ of claim 15 of Ochiai '606 and claim 1 on appeal are

24            hydrogen.

6

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    A process described in Ochiai '606 for making the cephems of claims 1 and 15 of

2    Ochiai '606 is reacting compound VI (col. 1, line 36) with compound V (col. 1, line 46).

3    See also (1) col. 2, lines 26-29 and (2) col. 6, line 55 through col. 7, line 62.

4    Compound VI of Ochiai '606 is the "Molecule" with the amino group of claim 1

5    on appeal.

6    Compound V is the compound with the acyl group of claim 1 on appeal.

7    The process described in Ochiai '606 for making cephems is the process of

8    claim 1 on appeal.

9    <u>Ochiai '888</u>

10    In view of the rationale for our affirmance, we find it unnecessary to make

11    detailed findings with respect to what is claimed and described in Ochiai '888.

12    Ochiai '888 has expired.

13    <u>Ochiai '899</u>

14    In view of the rationale for our affirmance, we find it unnecessary to make

15    detailed findings with respect to what is claimed and described in Ochiai '899.

16    Ochiai '899 has expired.

17    <u>Other prior art cited by the Examiner</u>

18    The Examiner cited prior art in support of one of the double patent rejections on

19    appeal.

20    In view of the rationale for affirmance, we find it unnecessary to discuss the cited

21    prior art.

22    <u>Wuest Declaration</u>

23    Appellants rely on declaration testimony of Dr. James D. Wuest (Ex 1001).

7

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    The Wuest declaration was filed on or about 2 September 2005.

2    Dr. Wuest has a Ph.D. in organic chemistry.

3    In Dr. Wuest's opinion none of the prior art cited by the Examiner describes or

4    suggests introducing an acyl group into an amino group of a "Molecule" as called for by

5    claim 1 on appeal.

6    As noted earlier, we do not find it necessary to discuss or rely on the prior art

7    cited by the Examiner.

8    Accordingly, we have no occasion to assess the weight to be given Dr. Wuest's

9    opinions with respect to that prior art.

10    Dr. Wuest seems to be of the opinion that, prior to considering the Ochiai

11    specifications, a person having ordinary skill in the art would not have had a reasonable

12    expectation that the process of Ochiai '216 claim 1 would be successful.

13    As explained in Paragraph 15 of his declaration, Dr. Wuest suggests that one

14    skilled in the art would have expected that "self-condensation" would occur.

15    What is "self-condensation"?

16    What Dr. Wuest suggests is that a person having ordinary skill in the art might at

17    first blush believe that the compound with acyl group of Ochiai '216 claim 1 would react

18    with itself and not the "Molecule" of claim 1. Why? Because (1) the compound has both

19    an acyl group (e.g., —COOH) and an amino group (e.g., —$NH_2$) and, (2) as noted above

20    and known in the art, acyl groups react with amino groups to form amide groups, in this

21    case a group with the formula —CONH—.

8

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Dr. Wuest illustrates his concern in the chemical reaction set out in Paragraph 15

2    of his declaration where it is suggested that the Compound of Ochiai '216 might become

3    involved in self-condensation more or less according to the chemical equation:

4    $$n\ H_2N\text{—}R\text{—}COOH \longrightarrow H_2N\text{—}(R\text{—}CONH)_{n\text{-}1}\text{—}R\text{—}COOH$$

5
6    Dr. Wuest does not satisfactorily explain why one skilled in the art would have

7    expected the "hindered" amine group attached to an aromatic-like group on the

8    compound also having the acyl would have been expected to be more reactive than the

9    primary amine group attached to the molecule.

10    Dr. Wuest expressed other reasons why, absent the Ochiai specifications, one

11    skilled in the art would not have expected the Ochiai '216 claim 1 process to be

12    successful.

13    However, Dr. Wuest acknowledges that one skilled in the art would have been

14    able to carry out the process of claim 1 of Ochiai '216 as described in the specification of

15    Ochiai '216.  Wuest declaration, Paragraph 43.

16    In fact, Dr. Wuest goes on to tell us that based on "references" published between

17    1989 and 1997 one skilled in the art would have been able to carry out the process of

18    Ochiai '216 claim 1 as described by Ochiai '216 notwithstanding any concerns expressed

19    in the prior art.  Wuest declaration, Paragraph 44.

