# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO. LTD. ) | |
| 1-1, Doshomachi 4-chome ) | |
| Chuo-ku, Osaka 540-8645 JAPAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV01640TFH |
| ) | |
| HON. JON W. DUDAS ) | |
| Under Secretary of Commerce for Intellectual ) | |
| Property and Director of the United States ) | |
| Patent and Trademark Office ) | |
| Madison Building ) | |
| 600 Dulany Street ) | |
| Alexandria, VA 22314, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR ISSUANCE OF REEXAMINATION CERTIFICATE FOR U.S. PATENT NUMBER 5,583,216

Plaintiff Takeda Pharmaceutical Co. Ltd. ("Takeda") hereby moves under Fed. R.

Civ. P. 56 for summary judgment that it is entitled to a Reexamination Certificate,

confirming its rights to each claim in United States Patent No. 5,583,216.

Takeda requests an oral hearing on this motion for summary judgment.

i

FOLEY & LARDER LLP

/s/
_____

C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

*Attorneys for Plaintiff Takeda*
*Pharmaceutical Co. Ltd.*

*Of Counsel*:

Harold  C. Wegner
Stephan B. Maebius
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

Dated: January 19, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO. LTD. | ) |
| 1-1, Doshomachi 4-chome | ) |
| Chuo-ku, Osaka 540-8645 JAPAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:06CV01640TFH |
| | ) |
| HON. JON W. DUDAS | ) |
| Under Secretary of Commerce for Intellectual | ) |
| Property and Director of the United States | ) |
| Patent and Trademark Office | ) |
| Madison Building | ) |
| 600 Dulaney Street | ) |
| Alexandria, VA 22314, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
## SUMMARY JUDGMENT FOR ISSUANCE OF REEXAMINATION
## CERTIFICATE FOR U.S. PATENT NUMBER 5,583,216

C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300


*Attorney for Plaintiff Takeda*
*Pharmaceutical Co. Ltd.*

## TABLE OF CONTENTS

Page

I.      Initial Examination of the '216 patent ............................................................... 1

II.     Reexamination of the '216 Patent..................................................................... 2

III.    Takeda's prior '606 patent ................................................................................ 4

IV.     Alternative Methods Exist For Making The Prior Cephem Compounds ............... 5

I.      INTRODUCTION ............................................................................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................... 1

        A.      Regulatory and Statutory Framework ...................................................... 2

                1.      Reexamining Issued Patents ......................................................... 3

                2.      Product and Method Patents ........................................................ 3

        B.      Relevant Technology ............................................................................... 4

III.    LEGAL ARGUMENT ........................................................................................ 5

        A.      Standard of Review................................................................................. 5

        B.      Double Patenting.................................................................................... 5

        C.      The Board Committed At Least Four Reversible Errors ........................... 6

        D.      The Board's Double Patenting Rejection Is Legally Erroneous ................ 7

                1.      The Federal Circuit Does Not Recognize The Double
                        Patenting Rejection Relied Upon By The Board ........................... 7

                2.      Mosler Safe Has Been Limited To Its Exact Facts ........................ 9

                3.      Miller v. Eagle Does Not Support The Board's Position.............. 11

        E.      The Board's Double Patenting Rejection Is Factually Erroneous ........... 13

                1.      The Monguzzi Patent .................................................................. 14

                2.      The Gerlach Patent..................................................................... 15

        F.      Takeda Is Not Unjustly Extending It Patent Rights Over Cephem
                Compounds ............................................................................................ 16

# TABLE OF CONTENTS

Page

G.    The PTO's Current Position Is Factually Inconsistent With
A Position Taken During An Earlier Appeal Involving
The '216 Patent. ........................................................................................ 18

IV.    CONCLUSION ........................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*3M v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002)................................................................. 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................. 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)............................ 5

*Chrysler Corp. v. Brown*,
  441 U.S. 281, 302 (1979)........................................................................ 8

*\*Fireball Gas Tank & I. Co. v. Commercial Acetylene Co.,*
  239 U.S. 156 (1915)............................................................................9-11

*General Foods Corp. v. Studiengesellschaft Kohle mbH*,
  972 F.2d 1272 (Fed. Cir. 1992)........................................................*Passim*

*In re Berg*,
  140 F.3d 1428 (Fed. Cir. 1998)................................................................. 9

*In re Borah*,[1]
  354 F.2d 1009 (CCPA 1966) .................................................................... 8

*\* In re Brouwer*,
  77 F.3d 422 (Fed. Cir. 1996)..............................................................17-18

*In re Cady*,
  77 F.2d 106 (CCPA 1935) ...............................................................6, 12-13

*In re Dembiczak*,
  175 F.3d 994 (Fed. Cir. 1999) .................................................................. 7

*In re Goodman*,
  11 F.3d 1046 (Fed. Cir. 1993)................................................................... 9

---

[1]    Decisions of the Court of Customs and Patent Appeals are binding precedent on the Federal Circuit.  *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

## TABLE OF AUTHORITIES

**Page(s)**

*\* In re Kaplan,*
  789 F.2d 1574 (Fed. Cir. 1986) .................................................................... 12, 16-17

*In re Longi,*
  759 F.2d 887 (Fed. Cir. 1985) ............................................................................. 9

*In re Ochiai,*
  71 F.3d 1565 (Fed. Cir. 1995) ....................................................................... 18-19

*In re Thorington,*
  418 F.2d 528 (CCPA 1969) ................................................................................. 9

*In re Thorpe,*
  777 F.2d 695 (Fed. Cir. 1985) ............................................................................ 3

*In re Van Ornum,*
  686 F.2d 937 (CCPA 1982) ................................................................................. 9

*In re Vogel,*
  422 F.2d 438 ........................................................................................... 9, 12

*In re Zurko,*
  258 F.3d 1379 (Fed. Cir. 2001) ........................................................................... 5

*Mazzari v. Rogan,*
  323 F.3d 1000 (Fed. Cir. 2003) ........................................................................... 5

