# PLAINTIFF'S EXHIBIT 3



FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

AUG 24 1992

FRANCIS X. GINDHART
CLERK

BRIEF AND SUPPLEMENTAL APPENDIX FOR APPELLEE
COMMISSIONER OF PATENTS AND TRADEMARKS

UNITED STATES COURT OF APPEALS FOR THE
FEDERAL CIRCUIT

92-1446

re MICHIHIKO OCHIAI, TAIITI OKADA,
I AKE, AKIRA MORIMOTO, KENJI KAWAKITA,
and YOSHIHIRO MATSUSHITA

On appeal from a decision of the
Board of Patent Appeals and Interferences
in Serial No. 07/162,47,
dated July 8, 1992

FRED E. MCKELVEY
Solicitor

P.O. Box 15667
Arlington, Virginia 22215
703-305-9035

Attorney for the Commissioner
of Patents and Trademarks

# Table of Contents

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . .     1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . .     1

    A.    Nature of the appeal . . . . . . . . . . . . .     1

    B.    Applicants' invention . . . . . . . . . . . .     1

    C.    The prior art . . . . . . . . . . . . . . .     4

    D.    The Board's decision . . . . . . . . . . . .     5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . .     6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . .     7

    A.    The relevant case precedent cannot
        be reconciled . . . . . . . . . . . . . . .     7

        1.    Durden's Invention . . . . . . . . . .     10

        2.    Prior art in Durden (Punja patent) . . . .     10

        3.    Analysis of Durden . . . . . . . . . .     11

            a.    Similarity of the steps of
                the claimed process to that
                of the prior art . . . . . . . . . .     11

            b.    General applicability of the
                prior art process to a variety
                of materials . . . . . . . . . . .     11

            c.    Similarity of the products
                and/or reactants to those of
                the prior art . . . . . . . . . .     12

            d.    Evidence of unexpected results
                or uncertainty of results . . . . . .     13

        4.    Albertson's Invention . . . . . . . . .     13

        5.    Prior art in Albertson . . . . . . . .     14

        6.    Analysis of Albertson . . . . . . . . .     15

            a.    Similarity of the steps of
                 the claimed process to that
                of the prior art . . . . . . . . . .     15

## Table of Contents (cont'd)

b.  General applicability of the
    prior art process to a variety
    of materials . . . . . . . . . . . . . .  16

c.  Similarity of the products
    and/or reactants to those of
    the prior art . . . . . . . . . . .  16

d.  Evidence of unexpected results
    or uncertainty of results . . . . . .  16

7.  Pleuddemann's Invention . . . . . . . . .  17

8.  Pleuddemann Prior Art . . . . . . . . . .  19

9.  Analysis of Pleuddemann . . . . . . . . .  20

a.  Similarity of the steps of
    the claimed process to that
    of the prior art . . . . . . . . . . .  20

b.  General applicability of the
    prior art process to a variety
    of materials . . . . . . . . . . . . .  20

c.  Similarity of the products
    and/or reactants to those of
    the prior art . . . . . . . . . . .  21

d.  Evidence of unexpected results
    or uncertainty of results . . . . . .  22

B.  The Board correctly determined that
    Albertson and Durden control this appeal . . . .  24

C.  Apart from controlling precedent, the
    Board's decision is correct under a
    Graham v. John Deere analysis . . . . . . . .  26

1.  Scope and content of the prior art  . . . .  26

2.  Differences between the prior art
    and claimed subject matter . . . . . . .  26

3.  The level of skill in the art . . . . . .  27

## Table of Contents (cont'd)

4.    The prior art and the level of
      skill in the art render the claimed
      subject matter, as a whole, obvious
      notwithstanding the difference between
      the prior art and the claimed subject
      matter . . . . . . . . . . . . . . . . .    28

D.    Applicants' arguments do not show
      any error on the part of the Board . . . . . . . .    29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . .    34

## Table of Authorities

**Cases:**

Albertson, In re, 332 F.2d 379,
141 USPQ 730 (CCPA 1964) . . . . 8, 9, 14, 23-26, 32, 33

Chore-Time Equipment v. Cumberland,
713 F.2d 774, 218 USPQ 673
(Fed. Cir. 1983) . . . . . . . . . . . . . . . 27

Dillon, In re, 919 F.2d 688,
16 USPQ2d 1897 (Fed. Cir. 1990),
cert. denied sub nom. Dillon v.
Manbeck, 111 S. Ct. 1682 (1991) . . . . . . . . . . 33

