# PLAINTIFF'S EXHIBIT 4

Manual of Patent Examining Procedure

Introduction

Foreword

This Manual is published to provide Patent and Trademark Office patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the Patent and Trademark Office. It contains instructions to examiners, as well as other material in the nature of information and interpretation, and outlines the current procedures which the examiners are required or authorized to follow in appropriate cases in the normal examination of a patent application. The Manual does not have the force of law or the force of the Patent Rules of Practice in Title 37, Code of Federal Regulations.

A separate manual entitled "Trademark Manual of Examining Procedure" is published by the Patent and Trademark Office as a reference work for trademark cases.
Examiners will be governed by the applicable statues, the Rules of Practice, decisions, and orders and instructions issued by the Commissioner and the Assistant Commissioners. Orders and Notices still in force which relate to the subject matter included in this Manual are incorporated in the text. Orders and Notices, or portions thereof, relating to the examiners' duties and functions which have been omitted or not incorporated in the text may be considered obsolete. Interference procedure not directly involving the Primary Examiner are not included in this Manual and, therefore, Orders and Notices relating thereto remain in force.

Subsequent changes in practice and other revisions will be incorporated in the form of substitute or additional pages for the Manual.

Suggestions for improving the form and content of the Manual are always welcome. They should be addressed to:

    Commissioner of Patents and Trademarks

    Editor, MPEP

    Washington, D.C. 20231

Constitutional Basis

The Constitution of the United States provides:

"Art. 1, Sec. 8. The Congress shall have power . . . To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

Statutes

Pursuant to the provision of the Constitution, Congress has over the years passed a number of statutes under which the Patent and Trademark Office is organized and our patent system is established. The provisions of the statutes can in no way be changed or waived by the Patent and Trademark Office.
Prior to January 1, 1953, the law relating to patents consisted of various sections of the Revised Statutes of 1874, derived from the Patent Act of 1870 and numerous amendatory and additional acts.

By an Act of Congress approved July 19, 1952, which came into effect on January 1, 1953, the patent laws were revised and codified into substantially its present form. The patent law is Title 35 of the United States Code which governs all cases in the Patent and Trademark Office. In referring to a particular section of the patent code the citation is given, for example, as, 35 U.S.C. 31.
35 U.S.C. 1.  Establishment.

The Patent and Trademark Office shall continue an office in the Department of Commerce, where records, books, drawings, specifications, and other papers and things pertaining to patents and to trademark registrations shall be kept and preserved, except as otherwise provided by law.

Rules of Practice

One of the sections of the patent statute, namely, 35 U.S.C. 6, authorizes the Commissioner of Patents and Trademarks, subject to the approval of the Secretary of Commerce, to establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office.

37 CFR 1.351.   Amendments to rules will be published.

All amendments in this part will be published in the Official Gazette and in the Federal Register.

35 CFR 1.352.    Publication of notice of proposed amendments.

(a) Whenever required by law, and in other cases whenever practicable, notice of proposed amendments in this part will be published in the Official Gazette and in the Federal Register. If not published with the notice, copies of the text will be furnished to any person requesting the same. All comments, suggestions, and briefs received within a time specified in the notice will be considered before adoption of the proposed amendments which may be modified in the light thereof.

(b) Oral hearings may be held at the discretion of the Commissioner.

These regulations or rules and amendments thereto are published in the Federal Register and in the Official Gazette. In the Federal Register and in the Code of Federal Regulations these rules are Part 1 of Title 37, Patents, Trademarks, and Copyrights, and the individual rules, called sections, are numbered with the Part number and a decimal point prefixed to the rule number. A booklet entitled "37 Code of Federal Regulations," published by the Office of the Federal Register, contains all of the patent rules as well as trademark rules and copyright rules. Persons desiring a copy of the patent rules should order a complete copy of "Title 37, Code of Federal Regulations" from the Superintendent of Documents.

The primary function of the Rules of Practice is to advise the public of the regulations which have been established in accordance with the statutes and which must be followed before the Office. The Rules of Practice govern the examiners, as well as applicants and their attorneys. The Rules of Practice appear in the Manual of Patent Examining Procedure as Appendix R.

Commissioner's Orders and Notices

From time to time, the Commissioner of Patents and Trademarks has issued Orders and Notices relating to various specific situations that have arisen in operating the Patent and Trademark Office. Notices and circulars of information or instructions have also been issued by other Office Officials under authority of the Commissioner. Orders and Notices have served various purposes including directions to the examiners giving them instruction, information, interpretations, and the like. Some may be for the information of the public, advising what the Office will do under specified circumstances.

