# PLAINTIFF'S EXHIBIT 12

Case 1:06-cv-01640-TFH    Document 13-31    Filed 01/19/2007    Page 2 of 9

# CHISUM ON PATENTS

A Treatise on the Law of Patentability, Validity and Infringement

## VOLUME 4A

**Donald S. Chisum**
Professor of Law
Santa Clara University
Santa Clara, California



LexisNexis™
Matthew Bender®

**QUESTIONS ABOUT THIS PUBLICATION?**

For questions about the **Editorial Content** appearing in these volumes or reprint permission, please call:

| | |
|---|---|
| Brian Elias, J.D. at | 1-800-227-9597 (ext. 54389) |
| Deneil C. Targowski at | (800) 252-9257 (ext. 2223) |
| Nellie B. Howard, J.D. at | (800) 252-9257 (ext. 2513) |
| Lisa Latchaw, J.D. at | (800) 252-9257 (ext. 2234) |
| Ken Litt, J.D. at | (800) 252-9257 (ext. 2046) |
| Outside the United States and Canada please call | (973) 820-2000 |

For assistance with replacement pages, shipments, billing or other customer service matters, please call:

| | |
|---|---|
| Customer Services Department at | (800) 833-9844 |
| Outside the United States and Canada, please call | (518) 487-3000 |
| Fax number | (518) 487-3584 |
| Customer Service Website | http://www.lexisnexis.com/custserv/ |

For information on other Matthew Bender Publications, please call

| | |
|---|---|
| Your account manager or | (800) 223-1940 |
| Outside the United States and Canada, please call | (518) 487-3000 |

Library of Congress Card Number: 78-70641

ISBN 0-8205-1525-6

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.

LexisNexis, the knowledge burst logo, and Michie are trademarks of Reed Elsevier Properties Inc, used under license. Matthew Bender is a registered trademark of Matthew Bender Properties Inc.

Copyright © 2004 Matthew Bender & Company, Inc., a member of the LexisNexis Group.
Originally published in 1978.

All Rights Reserved.
No copyright is claimed in the text of statutes, regulations, and excerpts from court opinions quoted within this work. Permission to copy material exceeding fair use, 17 U.S.C. §107, may be licensed for a fee of $1 per page per copy from the Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA. 01923, telephone (978) 750-8400.

Editorial Offices
744 Broad Street, Newark, NJ 07102 (973) 820-2000
201 Mission St., San Francisco, CA 94105-1831 (415) 908-3200
www.lexis.com

MATTHEW◆BENDER

(Rel.95–10/04  Pub.525)

§ 12.02[2][g]  PATENTS  12–22

fall under different classes, they properly speaking, cover but a single invention, and hence may be included in the same application."[66]

Only one decision during this period considered whether claims to a composition could be joined with claims to a method of use of the composition. In *Ex parte Tschirner* (1901),[67] the applicant sought to claim a certain composition useful to destroy dental nerves and the method of using the composition. The Commissioner required division and declined to adopt by analogy the rule allowing joinder of a process and the resulting product.[68]

> "A composition and the process by which it is produced may in some instances be so closely related as to be properly claimed in one application; but it is not believed that any authority warrants the retention in one case of claims to a composition and the process of using it. They are independent inventions."[69]

[g]—**Relation to Double Patenting.** Division—barring joinder of independent inventions in one application—finds its converse in double patenting—barring separate patents on one invention.[70] The two doctrines serve different policies, and there is no *a priori* reason why the criteria for the two should be the same. For example, it would not be irrational to view two claims as independent enough to require separate applications and fees but so related that separate patents with different issue dates should not be sustained. For a brief period, the Patent Office seemed to recognize expressly this possibility. In *Ex parte Holt* (1884),[71] Acting Commissioner Dyrenforth indicated that divisional applications claiming a process and an apparatus for carrying out that process should be held pending so that they issued simultaneously thus avoiding any extension of the statutory period of monopoly (which is the basic objection to double patenting).[72] However, *Holt* was overruled nine years later in *Ex parte Drawbaugh* (1893).[73]

Generally, the Patent Office has recognized the alternate possibility—that two inventions may be so related as to be joinable in one application but not so related as to preclude separate applications and patents.[74]

---

[66] 1884 C.D. at 9.
[67] *Ex parte* Tschirner, 1901 C.D. 141 (Comm'r Pat. 1901).
[68] See § 12.02[2][6].
[69] 1901 C.D. at 142.
[70] For a discussion of double patenting, see § 9.01 et seq.
[71] *Ex parte* Holt, 1884 C.D. 43 (Comm'r Pat. 1884).
[72] See § 9.03[2][d].
[73] *Ex parte* Drawbaugh, 1893 C.D. 85 (Comm'r Pat. 1893).
[74] *Ex parte* Hopkinson, 1891 C.D. 4 (Comm'r Pat. 1890).
  Cf. *Ex parte* Lord, 1890 C.D. 16 (Comm'r Pat. 1890) (there are three classes of case, "where division is impossible," "where division is optional," and "where division is imperative.").

