## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06cv1640 (TFH) |
| ) | |
| HON. JON W. DUDAS, ) | |
| Under-Secretary of Commerce for ) | |
| Intellectual Property and Director of ) | |
| the Patent and Trademark Office ) | |
| ) | |
| Defendant. ) | |

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the Honorable Jon W. Dudas, Director of the Patent and Trademark Office ("USPTO"), respectfully opposes the motion of Plaintiff Takeda Pharmaceutical Co., Ltd. ("Takeda" or "Plaintiff"), for summary judgment, and cross-moves, under Fed. R. Civ. P. 56, for summary judgment with respect to Plaintiff's claims, as there is no genuine issue of material fact in this case and Defendant is entitled to judgment as a matter of law. Specifically, the USPTO cross-moves for summary judgment that the decision of the Board of Patent Appeals and Interferences (the "Board") rejecting Takeda's U.S. Patent No. 5,583,216 (the '216 patent) on the grounds of nonstatutory double patenting over the claims of Takeda's now-expired U.S. Patent No. 4,298,606 (the '606 patent) is supported by substantial evidence and should be affirmed. The USPTO also opposes Takeda's motion for summary judgment that it is entitled to a Reexamination Certificate for the '216 patent.

In support of this Motion, the Defendant respectfully refers this Court to the Defendant's Statement of Genuine Issues and Response to Plaintiff's Statement of Material Facts Not in Dispute, Defendant's Statement of Material Facts Not in Dispute, and the Memorandum of Points and Authorities in Support thereof, attached hereto.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____

RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____

DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

Of Counsel

JOHN M. WHEALAN
Solicitor
SHANNON M. HANSEN
WILLIAM G. JENKS
Associate Solicitors

United States Patent and Trademark Office

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD.,    ) | |
|                                  ) | |
|       Plaintiff,                  ) | |
|                                    ) | |
|    v.                            ) | Civil Action No. 06cv1640 (TFH) |

TAKEDA PHARMACEUTICAL CO., LTD.,   )
                               )
      Plaintiff,            )
                               )
   v.                     )     Civil Action No. 06cv1640 (TFH)
                               )
HON. JON W. DUDAS,            )
     Under-Secretary of Commerce for   )
     Intellectual Property and Director of   )
     the Patent and Trademark Office   )
                               )
      Defendant.            )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     The Technology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.     The Prosecution of Takeda's Cephem Patents . . . . . . . . . . . . . . . . . . . . . . . . . 5

             1.     Takeda's Product Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

             2.     Takeda's '606 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

             3.     The Initial Prosecution of the '216 Patent . . . . . . . . . . . . . . . . . . . . . . . 6

             4.     The Reexamination of the '216 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                  a.     The Examiner's Rejection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                  b.     The USPTO Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      General Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      The Summary Judgment Standard in Section 145 Actions . . . . . . . . . . 11

II.     THE LAW GOVERNING PATENT DOUBLE PATENTING  . . . . . . . . . . . . 12

        A.      Patent Primer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Statutory Term of Patents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.      Statutory Double Patenting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.      Nonstatutory Double Patenting Rejections  . . . . . . . . . . . . . . . . . . . . . 14

III.    THE BOARD PROPERLY REJECTED TAKEDA'S PROCESS CLAIMS
        FOR NONSTATUTORY DOUBLE PATENTING OVER ITS PRODUCT
        CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.      The '216 Patent Claims *The* Process for Making the Cephem Products
                In the '606 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.      Takeda's 14-year Delay in Filing These Process Claims Would Give it an
                Unjust, Timewise Extension of its Patent Monopoly  . . . . . . . . . . . . . . . 19

IV.     TAKEDA'S ARGUMENTS DO NOT JUSTIFY REVERSAL OF THE
        BOARD'S DECISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      Obviousness-type Double Patenting Is Not as Narrow as Takeda
                Contends  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      Takeda's Only Alternative Processes Were Developed More than
                25 Years after its Invention  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        C.      *Miller* and *Mosler* Are Not as Limited as Takeda Contends  . . . . . . . . . 22

        D.      The Solicitor's Statement in its 1992 Appeal Brief Does Not Contradict
                the Board's Position Here  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.      FAILURE TO RAISE ARGUMENTS AND PRESENT EVIDENCE TO
        THE USPTO LIMITS WHAT TAKEDA CAN BRING BEFORE THIS
        COURT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**CASES:**

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345 (Fed. Cir. 2000), *cert. denied*, 121 S. Ct. 1957 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Berg*, 140 F.3d 1428 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Braithwaite*, 379 F.2d 594, 601 (C.C.P.A. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Bogese*, 303 F.3d 1362 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Boylan*, 392 F.2d 1017, 1021 (C.C.P.A. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Cady*, 77 F.2d 106, 109 (C.C.P.A. 1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dotolo v. Quigg*, 12 USPQ.2d 1032, 1989 WL 78137 (D.D.C. 1989) . . . . . . . . . . . . . . . . . . 27

*Dystar Textilfarben Gmbh & Co. v. Patrick*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) . . . . . . 18, 22

*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . 14, 18, 22

*In re Emert*, 124 F.3d 1458, 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*In re Freeman*, 166 F.2d 178 (C.C.P.A. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Fregeau v. Mossinghoff*, 776 F.2d 1034 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed Cir 1992)11, 15, 20

*Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373 (Fed. Cir. 2003) . . 12, 17

*In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hyatt v. Dudas* Civil Action No. 03-901 (HHK) (D.D.C. Sept. 30, 2005) . . . . . . . . . . . . . . . 28

*Holloway v. Quigg,* 9 U.S.P.Q.2d 1751, 1988 WL 141046 (D.D.C. December 05, 1988) . . . . 27

*In re Kaplan*, 789 F.2d 1574 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*In re Lonardo*, 119 F.3d 960, 968 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*MacKay v. Quigg*, 641 F.Supp. 567 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . 10

*Mazzari v. Rogan*, 323 F.3d 1000 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 16, 22, 23

*Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354 (1888) . . . . . . . . . . . . . . . . 8

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

*In re Ornitz*, 347 F.2d 586 (C.C.P.A. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*Phillips Petroleum Co. v. United States Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985) . . . . . 7, 19

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Saranac Automatic Mach. Corp. v. Wirebounds Patents Co.*, 282 U.S. 704 (1931) . . . . . . . . . . 24

*Symbol Techs., Inc.  v. Lemelson*, 422 F.3d 1361 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 4

*Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Van Ornum*, 686 F.2d 937 (C.C.P.A. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Vogel*, 422 F.2d 438 (CCPA 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*In re Zinckendraht*, 319 F.2d 225, 232 (C.C.P.A. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES:**

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

35 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 15, 20, 22

35 U.S.C. § 112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

35 U.S.C. § 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 11, 27

35 U.S.C. § 154(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

35 U.S.C. § 154(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

35 U.S.C. § 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER AUTHORITIES:**

U.S. CONST. art. I, § 8, cl. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

## INTRODUCTION

Plaintiff Takeda Pharmaceuticals, Co., LTD ("Takeda" or "Plaintiff"), brought this action under 35 U.S.C. § 145 to challenge the decision of the Board of Patent Appeals ("the Board") denying Takeda a patent for the process of creating a previously patented pharmaceutical. The parties have agreed to brief cross-motions for summary judgment because there is little actual dispute over the material facts.

