UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD., )<br>                  Plaintiff, )<br>                  v.  )<br>HON. JON W. DUDAS )<br>    Under-Secretary of Commerce for )<br>    Intellectual Property and Director of )<br>    the Patent and Trademark Office )<br>                  Defendant. ) | Civil Action No. 06cv1640 (TFH) |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES AND
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

I.    **DEFENDANT'S STATEMENT OF GENUINE ISSUES.**

Pursuant to the Local Civil Rules, a party opposing a motion for summary judgment must provide "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h); LCvR 56.l. In the present matter, however, Defendant does not contend that any genuine issues of material fact exist, and has so moved for summary judgment on its behalf. *See* Defendant's Cross-Motion for Summary Judgment, attached thereto. Rather, in opposition to Plaintiff's motion for summary judgment, Defendant contends that the undisputed facts demonstrate that Defendant, and not Plaintiff, would be entitled to summary judgment. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987) (*per curiam*) (only if the moving party satisfies his burden is the non-moving party "required to provide evidence that would permit a reasonable jury to find" in its favor) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Defendant respectfully refers this Court to, and incorporates the Defendant's Statement of Material Facts Not in Genuine Dispute set forth below.

## II.   DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.

### A.   Takeda's Product Patents and Patent '606

1. Takeda filed its first patent application for cephem products, cephem intermediates and starting materials, and *processes* for making these cephem products in Japan on December 19, 1974. *See* PX 1 at 1 (Foreign Application Priority). Takeda then filed a related patent application in Great Britain on June 9, 1975, again with claims to the cephem products, starting materials, and the processes for making these products. DX 14.

2. On November 3, 1981, U.S. Patent No. 4,298,606 (the '606 patent) issued with claims to novel cephem compounds. PX 9. The '606 patent expired on November 3, 1998. *Id*. The '606 patent claims priority back to Takeda's first U.S. filing date, Dec. 19, 1975. PX 9 at 1.

3. At the time of the filing of the '606 patent application, the acylation process used by Takeda was the only process for making the claimed cephem compound. PX 9.

### B.   The '216 Patent.

4. On January 8, 1990, Takeda filed a patent application for the acylation process initially described in the '606 patent specification. PX 1 at 1.

5. The Examiner denied Takeda's acylation claims as obvious over the prior art. *See* PX 3 at 6. The Examiner identified numerous references where an acyl group

was introduced into an amine to make a cephem.  *Id*.

6. The Board affirmed the Examiner's obviousness rejection.  *Id*.

7. The application issued on December 10, 1996 as U.S. Patent No. 5,583,216 (the '216 patent) with claims to the process of making the cephem compound claimed in the '606 patent.  PX 1.  The '216 patent claims priority back to Takeda's first U.S. filing date, Dec. 19, 1975.  PX 1 at 1.

C. **Reexamination of the '216 Patent.**

8. On April 3, 1998 and on December 22, 1998, E. Thomas Wheelock filed two requests for reexamination of the '216 patent on behalf of an anonymous requestor (the Requestor).  DX 15 and 16.  The USPTO granted both requests, assigning them Reexamination Control Nos. 90/004,950 and 90/005,200.  *Id*.  The USPTO merged both reexaminations into a consolidated reexamination proceeding.  *Id*.

9. The Requestor argued that the '216 patent was invalid on the grounds of double patenting over Takeda's prior product patents — the '606 and '888 patents, Takeda's acyl group patent — the '899 patent, and other prior art.  *Id*.

10. Takeda argued throughout the prosecution that the double patenting rejection was improper because there was more than one process to make the cephem compounds claimed in its '606 patent.  *See, e.g.* DX 17 and 18.  In support of that argument, Takeda pointed to the displacement process that it had raised in the initial prosecution.  DX 18.  Takeda also submitted a declaration from Dr. James Wuest, who identified a process from a 1982 textbook (the Morin process).  DX 23.