20    Dr. Wuest testified that "there are various possible alternative pathways for

21    making the cephem compound of claim 1 of the '216 patent."  Wuest declaration,

22    Ex. 1001, Paragraph 50.

9

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Dr. Wuest starts his analysis by noting that "There Are Other Potential Routes for

2    Making the Final Product of Claim 1 Of the '216 Patent". Wuest declaration, Ex. 1001,

3    page 22.

4    We take Dr. Wuest's testimony to be that, as of the date he signed his declaration

5    in 1999, one skilled in the art would have understood that there "are various possible

6    alternative pathways for making the cephem compound of claim 1 of the '216 patent."

7    Wuest declaration, Ex. 1001, Paragraph 50.

8    The Morin document contains numerous pages and is an example of a large

9    document submitted by Appellants where only a few pages are mentioned in the Wuest

10   declaration. Consistent with our previous observation, we have considered only the

11   pages mentioned.

12   With reference to page 21 of Morin *et al.*, Chemistry and Biology of β-Lactam

13   Antibiotics (1982) (Ex. 1010), we think that Dr. Wuest is trying to tell us that compounds

14   similar to the starting materials in the process of Ochiai '216 claim 1 are shown as

15   Compounds 65 and 66.

16   According to Dr. Wuest, a displacement reaction is said to be shown on page 87

17   of Morin. Wuest declaration, Ex. 1001, page 23 and Ex. 1010, page 87.

18   Dr. Wuest goes on to testify that "[a]lthough the Morin reference does not

19   specifically disclose coupling of an amino-substitute thiazolyl compound to penicillin

20   sulfoxide, given the examples taught in the Ochiai specification, I would expect that this

21   reaction could be carried out." Wuest declaration, Ex. 1001, page 23.

10

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1          The Examiner's assessment of the Wuest declaration testimony

2          The Examiner was not impressed with Dr. Wuest's declaration testimony and

3    declined to give the testimony much, if any, weight.

4          Among other things, the Examiner found that the testimony was "speculative" and

5    had never been performed. Examiner's answer, page 8; Tr-8:16-18. The Examiner

6    further found that the process suggested by Dr. Wuest was not described by Ochiai. The

7    Examiner still further found that the process suggested by Dr. Wuest relies on a

8    compound not shown to have been known earlier than the 1982 date of Morin.

9                              Usami declaration

10         Appellants also rely on a declaration of Mr. Hirofumi Usami filed on or about

11   2 September 2005. Ex. 1035.

12         Mr. Usami is employed in the intellectual property department of the real party in

13   interest--Takeda. Usami declaration, Paragraph 3.

14         Through Mr. Usami's testimony, we are told about what appears to have been a

15   somewhat long and involved prosecution of the numerous Ochiai applications.

16         According to Mr. Usami, part of the reason for the long prosecution is that Takeda

17   was unable to promptly obtain claims to cover competitors' later developed compounds

18   within the scope of Ochiai's generic claims "because of the refusal of the Examiner to

19   allow generic claims and the long appeal pendency at the Board *** that was the norm in

20   the 1980's ***." Usami declaration, Paragraph 20.

21         Mr. Usami undertakes an explanation of why "process of making" claims like

22   those in claim 1 of Ochiai '216 were not presented early in the Ochiai patent application

23   filing strategy. Usami declaration, Paragraph 25.

11

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1        According to Mr. Usami, (1) process of making claims "were not valuable in

2    terms of protection of pharmaceutical compounds" and (2) "claims of this type were not

3    considered patentable under the case law of the United States ***." Usami declaration,

4    Paragraph 25.

5        The "were not valuable" portion of Mr. Usami's testimony is apparently based on

6    his view that the § 271(g) protection now available was not then available in the United

7    States as Mr. Usami believes it was in Europe.

8        Since 1989, § 271(g) protection has been available in the United States; a person

9    infringes a patented process if the product made by the process is made abroad and the

10   product is imported into the United States during the life of the process patent.

11       While he does not say so in so many words, we believe Mr. Usami's "were not

12   considered patentable" portion of his testimony is based on cases like *In re Larsen*,

13   292 F.2d 531, 130 USPQ 209 (CCPA 1961) and its progeny.

14       Mr. Usami recognizes that a case decided shortly after *Larsen* left open the

15   possibility that appropriate evidence in a particular case might provide a means for

16   overcoming *In re Larson* rejections of method claims, but says that he has no recollection

17   of having seen the case. The case is *In re Ross*, 305 F.2d 878, 134 USPQ 320 (CCPA

18   1962).