*Merck & Co, Inc. v. Kessler,*
  80 F.3d 1543 (Fed. Cir. 1996) ............................................................................. 8

*Merrill v. Yeomans,*
  94 U. S. 568, 24 L. ed. 235 ............................................................................... 10

*Miller v. Eagle Mfg. Co.,*
  151 U.S. 186 (1894) ............................................................................... 3, 9, 11-12

*Mosler Safe & Lock Co. v. Mosler,*
  B. & Co. 127 U. S. 354 (1888) ......................................................................... 9-10

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ....................................................................................... 18

*Phillips Petroleum Co. v. U.S. Steel Corp.,*
  604 F. Supp. 555 (D. Del. 1985) .................................................................. 6, 12-13

# TABLE OF AUTHORITIES

**Page(s)**

*Reynolds v. Comm'r of Internal Revenue,*
    861 F.2d 469 (6th Cir. 1988) ................................................... 18

*Sandoz, Inc. v. Leavitt,*
    427 F.Supp.2d 29 (D.D.C. 2006) ............................................. 5

*Sewall v. Jones,*
    91 U. S. 171, 23 L. ed. 275 .................................................... 10

*South Corp. v. United States,*
    690 F.2d 1368 (Fed. Cir. 1982) ................................................ 8

*Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.,*
    784 F.2d 351 (Fed. Cir. 1986) .................................................. 7

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n,*
    988 F.2d 1165 (Fed. Cir. 1993) ................................................ 5

## FEDERAL STATUTES

5 U.S.C. § 706 (2000) ...................................................................... 5

35 U.S.C. § 101 .............................................................................. 7

35 U.S.C. § 154(a)(1) ..................................................................... 3

35 U.S.C. §§ 301-07 ....................................................................... 3

35 U.S.C. § 302 .............................................................................. 3

35 U.S.C. § 305 .............................................................................. 3

## RULES

Fed. R. Civ. P. 56(c) ...................................................................... 5

## REGULATIONS

37 C.F.R. §§ 1.501-*et seq* ............................................................ 3

37 C.F.R. § 1.510(a) ....................................................................... 3

# TABLE OF AUTHORITIES

**Page(s)**

**TREATISES**

3A, Chisum on Patents § 9.02[3] at 9-8 (2005) ................................................................. 11

4A, Chisum on Patents § 12.02[2] at 12-27 (2005) ......................................................... 11


**OTHER AUTHORITIES**

*Business Testimony: Current Innovation Landscape In Selected Industries* ...................... 4

MPEP § 806.05(f) ........................................................................................................ 6, 13

*To Promote Innovation: The Proper Balance of Competition and Patent
    Law and Policy*, A Report By The Federal Trade Commission
    (October 2003) ........................................................................................................ 3-4

## I.    INTRODUCTION

Plaintiff Takeda Pharmaceutical Co. Ltd. ("Takeda") hereby moves for summary judgment that it is entitled to a Reexamination Certificate, confirming its rights to each claim in United States Patent No. 5,583,216 ("the '216 patent").  As demonstrated below, the decision of the Board of Patent Appeals and Interferences ("Board") of the U.S. Patent & Trademark Office ("PTO") affirming a double patenting rejection of all claims of the '216 patent errs in both law and fact.

## II.    SUMMARY OF ARGUMENT

The Board rejected all claims in Takeda's '216 patent based upon double patenting – a doctrine designed to prevent an applicant from patenting the same or very similar invention twice, with one patent expiring later than the other.  In particular, the Board erroneously found that the '216 patent extends Takeda's patent rights over some of the cephem compounds that were claimed in Takeda's expired U.S. Patent 4,298,606 ("the '606 patent").  According to the Board, Takeda's current '216 patent claims the *only* method for making some of the cephem compounds previously claimed in the '606 patent and, thus, Takeda is improperly extending its monopoly over those compounds. The Board's legal and factual analysis is wrong for at least four reasons.

*First*, the Board's decision is legally wrong.  The U.S. Court of Appeals for the Federal Circuit, the PTO's reviewing court, recognizes only two grounds for double patenting.  *See General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed. Cir. 1992).  The Board concedes that its rejection does not follow either recognized ground.  Instead, the Board based its double patent rejection on equitable grounds, arguing that Takeda is unjustly extending its patent rights over the cephem compounds claimed in the '606 patent.  For support, the Board cites to the Supreme Court's 1888

1

decision in *Mosler Safe*, which has subsequently been limited by the Court to its "exact facts," which are different from this case.

    *Second*, the Board's double patenting rejection admittedly cannot stand, as a matter of fact, if there is an independent and distinct method for making the previously claimed cephem compounds. There is at least one such alternative method, as evidenced by patents recently issued by the PTO and explained in detail in the attached declaration of Dr. Angelina Duggan. As such, the Board's decision is factually wrong.

    *Third*, the Board's equitable arguments must also be rejected. Given the existence of an alternative method other than the '216 patented method for making the cephem compounds previously claimed in Takeda's '606 patent, which alternative methods have not only been patented by others but confirmed with experimental data, Takeda is not unjustly extending its prior rights over those compounds. As such, the Board's equitable arguments necessarily fall with its erroneous factual findings.

    *Fourth*, the PTO is judicially estopped from arguing that the '216 patent claims the only method for making the previously claimed cephem compounds. In a prior appeal to the Federal Circuit, the PTO admitted that there were alternative methods for making the claimed cephem compounds. Now, however, the Board argues the direct opposite. The PTO should be held to its prior in-court representations.

    For at least these reasons, summary judgment should be granted to Takeda.

### A.    Regulatory and Statutory Framework

    To understand the legal issues involved in the present appeal, Takeda provides the following brief summary of the relevant regulatory and statutory framework regarding reexamination, and method versus product patent claims.