Durden, In re, 763 F.2d 1406,
226 USPQ 359 (Fed. Cir. 1985) . . . 6, 8, 9, 23-26, 32, 33

Gosteli, In re, 872 F.2d 1008,
10 USPQ2d 1614 (Fed. Cir.),
reh'g in banc denied, No. 88-1611,
1989 U.A.App. LEXIS 7522
(Fed. Cir. May 18, 1989) . . . . . . . . . . . . . 33

Hoeksema, In re, 332 F.2d 374,
141 USPQ 733 (CCPA 1964) . . . . . . . . . . . . . 24

Kuehl, In re, 475 F.2d 658,
177 USPQ 250 (CCPA 1973) . . . . . . . . 23-25, 32, 33

Larsen, In re, 292 F.2d 531,
130 USPQ 209 (CCPA 1961),
cert. denied sub nom.
Larsen v. Ladd, 370 U.S. 936 (1962) . . . . . . . . . 24

Litton Industrial Products, Inc.
v. Solid State Systems, Corp.,
755 F.2d 158, 225 USPQ 34
(Fed. Cir. 1985) . . . . . . . . . . . . . . . 27

Mancy, In re, 499 F.2d 1289,
182 USPQ 303 (CCPA 1974) . . . . . . . . . . . 32, 33

Oelrich, In re, 579 F.2d 86,
198 USPQ 210 (CCPA 1978) . . . . . . . . . . . . 27

Pleuddemann, In re, 910 F.2d 823,
15 USPQ2d 1738 (Fed. Cir. 1990) . . . . . . . . 8, 9, 23

## Table of authorities (cont'd)

**Cases (cont'd):**

**South Corp. v. United States,**
690 F.2d 1368, 215 USPQ 657
(Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . 24, 33


**Statutes:**

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . 1, 8


**Legislative Materials--Hearings:**

**Process Patent Amendments of 1990:
Hearings on H.R. 3957 and H.R. 5664
Before the Subcomm. on Courts,
Intellectual Property, and the
Administration of Justice of the
House Comm. on the Judiciary,**
101st Cong., 2d Sess. (1990) . . . . . . . . . . . . 9


**PTO Regulations:**

37 CFR § 1.132 . . . . . . . . . . . . . . . . . . . 27


**Other:**

Wegner, "Much Ado About Durden,"
71 J. Pat. & Tm. Off. Soc'y 785
(Oct. 1989) . . . . . . . . . . . . . . . . . . . . 25

## Rule 47.5 Related Cases Statement

No other appeal from the Board of Patent Appeals and Interferences in connection with the patent application on appeal has been previously before this or any other court.

There is an appeal pending before the Court which raises issues which raises issues similar to those in the present appeal.  In re Brouwer, Appeal No. 92-1225.  A motion to have oral argument in this appeal held on the same day before the same merits panel as Brouwer was filed on August 20, 1992.

## Rule 47.6 Jurisdictional Statement

(a)  The Board of Patent Appeals and Interferences had jurisdiction under 35 U.S.C. § 134.

(b)  This court has jurisdiction under 35 U.S.C. § 141 and 28 U.S.C. § 1295(a)(4)(A).

(c)  The decision of the Board of Patent Appeals and Interferences was entered on July 8, 1992.  The time for appeal is two months.  35 U.S.C. § 142 and 37 CFR § 1.304(a). The notice of appeal was timely filed on July 15, 1992.

UNITED STATES COURT OF APPEALS FOR THE
FEDERAL CIRCUIT

---

92-1446

---

In re MICHIHIKO OCHIAI, TAIITI OKADA,
OSAMI AKI, AKIRA MORIMOTO, KENJI KAWAKITA,
and YOSHIHIRO MATSUSHITA

---

On appeal from a decision of the
Board of Patent Appeals and Interferences
in Serial No. 07/462,492
dated July 8, 1992

---

## STATEMENT OF THE ISSUE

Whether the Board erred in holding that use of applicants'
novel and unobvious acid and a known amine to make applicants'
novel and unobvious cephem, in an otherwise conventional
process of reacting an acid and an amine to make a cephem,
would have been obvious within the meaning of 35 U.S.C. § 103.

## STATEMENT OF THE CASE

A.    Nature of the appeal

The appeal is from a decision (A1) of the Board of Patent
Appeals and Interferences (Board) holding applicants' method
claims 6-10 (A224-225) unpatentable under 35 U.S.C. § 103.