Decisions

In addition to the statutory regulations, the actions taken by the examiner in the examination of applications for patents are to a great extent governed by decisions on prior cases. Applicants dissatisfied with an examiner's action may have it reviewed. In general, that portion of the examiner's action pertaining to objections on formal matters may be reviewed by petition to the Commissioner of Patents and Trademarks (see MPEP w 1002) and that portion of the examiner's action pertaining to the rejection of claims on the merits, may be reviewed by ap-peal to the Board of Patent Appeals and Interferences (see MPEP w 1201). The distinction is set forth in 37 CFR 1.181 and 1.191. In citing decisions as authority for his or her actions, the examiner should cite the decision in the manner set forth in MPEP w 707.06.

Publications Available from Superintendent of Documents

Orders should be addressed and remittances made payable to Superintendent of Documents, U. S. Government Printing Office, Washington, D. C. 20402.
Patent Official Gazette. The official journal of the Patent and Trademark Office relating to patents. Issued each Tuesday, simultaneously with the weekly issuance of patents, it contains a selected figure of the drawings and a claim of each patent granted, indexes of patents, list of patents available for license or sale, and general information such as orders, notices, changes in rules, and changes in classification.

Annual Indexes. An index of the patents issued each year is published in two volumes, one an alphabetical index of patentees and the other an index by subject matter of inventions. The two parts are sold separately. Price varies from year to year, depending upon size of the publication. An annual index of Trademarks contains an alphabetical index of trademark registrants, registration numbers, dates published, classification of goods for which registered, and decisions published during the calendar year. Price varies from year to year, depending upon size of the publication.

Guide for Patent Draftsmen. Patent and Trademark Office requirements for Patent drawings with illustrations.

Manual of Classification. A looseleaf volume listing the numbers and descriptive titles of the more than 300 classes and 95,000 subclasses used in the subject classification of patents, with an index to the classifications.

Substitute and additional pages, which are included in the subscription service, are issued from time to time.

General Information Concerning Patents. Contains a vast amount of general information concerning the application for and granting of patents, expressed in nontechnical language for the layman. Multiple copies available from Superintendent of Documents.

Manual of Patent Examining Procedure. A looseleaf manual which serves primarily as a detailed reference work on patent examining practice and procedure for the Patent and Trademark Office's Examining Corps including statutes, rules, treaties, etc. Subscription service includes basic manual, revisions, and change notices.

Patents and Inventions - An information Aid to Inventors. The purpose of this publication is to aid inventors in deciding whether to apply for patents, in obtaining patent protection, and in promoting their inventions.

Patent Attorneys and Agents Registered to Practice Before the U.S. Patent and Trademark Office. An alphabetically and a geographically arranged listing of patent attorneys and agents registered to practice before the U. S. Patent and Trademark Office.

Title 37-Code of Federal Regulations. Compilation of the rules of practice of the U. S. Patent and Trademark Office.

Publications Available From the Patent and Trademark Office

Orders should be addressed to Patent and Trademark Office, Washington, D.C. 20231. Remittances should be made payable to Commissioner of Patents and Trademarks. Postage stamps, Superintendent of Documents coupons or other Government coupons are not acceptable in payment of Patent and Trademark Office fees.

Q & A About Patents. Brief nontechnical answers to questions most frequently asked about Patents.

Q & A About Plant Patents. Same as above for plant patents.
Patents. Copies of the specification and drawings of all patents are available at one dollar and fifty cents each. When ordering, identify the patent by the patent number, or give full name of the inventor and approximate date of issuance of the patent.

Classification Definitions. Contain the changes in classification

of patents as well as definitions of new and revised classes and subclasses. Price is based upon size of publication.

Weekly Class Sheets. Lists showing classification of each patent in the weekly issue of the Patent Official Gazette.

The Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents          Telephone: (202)512-2267

Mail List Section

Washington, D.C. 20402

Inquiries relating to purchasing the Manual should be directed to:
Superintendent of Documents              Telephone: (202)512-1800
United States Government Printing Office

Washington, D.C. 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

Commissioner of Patents and Trademarks

Attention: Certification Branch

Washington, D.C. 20231

Previous editions and revisions of the Manual are available on microfilm in the Public Search Room.

The Manual is available on CD-ROM and on diskette from:

   U.S. Patent and Trademark Office          Telephone: (703)306-2600
   Office of Electronic Information Products

   Washington, D.C. 20231

Employees of the Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Patent Academy.