Case 1:06-cv-01640-TFH    Document 13-31    Filed 01/19/2007    Page 5 of 9

In two cases, the Commissioners considered whether inventions previously subject to a requirement of division could thereafter form the basis of a double patenting rejection. In *Ex parte Chambers* (1890),[75] the original application claimed both a process and an apparatus for practicing the process. The examiner required division. The applicant complied, obtained a patent for the apparatus in a divisional application and continued to press his claim for the process. The examiner then rejected the process claim on double patenting grounds, citing the Supreme Court's decision in *Mosler Safe & Lock v. Mosler* (1891).[76] Commissioner Mitchell overturned the rejection. First, he disagreed on the merits of double patenting. *Mosler* involved a process and resulting product in two patents. The present case involved apparatus and process as to which "a clear line of division exists." Though the Office had at times allowed joinder,[77] "the capacity for division has always been recognized." Second, he viewed the rejection as in effect inconsistent with the prior requirement of division. Finally, he held that the examiner's action was reviewable by petition rather than appeal (the usual review procedure for rejections). "If division was properly required, his present action cannot be justified. The question of division has always been held to pertain to the administrative side of the functions of the Commissioner."[78]

*Chambers* was modified in *Ex parte Davis* (1904).[79] Commissioner Allen held that a double patenting rejection was appealable and "not reviewable upon petition."[80] He also recognized that under some circumstances a rejection would be mandatory if the prior division requirement was clearly erroneous.

"[I]f the present claims cover the matter required to be divided out of the first case, the applicant is certainly entitled to very liberal consideration of them. It is believed under the circumstances that the courts would go far to sustain such claims and would give great weight to the fact that the Office required that they be presented separately. The Examiner should resolve any and all doubts in the applicant's favor, since the applicant should not be deprived of adequate protection by contradictory rulings by the Office, except where it is beyond question that the patent if granted would be invalid."[81]

**[h]—Division and Election.** The examiner usually would require division in the first instance and would not examine the claims on the merits until the applicant complied with the requirement.[82] However, the examiner could require

---

[75] *Ex parte* Chambers, 1890 C.D. 101 (Comm'r Pat. 1890).
[76] Mosler Safe & Lock v. Mosler, 141 U.S. 459 (1891), discussed § 9.02[3].
[77] See § 12.02 [2][c].
[78] 1890 C.D. at 103.
[79] *Ex parte* Davis, 1904 C.D. 85 (Comm'r Pat. 1904).
[80] *Accord: Ex parte* Fuller, 1891 C.D. 243 (Comm'r Pat. 1891).
[81] 1904 C.D. at 86.
[82] *Ex parte* Mansfield, 1902 C.D. 94 (Comm'r Pat. 1902).

# CHISUM ON PATENTS

A Treatise on the Law of Patentability, Validity and Infringement

## VOLUME 3A

**Donald S. Chisum**
Professor of Law
Santa Clara University
Santa Clara, California



LexisNexis™
Matthew Bender®

**QUESTIONS ABOUT THIS PUBLICATION?**

For questions about the **Editorial Content** appearing in these volumes or reprint permission, please call:

Brian Elias, J.D. at ............................................................. (800) 227-9597 (ext. 54389)
Deneil C. Targowski at ........................................................ (800) 252-9257 (ext. 2223)
Nellie B. Howard, J.D. at .................................................... (800) 252-9257 (ext. 2513)
Lisa Latchaw, J.D. at .......................................................... (800) 252-9257 (ext. 2234)
Ken Litt, J.D. at .................................................................. (800) 252-9257 (ext. 2046)
Outside the United States and Canada please call ................................. (973) 820-2000

For assistance with replacement pages, shipments, billing or other customer service matters, please call:

Customer Services Department at ............................................................. (800) 833-9844
Outside the United States and Canada, please call ............................ (518) 487-3000
Fax number ................................................................................................. (518) 487-3584
Customer Service Website ........................................ http://www.lexisnexis.com/custserv/

For information on other Matthew Bender Publications, please call
Your account manager or ........................................................................... (800) 223-1940
Outside the United States and Canada, please call ................................. (518) 487-3000

Library of Congress Card Number: 78-70641

ISBN 0-8205-1525-6

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.

LexisNexis, the knowledge burst logo, and Michie are trademarks of Reed Elsevier Properties Inc, used under license. Matthew Bender is a registered trademark of Matthew Bender Properties Inc.