As explained in more detail below, Takeda began filing patents claiming certain chemicals known as "cephems," which are antibiotics, in 1975. However, Takeda did not file any claims to the process of making these cephems at that time. Instead, Takeda delayed almost 15 years – waiting until 1990 – to file its first process claims. These claims cover the *only* process available at the time of Takeda's invention for making these cephems, which were previously claimed in the now-expired '606 patent, as well as other expired Takeda patents.

The legal doctrine that so limits the new '216 patent is called "nonstatutory double patenting." Nonstatutory double-patenting was judicially created over a century ago to prevent the unjustified time-wise extension of patent rights. A double patenting rejection requires the applicant to file a terminal disclaimer to link the term of a second patent to a previously received first patent, such that the two patents must expire at the same time. Thus, the claims of both patents are treated as if they were filed in the first patent, as they should have been. In this matter, Takeda is unwilling to file the disclaimer, since Takeda's earlier patents have already expired. Importantly, the double patenting rejection does *not* indicate that Takeda's process claims are unpatentable — it simply means that the process claims cannot be issued in a separate patent with a new 17-year term that

1

unjustly extends the term well after the product claims have expired. Had Takeda filed the process claims with its product claims, this issue would never had arisen.

In sum, Takeda filed an application *disclosing* the product and the process but waited fifteen years before *claiming* that same process in a different application. Takeda cannot get a second patent, with a full 17-year term on these process claims that are so closely related to the claims in the patents Takeda initially received 25-30 years ago. Put another way, Takeda could have filed these process claims in the same patent as it filed its product claims – as it did in its equivalent international patents. Had Takeda done so, the claims could have issued with the product claims and enjoyed the same 17-year term, expiring in 1998. Takeda's unexplained delay in presenting these claims, and the very close – patentably indistinct – relationship between the product and process, prevent Takeda from receiving process claims in a second, independent patent, that would extend its patent rights until 2013.

## BACKGROUND

Over 30 years ago, in 1975, Takeda filed a United States patent application disclosing, among other things, a new product (a "cephem" chemical compound) and a process for making that product. This 1975 application was nearly identical to Takeda's 1974 Japanese and British patent applications that disclosed the same product and process. The international patents claimed both the product and the process for manufacturing the compound. For some unknown reason, however, Takeda did not claim the process for manufacturing the cephem product in its 1975 U.S. application — instead, it claimed only the product.

Through the late 1970's and early 1980's, Takeda received several patents for the cephem product and other related products, including the '606 patent, which was filed on August 28, 1979,

2

and expired on November 3, 1998.  And Takeda enjoyed 17 years of patent protection for each of those patents, which expired between 1995 and 1998.

In 1990, nearly fifteen years after filing its first U.S. application, Takeda filed an application that included claims to its process.  The Patent and Trademark Office (USPTO) initially rejected those claims as obvious under 35 U.S.C. § 103, but the Court of Appeals for the Federal Circuit reversed, finding that the USPTO used the wrong analysis in determining whether a patent was obvious, and upon remand a patent (Patent No. 5,583,216 (the '216 patent)) was issued with the process claims in 1996.  It is this process patent, whose term could extend until 2013, that is at issue in this case.

In 1998, a member of the public asked the USPTO to take a second look at the '216 patent.  This "request for reexamination" is one statutory mechanism that allows the USPTO to reconsider a prior decision to issue a patent.  35 U.S.C. § 302.  After reexamination, the USPTO agreed with the requestor that, although the claims of the '216 patent were patentable, Takeda was not entitled to a second, independent, patent with a new 17-year term after enjoying a full term on its underlying product patents.

## A.  The Technology.

Unlike most appeals under 35 U.S.C. § 145, the technology in this case is not critical to the dispositive issue.  That is because the claims here do not stand rejected as unpatentable under the substantive patentability requirements, such as those under 35 U.S.C. §§ 101, 102, 103, or 112.  Rather, here the procedural history of the patent, and the law of nonstatutory double patenting are the matters upon which this case depends.  For the Court's convenience, the USPTO provides this brief primer on the underlying technology and patent application process.

Takeda's early product patents claimed a particular group of chemicals known as cephems. Cephems are part of a broad class of antibiotics (known as β-lactam antibiotics) that includes various penicillin derivatives. *See, e.g.,* PX6, Duggan Declaration.[1] Companies have been developing and producing numerous commercial β-lactam antibiotics to treat bacterial infections in patients for decades. *See* DX 13. There are numerous different cephems that have been developed over the last half century. These cephems have varying antibiotic properties — in other words, they are more or less effective against particular bacteria — depending on the particular chemical composition and structure.

Amines are organic compounds and a type of functional group that contain nitrogen (denoted as N) as the key atom, and are one of the starting materials, or ingredients, used to make the claimed cephem compounds. PX 6, Duggan Declaration. The particular amine used for making the cephems claimed by Takeda is 7-**A**mino-**C**ephalosporanic **A**cid (7-ACA), and was well-known before Takeda filed its patent application. *See, e.g.,* U.S. Patent No. 3,351,597, entitled "Process for Acylating 7-Amino Cephalosporanic Acid," and issued on November 7, 1967; PX 6, Duggan Declaration; PXA 4 (U.S. Patent No. 3,239,394).

Acyl groups are also organic compounds, and have a variety of structures. Before Takeda filed its patent application in 1975, acyl groups were commonly used to react with 7-ACAs (*see* DX 13; the 3,351,597 patent). In 1974, Takeda invented a new acyl group, which Takeda claimed in U.S. Patent No. 4,203,899 patent (the '899 patent). At the same time Takeda invented the new acyl

---

[1]     Exhibits attached to the Plaintiff's motion are referred to as PX__; Attachments to the Duggan Declaration are referred to as PXA___; Exhibits attached to the Defendant's motion are referred to as DX__. For ease of reference, Defendant starts numbering his exhibits at 13, because Plaintiff's last exhibit number is 12.

group, it invented the cephem products resulting from "introducing" the acyl group into the 7-ACA. These new cephem products were claimed in U.S. Patent Nos. 4,298,606 ('606 patent) and 4,098,888 patent ('888 patent), as well as other related patents.