11. Dr. Wuest stated that he "expected" that the Morin process could be

successfully used to make the cephem compounds claimed in the '606 and '888 patents. DX 23 at ¶50.

12. The Examiner rejected Takeda's contention that an alternative process existed to make the cephem products claimed in the '606 patent. DX 17 and 19. The Examiner stated (like the Board had during the original prosecution) that the displacement process put forth by Takeda as an alternative process did not make the cephem product claimed in the '606 patent. DX 17. The Examiner also stated that Dr. Wuest's testimony was speculative and unreliable, and rejected his suggestion that the Morin process could be an alternative way to make the claimed cephem compounds. *Id*.

13. On May 11, 2005, the Examiner finally rejected all five claims of the '216 patent on multiple grounds based on double patenting. DX 17.

14. On appeal to the Board, Takeda continued to argue that the displacement process and the Morin process were alternative processes to make the claimed cephem compounds. DX 18.

15. In her Answer in response to Takeda's arguments, the Examiner again explained why neither the displacement process nor the Morin process were alternative processes that could obviate a double patenting rejection. DX 19.

16. The Board affirmed the Examiner's finding that neither the displacement process nor the Morin process were viable alternatives that could support Takeda's argument that alternative methods existed to make the cephem compounds claimed in its '606 and '888 patents. PX 5.

17. The Board therefore found that the evidence showed that only one viable

4

method existed for making some of the cephem compounds claimed in the '606 patent, and that this one method was claimed in the '216 patent. PX 5 at 13. The Board found that anyone seeking to make some of the compounds in the '606 patent would necessarily have to use the method claimed in the '216 patent. *Id*.

18. Because the Board affirmed the Examiner's rejection that the claims of the '216 patent were invalid for nonstatutory double patenting over the claims of the '606 patent and that allowing the claims to issue would impermissibly extend the patent rights over some of the cephem compounds previously claimed in the '606 patent, the Board did not reach the other grounds on which the Examiner had rejected the claims of the '216 patent. *See generally* PX 5.

### D.    Declaration of Angelina Duggan, Ph.D.

19. Takeda's expert, Angelina Duggan, Ph.D., provided a 55-page declaration in support of Takeda's motion for summary judgment. PX 6.

20. Dr. Duggan identified two patents — the Gerlach patent, which, as mentioned above, was not published until September 2002; and U.S. Patent No. 7,071,329 (the Monguzzi patent), which was filed on August 12, 2004 and published on June 2, 2005. Dr. Duggan stated that these patents described processes that were alternative processes to make some of the cephem compounds claimed in the '606 patent. PX 6.

21. Neither the process in the Monguzzi patent nor the Gerlach patent were available on or before the December 19, 1975 priority date of the '216 patent. *See* PX 10 and 11.

22.   Dr. Duggan has not identified any alternative process for making the cephem compounds claimed in the '606 patent that existed on or before December 19, 1975. *See generally* PX 6. Nor has Dr. Duggan identified an alternative process for making the cephem compound in the '606 patent that existed at the time Takeda applied for the patent to the process on or before January 8, 1990, or at the time Patent '216 was issued on December 10, 1996. *Id*.

        Respectfully submitted,

        /s/ Jeffrey A. Taylor
        JEFFREY A. TAYLOR, D.C. BAR # 498610
        United States Attorney

        /s/ Rudolph Contreras
        RUDOLPH CONTRERAS, D.C. BAR # 434122
        Assistant United States Attorney

        /s/ Darrell C. Valdez
        DARRELL C. VALDEZ, D.C. BAR # 420232
        Assistant United States Attorney
        Judiciary Center Building
        555 4th St., N.W., Civil Division
        Washington, D.C. 20530
        (202) 307-2843

Of Counsel:

JOHN M. WHEALAN
Solicitor
SHANNON M. HANSEN
WILLIAM G. JENKS
Associate Solicitors
United States Patent and Trademark Office