19       We understand that Mr. Usami is telling us that post *Larsen* it was not worth

20   pursuing "method of making" claims until § 271(g) protection became available in 1989.

21       Accordingly, if we are to believe Mr. Usami, and if we correctly understand what

22   he is trying to tell us, it was not until 1990, when the application which matured into

12

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Ochiai '216 was filed, that it was worth Takeda's time and effort to file "method of

2    making" claims for some of the cephem compounds of the claims of Ochiai '606.

3         Mr. Usami does not tell us why the cephems of method claims of Ochiai '216 are

4    not exactly co-extensive with the cephems of Ochiai '606 and we perceive no reason why

5    they could not have been exactly co-extensive.

6         Other findings as necessary appear in the Discussion portion of this opinion.

7    **D.    Discussion**

8                                              1.

9         Double patenting is designed to prevent an unjustified extension of patent rights

10   beyond the term of a patent.  Since double patenting seeks to avoid unjustly extending

11   patent rights at the expense of the public, the focus of any double patenting analysis is on

12   the claims of the patents involved in the analysis, in this case Ochiai '216 and Ochiai

13   '606.  As applied to the facts of this case, the appeal boils down to the following issue:

14             Having taken out a full-term cephem compound patent

15        (Ochiai '606),

16             are Appellants also entitled to take out yet another full-term patent

17        to a method of making some of those cephem compounds where

18             (1)    the claimed method for making the cephem compounds is

19        described in the cephem compound patent and

20             (2)    there is no credible alternative method for making the

21        cephems which does not involve an infringement of the method patent?

22   We think not.

13

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1       Our appellate reviewing court and the Patent and Trademark Office have

2    recognized at least two categories of double patenting.

3       A first form of double patenting is where a second patent claims the same

4    invention as a first patent. The second patent is said to be precluded based on double

5    patenting bottomed on the statutory language in 35 U.S.C. § 101 which states that "a

6    patent" may be issued for certain inventions.

7       A second form of double patenting is where a second patent claims a different

8    invention from a first patent, but the invention claimed in the second patent would have

9    been obvious based on the invention claimed in the first patent—with or without

10   considering additional relevant prior art.

11      We believe there may be a tendency to try to "pigeon hole" every double

12   patenting situation into one of these two recognized categories of double patenting.

13   However, we decline to hold that every double patenting must fit precisely into one of the

14   two categories. In our view, the focus should be on whether a second patent unjustly

15   extends the patent rights of a first patent. Each case, of course, must be decided on its

16   facts.

17                                  2.

18      As applied to the facts of this case, we think that a decision of the Supreme Court

19   provides support for the decision of the Examiner to reject claims 1-5 on appeal based on

20   double patenting. *Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354,

21   8 S.Ct. 1148 (1888).

22      In *Mosler*, a patent was obtained for an article, viz., "[a]n angle-bar for safe

23   frames." U.S. Patent 281,640 issued 17 July 1883 based on an application filed

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    27 December 1881. A second patent was obtained for a "process of bending angle-

2    irons." U.S. Patent 283,136, issued 14 August 1883 based on an application filed

3    11 December 1882. As in the case, before us, the method patent was applied for after the

4    article patent was applied for. The Supreme Court recognized that the method claims and

5    the article claims "might have been all included in one application had the patentee

6    chosen to so present them." 127 U.S. at 359, 8 S.Ct. at 1150. The Supreme Court found

7    that "the claim for the process in No. 283,136 is merely for the process or method ***

8    involved in making the article covered by claims 1 and 2 of No. 281,640. In other words,

9    claims 1 and 2 of No. 281,640 are each for an article produced by a described method or

10   process, and the claim of No. 283,136 is for such a method or process of producing such

11   article." 127 U.S. at 361, 8 S.Ct. at 1151-52. The Supreme Court reasoned that "the

12   inventor cannot afterwards, on an independent application, secure a patent for the method

13   or process of cutting away the metal and then bending it so as to produce the identical

14   article covered by the previous patent, which article was described in that patent as

15   produced by the method or process sought to be covered by taking out the second patent."

16        Ochiai '216 covers the method described in Ochiai '606 for making at least some

17   of the cephems claimed in Ochiai '606. Appellants have not shown that they presented

18   the method claims of Ochiai '216 in the application that matured into Ochiai '606.