### 1.   Reexamining Issued Patents

An issued patent may be reexamined by the PTO during a proceeding called reexamination.  *See* 35 U.S.C. §§ 301-07; 37 C.F.R. §§ 1.501-*et seq.*  Anyone can request reexamination of an issued patent.  *See* 35 U.S.C. § 302; 37 C.F.R. § 1.510(a).  Reexamination proceedings are very similar to regular patent examination proceedings, with the notable difference being that reexamination must proceed with "special dispatch," 35 U.S.C. § 305.  This means that a reexamination must not be unduly delayed given the uncertainty that such proceedings place over the previously issued patent.

### 2.   Product and Method Patents

A patent "invention," and the accompanying right to exclude, is defined by the patent claims.  35 U.S.C. § 154(a)(1).  A patent may include claims, *inter alia*, to a product (such as a chemical compound) and to a method for making that product.  It is a bedrock principle of patent law that product and method claims create different patent rights.  *See Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 199 (1894); *see also In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985) ("The patentability of a product does not depend on its method of production.").  For example, a patent claiming a chemical compound prevents the public from making that compound by any method.  A patent claiming a method for making that compound, however, only precludes the public from making the compound via the claimed method.  Other methods, outside the scope of the patent claims, can be used to make the compound without violating the method claims.

Pharmaceutical companies rely heavily on patent protection (both product and method patents) to protect the value of their immense research and development expenditures.  *See generally To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy*, A Report By The Federal Trade Commission (October

2003), attached as PX 7.  Indeed, during recent FTC hearings, pharmaceutical industry

representatives testified that the "sunk costs of engaging in research products aimed

toward the development of these drugs is extremely high.  By preventing rival firms from

free riding on the innovating firms' discoveries, patents can enable pharmaceutical firms

to cover their fixed costs and regain the capital they invest in R&D efforts."  *Id*. at

Chapter 3, *Business Testimony: Current Innovation Landscape In Selected Industries*, at

page 4 (PX 7).

###        B.       Relevant Technology

The present case concerns compounds having antibiotic properties and methods

for making them.  Terms used to describe the antibiotics include a larger set of

compounds called cephems (as used in claim 1 of the '606 patent) and a subset of

cephems called cephalosporins (as used in claim 1 of the '216 patent), including

commercial antibiotics cefotaxime and ceftriaxone.  Takeda has a number of licensees

that are producing lifesaving antibiotic drugs under the '216 patent.

The '216 patent claims ***one*** specific manufacturing method for making certain

cephem compounds that are claimed in Takeda's expired '606 patent.  The '606 patent,

conversely, included claims directed to cephem compounds themselves.  As such, the

'606 patent precluded the public from making the claimed compounds, regardless of the

particular method used.  Given that the '606 patent expired in 1998, the public is now

free to make the previously claimed cephem compounds by any method except the one

method claimed in the '216 patent.

## III.    LEGAL ARGUMENT

### A.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Sandoz, Inc. v. Leavitt*, 427 F.Supp.2d 29, 32 (D.D.C. 2006). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sandoz, Inc.*, 427 F.Supp.2d at 32-33. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson,* 477 U.S. at 248; *Sandoz,* 427 F.Supp.2d at 33.

The "PTO is an agency subject to the Administrative Procedure Act" ("APA"), and therefore "a reviewing court must apply the APA's court/agency review standards." *Mazzari v. Rogan,* 323 F.3d 1000, 1004 (Fed. Cir. 2003). Accordingly, the Court will set aside legal actions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and set aside factual findings that are "unsupported by substantial evidence." 5 U.S.C. § 706 (2000); *Mazzari,* 323 F.3d at 1005; *In re Zurko*, 258 F.3d 1379, 1384 (Fed. Cir. 2001).

### B.    Double Patenting

Double patenting is a question of law. *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n,* 988 F.2d 1165, 1179 (Fed. Cir. 1993). There are two recognized double-patenting rejections. *See General Foods*, 972 F.2d at 1278. The first type is "same

invention" double patenting. *See id*. The second type is "obviousness-type" double patenting. *See id*. Both rejections are based on whether the claims in two different patents are "patentably distinct." *Id*. at 1278-79.

Product claims and method claims are considered different inventions, with each being entitled to issue in a separate patent if those claims are "patentably distinct." *General Foods*, 972 F.2d at 1279. A method claim is "patentably distinct" from a claim covering the final product if there are independent and distinct methods for making that product. *See In re Cady*, 77 F.2d 106, 109 (CCPA 1935); *Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555, 562 (D. Del. 1985); *see also* MPEP § 806.05(f) (PX 8, at page 800-47).

### C.    The Board Committed At Least Four Reversible Errors

The Board's opinion contains at least four errors. This Court can completely reverse the Board on any of these grounds:

*First*, the Board applied an incorrect legal standard for its double patenting rejection and thus its double patenting rejection is not in accordance with the law;

*Second*, the Board's decision rests on the erroneous factual premise that the '216 patent claims the only method of making the prior cephem compounds of claims 1 and 15 of the '606 patent;

*Third*, the Board's equitable arguments in support of a third type of double patenting rejection are factually and legally incorrect. Takeda's '216 patent does not extend Takeda's prior patent rights over cephem compounds claimed in the '606 patent since there is an alternative method for making these compounds;

*Fourth*, the PTO conceded in a prior appeal involving the '216 patent that there are "several methods" for making the previously claimed cephem compounds. As such, it is judicially estopped from changing its position 180 degrees in the current appeal.

**D.    The Board's Double Patenting Rejection Is Legally Erroneous**

**1.    The Federal Circuit Does Not Recognize The Double Patenting Rejection Relied Upon By The Board**

The Federal Circuit recognizes two, ***and only two***, types of double patenting rejections. *See General Foods*, 972 F.2d at 1278. The first type is called "same invention" or statutory double patenting. *See id.*; *see also* 35 U.S.C. § 101. This doctrine precludes a patent applicant from obtaining claims in a later patent that are identical in scope to claims in an earlier patent. *See Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.*, 784 F.2d 351, 354-55 (Fed. Cir. 1986). The Board did not reject claim 1 of the '216 patent based upon same invention double patenting.