B.    Applicants' invention

The claimed invention relates to a method of making a
"cephem" compound having antibiotic properties by reacting a

- 1 -

known amine with applicants' novel and unobvious acid.  The amine and acid react to form a novel and unobvious cephem.

Language in applicants' brief confuses the description of the invention, particularly when considered in light of the claims.  Applicants refer to the product resulting from their process as an "antibiotic" (Br2, line 8).  Their claims refer to the product as a "cephem" (A2, claim 6, line 1).  Consistent with the claims, we refer to the product as a "cephem."  Applicants refer to the novel and unobvious acid as "2-aminothiazolyls" (Br2, line 6).  The claims refer to this "acid" as "an acyl group of the formula" (A2, claim 6, lines 6-7).  The Board refers to the acid as [A] (A2, claim 6, line 9).  Since the acyl group is part of an acid group, we refer to applicants' novel and unobvious acyl compound as "acid."  In their brief, applicants refer to the amine as "known cephems" (Br2, line 6).  But their claims make it clear that a cephem is the result of their process, not one of the starting materials used in their process.  Inasmuch as cephems can be made by reacting amines with acids, as explained further herein, we refer to applicants' known starting materials as amines.  Accordingly, insofar as we are concerned, at the time the invention was made, applicants' process involved the use of a known amine [B] and a novel and unobvious acid [A] to make a novel and unobvious cephem [AB].

- 2 -

The known amines used in applicants' process can be represented by the formula:

$$H_2N-\overset{\overset{\displaystyle R^3}{|}}{\underset{\overset{\displaystyle \|}{O}}{C}}\overset{\overset{\displaystyle S-C}{|}}{\underset{N}{C}}\overset{\overset{\displaystyle C-CH_2R^4}{\|}}{C-COOH}$$

[B]

The Board refers to the amine as compound [B].  <u>See</u> A3, claim 8, line 3.

The novel and unobvious acids used by applicants can be represented by the formula:

$$R^1-\overset{S}{\underset{N}{C}}\overset{\diagdown}{\underset{C}{C}}-R^3$$

[A]

The Board refers to the acid as compound [A].  See A3, claim 8, line 5.

The Board found (A5) that applicants' novel and unobvious acid starting material is the subject of U.S. Patent No. 4,203,899.  The Board further found (A5) that applicants' novel and unobvious cephem final product is the subject of U.S. Patent No. 4,298,606.

Applicants' reaction can be illustrated as follows:



Acid [A]              Amine [B]



Cephem [AB]

Equation 1

C.    The prior art

The examiner and the Board cited and relied on five patents and a publication by Flynn (A4).  All relate in one fashion or another to cephems.  The examiner determined that U.S. Patent 4,024,133 (A117) to Cook et al. (Cook) was the most relevant (A120).

Cook describes cephems and methods for making cephems. Cook's method involves reacting an amine[1] and an acid[2] to produce the cephems (A154, col. 13, line 21 to col. 14,

---

1      A154, col. 13, line 35, compound having formula III.

2      A154, col. 13, line 25, compound having formula VII.

- 4 -

line 27).  Cook describes the use of amines falling within the scope of those used by applicants.  Thus, the amines used in applicants' claimed process are old.  However, Cook does not specifically describe the use of applicants' acids.  Cook's acids can be represented by the formula:

$$R-\underset{\underset{OR^\alpha}{\overset{|}{N}}}{\overset{\|}{C}}-COOH \qquad [A]$$

where R can be "an organic group" (A148, col. 1, line 45) which may be an amino substituted heterocyclic group (A149, col. 3, lines 54, 58, and 64).  Cook's process for preparing cephems may be illustrated diagrammatically as follows:



Acid [A]              Amine [B]



Cook's Cephem [AB]

Equation 2

D.    The Board's decision

Reference may be made to the Board's comprehensive opinion for a full explanation of its position.

Briefly, the Board found that applicants' claimed process is a reaction of an acid with an amine, i.e., the reaction of a compound [A] with a carboxyl group (—COOH) and a compound [B] with an amine group (—$NH_2$).  The reaction proceeds generally as follows:

$$R^1\text{—COOH} \quad + \quad H_2N\text{—}R^2 \quad \longrightarrow \quad R^1\text{—COHN—}R^2 \quad + \quad H_2O$$

Acid [A]        Amine [B]                    Cephem [AB]

where $R^1$ and $R^2$ are organic radicals.

The Board agreed with the examiner that the prior art references describe the reaction of acids with amines to make cephems.  Accordingly, on the basis of In re Durden, 763 F.2d 1406, 226 USPQ 359 (Fed. Cir. 1985), and other precedent, the Board held that the examiner did not err in rejecting applicants' claimed process.