Additions to the text of the Manual are indicated by arrows (><) inserted in the text. Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws and rules indicates a portion of the law or rule which was not reproduced.

First Edition, November 1949

Second Edition, November 1953

Third Edition, November 1961

Fourth Edition, June 1979

Fifth Edition, August 1983

Sixth Edition, January 1995

    Revision 1, September 1995

    Revision 2, July 1996

## Dates of Publication of MPEP Editions and Revisions

| | | | |
|---|---|---|---|
| First edition | Nov 1949 | Rev. 46 | Oct 1975 |
| Rev. 1 | Nov 1950 | Rev. 47 | Jan 1976 |
| Rev. 2 | Dec 1951 | Rev. 48 | April 1976 |
| Rev. 3 | May 1952 | Rev. 49 | July 1976 |
| Second edition | Nov 1953 | Rev. 50 | Oct 1976 |
| Rev. 1 | April 1955 | Rev. 51 | Jan 1977 |
| Rev. 2 | June 1956 | Rev. 52 | April 1977 |
| Rev. 3 | June 1957 | Rev. 53 | July 1977 |
| Rev. 4 | July 1958 | Rev. 54 | Oct 1977 |
| Third edition | Nov 1961 | Rev. 55 | Jan 1978 |
| Rev. 1 | Jan 1964 | Rev. 56 | July 1978 |
| Rev. 2 | Nov 1964 | Fourth edition | June 1979 |
| Rev. 3 | Jan 1965 | Rev. 1 | Jan 1980 |
| Rev. 4 | April 1965 | Rev. 2 | April 1980 |
| Rev. 5 | July 1965 | Rev. 3 | July 1980 |
| Rev. 6 | Oct 1965 | Rev. 4 | Oct 1980 |
| Rev. 7 | Jan 1966 | Rev. 5 | Jan 1981 |
| Rev. 8 | April 1966 | Rev. 6 | June 1981 |
| Rev. 9 | July 1966 | Rev. 7 | July 1981 |
| Rev. 10 | Oct 1966 | Rev. 8 | Oct 1981 |
| Rev. 11 | Jan 1967 | Rev. 9 | Sept 1982 |
| Rev. 12 | April 1967 | Fifth edition | Aug 1983 |
| Rev. 13 | July 1967 | Rev. 1 | Oct 1985 |
| Rev. 14 | Oct 1967 | Rev. 2 | Dec 1985 |
| Rev. 15 | Jan 1968 | Rev. 3 | May 1986 |
| Rev. 16 | April 1968 | Rev. 4 | Oct 1986 |
| Rev. 17 | July 1968 | Rev. 5 | July 1987 |
| Rev. 18 | Oct 1968 | Rev. 6 | Oct 1987 |
| Rev. 19 | Jan 1969 | Rev. 7 | Dec 1987 |
| Rev. 20 | April 1969 | Rev. 8 | May 1988 |
| Rev. 21 | July 1969 | Rev. 9 | Sept 1988 |
| Rev. 22 | Oct 1969 | Rev. 10 | Jan 1989 |
| Rev. 23 | Jan 1970 | Rev. 11 | April 1989 |
| Rev. 24 | April 1970 | Rev. 12 | July 1989 |
| Rev. 25 | July 1970 | Rev. 13 | Nov 1989 |
| Rev. 26 | Oct 1970 | Rev. 14 | Nov 1992 |
| Rev. 27 | Jan 1971 | Rev. 15 | Aug 1993 |
| Rev. 28 | April 1971 | Rev. 16 | March 1994 |
| Rev. 29 | July 1971 | Sixth edition | Jan 1995 |
| Rev. 30 | Oct 1971 | Rev. 1 | Sept 1995 |
| Rev. 31 | Jan 1972 | Rev. 2 | July 1996 |
| Rev. 32 | April 1972 | Rev. 3 | July 1997 |
| Rev. 33 | July 1972 | Seventh edition | July 1998 |
| Rev. 34 | Oct 1972 | Rev. 1 | Feb 2000 |
| Rev. 35 | Jan 1973 | Eighth edition | Aug 2001 |
| Rev. 36 | April 1973 | Rev. 1 | Feb 2003 |
| Rev. 37 | July 1973 | Rev. 2 | May 2004 |
| Rev. 38 | Oct 1973 | Rev. 3 | Aug 2005 |
| Rev. 39 | Jan 1974 | Rev. 4 | Oct 2005 |
| Rev. 40 | April 1974 | Rev. 5 | Aug 2006 |
| Rev. 41 | July 1974 | | |
| Rev. 42 | Oct 1974 | | |
| Rev. 43 | Jan 1975 | | |
| Rev. 44 | April 1975 | | |
| Rev. 45 | July 1975 | | |

2116    Material Manipulated in Process [R-1]


>MATERIAL RECITED IN PROCESS CLAIM MUST BE CONSIDERED IN PATENTABILITY
DETERMINATION

   The materials on which a process is carried out must be accorded weight in determining the patentability of a process. Ex parte Leonard, 187 USPQ 122
(Bd. App. 1974).