Copyright © 2005 Matthew Bender & Company, Inc., a member of the LexisNexis Group.
Originally published in 1978.

All Rights Reserved.
No copyright is claimed in the text of statutes, regulations, and excerpts from court opinions quoted within this work. Permission to copy material exceeding fair use, 17 U.S.C. §107, may be licensed for a fee of $1 per page per copy from the Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA. 01923, telephone (978) 750-8400.

Editorial Offices
744 Broad Street, Newark, NJ 07102 (973) 820-2000
201 Mission St., San Francisco, CA 94105-1831 (415) 908-3200
www.lexis.com

MATTHEW BENDER

(Rel.100–9/05  Pub.525)

patents C and A were for the same improvement—thus, in effect, complaining of double patenting. The Court rejected this argument on two grounds. Assuming that the two were for the same improvement, the "last, not the first is void." In any case, the third patent (A) did not appear to be for the same improvement. "It is a patent for a combination of this improvement with other devices."[3]

Two points about *Suffolk Mfg.* are worthy of note. First, the Court thought the proposition too obvious for discussion or citation of authority that a second patent for the same improvement would be "void." Second, the Court indicated that a further improvement upon or new combination with a prior patented invention could support a new patent.

### [2]—*James v. Campbell*

In *James v. Campbell* (1882),[1] the Supreme Court held that a reissue patent to Norton was invalid as to certain claims and not infringed as to other claims. The Court relied in part on a prior patent to Norton.

> "It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person."[2]

### [3]—*Mosler Safe & Lock v. Mosler*

*Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.* (1888)[1] concerned two patents on improvements in fire-proof safes. The first, issued 28 days before the second, was for the article, described as the product of a certain mechanical process. The second was for the mechanical process. The Supreme Court indicated that a second patent could not validly issue in such a circumstance.

> "After a patent is granted for an article described as made by causing it to pass through a certain method of operation to produce it . . . the inventor cannot afterwards, on an independent application, secure a patent for the method or process . . . to produce the identical article covered by the previous patent, which article was described in that patent as produced by the method or process sought to be covered by taking out the second patent."[2]

---

[3] 70 U.S. (3 Wall.) at 319.

§ 9.02[2]

[1] James v. Campbell, 104 U.S. (14 Otto.) 356 (1882).

[2] 104 U.S. (14 Otto.) at 382.

§ 9.02[3]

[1] Mosler Safe & Lock Co. v. Mosler, Bahmann & Co., 127 U.S. 354 (1888).

[2] 127 U.S. at 361-62.

§ 9.02[4] PATENTS 9–8

The statement is an alternative holding as the court held that both patents were invalid for want of invention.

The statement in *Mosler* falls short of a position that one may never obtain a later patent on a method of making a product that is the subject of a prior patent.[3] The Court emphasized that the first patent defined the claimed article by reference to the method that was claimed in the later patent.[4]

### [4]—*McCreary v. Pennsylvania Canal*

*McCreary v. Pennsylvania Canal Co.* (1891)[1] concerned a patent on an improved coupling and steering apparatus for connected canal boats. On April 16, 1872, a patent issued to John and Elijah McCreary for an improved coupling. Three months later, on July 23, 1872, a second patent issued to John McCreary alone, on a coupling that was identical to that claimed in the patent to John and Elijah except for one element—a "centering" device. John described his invention as an improvement on the joint invention. Thereafter, John McCreary sued the defendant for infringement of the second patent only. The trial court held that the patent was valid and infringed. However, it found that there was no evidence indicating that the defendant achieved any profits from John's distinct improvement over the device covered by the prior patent. It therefore granted only costs to John, the plaintiff. John appealed.

The Supreme Court affirmed. John argued that he should be able to recover the defendant's entire profits, pointing out that he was the assignee of the patent issued to John and Elijah and contending that the defendant had no right to use what was embodied in either patent. The Court held that John could not recover for profits from infringement of the first patent without actually putting that patent in issue.

> "It is true that the combination of the earlier patent in this case is substantially contained in the later. If it be identical with it, or only a colorable variation from it, the second patent would be void, as a patentee cannot take out two patents for the same invention. James v. Campbell, 104 U.S. 356."[2]

The Court's statement is not a direct holding on double patenting. It is in the alternative and the validity of the patent to John was not in issue because the defendant had not appealed. Nevertheless, the Court did assume that the test for double patenting was whether the second patent was either "identical with" or a "colorable variation" from the first patent. The Court also assumed that the

---

[3] For a discussion of restriction problems with product and process, see § 12.03[2][d].

[4] For a discussion of product-by-process claims, see § 8.05.

§ 9.02[4]

[1] McCreary v. Pennsylvania Canal Co., 141 U.S. 459 (1891).

[2] 141 U.S. at 467.