The "process" of introducing an acyl group into the 7-ACA to make cephems is called an "acylation" process. *See* DX 13.

**B.      The Prosecution of Takeda's Cephem Patents**

**1.      Takeda's Product Patents**

Takeda filed its first patent application for, among other things, cephem products and ***processes*** for making these cephem products in Japan on December 19, 1974. Takeda then filed a related patent application in Great Britain on June 9, 1975, again with claims to the cephem products and the processes for making these products. DX 14.

On December 19, 1975, Takeda filed a patent application in the United States, claiming priority to the Japanese and British patent applications. Like these foreign applications, the specification in the U.S. application described various cephem compounds, and seven processes that it said could be used for making these cephem compounds. *See, e.g.,* PX 9, '606 patent, col. 6:52-11:62 ("The cephem compounds of the present invention can be prepared by e.g. the following processes: (a) . . .(g).")

Unlike the Japanese and the British patent applications, however, the first U.S. application did ***not*** have any claims to the process for making these products. Instead, it ***only*** included claims for the products and related starting materials. On July 4, 1978, U.S. Patent No. 4,098,888 (the '888 patent) issued with 12 claims to cephem compounds. Under 35 U.S.C. § 154(c)(1), the '888 patent expired on December 19, 1995 (20 years from the filing date).

### 2.    Takeda's '606 Patent

On August 29, 1979, Takeda filed a divisional application for certain cephem compounds that were slightly different from those claimed in the '888 patent.  The 12 claims issued as the '606 patent on November 3, 1981.  The '606 patent claimed priority to the '888 patent, and expired on November 3, 1998 (17 years from the date of issuance).

### 3.    The Initial Prosecution of the '216 Patent

On January 8, 1990, more than fourteen years after Takeda filed its first product claims in the U.S., Takeda filed its thirteenth patent application in this family.  On April 3, 1990, Takeda filed a preliminary amendment, and for the first time, presented 13 process claims for examination.

Although the USPTO rejected Takeda's process claims as obvious under 35 U.S.C. § 103, the Federal Circuit reversed the USPTO in *In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995) (PX 2), and the '216 patent issued on December 10, 1996.  PX 1.

### 4.    The Reexamination of the '216 Patent

#### A.    The Examiner's Rejection

In 1998, a member of the public filed a request for reexamination of the claims of the '216 patent.  The reexamination request asserted that the process claims of the '216 patent were invalid for obviousness-type double patenting over the product claims of several early Takeda patents, including the '606 patent.  *See* DX 15 and 16.  Double patenting had not been asserted by the USPTO in the original prosecution, nor considered by the Federal Circuit in *In re Ochiai*.  Takeda does not dispute the USPTO's authority to now consider this ground .  *See, e.g., In re Gould*, 673 F.2d 1385, 1386 (C.C.P.A. 1982) ("After our decision in an *ex parte* patent case, the Patent Office

can always re-open prosecution...."); *Application of Ruschig*, 379 F.2d 990, 992-993 (C.C.P.A. 1967).

On May 11, 2005, after a long prosecution, the Examiner rejected the claims of the '216 patent because, among other things, the claims were invalid for double patenting over the claims of the '606 patent. DX 17. The Examiner also noted the "inordinately large time gap" (more than 14 years) between the filing of the first product patent (the '888 patent) and the filing of the first process claims. *Id*. The rejections were deemed "final" and thus, ripe for appeal to the Board.

Takeda appealed to the Board. DX 18. Takeda argued that more than one process existed to make its previously claimed cephams and cited *In re Cady*, 77 F.2d 106, 109 (C.C.P.A. 1935) and *Phillips Petroleum Co. v. United States Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985) for the proposition that a double-patenting rejection could not be maintained where there were two processes for making the product. *Id.* at 28-29. The evidence of other processes relied on by Takeda were: (i) a "displacement" process discussed in the patent application itself, and (ii) a process identified in a declaration filed by Dr. James D. Wuest who "expected" that one could use a process identified in a 1982 textbook to make the cephem products claimed. Notably, Takeda does not rely on either process here.

In her Answer, the Examiner maintained her rejections. DX 19. She pointed out that Dr. Wuest's declaration was self-contradictory and speculative, and therefore unreliable. DX 19 at 13. The Examiner also noted that the displacement process relied on by Takeda did not make the claimed cephem compound and was likewise not an alternative pathway. *Id.* The Examiner also stated that Takeda's decision to wait more than 14 years to file the process claims would improperly extend the "right to exclude" that had been already granted in Takeda's product claims. *Id.* at 18.

7

b.    **The USPTO Decision**

The Board affirmed the Examiner's rejection of the claims of the '216 patent under the doctrine of obviousness-type double patenting finding that Takeda's claims are not patentably distinct from Takeda's claims in its expired '606 patent.  PX 5.  The Board stated that because the process claims of the '216 patent precluded third parties from making the same compounds claimed in the now-expired '606 patent, the doctrine of obviousness-type double patenting required the two patents to have the same expiration date.  PX 5, Bd Op. at 23.

In finding that the claims of the '216 patent were invalid on the grounds of obviousness-type double patenting, the Board relied on the claims of the '606 patent and the '216 patent, Takeda's delay in filing the process claims that resulted in the '216 patent, Takeda's admissions, and two Supreme Court cases, *Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354 (1888) and *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894).  PX 5, Bd. Op. at 14-24.

The Board first noted that, as Takeda itself admitted, the public is not entitled to use the process of the '216 patent to make some of the products claimed in the '606 patent.  PX 5, Bd. Op. at 16, 23.  Consequently, the Board found that Takeda's '216 process patent is extending the patent rights previously conferred by Takeda's now-expired '606 product patent, especially because they are, as Takeda admits, "substantially co-extensive."  PX 5, Bd. Op. at 23.  The Board found that the Supreme Court's holdings in *Mosler* and *Miller* supported its conclusion that Takeda was not entitled to a process patent that had a later, independent term than Takeda's product patent.  *Id.*  The Board noted that in *Mosler,* the Supreme Court held that where a patent had issued for a product that was made by a particular process, a later patent could not be granted for a process that results in the same product.  *See Mosler*, 127 U.S. at 359-60; PX 5, Bd. Op. at 17.  The Board found that, like Mosler,

8

Takeda had obtained a patent (the '606 patent) for a product that was made by a particular process, which expired in 1998. With the claims of the '216 patent, Takeda was now seeking to have claims to the process for making the same product claimed in the earlier '606 patent. The Board also held that Takeda could have added, but failed to add the process claims earlier in the prosecution, and that this unexcused delay was an unjust, timewise extension of its prior patent. *Id.* at 15-16; 23-24.