19   Rather, Appellants waited until 15 years into the prosecution of the family of Ochiai

20   applications to first present the method claims on appeal. In this sense, Ochiai's

21   experience is similar to Mosler's experience, although the time difference between

22   presentation of article and method claims in Mosler's case is considerably shorter.

15

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1     When Appellants received Ochiai '216, they acquired the right to prevent others

2   from making (1) the cephems falling within the scope of claims 1-5 of Ochiai '216 and

3   (2) some of the cephems claimed in Ochiai '606.

4          After 1989, and as a result of enactment and codification of 35 U.S.C. § 271(g),

5   Appellants also acquired the right to exclude others from making or using some of the

6   cephems of now expired Ochiai '606 if those cephems were made abroad using the

7   method claimed in Ochiai '216.

8                                              3.

9          Appellants bottom their argument for reversal on the proposition that the process

10   claimed in Ochiai '216 is an "independent and distinct" invention from the cephems of

11   Ochiai '606.

12         In what is generally recognized as a double patenting case, the Supreme Court in

13   *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 199, 14 S.Ct. 310, 315 (1894) made the

14   following observation:

15                 The result of the foregoing and other authorities is [1] that no

16            patent can issue for an invention actually covered by a former patent,

17            especially to the same patentee, *although the terms of the claims differ*;

18            [2] that the second patent, although containing a broader claim, more

19            generical [today we would say "generic"] in its character than the specific

20            claims, contained in the prior patent, is also void; but [3] that where the

21            second patent covers matter described in the prior patent, essentially

22            distinct and separate from the invention covered thereby, and claims made

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1          thereunder, its validity may be sustained." (Emphasis and numbers in

2          brackets added).

3     One of the "foregoing and other authorities" referred to by the Miller court is

4     *Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354, 8 S.Ct. 1148 (1888).

5     According to the Miller court, in *Mosler* "it was held that, a patent having issued for a

6     product as made by a certain process, a later patent could not be granted for the process

7     which results in the same product." 151 U.S. at 197, 14 S.Ct. at 315.

8                                        4.

9     Appellants present two arguments, using the rubric "independent and distinct", in

10    an attempt to fit their case for reversal into the "distinct and separate" category mentioned

11    in *Miller*.

12    Appellants' first "independent and distinct" argument is based in part on a

13    restriction requirement made in a different Ochiai application by former Examiner

14    Nicholas Rizzo. At the same time, Appellants candidly acknowledge that "[n]o claim is

15    made for the statutory shield of 35 U.S.C. § 121 ***." *See* the last three lines on page 12

16    of the Appeal Brief.

17    Appellants' second "independent and distinct" argument is based in part on their

18    opinion that there are methods other than the method of Ochiai '216 for making the

19    cephems of expired Ochiai '606.

17

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1                                      5.

2          Appellants' first argument is bottomed on a restriction requirement made by

3   former Examiner Nicholas Rizzo.

4          According to Appellants, Examiner Rizzo made a restriction requirement between

5   claims said to cover an acylation process and claims said to cover a displacement process.

6   We have found a document in the record discussing a restriction requirement between

7   acylation and displacement processes. *See* Exhibit 1046. However, Exhibit 1046 is

8   confusing to say the least. Exhibit 1046 consists of five pages. The first page discusses

9   claims 6-10 and 15-18, is dated 28 May 1991 and appears to be part of

10  application 07/462,492. The second page discusses claims 1-21, is dated 6 December

11  1976 and appears to be part of application 07/642,356. Page 3 discusses a restriction

12  requirement between different compounds and appears to be part of

13  application 07/642,356. The fourth page returns to application 07/462,492 and is the

14  page discussing a restriction between an acylation process and a displacement process.

15  The fifth page seems to be part of the file of application 07/462,492. In sum, it would

16  appear that the second and third pages should not have been included in the exhibit.