The second type is called "obviousness-type" or non-statutory double patenting. *See General Foods*, 972 F.2d at 1278. This doctrine "prohibits claims in a second patent which define 'merely an obvious variation' of an invention claimed by the same inventor in an earlier patent …." *In re Dembiczak*, 175 F.3d 994, 1001 (Fed. Cir. 1999) (quotation and citation omitted). The Board did not reject claim 1 of the '216 patent based upon obviousness-type double patenting.

Beyond these two types of double patenting rejections, "[n]o other kind of 'double patenting' is recognized …." *General Foods*, 972 F.2d at 1278. The Board concedes that its double-patenting rejection does not fall within either of these two recognized categories. Board Op. at 14.

Undaunted by the controlling case law, the Board states in its opinion that that its rejections should not be pigeon-holed into either recognized category:

> We believe there may be a tendency to try and "pigeon hole" every double patenting situation into one of these two recognized categories of double patenting.  However, we decline to hold that every double patenting must fit precisely into one of the two categories.  In our view, the focus should be on whether a second patent unjustifiably extends the patent rights of a first patent.  Each case, of course must be decided on its facts.

Board Op. at 14.  The Board's attempt to *sua sponte* devise a third double patenting category necessarily fails for three reasons.  *First*, the Federal Circuit has expressly held that "[n]o other kind of 'double patenting' is recognized …."  *General Foods*, 972 F.2d at 1278.

*Second*, the PTO lacks substantive rulemaking authority.  *See Merck & Co, Inc. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996); *see also* **Chrysler Corp. v. Brown, 441 U.S. 281, 302 (1979)** ("[T]he exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes.").  As such, the PTO has no legal authority to create new double patenting rejections.

*Third*, a double patenting rejection based entirely on a supposed extension of patent rights is unsupported by and contrary to controlling Federal Circuit precedent.  *See In re Borah*,[3] 354 F.2d 1009, 1017 (CCPA 1966) ("We see, therefore, that as a matter of

---

[2]     Decisions of the Court of Customs and Patent Appeals are binding precedent on the Federal Circuit.  *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

[3]     Decisions of the Court of Customs and Patent Appeals are binding precedent on the Federal Circuit.  *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

law the extension of protection objection is not necessarily controlling."); *see also General Foods*, 972 F.2d at 1278-79. "[B]eyond question … the determining factor in deciding whether or not there is double patenting is the existence vel non of *patentable difference* between two sets of claims." *General Foods*, 972 F.2d at 1278-79.[4]

Eschewing the controlling case law from the Federal Circuit, the PTO argues that its new type of double patenting rejection finds support from an 1888 Supreme Court decision, *Mosler Safe*. Board Op. at 14. As detailed below, *Mosler Safe* does not support the Board's decision.

### 2. *Mosler Safe* Has Been Limited To Its Exact Facts

Although not relied upon by the patent examiner, the Board cites to *Mosler Safe & Lock Co. v. Mosler*, B. & Co. 127 U. S. 354 (1888), as supporting its new type of double patenting rejection. Nonetheless, *Mosler Safe* does not support the Board's rejection. *Mosler Safe* was limited to its "exact facts" by a subsequent Supreme Court decision, *Fireball Gas Tank & I. Co. v. Commercial Acetylene Co.,* 239 U.S. 156 (1915), and thus cannot be used as precedent to support an entirely new type of double patenting rejection. In *Fireball Gas Tank*, the Court held that:

> The Mosler Case, it was said in *Miller v. Eagle Mfg. Co.* 151 U. S. 186, 197, 38 L. ed. 121, 127, 14 Sup. Ct. Rep. 310, held "that a patent having issued for a product, as made by a certain process, a later patent could not be granted for the process which results in the product." The process was a purely mechanical process, and the ruling, it would seem, *must be confined to the exact facts of the case*, for in Miller v. Eagle Mfg. Co. it was said that "*a single invention may include both the machine and the manufacture it creates, and in such cases, if the inventions are really*

---

[4]      *See, e.g., In re Berg*, 140 F.3d 1428 (Fed. Cir. 1998)*; In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937 (CCPA 1982); *In re Vogel*, 422 F.2d 438; *In re Thorington,* 418 F.2d 528 (CCPA 1969).

> **separable, the inventor may be entitled to a monopoly of each**." And *Sewall v. Jones,* 91 U. S. 171, 23 L. ed. 275, was cited for the purpose of showing that there might be a patent for the process and one for the product. *Merrill v. Yeomans,* 94 U. S. 568, 24 L. ed. 235, was also cited as holding that "where a patent described an apparatus, a process, and a product, and the claims covered only the apparatus and the process, the law provided a remedy by a surrender of the patent and a reissue, for the purpose of embracing the product."

239 U.S. at 165-166 (emphasis added). The "exact facts" of *Mosler Safe* are different from the facts of the present case. In *Mosler Safe*, the original patent was a product-by-process patent, a special kind of patent combining process and product elements in one patent claim, and the later process patent claimed the <u>same</u> process that was covered in the earlier product-by-process patent. By contrast, the '606 patent relied upon by the Board is a straight product patent, with no process elements in any of its claims.

In addition, *Mosler Safe* is not a double patenting case. Rather, *Mosler Safe* is a conventional invalidity case, where method claims in a later filed patent were found invalid over similar product-by-process claims of an earlier filed patent.[5] Thus, the earlier filed patent was used as prior art to reject the claims in a later filed patent. In contrast, in the present litigation, the '606 patent is not prior art to the '216 patent, and thus cannot support a traditional invalidity rejection.

Finally, as noted by the Court in the *Fireball Gas Tank* decision, *Mosler Safe* concerned a "purely mechanical invention" in which the method claims were not

---

[5] The earlier filed 281,640 patent at issue in *Mosler* contained product-by-process claims which recited an angle bar made by a certain bending process. The later filed 283,136 patent claimed a method of bending angle irons for an angle bar. *See Mosler*, 127 U.S. at 357 and 361-62. Thus, to the extent that *Mosler Safe* remains good law, it stands for the unremarkable proposition that an applicant cannot obtain a first patent claiming a product made by a certain method and then later file a second patent claiming the method of making the same product because the earlier patent can be used as prior art to reject the later patent.

patentably distinct from earlier product claims. The claims at issue in the present litigation, however, involve a method of making a chemical composition that is patentably distinct from the product claims in the '606 patent. Since *Mosler Safe's* facts dealt with a "purely mechanical invention" and *Mosler Safe* is limited it its facts, it cannot support a double patenting rejection of claims reciting a method of making a chemical composition.