## SUMMARY OF ARGUMENT

The relevant precedent of the CCPA and the Federal Circuit relating to the facts on appeal cannot be reconciled.  Under the circumstances, the CCPA's decision in Albertson and the Federal Circuit's decision in Durden control over the later Federal Circuit's merits panel decision in Pleuddemann.  The Board did not err in applying the controlling precedent to the facts in this case.

In any event, the Board properly decided the appeal and properly applied the appropriate Graham v. John Deere criteria. The examiner and the Board properly found the scope and content of the prior art and the differences between the claimed

- 6 -

subject matter on appeal and the prior art. The Board appropriately recognized that the prior art provides ample evidence of the skill of the art, including a recognition by those skilled in the art that cephems are made by reacting appropriate acids with appropriate amines. Based on its consideration of the record, the Board did not err as a matter of law in concluding that the claimed subject matter would have been obvious.

Applicants present no argument which demonstrates any reversible error by the Board in this case. Applicants' contention that there is no motivation to do what they did is believed to be wrong. The argument overlooks the fact that the Cook patent generically describes the use of acids which embrace those used by applicants and that it would have been obvious to react any of Cook's acids with any of Cook's amines to produce, as do applicants, a cephem having antibiotic properties.

<u>ARGUMENT</u>

A.   The relevant case precedent cannot
     <u>be reconciled</u>

The appeal involves another case in which the Patent and Trademark Office (PTO) has rejected a claim to a method of using a novel and unobvious starting material and a known compound in an otherwise conventional process to make a novel and unobvious final product. Three earlier cases involve the same type of rejection, two of which resulted in affirmances

and one of which resulted in a reversal.  Those three cases
are:

      (1)  <u>In re Albertson</u>, 332 F.2d 379, 141 USPQ 730
(CCPA 1964) (affirmance);

      (2)  <u>In re Durden</u>, 763 F.2d 1406, 226 USPQ 359
(Fed. Cir. 1985) (affirmance); and

      (3)  <u>In re Pleuddemann</u>, 910 F.2d 823, 15 USPQ2d 1738
(Fed. Cir. 1990) (reversal).

The present appeal offers PTO its first opportunity to
address directly a conflict which it believes exists between
the earlier <u>Albertson</u> and <u>Durden</u> decisions on the one hand and
the later <u>Pleuddemann</u> decision on the other hand.[3]  PTO has not
been able to reconcile the latest of the three cases,
<u>Pleuddemann</u>, with the two earlier cases.  Indeed, the
Administration supports legislation to reconcile the conflict
between <u>Durden</u> and <u>Albertson</u> on the one hand and <u>Pleuddemann</u> on
the other hand.  The conflict makes it very difficult for
patent attorneys to give cogent advice to clients or for patent
examiners to render consistent decisions on the patentability
(under § 103) of processes involving the use of new and

---

[3]  The matter is also discussed in our brief in <u>In re
Brouwer</u>, Appeal No. 92-1225.  However, it is our position that
the starting materials used by Brouwer are old.  Hence,
whereas here the starting materials and final product are both
novel and unobvious, in <u>Brouwer</u> it is our view that only the
final product is novel and unobvious.

unobvious starting materials.  <u>See generally</u> <u>Process Patent</u>
<u>Amendments of 1990:  Hearings on H.R. 3957 and H.R. 5664</u>
<u>Before the Subcomm. on Courts, Intellectual Property, and the</u>
<u>Administration of Justice of the House Comm. on the Judiciary</u>,
101st Cong., 2d Sess. 17-32 (1990) (SA1 <u>et seq</u>.).

We recognize that the Court has indicated that each case
must be decided on its own facts, a proposition with which it
would be hard to disagree.  We submit, nevertheless, that a
penetrating analysis will show that there is no significant
factual distinction between the three cases, and that the
holdings in the three cases cannot be reconciled.

Every process "uses" a starting material to "make" a final
product.  The metes and bounds of a process claim are unaltered
by whether the process is characterized as a process of "using"
a starting material or a process of "making" the final product.
Any attempt to base an obviousness determination of a process
of "using" A to "make" AB on whether a claim recites "a method
of <u>using</u> A comprising steps 1, 2, and 3" <u>vis-a-vis</u> "a method of
<u>making</u> AB comprising steps 1, 2, and 3," particularly when A is
a new and unobvious material, in our view, necessarily leads to
inconsistent application of the law to seemingly similar facts.
Even if there is some basis for distinguishing a method of
making versus a method of using (i.e, <u>Durden</u> and <u>Albertson</u> are
viewed as method-of-making cases, while <u>Pleuddemann</u> is viewed
as a method-of-using case), the cases cannot be reconciled.