2116.01    Novel, Unobvious Starting Material or End Product [R-2]

**

> All the limitations of a claim must be considered when weighing the differences between the claimed invention and the prior art in determining the obviousness of a process or method claim. See MPEP w 2143.03.

   In re Ochiai, 71 F.3d 1565, 37 USPQ2d 1127 (Fed. Cir. 1995) and In re Brouwer, 77 F.3d 422, 37 USPQ2d 1663 (Fed. Cir. 1996) addressed the issue of whether an otherwise conventional process could be patented if it were limited to making or using a nonobvious product. In both cases, the Federal Circuit held that the use of per se rules is improper in applying the test for obviousness under 35 U.S.C. 103. Rather, 35 U.S.C. 103 requires a highly fact-dependent analysis involving taking the claimed subject matter as a whole and comparing it to the prior art. To support a rejection under 35 U.S.C. 103, the collective teachings of the prior art must have suggested to one of ordinary skill in the art that, at the time the invention was made, applicant's claimed invention would have been obvious. In applying this test to the claims on appeal in Ochiai and Brouwer, the court held that there simply was no suggestion or motivation in the prior art to make or use novel, nonobvious products in the claimed processes.
 Consequently, the court overturned the rejections based upon 35 U.S.C. 103.
   Interpreting the claimed invention as a whole requires consideration of all claim limitations. Thus, proper claim construction requires treating language in a process claim which recites the making or using of a nonobvious product as a material limitation. Motivation to make or use the nonobvious product must be present in the prior art for a 35 U.S.C. 103 rejection to be sustained. The decision in Ochiai specifically dispelled any distinction between processes of making a

product and methods of using a product with regard to the effect of any product limitations in either type of claim.

As noted in Brouwer, 77 F.3d at 425, 37 USPQ2d at 1666, the inquiry as to whether a claimed invention would have been obvious is "highly fact-specific by design". Accordingly obviousness must be assessed on a case-by-case basis.
The following decisions are illustrative of the lack of per se rules in applying the test for obviousness under 35 U.S.C. 103 and of the fact intensive comparison of claimed processes with the prior art:

In re Durden, 763 F.2d 1406, 226 USPQ 359 (Fed. Cir. 1985) (The examiner rejected a claim directed to a process in which patentable starting materials were reacted

to form patentable end products. The prior art showed the same chemical reaction mechanism applied to other chemicals. The court held that the process claim was obvious over the prior art.); In re Albertson, 332 F.2d 379, 141 USPQ 730
(CCPA 1964)(Process of chemically reducing one novel, nonobvious material to obtain another novel, nonobvious material was claimed. The process was held obvious because the reduction reaction was old.); In re Kanter, 399 F.2d 249, 158 USPQ 331 (CCPA 1968)(Process of siliconizing a patentable base material to obtain a patentable product was claimed. Rejection based on prior art teaching the siliconizing process as applied to a different base material was upheld.);
Cf. In re Pleuddemann, 15 USPQ2d 1738 (Fed. Cir. 1990) (Methods of bonding polymer and filler using a novel silane coupling agent held patentable even though methods of bonding using other silane coupling agents were well known because the process could not be conducted without the new agent); In re Kuehl, 475 F.2d 658, 177 USPQ 250 (CCPA 1973)(Process of cracking hydrocarbons using novel zeolite catalyst found to be patentable even though catalytic cracking process was old." The test under 103 is whether in view of the prior art the invention as a whole would have been obvious at the time it was made, and the prior art here does not include the zeolite, ZK-22. The obviousness of the process of cracking hydrocarbons with ZK-22 as a catalyst must be determined without reference to knowledge of ZK-22 and its properties." 177 USPQ at 255.); and In re Mancy, 499 F.2d 1289, 182 USPQ 303 (CCPA 1974)(Claim to a process for the production of a known antibiotic by cultivating a novel, unobvious microorganism was found to be patentable.). <

\*\*

\*\*

2