The Board also addressed Takeda's argument that there was more than one process available to the public to make the cephem products claimed in its earlier product patent. *Id.* at 17-22. Takeda had argued that another process (other than the process claimed in the '216 patent) was disclosed in its specification. *Id.* at 18-19; 21-22. Takeda had also submitted the declaration of Dr. Wuest, where he identified a process he "expect[ed]" could be used to make the cephem product. *Id.* at 19-21 (*citing* DX 23, Declaration of James Wuest, ¶ 50). The Board agreed with the Examiner that Dr. Wuest's testimony was speculative and unreliable. *Id.* at 21. The Board also found that the evidence showed that the process disclosed in Wuest was developed too late — as it was dated 1982, nearly 8 years after Takeda's invention. *Id.* The Board also found that none of the processes disclosed in the specification of Takeda's patent made the cephem products claimed in Takeda's product patent. *Id.* at 21-22. Thus, the Board found that Takeda had not provided any credible evidence that there were "separate and distinct" methods for making some of the products claimed in the '606 patent. *Id.* at 22. The Board did not reach the other grounds of rejection by the Examiner.

## ARGUMENT

## I.    STANDARD FOR SUMMARY JUDGMENT

### A.    General Summary Judgment Standard.

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

10

B.     <u>The Summary Judgment Standard in Section 145 Actions.</u>

A section 145 action "is conducted as a trial; however, it is in essence a suit to set aside the final decision of the board, like the bill in equity from which it was derived." *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037 (Fed. Cir. 1985). As such, Takeda carries the burden of showing that the Board committed reversible error. *Id.* ("the applicant has the laboring oar to establish error by the Board").

The underlying issue of patentablility is whether Takeda's claims are invalid for obviousness-type double patenting over one of Takeda's earlier patents — the '606 patent — which expired in 1998. Whether the claims of the '216 patent are invalid for double patenting is a question of law. *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed. Cir. 1992). Where, as here, no relevant new evidence is offered, a § 145 action proceeds under the traditional APA standards, and the Board's factual findings are reviewed for substantial evidence. *Mazzari v. Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003).[2/] Substantial evidence is "such relevant evidence as a reasonable mind might accept as accurate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). As the Federal Circuit stated, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one

---

[2/]     On issues where the parties have introduced additional evidence, the Court considers that evidence together with the record before the Board to make *de novo* findings. *Id.* at 1034. But the Court must accept the Board's ultimate decision as controlling unless Takeda presents sufficient argument and evidence to overcome the deferential "substantial evidence" standard applied to the Board's findings. *Mazzari*, 323 F.3d at 1005. If this Court admits new evidence, the record before the USPTO is still the "evidentiary nucleus" of this case. *Fregeau*, 776 F.2d at 1042. Thus, Takeda is not permitted to "start over to prosecute his application before the district court unfettered by what happened" below. *Id.* at 1038.

conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

The parties cross move for summary judgment on the USPTO's legal conclusion that the claims of Takeda's '216 patent are invalid for non-statutory double patenting in view of Takeda's '606 patent. Because non-statutory double patenting is a question of law, Summary judgment is especially appropriate here as the parties agree.

II.    **THE LAW GOVERNING PATENTS AND DOUBLE PATENTING**

The equitable doctrine of double patenting, although judicially created, is grounded in the patent statute and public policy. The underlying premise is that the public should be able to practice a claimed invention, and any obvious variations of that invention, after the patent expires. *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985). Two types of double patenting may exist: statutory, or "same invention" double patenting, and nonstatutory, or "obviousness-type double patenting." *Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373 (Fed. Cir. 2003). The purpose of the double patenting doctrine is to prevent the extension of an inventor's rights beyond the term granted by statute. *Id.* at 1377-1378. The double patenting doctrine has been applied by the Courts for over 100 years. *See, e.g., Miller v. Eagle*, 151 U.S. 186 (1894).

A.    **Patent Primer**

A patent application contains a specification that includes a written description of the invention (often with numbered drawings) followed by a set of numbered claims at the end. The specification explains the technology, how the invention works, gives examples and other relevant information. It is typically written like a technical paper presented to others skilled in the particular

technology. The claims, which are numbered and all one sentence in length, define the scope of the invention as set forth in the specification. The claims have been analogized to the metes and bounds set forth in a deed to real property. If an application claims two or more inventions, the USPTO may issue a restriction requirement under 35 U.S.C. § 121. The applicant is then required to select one invention to pursue in that application.

Applicants may also file a second, or subsequent application, with the same specification but with different claims. This second application is typically called a continuation application.

### A.    <u>Statutory Term of Patents</u>

Until June 8, 1995, all patents received a 17-year term that did not start to run until the patent issued. However, this allowed one form of mischief; *i.e.,* certain patentees kept patent applications in the system knowing that at any time they could add new claims that, if issued, would get a new 17-year term.  *See, e.g., In re Bogese*, 303 F.3d 1362 (Fed. Cir. 2002); *Symbol Techs., Inc.   v. Lemelson*, 422 F.3d 1361 (Fed. Cir. 2005).  This was one reason why Congress changed the term from 17 years from the issue date, to 20 years from the filing date.  *See generally Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 49 n.3 (D.D.C. 2000); 35 U.S.C. § 154(a)(2).  Thus, any delay caused by an applicant that keeps a patent application pending in the system cuts into the maximum 20-year term.

The date the term changed, June 8, 1995, is often referred to as "the GATT date."  The 17-year term available up until the GATT date is thus the "pre-GATT" term; the 20-year term is the "post-GATT" term.  Because all of the patents in this case were filed before June 8, 1995, Takeda is seeking a full 17-year term for the '216 patent.

### C.    <u>Statutory Double Patenting</u>

"Statutory," or "same invention double patenting" occurs when the inventions claimed in two separate patents or applications are identical.  *In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993); *Longi*, 759 F.2d at 892; *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970).  This violates 35 U.S.C. § 101, which states that an inventor can get "***a*** patent" on a single invention (emphasis added).  This is the case regardless of the presence or absence of a terminal disclaimer, because a terminal disclaimer will not overcome a same invention double patenting rejection.  Statutory double patenting rarely, if ever occurs, because applicants can avoid it by drafting claims that vary slightly from the earlier patent.