17         It appears that Examiner Rizzo made a restriction requirement between

18  claims 6-10 (Group A) calling for what is characterized as an acylation process and

19  claims 15-18 (Group B) calling for what is characterized as a displacement process. The

20  language of claims 6-10 and 15-18 has not been placed before us and therefore we are

21  unable to determine the precise metes and bounds of those claims or of the subject matter

22  involved in the Rizzo restriction. Our appellate reviewing court has observed that "§ 121

23  only applies to a restriction requirement that is documented by the PTO in enough clarity

18

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   and detail to show consonance. The restriction requirement documentation must identify

2   the scope of the distinct inventions that the PTO has restricted ***." *Geneva*

3   *Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1382, 68 USPQ2d 1865,

4   1872 (Fed. Cir. 2003). While we are not dealing with a § 121 situation here, Appellants

5   having expressly declined to place any reliance on § 121, we believe the Federal Circuit's

6   *Geneva* observations are applicable here where Appellants in part bottom their case based

7   on what they characterize as a restriction requirement albeit a restriction requirement in a

8   related, but different, case. Having failed to favor us with a copy of the claims said to

9   have been restricted by Examiner Rizzo, we are unable to determine the precise nature of

10  that restriction requirement or the weight, if any, to be given to the Rizzo restriction

11  requirement.

12      In our view, the Rizzo restriction requirement does not give much aid and comfort

13  to Appellants. They have not sufficiently established what the restriction requirement

14  was actually about, and in particular what the displacement process was all about. In

15  short, Appellants' restriction proofs are not bottomed on sufficient and credible evidence.

16                                    6.

17      Appellants have an alternate theory. According to Appellants, we should find that

18  there are two 'independent and distinct" processes that can be used to make the cephems

19  of Ochiai '606.

20      Appellants' theory is based on the declaration testimony of Dr. Wuest. As noted

21  earlier, the Examiner was not impressed with Dr. Wuest's testimony.

22      According to Appellants, the Examiner has to believe Dr. Wuest's testimony

23  because there is no opposing evidence. Wrong! The Examiner is entitled to assess

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   testimony and there is no requirement of law that an examiner must have counter-

2   testimony or evidence to discredit declaration testimony. *See, e.g., Rohm and Haas Co.*

3   *v. Brotech Corp.*, 127 F.3d 1089, 1092, 44 USPQ2d 1459, 1462 (Fed. Cir. 1997) (fact-

4   finder need not credit unsupported assertions of an expert witness). At oral argument,

5   Appellants acknowledge that one reason the Examiner declined to credit Dr. Wuest was

6   that the alternate process Dr. Wuest has suggested has not been shown to have been

7   "actually been carried out ***." Tr-8:16-18. Appellants go on to say "[b]ut the

8   [E]xaminer never provided any references to dispute the credibility of the expert opinion

9   of Dr. Wuest on this point." Tr-8:20-22. In point of fact, however, Appellants do not,

10  and cannot, deny the correctness of the Examiner's observation that the Wuest alternative

11  process has not been shown to have been carried out.

12       Dr. Wuest characterized the proposed "alternative pathways" as "Potential

13  Routes" and "possible" alternatives. As indicated earlier, Dr. Wuest does not indicate

14  that any scientist made any attempt to carry out his suggested alternative. While

15  Dr. Wuest refers to a Morin text, the most he can say is that "I would expect that this

16  reaction [meaning the Ochiai reaction] could be carried out." Wuest declaration,

17  Ex. 1010, page 23. Why? Painting with a broad brush, Dr. Wuest refers to the examples

18  in Ochiai specifications, but does not refer to any particular example or why the content

19  of the examples provides a basis for his "I would expect" opinion. Moreover, as

20  developed during oral argument, counsel for Appellants conceded that Dr. Wuest made

21  no analysis of the advantages and disadvantages of his proposed reaction scheme vis-à-

22  vis the reaction schemes actually described in the Ochiai specifications. Tr-24:13-22.

23  There is no discussion by Dr. Wuest as to why one skilled in the art would go out of the

20

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    way to use his "potential" or "possible" reaction schemes when there is a detailed and

2    straightforward reaction scheme described in the Ochiai specifications. Appellants have

3    not shown us that the Wuest alternative processes may be described in the family of

4    Ochiai applications. On this record, it would appear that the Wuest alternative method is

5    a post-litigation afterthought, particularly given the 1982 date of Morin when compared

6    to the 1975 filing date of the first Ochiai application. We cannot say that the Examiner

7    did not have a sufficient basis for finding that the Wuest testimony was "speculative" and

8    we do not think it is our role in this case to second-guess the Examiner's assessment of

9    the Wuest testimony. The Examiner works in the art area day to day; we do not.