In sum, the facts of the present case are very different from the "exact facts" presented in *Mosler Safe*. As such, the Supreme Court's holding in *Fireball Gas Tank* precludes a broad application of *Mosler Safe*. Indeed, Takeda can find no published case, beyond the present case, where the PTO has ever relied upon *Mosler Safe* to support a double patenting rejection.[6] Certainly, the Board's present double patenting rejection stands far afield from normal double patenting rejections made by the Board in other cases. *See* 3A, Chisum on Patents § 9.02[3] at 9-8 (2005) ("The statement in *Mosler* falls short of a position that one may never obtain a later patent on a method of making a product that is the subject of a prior patent.").

Realizing the problems with *Mosler Safe*, the Board also cites (Board Op. at 16-17) to another Supreme Court case from 1894. This case, *Miller v. Eagle*, also provides no support for the Board's double patenting rejection.

### 3. *Miller v. Eagle* Does Not Support The Board's Position

---

[6] Chisum on Patents cites to a 1890 decision (Ex Parte Chambers) in which a patent examiner rejected process claims in a pending patent application over apparatus claims in a patent based upon *Mosler Safe*. However, Chisum reports that the PTO Commissioner himself reversed that rejection, finding "a clear line of division" between the apparatus and process claims. *See* 4A, Chisum on Patents § 12.02[2] at 12-27 (2005).

Although *Miller* involves a double patenting rejection, the holding in *Miller* does not support the Board's position.  The Court in *Miller* did not follow the holding in *Mosler Safe*.  Instead, the *Miller* Court held as follows:

> The result of the foregoing and other authorities is that [1] no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; [2] that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void; [3] but that where the second patent covers matter described in the prior patent, ***essentially distinct and separable*** from the invention covered thereby, and claims made thereunder, ***its validity may be sustained***.

151 U.S. at 198 (emphasis added).  The holding in *Miller* is unremarkable.  Indeed, it is embodied in present day double patenting precedent and the PTO's own patent examination guidelines.

In particular, category [1] of *Miller* corresponds to present day "same invention" or statutory double patenting.  *See General Foods*, 972 F.2d at 1278.  Category [2] of *Miller* corresponds to present day "obviousness-type" or non-statutory double patenting. *See*, *e.g*., *In re Kaplan*, 789 F.2d 1574, 1577-81 (Fed. Cir. 1986); *In re Vog*el, 422 F.2d 438, 441-42 (CCPA 1970).

*Miller* category [3] is an exception to the double patenting categories [1] and [2]. *Miller* category [3] corresponds to the present day *Cady* line of case law, which holds that double patenting categories [1] and [2] do not apply where the inventions are distinct and separable.  *See In re Cady*, 77 F.2d 106, 109 (CCPA 1935); *see also Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555, 562 (D. Del. 1985).  Specifically, when method claims in the later patent are patentably distinct (*i.e.*, "distinct and separable" in the *Miller* terminology) from claims in the earlier patent, then the claims of the later patent are *not* invalid for obviousness-type double patenting.

12

The PTO's Manual of Patent Examining Procedure ("MPEP") provides guidance for determining when method and product claims are "patentable distinct."  In particular, MPEP § 806.05(f) states that:

> A process of making and a product made by the process can be shown to be distinct inventions ***if either or both of the following can be shown***: (A) that the process *as claimed* is not an obvious process of making the product and the process as *claimed* can be used to make another materially different product; or (B) ***that the product as claimed can be made by another materially different process***.
>
> Allegations of different processes or products need not be documented.  (emphasis added).

Based on the above discussion, the Board legal analysis is inconsistent with the controlling case law and its own patent examination procedures.  The Board's decision should be reversed on this basis alone.

### E.    The Board's Double Patenting Rejection Is Factually Erroneous

The Board acknowledges, as a matter of fact, that its rejection cannot stand if there is an alternative method (beyond the method claimed in the '216 patent) of making the previously claimed cephem compounds.  Board Op. at 26.  This is consistent with the *Cady* line of case law. *See In re Cady*, 77 F.2d 106, 109 (CCPA 1935); *see also Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555, 562 (D. Del. 1985).  As explained in more detail below, there is at least one alternative and distinct experimentally confirmed method for making the cephem compounds previously claimed in the '606 patent from the method claimed in the '216 patent.  Therefore, the Board's double patenting rejection cannot stand.

### 1.  The Monguzzi Patent

United States patent number 7,071,329 ("Monguzzi") describes an alternative method for making cephem compounds claimed in the '606 patent.  Duggan Decl. at ¶¶ 100, 103, 125, 130.  Monguzzi expressly distinguishes the method claimed in Takeda's '216 patent, stating that the Monguzzi method was "***independently invented and synthesized with its own synthesis method***."[7]  '329 patent at 2:9-21 (emphasis added). The "independently invented" Monguzzi method reacts a thiourea and a cephalosporin intermediate to form the cephem products, rather than the group 2-AT and 7-ACA starting materials claimed in the '216 patent.  '329 patent at 24:7-25; *see also* Duggan Decl. at ¶¶ 100, 103, 127, 144-45.

Monguzzi also claims that its method is superior to the method claimed in Takeda's '216 patent: "the process disclosed in U.S. Pat. No. 5,583,216 cannot be applied industrially for producing cephalosporins."  '329 patent at 2:15-21.  Monguzzi provides experimentally confirmatory data that cefotaxime, a commercial marketed cephalosporin drug, can be made with its process.  While Takeda certainly disagrees with this statement, Monguzzi unquestionably provides a clear teaching of an alternative method for making the previously claimed cephem products.