### 1. Durden's Invention

Durden invented a method of using a new and unobvious starting material (an oxime) to make a new and unobvious final product (a carbamate). Durden's claimed process, which is not described in any detail in the Durden opinion, may be illustrated as follows:



Reaction (1)

### 2. Prior art in Durden (Punja patent)

Durden's process was rejected over a prior patent to Punja. Punja disclosed a process, which for purpose of comparison can be illustrated as follows:



Reaction (2)

- 10 -

3.    <u>Analysis of Durden</u>

  a.    Similarity of the steps of
    the claimed process to that
    <u>of the prior art</u>

  Durden's manipulative steps are identical in all respects to those of Punja. In fact, there is but a single manipulative step in the Durden process, <u>viz.</u>, reacting in the presence of a base (a) Durden's starting material (the "oxime" shown on the left in reaction (1)) with (b) a known compound (a carbamoylhalide).

  Punja's single manipulative step is the same, <u>viz.</u>, reacting in the presence of a base (a) Punja's starting material (the "oxime" shown on the left in reaction (2)) with (b) the same carbamoylhalides used by Durden.

  b.    General applicability of the
    prior art process to a variety
    <u>of materials</u>

  The prior art process disclosed by Punja can be applied to a variety of oximes. Durden claims and Punja describes a process which can be shown generally as follows:

$$R=NOH \ + \ \overset{\overset{\textstyle O}{\|}}{XCNH_2} \ \xrightarrow[\text{(i.e., base)}]{\text{acid}\ \text{acceptor}} \ R=NO\overset{\overset{\textstyle O}{\|}}{C}NH_2 \ + \ HX \qquad (3)$$

oxime  carbamoyl-       carbamate
     halide

**Reaction (3)**

where R can be a wide variety of organic radicals.

  The reaction of an oxime with a carbamoylhalide to produce a carbamate is a well known organic reaction. The reaction

- 11 -

proceeds in accordance with Reaction (3) for a wide variety of oximes. Moreover, both Durden and Punja indicate that numerous oximes may be used as the starting material in their respective process.

### c. Similarity of the products and/or reactants to those of the prior art

The Durden and Punja starting materials are different. Their formulae are illustrated as follows:

$$
\begin{array}{cc}
O & NOH \\
\| & \| \\
C\!\!-\!\!-\!\!-\!\!-C \\
| & | \\
NH & O \\
| & | \\
CH_2\!\!-\!\!-\!\!CH_2
\end{array}
$$

**Durden's starting oxime**

$$
\begin{array}{cc}
 & NOH \\
 & \| \\
O\!\!-\!\!-\!\!-C \\
| & | \\
CH_2 & NH \\
 & | \\
 & C\!\!=\!\!O
\end{array}
$$

**Punja's starting oxime**

Differences include:

    (1)  The Durden oxime used in his claimed process has six atoms in the ring; Punja's has five atoms in the ring (it should be noted that in his specification, Durden described both 5- and 6-member rings, but he claimed the use of 6-member rings only).

    (2)  While the Durden and Punja rings contain similar groups of atoms, the order of groups of atoms in the rings

- 12 -

differs. They are compared below starting with the $C=NOH$ and proceeding clockwise in Durden's formula and counterclockwise in Punja's formula:

| Durden: | $C=NOH$ | O | $CH_2CH_2$ | NH | $C=O$ |
| Punja: | $C=NOH$ | O | $CH_2$ | $C=O$ | NH |

The final products produced by the Durden and Punja processes differ in similar respects.

> ### d. Evidence of unexpected results or uncertainty of results

The Durden process and the Punja process proceed along similar lines. There was no evidence that Durden's yield was unexpectedly better than Punja's yield or any other evidence that the Durden process performed in an unexpected manner. Nor are any distinguishing process parameters (i.e., temperature, pressure, reaction time, solvent, etc.) recited in the claims. There was no evidence that Durden's process would not have been expected to work; indeed, both Durden's and Punja's processes proceeded in accordance with the usual process for reacting an oxime with a carbamoylhalide to obtain a carbamate--a predictable result.

> ### 4. Albertson's Invention

Albertson invented a method of using a new and unobvious starting material to make a new and unobvious final product.