### D.    <u>Nonstatutory Double Patenting Rejections</u>

If an invention claimed in a later patent is not identical to the invention claimed in an earlier patent, but is instead an "obvious" variation of the invention recited in the claims of the earlier patent, then the second patent is invalid under the judicially-created doctrine called "nonstatutory," or "obviousness-type double patenting."  *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955 (Fed. Cir. 2001); *In re Kaplan*, 789 F.2d 1574, 1579 (Fed. Cir. 1986).  The purpose of an obviousness-type double patenting rejection "is to prevent an unjustified extension of the term of the right to exclude granted by patent by allowing an obvious variant of the same invention to issue to the same owner later."  *In re Berg*, 140 F.3d 1428, 1431-32 (Fed. Cir. 1998).  *See also In re Braithwaite*, 379 F.2d 594, 601 (C.C.P.A. 1967) ("Double patenting is a basis of rejection grounded in public policy and primarily intended to prevent prolongation of [the patent right]"); *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985) (purpose of this rejection is to prevent the unwarranted extension of the term of a patent); *In re Kaplan*, 789 F.2d 1574, 1579-80 (Fed. Cir. 1986); *accord* U.S. CONST. art. I, § 8, cl.

14

8 (exclusive right is for a "limited time[]").  In other words, it forbids one inventor from obtaining

more than one patent for obvious modifications of the same invention.  Most reported cases fall into

this category of double patenting, as does this case.

Although nonstatutory double patenting is generally referred to as "obviousness-type double

patenting," that label is not wholly accurate because obviousness-type double patenting encompasses

rejections broader than obviousness rejections under 35 U.S.C. § 103.  Obviousness-type double

patenting simply refers to all instances of double patenting where the subject matter is not identical.

*See, e.g., In re Van Ornum*, 686 F.2d 937 (C.C.P.A. 1982).  In such a case, one must consider

whether the subject matter of the second invention is patentably distinct from the subject matter of

the first.  *See Goodman*, 11 F.3d at 1052.  Obviousness-type double patenting is meant to be

"inclusive," *see General Foods*, 972 F.2d at 1280, and is not limited to section 103 obviousness

rejections.  In fact, § 103 obviousness rejections are usually not involved in an "obviousness-type"

double patenting rejection.  The Federal Circuit (and its predecessor court) have upheld double

patenting rejections on a number of grounds, including:

- The "process" of making a product was not separately patentable from the "product" itself (*In re Freeman*, 166 F.2d 178 (C.C.P.A. 1948); *Mosler*, 127 U.S. at 361).

- The "method of using a device" was not patentably distinct from the device itself (*In re Lonardo*, 119 F.3d 960, 968 (Fed. Cir. 1997); *Geneva Pharmaceuticals*, 349 F.3d at 1373; *In re Boylan*, 392 F.2d 1017, 1021 (C.C.P.A. 1968)).

- The claims were broader than the earlier claims—i.e., genus/species claims (*Goodman*, 11 F.3d at 1052; *Vogel*, 422 F.2d at 438).

- The claims are minor variations of one another (*In re Emert*, 124 F.3d 1458, 1462 (Fed. Cir. 1997)).

- The "classic" § 103 obviousness test — other patent claims + prior art (*In re Ornitz*, 347 F.2d 586 (C.C.P.A. 1965)

15

The Supreme Court long ago recognized the problems inherent in allowing non-statutory double patenting.  The first well-recognized double-patenting case is *Miller v. Eagle*, 151 U.S. 186 (1894).  In *Miller*, the Court articulated the principle followed to this day.  The *Miller* Court relied in part, as the Board does here, on *Mosler Lock Co. v. Mosler, Bahmann, Co.*, 127 U.S. 354 (1888). The court's synopsis of *Mosler* mirrors the Boards holding in this case:

> In [*Mosler*] it was held that, a patent having issued for a product as made by a certain process, a later patent could not be granted for the process which results in the product.

*Miller*, 151 U.S. at 197.  After summarizing *Mosler* and other cases, the *Miller* court then set out what has now become the modern doctrine of double patenting:

> The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ.

*Id*. at 198.  *Miller* also notes the recognized exception to this rule:

> but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained.

*Miller* and *Mosler* both completely invalidated the second patent for double patenting.

The Federal Circuit's predecessor, the United States Court of Customs and Patent Appeals (the "CCPA"), recognized that the Supreme Court rule was harsh for a patentee because the second patent was completely invalidated.  The CCPA, relying on section 253 of the 1952 Patent Act, created "terminal disclaimers." *In re Zinckendraht*, 319 F.2d 225, 232 (C.C.P.A. 1963) (Rich, *J.*, concurring).[3/]  This allowed applicants to obtain a patent on "obvious variations" that they hadn't

---

[3/]    When faced with an obviousness-type double patenting rejection, the patent applicant
(continued...)

16

claimed in their original application by filing a terminal disclaimer that disclaims any unwarranted additional term that would be improperly gained by the second application. *Geneva Pharmaceuticals v. GlaxoSmithKine*, 349 F.3d 1373, 1378 (Fed. Cir. 2003). It also allowed the public to freely use both the claimed invention and obvious variations of those inventions after the original patent expired. *Longi,* 759 F.2d at 892-893.

### III.    THE BOARD PROPERLY REJECTED TAKEDA'S PROCESS CLAIMS FOR NONSTATUTORY DOUBLE PATENTING OVER ITS PRODUCT CLAIMS.

The Board properly applied the doctrine of obviousness-type double patenting to the claims of the '216 patent over the claims in the '606 patent in this case. *Geneva Pharmaceuticals v. GlaxoSmithKine*, 349 F.3d 1373, 1378 (Fed. Cir. 2003); *In re Emert*, 124 F.3d 1458, 1462 (Fed. Cir. 1997); *Mosler*, 127 U.S. at 361.

### A.    The '216 Patent Claims *the* Process for Making the Cephem Products in the '606 Patent

As mentioned above, Takeda's now-expired '606 patent contains claims for cephem products with a particular structure. Takeda's '216 patent claims the process used to make some of these cephem products. As Takeda has stated, "the final product of the '216 process is substantially co-

---

[3/](...continued)
has two options. The applicant may argue that the second patent application contains claims that are patentably distinct from the first patent. MPEP §804.02.I. Alternatively, the applicant may overcome the double patenting rejection by filing a terminal disclaimer. MPEP § 804.02.II.

Filing a terminal disclaimer removes the obviousness-type double patenting as a basis for rejection of the patent. *In re Vogel*, 422 F.2d 438 (C.C.P.A. 1970). By filing the terminal disclaimer, an applicant disclaims, or dedicates to the public the end portion (or "terminal" part) of the term of the patent. 35 U.S.C. § 253. This terminal part of the patent term starts on the expiration date of the earlier patent that formed the basis for the double patenting rejection. In other words, because the terminal disclaimer requires that the second, later patent expires on the same day as the earlier patent, the later patent will not improperly extend the exclusivity period.

extensive with the two final product patents that are the subject of the double patenting rejection."
DX 20, Hearing Transcript at 18:1-4.  In other words, the process in the '216 patent makes most of
the products that were claimed in the now-expired '606 patent.  Because Takeda does not dispute
this fact, Takeda argues that a third party can make the product claimed in the '606 patent by another
method.  Br. at 13-15.  However, Takeda has been unable to provide any evidence that another
method existed at the time of its invention.