10       When pressed at oral argument, counsel for Appellants maintained that

11   Ochiai '606 describes at least two methods for making the cephems of claim 1 of

12   Ochiai '606. Tr-6:18 *et seq*. A first method is reacting compound VI with compound V.

13   Ochiai '606, col. 2, lines 26-29 and col. 6, line 55 through col. 7, line 62. A second

14   method is reacting compound IX with a "nucleophilic" compound. Ochiai '606, col. 2,

15   lines 33-35 and col. 8, line 32 through col. 9, line 24. A third method, not discussed at

16   oral argument, may be reducing compound VII. Ochiai '606, col. 2, lines 30-32 and col.

17   7, line 63 through col. 8, line 31.

18       Each of the three methods described in Ochiai '606 involves the use of the

19   process of claim 1 of Ochiai '216.

20       The first method involves reacting an acyl containing compound with an amine

21   "Molecule" as described in our findings.

22       The second method involves using Ochiai '606 compound IX (top of col. 2).

23   $R^6$ of compound IX can be various organic moieties, including acyloxy, such as

21

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   acetyloxy. Ochiai '606, col. 8, lines 34-35. The process of claim 1 on appeal can be used

2   to make Compound IX when $R^4$ of claim 1 on appeal is a residue of a nucleophilic

3   compound. For example, $R^4$ can be —W—R where W is oxygen and R is acyl. One

4   example of an —W—R group is acyloxy, e.g., acetyloxy. Ochiai 216, col. 6, lines 30

5   and 39. The method of claim 1 of Ochiai '216 can be used to make some of the

6   compounds falling within the scope of Ochiai '606 compound IX.

7       The third method involves use of Ochiai '606 compound VII (col. 1, line 60).

8   Some of the compounds falling within the scope of Ochiai '606 compound VII are made

9   by reacting a compound having an acyl group with a "Molecule" in accordance with

10  claim 1 of Ochiai '216.

11      What surfaces from the discussion above is that regardless of whether one skilled

12  in the art practices the first, second or third method described in Ochiai '606, that person

13  uses the process of claim 1 of Ochiai '216 to make at least some of the Ochiai '606

14  compounds. The Ochiai '216 method is used to make compounds via the first method.

15  The process is also used to make starting materials for practicing the second or third

16  method. We have a case where all the described methods for making some of the '606

17  cephems in one fashion or another involve the use of the process of claim 1 of

18  Ochiai '216. Having rejected Dr. Wuest's speculative method, no credible method for

19  making the cephems of Ochiai '606, other than those described in Ochiai '606, has been

20  placed before us. This is not a case where a credible alternative method for making the

21  Ochiai '606 compounds has been established. Appellants have not established that there

22  are credible separate "independent and distinct" methods for making some of the

23  cephems claimed in Ochiai '606.

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1                                        7.

2          At oral argument, Appellants indicated that "the final product of the [Ochiai] '216

3   process is substantially coextensive with the two final product patents that are the subject

4   of the double patenting rejection." Tr-17:19 through 18:4. One of the "two final product

5   patents" is Ochiai '606. Nevertheless, we recognize that the process of Ochiai '216

6   cannot be used to make all of the cephems within the scope of claims 1 and 15 of Ochiai

7   '606. In other words, the scope of the cephems that can be made using the process of

8   claims 1-5 of Ochiai '216 is narrower than the scope of the cephems covered by Ochiai

9   '606, although the scope of the cephems made by claim 15 of Ochiai '606 is very close.

10  However, to the extent that the process of Ochiai '216 is used to make only some of the

11  cephems within the scope of the Ochiai '606 claims, Appellants ultimately conceded at

12  oral argument that the public is not entitled to use that process to make "some of the

13  cephems" of Ochiai '606. Tr-19:19 through 20:10. In effect, the claims of Ochiai '216

14  operate to extend the patent rights conferred by now expired Ochiai '606 at least to the

15  extent that the Ochiai '606 and Ochiai '216 claims are co-extensive.

16         Given the rationale upon which double patenting is based, we see no reason why a

17  process claim and the expired compound have to be co-extensive in scope to sustain a

18  rejection for double patenting. Just as one described species or several species may

19  anticipate a genus in an anticipation analysis under 35 U.S.C. § 102(b) even if other

20  described species do not anticipate, we see no reason why double patenting should not

21  apply, under the facts of this case, where a process claim operates to preclude making of

22  some compounds of an expired compound patent. It should suffice to justify double

23  patenting that some or all of the compound claims of an expired compound patent

23

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   continue to be monopolized by virtue of patent rights in a narrow method patent. In

2   *In re Vogel*, 422 F.2d 438, 442, 164 USPQ 619, 622 (CCPA 1970), the former CCPA

3   noted that issuance of a second patent to a process of treating meat would extend the time

4   of monopoly as to a process of treating pork claimed in a first patent. Here, to the extent

5   the Ochiai '216 patent extends the monopoly as to the compounds which can be made by

6   that process which are the same as the compounds covered by claim 1 of Ochiai '606, the

7   monopoly of Ochiai '606 is also extended, particularly as to products made abroad by the

8   process and subsequently imported into the United States. Tr-20:11 through 21:1.