The '216 patent was considered by the PTO examiner during prosecution of the Monguzzi patent, a relevant indicator that the method claimed in the '216 is patentably distinct from the Monguzzi method.

In sum, the Monguzzi patent shows that the Board erred in finding that the '216 patent claims the only method of making the previously claimed cephem compounds.

---

[7]      "*Cephalosporin*" refers to a type of cephem product claimed in the '606 patent.

## 2. The Gerlach Patent

United States patent number 6,552,186 to Gerlach discloses a variation of the alternate method for making the previously claimed cephem products. Duggan Decl. at ¶¶ 136, 141. In particular, Gerlach discloses a method of making the cephem products using a different reaction pathway from that claimed in the '216 patent. Duggan Decl. at ¶¶ 21, 93-95, 144-45. The method of Gerlach combines a thiourea and a cephalosporin intermediate to form the cephem products, instead of the 2-AT and 7-ACA starting materials claimed in the '216 patent. Duggan Decl. at ¶¶ 21, 104, 137, 144-45. Gerlach also shows that the Board erred in finding that there is but one method of making the previously claimed cephem compounds.

As described above, there are at least *two* independent and distinct methods of making the previously claim cephem compounds:

| Method disclosed in: | Starting Material #1 | Starting Material #2 | Resulting Product |
|---|---|---|---|
| Claims of '216 Patent | 2-AT | 7-ACA | Cephalosporin claimed in the '606 patent |
| Alternative method of Monguzzi and Gerlach Patents | Thiourea | Cephalosporin Intermediate | Cephalosporin claimed in the '606 patent |

Furthermore, the alternative method of the Monguzzi and Gerlach patents can be used to make the commercial cefotaxime and ceftriaxone antibiotics. Therefore, the public is not required to use the method claimed in the '216 patent to make the cefotaxime and ceftriaxone antibiotics.

Based upon the undisputed facts presented above and the controlling case precedent, the Board's decision is both factually and legally erroneous. Takeda, thus, is entitled to summary judgment as a matter of law.

### F.    Takeda Is Not Unjustly Extending It Patent Rights Over Cephem Compounds

Even if the Board's proposed new "unjust extension" standard for double patenting is somehow supported by legal precedent, which it is not,[8] then the claims in the '216 patent do not meet the Board's proposed standard.[9]   In particular, claims 1 and 15 of the '606 patent covered cephem *products*. Thus, the '606 patent provided patent protection over all cephem products within the claims, no matter how those products were made.

In contrast, claim 1 of the '216 patent covers only one method for making *some* of these products. The '216 patent does not preclude others from making cephem products claimed in the '606 using other, unclaimed methods, such as the alternative methods of Monguzzi and Gerlach described above in Section E. Specifically, the '216 patent does not preclude others from making the ceftriaxone antibiotic claimed in the '606 patent using other, unclaimed methods, such as the alternative methods of Monguzzi and

---

[8]     *See In re Kaplan*, 789 F.2d 1574 (Fed. Cir. 1986) which overruled a double patenting rejection by the Board that was based solely upon a supposed "improper extension of monopoly" rather that being based on one of the two recognized double patenting grounds, *i.e*., same invention or obviousness-type.

[9]     Under the Board's proposed legal standard for double patenting, every modern day patent owned by AT&T that claims an improvement in a telephone would be invalid for double patenting over Alexander Graham Bell's original, 19th century telephone patents because the modern day telephone patents would extend the patent rights of the original telephone patents.

Gerlach described above in Section E.  As such, the Board's "unjust extension" argument is factually unsound.

The Board's "unjust extension" argument is also legally unsound.  Indeed, it is similar to an "improper extension of monopoly" theory that was rejected by the Federal Circuit in its *Kaplan* decision.  *See Kaplan*, 789 F.2d at 1577-79.  In *Kaplan*, the Federal Circuit held that:

> The main reason why one cannot use "extension of monopoly" ***as a type designation***, however, is that it cannot serve that purpose because the basis for *both* same invention and obviousness-type double patenting rejections is timewise extension of the patent right.  All proper double patenting rejections, of either type, rest on the fact that a patent has been *issued* and later issuance of a second patent will continue protection beyond the date of expiration of the first patent, of the very same invention claimed therein (same invention double patenting) or of a mere variation of that invention which would have been obvious to those of ordinary skill in the relevant art (obviousness-type double patenting).  In the latter case, there must be some clear evidence to establish why the variation would have been obvious which can properly qualify as "prior art."

*Kaplan*, 789 F.2d at 1579-80 (emphasis added).  The Board did not assert that the *method* of claim 1 of the '216 patent is merely an obvious variation of the *product* of claims 1 and 15 of the '606 patent and the method claimed in the '216 patent is not obvious over the claims of the '606 patent.  As such, there is no proper basis for the Board's "unjust extension" double patenting rejection.

Moreover, the Federal Circuit has previously counseled the PTO against creating its own types of obviousness rejections.  *See*, *e.g.*, *In re Brouwer*, 77 F.3d 422, 426 (Fed. Cir. 1996) ("As we clearly indicated in *In re Dillon*, a recent en banc decision, '[w]hen any applicant properly presents and argues suitable method claims, they should be

examined in light of all … relevant factors, free from any presumed controlling effect of *Durden*' or any other precedent."); *Ochiai*, 71 F.3d at 1570 ("[T]here are not ' *Durden* obviousness rejections' or ' *Albertson* obviousness rejections,' but rather only section 103 obviousness rejections.").

Simply put, the Board's arguments about unjust extension of the patent rights of the expired '606 patent are both factually and legally inaccurate.[10]  There simply is no basis in law or fact for the Board's departure, in this case, from the two recognized grounds for double patenting.  As in *Brouwer*, the Board's opinion should be reversed "as an incorrect conclusion reached by incorrect methodology."  *Brouwer*, 77 F.3d at 426.