Takeda's argument that there are multiple ways to make the cephems claimed in the '606
patent is therefore based on processes developed 30 years after its invention.  *See generally* PX. 6;
Duggan Decl.  But issues relating to patentability must be judged at the time of filing.  *Dystar
Textilfarben Gmbh & Co. v. Patrick*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (patentability is judged
at the time of invention); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345
(Fed. Cir. 2000), *cert. denied*, 121 S. Ct. 1957 (2001) ("Enablement is determined from the
viewpoint of persons of skill in the field of the invention at the time the patent application was
filed."); *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 963 (Fed. Cir. 2001) (the factfinder must
determine whether, at the time of filing the application, the inventor possessed a best mode for
practicing the invention).

The '216 patent claims priority back to the filing date of the '888 patent — December 19,
1975.  As of that priority date, there was only ***one*** process that was known to make the cephem
products claimed in the '606 patent.  That was Takeda's own process.  As Takeda itself
acknowledges, where a product can only be made from one process, an obviousness-type double
patenting rejection is entirely proper.  Takeda Br. at 13-15; *see also In re Freeman*, 166 F.2d 178
(C.C.P.A. 1948) (where extraction process for manufacturing paint patented, court denied patent for

18

composition of paint on the grounds of obviousness-type double patenting); *cf. In re Cady*, 77 F.2d

106, 109 (C.C.P.A. 1935) (stating that a double patenting rejection would have force where there was

just one process to make the claimed process) (cited by Takeda); *Phillips Petroleum Co. v. United

States Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985) (finding that where two processes exist to make

a product, those products and processes can be separately patentable) (cited by Takeda). Because

there is only one viable process, the process for making cephems claimed in the '216 patent is not

patentably distinct from the cephem product itself.

The '216 patent extends the protection of the '606 patent because the cephem product claims

entitled Takeda to sue for infringement anyone who "*makes*, uses, offers to sell, or sells" the patented

cephem product. 35 U.S.C. § 271 (emphasis added). Thus, anyone who practiced the invention

claimed in the '216 patent during the term of the '606 patent (November 3, 1981 to November 3,

1998) would have been liable for infringement of the '606 patent.

**B.     Takeda's 14-year Delay in Filing These Process Claims Would Give it an
Unjust, Timewise Extension of its Patent Monopoly.**

In 2003, the Federal Circuit recognized that an unexplained delay in prosecuting claims could

support a double patenting rejection. *See Geneva Pharmaceuticals*, 349 F.2d at 1382 (nonstatutory

double patenting could not be excused where 15-year delay between issuance of method of use claim

and issuance of product claim was not explained). The original patent application in *Geneva* was

filed in April 1975 — just 8 months before Takeda filed its own claims in the United States.

Despite filing process claims with the initial applications in Japan and Great Britain in 1974,

Takeda failed to do so when it began filing claims in the United States. Takeda offered no

compelling reason for this failure. Instead, it claimed that obtaining patents on process claims was

discouraged.  *See, e.g.*. PX 5, Bd. Op. at 11-13; PX 21, Usami Declaration, ¶¶ 20-25.  Takeda also

argued that because the United States did not allow patentees to preclude third parties from making

compounds overseas using a patented process until the enactment of 35 U.S.C § 271(g), it had no

business incentive to submit process claims for prosecution until 1990.  *Id.*  The Examiner and the

Board did not find Takeda's "delay" excuses compelling, and found they could not be excused.  PX

5, Bd. Op. at 12-13; DX 19; *see also Geneva Pharmaceuticals*, 349 F.2d at 1382.


IV.    **TAKEDA'S ARGUMENTS DO NOT JUSTIFY REVERSAL OF THE BOARD'S
       DECISION**

    A.    **Obviousness-type Double Patenting Is Not as Narrow as Takeda Contends.**

      Citing *General Foods*, Takeda argues that the Federal Circuit recognizes only two types of

double patenting (same invention and obviousness-type double patenting) and that the Board's

rejection is a third type that cannot be upheld by this Court.  *See* Br. at 1, 7-9.  Takeda

misapprehends double patenting law and the Board's rejection.

      First, as detailed above in Section II.B, "obviousness-type" double patenting is broader than

obviousness rejections under 35 U.S.C. § 103.  They are not limited to simply "obviousness"

rejections.  *See, e.g., Geneva Pharmaceuticals*, 349 F.3d at 1378 n.1 (noting some of the differences

between obviousness rejections under § 103 and "obviousness-type" double patenting rejections).

This is not surprising given that double patenting rejections have been used by the Courts for more

than 100 years, long before the concept of obviousness was first introduced into the Patent Act in

1952.  35 U.S.C. § 103 (1952).

      Second, the Board's double patenting rejection of the process claims of the '216 patent was

in fact based on the product claims of the '606 patent.  The Board found, and Takeda conceded, that

the process claimed in the '216 patent produced products that were substantially co-extensive with the products in Takeda's now-expired patents.  Bd. Op. at 23.  The Board found that this was the only viable way to make the product in the '606 patent. *Id.*  The Board therefore held that allowing the Reexamination Certificate to issue would be an unjust timewise extension of Takeda's patent rights.  *Id.*  As stated recently by the Federal Circuit, the obviousness-type double patenting doctrine was created by the courts to prevent issuance of a patent that would extend patent protection for an invention beyond the statutory term by claiming a slight variant.  *Geneva Pharmaceuticals*, 349 F.3d at 1378.

### B.    Takeda's Only Alternative Processes Were Developed More than 25 Years after its Invention.

Takeda accepts that its claims would be unpatentable if it cannot show that alternative processes exist.[4]  With its brief to this Court, Takeda therefore submits a lengthy declaration from Dr. Angelina Duggan.[5]  Dr. Duggan claims that two alternative pathways exist to make the cephem products claimed in the '606 patent.  PX 6; Duggan Decl., ¶¶ 125-141.

The only "alternative" processes that Takeda (through Dr. Duggan's declaration) has identified to this Court are the processes described in U.S. Patent No. 6,552,186 (the "Gerlach" patent) and in U.S. Patent No. 7,071,329 (the "Monguzzi" patent) (PX 10 and 11).  The Gerlach

----

[4]    Because Takeda waited so long to introduce process claims, the USPTO suggests that even if there were multiple processes available to make the '606 patent, the process claims of the '216 patent should be invalid for double patenting.  The Court does not need to reach this, however, as there is only one process available to make the claimed product.