9        Double patenting should not turn on "creative" method claim drafting. Rather,

10  the focus should be on an analysis of whether all or some of a patentee's patent rights are

11  being unjustly extended. For example, in this very case it is not apparent, and Mr. Usami

12  did not explain, why Ochiai '216 method claims were not drafted to include making all of

13  the cephems of Ochiai '606 claims 1 and 15. Appellants conceded at oral argument, as

14  they had to, that product and process claims could have been presented in a single

15  application. Tr-11:7-10. See also Tr-25:6 through 26:1. In our opinion, what might be

16  characterized as Appellants' creative and conveniently timed claim drafting should not be

17  a back door "around" double patenting.

18                                    8.

19       Appellants presented the declaration testimony of Mr. Hirofumi Usami (Ex 1035)

20  to explain why the Ochiai '216 process claims were first presented in 1990 in the

21  application that matured into Ochiai '216. Ochiai '216 is based on several continuations,

22  continuations-in-part and divisions of an Ochiai application filed in 1975, *viz.*, Ochiai

23  '888. As noted in our findings, Mr. Usami states that process claims were not earlier

24

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1   presented because (1) process protection was said not to be valuable until 1989 when

2   § 271(g) was enacted and (2) process claims were not patentable in the United States.

3   Appellants seem to be saying that because they could not have benefited from process

4   claims pre-1989, they were under no obligation to present process claims.

5        It may be fairly debatable whether any weight should be assigned to Mr. Usami's

6   testimony. How relevant is it to any issue before us? To the extent that double patenting

7   ought to be based in whole or in part on equitable, as opposed to wholly legal,

8   considerations, we would find that Mr. Usami's declaration amounts to an "excuse" but

9   not a "justification" for the delay in presenting the process claims on appeal. Appellants'

10  delay in seeking process protection has extended in part the 1998 expiration date of

11  Ochiai '606 until 2013, all because Takeda did not diligently pursuant its right to a

12  process patent.

13       It is true that § 271(g) made process claims more valuable. Tr-25:6-13.

14  However, Congress has long authorized inventors to apply for patents on processes.

15  35 U.S.C. § 101. Moreover, the law encourages individuals to diligently seek to protect

16  their "rights" and not delay to the prejudice of others. The "others" in this case is the

17  public.

18       It is also true that *In re Larsen* and some of its progeny could have been viewed as

19  discouraging inventors to seek certain process claims. Tr-10:2-5. Included among the

20  progeny is *In re Durden*, 763 F.2d 1406, 226 USPQ 359 (Fed. Cir. 1985). Tr-10:3.

21  Notwithstanding the 1985 *Durden* decision, Edwin P. Pleuddemann and his assignee

22  Dow Corning Corporation, applied for a process patent on 14 October 1986, as a division

23  of a product patent filed on 29 November 1985. Unlike Ochiai and Takeda,

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    Plueddemann and Dow Corning Corporation successfully sought to vindicate what they

2    felt was their right to a process patent notwithstanding *Larsen* and *Durden* and did so

3    prior to enactment of § 271(g).  *In re Pleuddemann*, 910 F.2d 823, 15 USPQ2d 1738

4    (Fed. Cir. 1990).  Moreover, in this very case, we note that Appellants, like

5    Pleuddemann, successfully overcame a so-called *Durden* rejection.  *In re Ochiai, supra.*

6                                        9.

7         Appellants cited and rely on *In re Cady*, 77 F.2d 106, 25 USPQ 345 (CCPA

8    1935).  According to Appellants, the 1952 Patent Act and subsequent PTO

9    pronouncements codified the holdings of *Cady*.  A first holding was that if a restriction

10   requirement is made, the PTO cannot use double patenting.  The holding is codified in

11   35 U.S.C. § 121.  Here there was no restriction.  A second holding is said to be that if

12   there are two methods of a making a product, the methods might be regarded as

13   independent and distinct from each other and the product.  The pre-271(g) *Cady* holding

14   and any PTO codification of that holding is not applicable to the facts of this case.