### G.    The PTO's Current Position Is Factually Inconsistent With A Position Taken During An Earlier Appeal Involving The '216 Patent.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine***,** 532 U.S. 742, 749-50 (2001) (citations omitted).  At its heart, the doctrine prevents litigants, including the government agencies,[11]  from " playing 'fast and loose with the courts.'" New Hampshire, 532 U.S. at 750 (citation omitted).  Judicial estoppel "is an equitable doctrine invoked by a court at its discretion."  *Id*. (citation omitted).

---

[10]      During the reexamination, the parties extensively discussed the issue of delay in presenting the process claims in the '216 patent.  This discussion related to an apparent rejection by the examiner under *In re Schneller*.  However, the Board made clear in its opinion (Board Op. at 26) that it was not making a *Schneller* rejection.  As such, these issues are not addressed in the present summary judgment motion.

[11]      *See Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469 (6th Cir. 1988).

The Board's position in this case is inconsistent with the position it took in the prior appeal to the Federal Circuit involving the application that led to the '216 patent.  In that appeal, the PTO argued as follows to the Federal Circuit:

> Applicants **correctly point out** (Br4) that ***there are several methods for making their cephems.***  The fact that there are different methods for preparing a cephem compound does not make any one method patentable … The Cook patent renders the presently claimed method unpatentable even if other methods described by applicants might be patentable ….

Prior Appeal Brief at 30-31 (PX 3) (emphasis added).  The PTO lost that appeal.  *In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995).

In the present case, the PTO abandons this position and now argues the exact opposite.  Specifically, the PTO now asserts that there is only one method for making the previously claimed cephem compounds, *i.e.*, the method currently claimed in the '216 patent.  Board Op. at 15-17.[12]  The PTO should be bound by its earlier representations to the Federal Circuit and, thus, estopped from arguing that there is but one method for making the previously claimed cephem compounds.  *See*, *e.g.*, *3M v. Chemque, Inc*., 303 F.3d 1294 (Fed. Cir. 2002).

---

[12]    Notably, the PTO's earlier appeal brief was authored by the same Administrative Patent Judge who authored the current Board opinion on appeal.

## IV.    CONCLUSION

For all these reasons, Takeda respectfully requests that this Court grant summary judgment that Takeda is entitled to a Reexamination Certificate confirming its rights to all claims in the '216 patent.

Dated: January 19, 2007

Respectfully submitted,

/s/
_____

C. Edward Polk, Jr. (D.C. Bar No. 472453)
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

*Attorney for Plaintiff Takeda*
*Pharmaceutical Co. Ltd.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

TAKEDA PHARMACEUTICAL CO. LTD.   )
1-1, Doshomachi 4-chome   )
Chuo-ku, Osaka 540-8645 JAPAN   )
   )
       Plaintiff,   )
   )
       v.   )   Civil Action No. 1:06CV01640TFH
   )
HON. JON W. DUDAS   )
Under Secretary of Commerce for Intellectual   )
Property and Director of the United States   )
Patent and Trademark Office   )
Madison Building   )
600 Dulaney Street   )
Alexandria, VA 22314,   )
   )
       Defendant.   )
_____)

## PLAINTIFF'S STATEMENT OF
## MATERIAL FACTS NOT IN GENUINE DISPUTE

Plaintiff respectfully submits the following statement of material facts not in genuine dispute in support of its motion for summary judgment.

## I.    Initial Examination of the '216 patent

1.    On January 8, 1990, Michihiko Ochiai, Taiiti Okada, Osami Aki, Akira Morimoto, Kenji Kawakita and Yoshihiro Matsushita filed patent application number 07/462,492 ("the '492 patent application") with the United States Patent & Trademark Office ("PTO"), which ultimately issued as U.S. Patent No. 5,583,216 ("the '216 patent"), attached as Plaintiff's Exhibit ("PX") 1.

2.    The '492 patent application went through *ex parte* prosecution at the PTO, briefing and oral argument at the PTO's Board of Patent Appeals & Interferences

1

("Board") and briefing and oral argument at the U.S. Court of Appeals for the Federal Circuit. *In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995), attached as PX 2.

3.      In his appeal brief to the Federal Circuit, the then Solicitor of the PTO (Fred E. McKelvie) represented to the Federal Circuit that "[a]pplicants correctly point out (Br4) that there are several methods for making their cephems." 8/24/92 PTO Appeal Br. at 30-31, attached as PX 3.

4.      In December 1995, the Federal Circuit reversed the PTO's rejection of the claims in the '492 patent application. *In re Ochiai,* PX 2.

5.      After the Federal Circuit issued the *In re Ochiai* decision in December 1995, the PTO revised its patent examination procedures to be consistent with the *Ochiai* decision. Manual of Patent Examining Procedure ("MPEP"), 6th ed., rev. 2, § 2116.01, July 1996, attached as PX 4.

6.      On December 10, 1996, the '492 patent application issued as the '216 patent. Plaintiff Takeda is the assignee of the '216 patent. July 31, 2006 Board Opinion ("Board Op.") at 2-3, attached as PX 5.

## II.    Reexamination of the '216 Patent

7.      On April 3, 1998 and on December 22, 1998, E. Thomas Wheelock, Esq., on behalf of an anonymous requester, filed two requests for reexamination of the '216 patent. Board Op. at 1-2 (PX 5). The PTO granted both requests, assigning them Reexamination Control Nos. 90/004,950 and 90/005,200. *Id*. The PTO merged both reexaminations into a consolidated reexamination proceeding. *Id*.

8.      On May 11, 2005, the patent examiner finally rejected all claims (claims 1-5) of the '216 patent.  Board Op. at 5 (PX 5).  The examiner rejected claims 1-5 on multiple grounds based on double patenting.  *Id*.

9.      Takeda timely appealed the examiner's final decision to the Board.  Board Op. at 1 (PX 5).

10.     The Board affirmed only one of the examiner's double patenting rejections based upon a single prior Takeda patent.  Board Op. at 5-7 (PX 5).  Specifically, the Board affirmed the rejection of claims 1-5 of the '216 patent based upon double patenting over claims 1 and 15 in Takeda's prior U.S. Patent No. 4,296,606 ("the '606 patent") (PX 9).  *Id*.  The '606 patent is not prior art to the '216 patent because they have the same effective filing date.