[5]    For purposes of this motion ***only***, the USPTO does not dispute the technical merits of Dr. Duggan's declaration.

21

patent was first published on September 12, 2002 — nearly 27 years too late.[6/]  Similarly, the

Monguzzi reference was published on June 2, 2005 — nearly 30 years too late.  To be considered

a viable alternative process, a process needed to be available at the time of invention — here,

presumed to be the earliest filing date, December 19, 1974.  *See*  35 U.S.C. § 103 ("[a] patent may

not be obtained . . . if . . . the subject matter as a whole would have been obvious ***at the time the***

***invention was made*** to a person having ordinary skill in the art. . ."), *In re Ornitz*, 347 F.2d 586

(C.C.P.A. 1965) (for a double patenting analysis, court can look to prior art and any claims of the

patentee's prior patents); *Ajinomoto*, 228 F.3d at 1345; *Eli Lilly*, 251 F.3d at 963 (Fed. Cir. 2001);

*cf Dystar*, 464 F.3d at 1360 (patentability under §103 determined at the time the invention was

made).

      This approach makes sense.  If Takeda were allowed to use the Monguzzi and Gerlach

patents to establish patentability (as it is arguing here), then the USPTO would also be allowed to

use those patents (as well as any other patents dated after Takeda's invention) to establish that the

claims were not patentable.  As Takeda has itself acknowledged, anything after the filing date of the

original patent in 1975 cannot be used to defeat the patentability of its claims.  DX 22 (Takeda's

submission to the USPTO).

      Thus, Dr. Duggan's "alternative" pathways are legally irrelevant, because they postdate

Takeda's invention.  Thus, Takeda's reliance on those processes to argue that the Board's double

patenting rejection cannot stand is unsupported.

_____

[6/]       In fact, Takeda's proposed alternative processes are so new, that they did not even
exist when the application for the '216 patent was filed in 1990, or when the '216 patent was issued
in 1996.

C.    _Miller_ and _Mosler_ Are Not as Limited as Takeda Contends.

Here, the Board cited the Supreme Court law in _Mosler_ and _Miller_.  Takeda argues that _Mosler_ is limited to its exact facts (Takeda Br. at 9-10) and the principle in _Miller_ cannot be applied to this case because it merely reflects modern double patenting practice.  _Id_. at 11-12.  Takeda misses on both points.  First _Mosler_ has not been limited in the way Takeda hopes.  Later cases only recognized the limits inherent in _Mosler_ as cited by the _Miller_ Court.  The exact facts in this context are the holdings that (i) the claims could have been presented in a single application, and (ii) the process described in the product patents couldn't be claimed in the later patents.  That is the same situation Takeda faces today, with the added complication that Takeda delayed 14+ years before presenting its process claims, while Mosler presented his within a year or two of the product application.  _See_ PX 5, Bd. Op. at 15 (noting that the time delay in the _Mosler_ case is considerably shorter than the time delay in Takeda's case).

Takeda tries to paint Mosler as a typical prior art rejection.  Br. at 10, n.5.  This is not the Supreme Court's reading of _Mosler_, nor does it comport with _Mosler_ itself.  In _Mosler_, the lower court recognized that this was a special case involving copending patent applications by the same inventor:

> For the purposes of this suit, these three patents may be considered as one, containing all the claims involved. . . . They might have been all included in one application had the patentee chosen to so present them.

_Mosler Safe and Lock Co. v. Mosler_, 22 F. 901, 903-904 (S.D. Ohio 1885).  The Supreme Court recognized the copending nature of the applications, which today would allow the inventor to claim

priority to earliest filed application, *Mosler*, 127 U.S. at 356, and quoted the above language with approval. *Id*. at 359.

Indeed, *Mosler* is cited by the Supreme Court itself, after the 1915 *Fireball* case (cited by Takeda on pages 9-10 of its brief). In *Saranac Automatic Mach. Corp. v. Wirebounds Patents Co.*, 282 U.S. 704 (1931) the Supreme Court made clear that the proposition in *Mosler* is still good law:

> "Thus this patent completely discloses the invention of Inwood and Lavenberg and the advance which it made over the prior art. It taught all that was disclosed by their method patent, for the method claimed is but the process of the now expired reissue patent resulting in the product of the patent. As only the validity and infringement of the machine patent are now before us, it is unnecessary to consider whether, for the reason just stated, the later method patent is invalid, although granted on a copending application, as was held in *Mosler Safe & Lock Co. v. Mosler*, 127 U. S. 354, 361, 8 S. Ct. 1148, 32 L. Ed. 182, or whether it is invalid because of the delay in filing the divisional application, as was held by the District Court below."

*Id*. at 710-711.

D.    **The Solicitor's Statement in its 1992 Appeal Brief Does Not Contradict the Board's Position Here**

Although the evidence of record shows that only one process existed at the time of Takeda's invention to make its product, Takeda claims that the USPTO is judicially estopped from saying so because of an argument the Solicitor made to the Federal Circuit in its 1992 appeal brief. Br. at 18-19. Takeda, however, has not met its burden of showing that judicial estoppel applies.

As an initial matter, Takeda's excerpt of the Solicitor's 1992 statement in his brief is not complete. The full excerpt stated:

> Applicants correctly point out (Br4) that there are several methods for making their cephems. ***See A31-A41*** *[which correspond to the '216 patent, col 6:52-11:62]****, wherein methods (a) through (g) are described. The Board provided a cogent answer (A6-7) to***

24

> ***applicants' arguments.*** The fact that there are different methods for
> preparing a cephem does not make any one method patentable."

PX 3; Br. at 30-31. Takeda, without so indicating, omitted two crucial sentences of the Solicitor's

1992 argument (which are bolded here). The omitted sentences show that the Solicitor was referring

to the seven processes ((a)-(g)) disclosed in Takeda's application — none of which, other than the

acylation process claimed in the '216 patent — have ever been shown to be viable. The Solicitor

also noted that these other processes were irrelevant to the question of whether the ***claimed*** acylation

process was patentable.

Throughout the reexamination of the '216 patent, Takeda continued to argue that these other

processes ((b) - (g)) in its specification were viable alternative processes to make the claimed

product. The Examiner and the Board (both skilled in the art) flatly rejected that argument because

those other processes do not make the same product. Notably, Takeda never provided evidence to

address the Examiner's and the Board's rejection on this point — even though Takeda has had

almost 15 years to provide such evidence. Therefore, the Board's finding now — that there was only

one process available in 1975 for making the cephem product claimed in Takeda's now-expired

patents — is consistent with the evidence, and does not contradict the Solicitor's 1992 statement.