15   Appellants have failed to establish that there two "independent and distinct" methods for

16   making the cephems of Ochiai '606 which do not involve the use of the Ochiai '216

17   process.

18                                       10.

19        Appellants have discussed *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA

20   1968).  We are not at all sure what *Schneller* has to do with the issues on appeal.  We

21   agree with Appellants that *Schneller* is not controlling.  Accordingly, further discussion

22   concerning *Schneller* would not be productive.

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1                                    11.

2          Appellants make a point in the Appeal Brief, and at oral argument, that the

3   Examiner has "combined" several Ochiai patents to make the double patenting rejecting.

4   Tr-15:12-17.

5          We do not think the Examiner combined several Ochiai patents to make the

6   rejection. However, given the rationale upon which we have affirmed, we find it

7   unnecessary in this case to resolve any issue of whether two or more patents owned by a

8   patentee may be "combined" to support a double patenting rejection of another patent

9   owned by the patentee. We leave that issue for another day.

10   **E.    ORDER**

11          Upon consideration of the record indicated above and for the reasons given, it is

12          **ORDERED** that the decision of the Examiner rejecting claims 1-5 is

13   affirmed.

14          **FURTHER ORDERED** that no time period for taking any subsequent

15   action in connection with this appeal may be extended under 37 CFR § 1.136(a) (2005).

16                              **AFFIRMED.**

17
18
19                                                  )
          FRED E. McKELVEY, *Senior*               )
20          *Administrative Patent Judge*           )
21                                                  )
22                                                  )
23                                                  )    BOARD OF
          ADRIENE LEPIANE HANLON                   )     PATENT
24                                                       )
25          *Administrative Patent Judge*           )    APPEALS AND
26                                                  )    INTERFERENCES
27                                                  )
28                                                  )
29          ROMULO H. DELMENDO                      )
30          *Administrative Patent Judge*           )
31

27

Appeals 2006-1443 and 2006-1465
Reexamination Control Nos. 90/004,950 and 90/005,200

1    cc (via Federal Express):

2
3    Harold C. Wegner, Esq.
4    Stephen B. Maebius, Esq.
5    FOLEY & LARDNER LLP
6    3000 K Street, N.W.
7    Washington, D.C. 20007
8
9    Tel:   202-672-5300
10   Fax:   202-672-5399
11
12   E. Thomas Wheelock, Esq.
13   MORRISON & FOERSTER
14   14188 Stanford Court
15   Los Altos Hills, CA 94022
16
17   Tel:   650-302-6286
18   Fax: None
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

28

Patent
Control Nos. 90/004,950 and 90/005,200
Attorney Docket Nos. 087147-0265 & 087147-0416

CLAIMS APPENDIX

APPENDIX A: THE CLAIMS

[37 C.F.R. § 41.37(c)(1)(viii)]

1. A process for preparing a cephem compound of the formula:



wherein $R^3$ is hydrogen or methoxy, $R^4$ is hydrogen or a residue of a nucleophilic compound, $R^5$ is hydroxyl or a protected hydroxyl, and $R^8$ is hydrogen or a halogen, or a pharmaceutically acceptable salt or ester thereof, which comprises introducing an acyl group of the formula:



wherein $R^5$ and $R^8$ are as defined above into the amino group of the molecule of the formula:

002.1456941.1

Patent
Control Nos. 90/004,950 and 90/005,200
Attorney Docket Nos. 087147-0265 & 087147-0416



wherein $R^3$ and $R^4$ are as defined above or a salt or ester thereof.

2. A process of claim 1 wherein $R^3$ and $R^8$ are hydrogen.

3. A process according to claim 1, wherein the introduction is performed by reacting a compound of the formula:



or a salt or ester thereof, with a compound of the formula:



wherein $R^1$ is an amino group, or a salt or reactive derivative thereof.

43

Patent
Control Nos. 90/004,950 and 90/005,200
Attorney Docket Nos. 087147-0265 & 087147-0416

4. A process of claim 3 wherein the amino group as $R^1$ is amino.

5. A process of claim 3 wherein the amino group as $R^1$ is protected amino, and subsequent to said introduction the protective group is removed.

44