11.     The Board did not affirm the examiner's double patenting rejection based on either (a) statutory double patenting (also called same invention double patenting) or (b) non-statutory double patenting (also called obviousness type double patenting).  Board Op. at 14 (PX 5).

12.     The Board adopted new reasoning from that proffered by the examiner for the double patenting rejection, by relying solely on claims 1 and 15 of the Ochiai '606 patent as its basis for affirming the double patenting rejection.  Board Op. at 6-7 (PX 5).

13.     The Board based its double patenting rejection on a finding that Takeda was improperly extending its patent rights over "at least some of the cephem compounds claimed in Ochiai '606."  Board Op. at 14-16, and Board Op. at 6 (PX 5).

14.    The Board Opinion (authored by the former PTO Solicitor and current Senior Administrative Patent Judge Fred E. McKelvey) found, as a matter of fact, that there is only one method (*i.e.*, the method of claim 1 of Takeda's '216 patent) of making some of the cephem compounds previously claimed in the '606 patent.  Board Op. at 13 (PX 5).

### III.    Takeda's prior '606 patent

15.    The PTO issued the '606 patent on November 3, 1981.  Board Op. at 5 (PX 5).  It expired on November 3, 1998.  *Id.*

16.    Claims 1 and 15 of the '606 patent cover some cephem compounds within the scope of cephem compounds produced by claim 1 of the '216 patent.  Board Op. at 6.

17.    The '216 patent claims one method for making some cephem compounds claimed in claims 1 and 15 of the '606 patent.  Duggan Decl. at ¶ 141, attached as PX 6.

18.    Specifically, claim 1 of the '216 patent recites a method of making a cephem compound of the formula shown at column 39, lines 20-27 of the '216 patent by introducing a first group called 2-AT of the formula shown at column 39, lines 33-38 (which has the following chemical class name: optionally substituted 2-aminothiazol-4-yl-2-oximino-acetyl group) into the amino ($NH_2$) group of a second starting material called 7-ACA of the formula shown at column 40, lines 1-8 of the '216 patent.  Duggan Decl. at ¶ 139 (PX 6).  In other words, the method of claim 1 of the '216 patent is a method that introduces a compound containing a preformed 2-AT group into the amino group of 7-ACA.  Duggan Decl. at ¶ 140 (PX 6).

19.    The Board found, as a matter of fact, that the method of claim 1 in the '216 patent is the only method for making some of the cephem compounds claimed by claims 1 and

4

15 in the '606 patent.  Board Op. at 13 (PX 5).  Based upon this finding, the Board found

that Takeda was unjustifiably extending its patent rights over some of the cephem

compounds previously claimed in claims 1 and 15 of the '606 patent because anyone

seeking to make the previously claimed cephem compounds would necessarily have to

use the method claimed in Takeda's '216 patent.  *Id.*

**IV.     Alternative Methods Exist For Making The Prior Cephem Compounds**

20.     The particular cephalosporins of the '606 patent that overlap with those

recited in the '216 patent can be made by two alternative methods.  Duggan Decl. at

¶¶ 24, 145, 158.  These are two different methods, which in the terms of their

fundamental steps may be represented as follows:

Method A.     (1) forming 2-AT and then (2) linking preformed 2-AT to 7-ACA

to form the cephalosporin product; and

Method B.     (2) forming a cephalosporin intermediate without using preformed

2-AT and then (1) reacting thiourea with the cephalosporin intermediate to form the

cephalosporin product.

Duggan Decl. at ¶¶ 21-23, 54-74, 86-94.

21.     The methods that produce the cephalosporins of the '606 patent are made

through different intermediates and in different ways.  Duggan Decl. at ¶¶ 22-23, 69-73,

87, 91-92, 94-96.  The intermediate in the first method, called Method A, is a compound

containing a preformed 2-AT group.  Duggan Decl. at ¶¶ 91-92, 95.  The intermediate, in

the second method, called Method B, is <u>not</u> a compound containing a preformed 2-AT

group.  Duggan Decl. at ¶¶ 69-70, 87, 94-95.

5

22.    The '216 patent discloses and claims the second step of Method A for making cephalosporins, so it relates to only one of the available methods.  Duggan Decl. at ¶¶ 24, 145.

23.    Other literature, e.g., the Monguzzi patent (PX10) and the Gerlach patent (PX11), each separately disclose the entire Method B.  Duggan Decl. at ¶¶ 100, 103-104.

24.    The cephalosporins from claim 1 the '606 patent could be made using Method B.  Duggan Decl. at ¶¶ 150, 153, 157-158.  Using Method B, the Monguzzi and Gerlach patents describe how to make commercial cephalosporin compounds and the Monguzzi patent even provided confirmatory experimental data of one commercial product, such as cefotaxime, which falls within the scope of claim 1 of the cephems of the '606 patent and those recited in claim 1 of the '216 patent.  Duggan Decl. at ¶¶ 100, 103, 128, 150, 158.  Thus, commercial cephalosporins may be made by the alternative process.  Duggan Decl. at ¶¶ 98-105, 128-130, 133-135, 138-141.

25.    Furthermore, the methods of the Monguzzi and Gerlach patents can be modified based on routine chemical methodology to make other cephalosporins from claim 1 of the '606 patent.  Duggan Decl. at ¶¶ 106-124, 129, 139.  Method B provides a viable alternative method for making the cephalosporins of the '606 patent's claim 1 that overlap with the cephalosporins recited in claim 1 of the '216 patent.  Duggan Decl. at ¶¶ 26, 153, 157-158.

Respectfully submitted,

/s/
_____

C. Edward Polk, Jr. (D.C. Bar No. 472453)
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

*Attorney for Plaintiff Takeda*
*Pharmaceutical Co. Ltd.*