Even if the Solicitor's 1992 statement did contradict the Board's finding, that fact alone does

not give rise to judicial estoppel. As the Supreme Court stated, "where a party assumes a certain

position in a legal proceeding, ***and succeeds in maintaining that position***, he may not . . . assume

a contrary position, ***especially if it be to the prejudice*** of the party who has ***acquiesced*** in the

position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (emphasis

added). The Supreme Court identified several factors to determine whether judicial estoppel applied:

whether (1) the positions were "clearly inconsistent"; (2) the party had succeeded in persuading a court to accept that party's earlier position; (3) the party seeking to assert an inconsistent position was deriving an unfair advantage.  *Id.* at 750-51.  Although these factors are not inflexible or exhaustive, ***none*** apply here.

First, as stated above, the positions are not "clearly inconsistent."  In his 1992 statement, the Solicitor noted that Takeda was correct in noting that its patent specification disclosed several processes — (a) through (g).  The Solicitor also referred to the Board's finding that the other disclosed processes did not make the cephem products.  These facts have not changed in 15 years.  Takeda's patent specification still discloses seven processes, and only one of those processes makes the claimed cephem products.  *See, e.g.,* PX 1, '216 patent, col. 6-7.  The Board in 2006 acknowledged those facts, and found that because Takeda had not presented any viable alternative method to make its cephem products, the process claimed in the '216 patent was the only available process.  PX 5, Bd. Op. at 20-24.

Second, as Takeda recognizes on page 19 of its brief, the USPTO lost that appeal.  Moreover, the Federal Circuit never mentioned the issue that Takeda's patent specification disclosed more than one process, it simply held that the claimed process was not obvious over the prior art presented in that appeal.  *See* PX 2, *In re Ochiai.*.

Third, Takeda has no evidence of any unfair advantage to the USPTO or any unfair detriment to itself.  In fact, in its motion for summary judgment, Takeda abandoned its arguments with respect to those processes disclosed in its specification.  Instead, Takeda is relying on two new references — the Gerlach and Monguzzi patents — which as explained above in Section IV.B., are irrelevant because they were not known at the time of the December 19, 1974 filing date.  *See* PX 10 and 11.

26

## V.    FAILURE TO RAISE ARGUMENTS AND PRESENT EVIDENCE TO THE USPTO LIMITS WHAT TAKEDA CAN BRING BEFORE THIS COURT

As explained above, the new evidence (which comprises the Duggan Declaration, the Gerlach patent and the Monguzzi patent) that Takeda seeks to introduce is irrelevant to the legal issue raised by the briefs before this Court.   None of this new evidence that Takeda seeks to present could convince this Court to set aside the Board's decision.   There simply is no evidence that actual, viable alternate pathways existed as December 19, 1974, a fact that Takeda has not disputed.   Nevertheless, the USPTO would oppose the introduction of this evidence unless it can be shown that Takeda did not negligently or intentionally withhold it from the Board.   Because Takeda's new evidence is based on published patents that were published before Takeda's appeal to the Board was filed, that seems unlikely.

Under § 145's hybrid procedures, Takeda is limited in what new evidence or arguments it may present.[7]   First, issues and arguments that were not properly raised to the PTO below may not be introduced for the first time in this Court.   *MacKay v. Quigg*, 641 F. Supp. 567, 571 (D.D.C. 1986) ("the need to promote full disclosure before administrative tribunals requires that even a sub-issue be fully explored by the PTO before allowing new evidence in support of the sub-issue to be admitted for the first time in district court); *Dotolo v. Quigg*, 12 USPQ.2d 1032, 1035, 1989 WL 78137, *2 (D.D.C. 1989) ("[A] party is precluded from injecting new legal issues or arguments not presented to the Board unless he demonstrates 'some reasons of justice' for failing to do so.")

Here, Takeda cannot present new arguments regarding alternate pathways to make cephem products, because it cannot plausibly demonstrate that it has some "reason of justice" for its failure

---

[7]        In fact, Takeda has agreed to this cross-briefing of summary judgment motions, thus in essence conceding that no new evidence is necessary to resolve this case.

to present those arguments below. Moreover, the Office's position has not changed since 2001. The Examiner's Answers, the Board decision, and this brief all present the same rejection for all of the pending claims: i.e., that the claims of the '216 patent are not patentably distinct from the claims of the '606 patent, because the '216 patent claims *the* process used to make the products claimed in the now-expired '606 patent.

Likewise, Takeda cannot present new evidence, unless it can first show that the evidence was unavailable during the prosecution and was not intentionally or negligently withheld. *Holloway v. Quigg,* 9 U.S.P.Q.2d 1751, 1988 WL 141046 at *1; DX 24, *Hyatt v. Dudas* Civil Action No. 03-901 (HHK) (D.D.C. Sept. 30, 2005), Memorandum Opinion (Docket # 46), denying request for reconsideration (Docket # 55). Thus, any declarations, for example, should not be considered unless Takeda shows that it could not have filed it earlier in the case or that its failure to present it was not intentional and not negligent. Such a showing would be exceedingly unlikely in this case. Takeda first had notice of the double patenting rejection more than 6 years ago. It could have filed any evidence or argument, including declarations at that time. 37 C.F.R. § 1.132. Instead, it made the conscious choice to rely on the irrelevant pathways identified in its own specification and in Wuest's declaration.

Moreover, Takeda expressly waived its right to rely on the Gerlach patent. During the reexamination, Takeda waited until it had filed its reply brief to submit the Gerlach reference in violation of 37 C.F.R. 41.41(a) (which prohibits an applicant from raising new arguments in his reply brief). The Examiner therefore declined to consider the new arguments. Takeda petitioned the Board and asked it to consider the Gerlach reference and other arguments it had made. DX 24. The Board offered Takeda a deliberate choice — (1) remand the appeal to the Examiner for consideration

28

of the petition; or (2) dismiss the petition and proceed before the Board without relying on the Gerlach reference. Takeda chose to proceed before the Board and withdraw its reliance on the Gerlach reference. Because of Takeda's deliberate choice, the Board properly did not consider this new reference.

## CONCLUSION

The claims of the '216 patent, filed more than fourteen years after the filing of Takeda's original specification, are invalid for obviousness-type double patenting over the claims of the' 606 patent. Additionally, because Takeda waited more than 14 years to file its process claims over products it had previously patented, allowing the Reexamination Certificate to issue would provide Takeda an unjust, timewise extension of its patent monopoly. Therefore summary judgment should be granted for the USPTO.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

29

Of Counsel

JOHN M. WHEALAN
Solicitor
SHANNON M. HANSEN
WILLIAM G. JENKS
Associate Solicitors
United States Patent and Trademark Office