# Defendant's Exhibit 16

CERTIFICATE OF MAILING BY "EXPRESS MAIL"

Express Mail Label No  EM012889938US    Date of Deposit December 21, 1998

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C F R § 1 10 on the date indicated above and is addressed to Box Reexam. Assistant Commissioner for Patents, Washington, D.C. 20231

Date. 12-21-98    Signature. *Amica Pasmore*

Amica Pasmore

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the application of:

    U.S. Patent No. 5,583,216

| | | |
|---|---|---|
| Inventors: | Ochiai et al | |
| Issued: | December 10, 1996 | |
| For: | METHODS FOR THE MANUFACTURE OF CEPHEMS | |
| Assignee: | Takeda Chemical Industries, Ltd., Osaka, Japan | |

REQUEST FOR REEXAMINATION
and
REQUEST FOR CONSOLIDATION
WITH PENDING REEXAMINATION
PROCEEDING

## REQUEST FOR REEXAMINATION (II)
## AND
## REQUEST FOR CONSOLIDATION WITH PENDING REEXAMINATION PROCEEDING

Box REEXAM
Assistant Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

    The undersigned, as Third Party Requestor, requests a.) reexamination of claims 1-5 of US Patent No. 5,583,216 ("'216 Patent ") under 35 U.S.C. 302-307 and 37 C.F.R. 1.510 and

b.) that the reexamination proceeding granted as a result of this Request be consolidated with pending reexamination proceeding No. **90/004950**.[1]

I.  **Summary of Request for Reexamination**

We previously requested reexamination of the '216 Patent on a judicial double patenting basis. The Primary Examiner did not accept that basis in declaring the previous Reexamination proceeding. Because we believe that such a basis is correct, we are renewing that request and supplementing it with a second basis under 35 USC 103.

Consequently, this Request for Reexamination has two parts: first is an amplification of the arguments made by the Third Party Requestor in Reexamination Proceeding No. 90/004950 It specifically is to assist the Examiner in certain points of law dealing with judicial double-patenting. The second part is an affirmation and expansion of the rejection provided by the Examiner in the first Office Action in the prior Reexamination proceeding.

Specifically, first: process claims 1-5 of the '216 patent (Attachment 1) are not patentable under the doctrine of judicial double patenting over the claims of commonly-owned and commonly-invented US Patent No. 4,298,606 (the " '606 Patent " - Attachment 2) or US Patent No. 4,098,888 (the " '888 Patent " -- Attachment 3)[2] in combination with the claims of commonly-owned and commonly-invented US Patent No. 4,203,899 (the " '899 Patent " - Attachment 4) and further in view of Chauvette (Attachment 5) and Gottstein (Attachment 6), particularly in view of Fieser (Attachment 7) and Dolfini (Attachment 8).

---

[1] The PTO guidelines for merging reexamination proceedings may be found at MPEP 2283. There it is said that the second Reexamination Request "should be processed as quickly as possible and assigned to the same examiner to which the first request is assigned... [and] ... should be decided immediately without waiting out the usual period."

[2] US Patent Nos. 4,912,212, issued March 27, 1990 and 4,973,684, issued November 27, 1990, also claim cephem compounds within the scope of the product produced by the '216 Patent process. These patents were terminally disclaimed by the Patent Owner over the '888 Patent.

Secondly, process claims 1-5 of the '216 patent (Attachment 1) are not patentable under 35 USC 103 over Chauvette (Attachment 5) and Gottstein (Attachment 6), particularly in view of Fieser (Attachment 7) and Dolfini (Attachment 8).

II. **Explanation of Pertinence and Manner of Applying the Cited Documents to the '216 Patent**

a. **Judicial Double Patenting**

**[This section is a repeat of the same section in the prior Reexamination Request. The Primary Examiner is referred to the copy of the prior Reexamination Request included as Attachment 9.]**

### 1. Comments on First Office Action in Reexamination 90/004950

The Examiner, in the first Office Action in Reexamination Proceeding 90/004950 did not accept the position of the Requestor made in the Request for Reexamination: the requested judicial double patenting rejection was not applied in that first Office Action. The Examiner did, however, utilize the cited references in support of a rejection under 35 USC 103. The following comments are for the specific purpose of clarifying and augmenting the correctness of a judicial double patenting rejection in this instance.

In that first Office Action, the Examiner notes:

Requester spends some considerable time on Judicial Double Patenting. None is seen here. No unwarranted extension of monopoly is seen here, as a product and the process by which it is produced are different statutory classes of invention, note 35 USC 100 and 35 USC 101.

It should be initially said that the fact that different classes of statutory subject matter are involved here is not significant. The very case [3] which so clearly states that judicial double

---

[3] In re Lonardo, 119 F.3d 960, 43 USPQ2d 1262 (Fed. Cir. 1997) -- copy attached as Attachment 10 for the Examiner's convenience.

patenting is permissible as a basis in a reexamination proceeding specifically involved a <u>prior patent claiming a **device**</u> that was used to reject a <u>later-claimed **method** for making a device</u>. The Court had no problem affirming the decision of the Board of Patent Appeals and Interferences: a cross-statutory-class judicial double patenting rejection is fine. The Examiner is therefore completely empowered to make such a rejection. The Requestor provided such a basis in the prior Request, the pertinent portion of that Request being repeated here for the use of the Examiner in Attachment 9 and above.

The Requestor is not asking the Examiner to make new law here. In the absence of a restriction requirement under 35 USC 121, a later process claim may be rejected over an earlier product claim. This has been true for a long time. For instance, the fondly remembered Court of Customs and Patent Appeals in <u>In re Boylan</u>[4] noted with approval the use of a terminal disclaimer in a "double patenting" rejection in a later-filed application claiming a <u>process</u> for inhibiting foaming in an aqueous system over the same applicant's patent which claimed both a <u>composition of matter</u> (a de-foaming composition) and the <u>method of preparing</u> that de-foaming composition. In addition, the court specifically noted:

> Similarly, this court in <u>In re Sebek</u>, 52 C.C.P.A. 1442, 347 F.2d 632, 146 U.S.P.Q. 44, 46 (1965), considered whether, in the absence of a terminal disclaimer, the later granting of a patent with claims drawn to a use of a product for which appellants had been granted a patent was foreclosed. There we placed emphasis on the circumstance that a patent, if granted on the application, would expire later than the prior patent. We stated:

> . . . any prolongation of the period of that monopoly by embracing in a second, *later-expiring* patent, obvious processes or compositions utilizing the compound is contrary to well-established principles of law. [Emphasis added.]

> See also, <u>In re Keim</u>, 43 C.C.P.A. 784, 229 F.2d 446, 108 U.S.P.Q. 330 (1956); <u>In re Horneman</u>, 39 C.C.P.A. 809, 194 F.2d 108, 92 U.S.P.Q. 316 (1952).

---

[4] <u>In re Boylan</u>, 392 F.2d 1017, 157 U.S.P.Q. 370 (CCPA 1968)

The Requestor couldn't have said it better.  The Requestor only asks that the Examiner follow the long-standing practice of the USPTO[5], the old CCPA, and the U.S. Court of Appeals for the Federal Circuit[6] and reject claims 1-5 of the '216 patent over the claims of the nearly expired parent cases.

---

[5] See also Ex Parte MacAdams, et al., 206 U.S.P.Q. 445 (Bd. of App 1980).  The opinion dealt with a patent application having claims to a "method of rotationally molding articles of high impact resistance . . . ." which was rejected by the Board (using its 37 CFR 1.196 authority) over composition claims in a parent patent.  The Board notes, at 206 U.S.P.Q. @ 449:

> Claims 1 to 9 are rejected for double-patenting of the obvious this type [note In re Sebek, et al., 52 C.C.P.A. 1442, 347 F.2d 632, 146 U.S.P.Q. 44 and In re Carlson, 56 C.C.P.A. 1309, 412 F.2d 255, 162 U.S.P.Q. 233] over claims 1 to 5 of the appellant's above-cited patent, particularly when viewed in light of [other prior art].

> Claims drawn to the method of using the patented composition particularly adapted for the claimed process and whose use would be so recognized by those skilled in the art, as is apparent from secondary references, are not seen to be drawn to a separate and patentably distinct invention.

> We are cognizant of the fact that restriction was required in the instant case, as well as in appellants' parent case, Serial No. 327,577, but no restriction requirement has been made between claims drawn to the blend, per se, and the method of using it for the preparation of shaped articles therefrom by rotational molding as called for by the claims at issue.  The indicated double patenting rejection, accordingly, is not seen to be precluded by 35 U.S.C. 121.  It may, however, be obviated by the filing of a proper, terminal disclaimer."

[6] In Applied Materials, Inc. v. Advanced Semiconductor Materials, 98 F.3d 1563, 40 USPQ2d 1481 (Fed. Cir. 1996), the Court noted at 40 USPQ2d at 1483:
> The question of whether the claims of the process patent are subject to double patenting with the claims of the apparatus patents arises only if these patents are not entitled to the benefit of 35 U.S.C. Section 121. [emphasis added]

The Primary Examiner apparently is expressing some concern that in a "more normal" prosecution scenario that if the process claims of the '216 patent had been in the same application with the composition claims of the '606 patent or '888 patent and the composition claims of the '899 patent, then a restriction requirement would likely have been issued stating that the process is "a patentably distinct invention." Because the Patent Owner didn't choose to agglomerate all of those claims together, we'll never know. Because no Restriction Requirement between process and product was ever issued, the Primary Examiner can't revise history to help out the Patent Owner. It's wrong. Other applicants have tried and the Court told them "no."[7]

The law, 35 USC 121, is the Patent Owner's protection from a Restriction Requirement. Here, for who knows what reason, the Patent Owner didn't put the process claims with the composition claims. The Patent Owner gave up its right to have the Primary Examiner hold that a judicial patenting rejection is not appropriate because of the differing classes of patentable subject matter. The Patent Owner has no protection under 35 USC 121; the judicial double patenting rejection is within the authority of the Examiner and should accompany the equally well-stated rejection under 35 USC 103 to the Board of Patent Appeals and Interferences and then to the Federal Circuit.[8]

The Examiner then discusses the "section of the training materials on Ochiai that suggests a terminal disclaimer be employed in the later process application":

> Where applicant voluntarily presents claims to the product and process in
> separate applications (no restriction requirement/holding of lack of unity was

---

[7] For instance, In re Russell, 239 F.2d 387, 389, 112 USPQ 58, 59 (CCPA 1956)

[8] Without the concurrence of, at least, the Board of Patent Appeals and Interferences, with the Primary Examiner's holding in the face of the holding under law that the judicial double patenting is erroneous, it is likely not appropriate that the Patent Owner ever seek to enforce the '216 patent lest it be charged with patent misuse. It would seem wise that the Patent Owner would seek clear reversal of this apparently legally correct basis for rejecting the '216 patent claims rather than leaning upon a holding that doesn't get past the basic situation found in In re Lonardo, supra.

made by the Office), and one of the applications issues as a patent, the remaining application may be rejected under the doctrine of obviousness-type double patenting, where appropriate (see MPEP 804 - 804.03), and applicant may overcome the rejection by the filing of a terminal disclaimer under 37 CFR 1.321(c). Similarly, if co-pending applications separately present product and process claims, provisional obviousness-type double patenting rejections should be made where appropriate. However, once a determination as to the patentability of the product has been reached, an process claim which contains limitations corresponding to the allowed/allowable product should not be rejected over prior art without consultation with a Patent Examining Group Director.

This suggests that the situation would be so rare that a Group Director would have to be consulted, if one were to hold that the process of making the product, and the product, were the same invention, contrary to 35 USC 101.

Although the "training materials" noted by the Examiner are not apparently available to the public, the cited legal content appears to be in agreement with the Federal Circuit's holdings. The passage further specifies a particular process for the Examiner to use within the PTO, when faced with a situation precisely as presented by the Requestor in the prior Reexamination Request. The PTO training material does not suggest to avoid contact with the Group Director, but instead encourages and appears to direct the Examiner to contact the Group Director.

Requestor further notes that the training material refers to additional rejections over "prior art." In requesting a rejection under judicial patenting, the Requestor is not directly utilizing prior art. The basis is specifically to claims in the parent patents which, because of their relationship under 35 USC 120, are not available under 35 USC 102 as so-called "prior art."

The Examiner also notes that:

Further, the Examiner, Mr. Rizzo, called the attorney of record, Mr. Wegner, on the phone, and restricted the '216 patent to one process, per MPEP 806.05(f). The election was made, without traverse. This examiner relied upon that election being without traverse, when I allowed the Ochiai patent '216, to one process, and cancelled the others, on issuance.

The file record I had during the examination process, before the file was released to the public, made it clear that there was an involuntary restriction made by Examiner Rizzo, and I relied on that, and mentioned it in the Examiner's Amendment, when I cancelled the other processes, as the election

had been made without traverse, and allowed the one process, per MPEP 806.05(f).

The Requestor appreciates that a restriction requirement had been made during the prosecution between two sets of **PROCESS** claims. The Restriction Requirement is Paper No. 10 (copy at Attachment 11) in the prosecution history of the '216 patent and the applicant's election, without traverse, of the claims eventually allowed is found at Paper No. 11 (copy at Attachment No. 12).

Again, this situation merely provides the Primary Examiner with the authority to make a judicial patenting rejection between a later claimed process and an earlier claimed, patented product. Said the other way: the Restriction Requirement in the '216 patent file was **not** between a product and a process for making the product. Consequently, the noted Restriction Requirement does not meet the requirements of the "training materials" cited by the Examiner. This situation falls therefor squarely within that found in Lonardo, supra.

It is clear that Examiner Ford, in allowing the '216 patent after its journey to the U.S. Court of Appeals for the Federal Circuit, was correctly completing the activities needed in a notorious and public case. Examiner Ford had not been responsible for the application prior to that journey. The series of applications (of which the '216 is the apparent current last member) had been in prosecution for 20-odd years; there is no reason why a newly responsible Examiner (without expending a tremendous amount of detective work) would appreciate the unique situation found here. No process had been claimed in that quarter century. The Patent Owner had rolled the dice and now has lost. No Restriction Requirement between a product and a process for making that product had ever been made. There was no easily detectable reason for re-opening prosecution, particularly for a judicial double patenting rejection. It is now appropriate to do so.

The Examiner also notes:

The very most the Ochiai guidelines can be held to say is that once the compound is held allowable, a process should be fully examined; consistent with 37 CFR 1.475, in 371 applications, and PCT Rule 13.2.

The Requestor would make two points here: first, when the elderly patents forming the basis of the judicial double patenting rejections were filed, the U.S. had not acceded to the PCT at all. There were no PCT proceedings for a U.S. patent applicant. This could not have been a "371" application and 37 CFR 1.475 cannot apply.

Secondly, Requestor agrees with the Examiner that "a process" should be examined -- and has been examined resulting in the issuance of the '216 patent. This examination of the '216 patent's process, because of the tenets of judicial double patenting, should properly result in the '216 patent's being rejected over the claims of the '606 Patent, the '888 Patent, and the '899 Patent for the reasons noted above. The rejection may be readily and appropriately overcome by a properly executed Terminal Disclaimer.

### a) Other Comments

The Examiner indicates that:

> There are many generic manufacturers of cephalosporin type antibiotics in this country. The claims of Ochiai '216 can be argued under Durden [In re Durden, 763 F.2d 1406, 226 USPQ 359 (Fed. Cir. 1985)] and Albertson [In re Albertson, 332 F.2d 379, 141 USPQ 730 (CCPA 1964)] to include the manufacture of any cephalosporin antibiotic, as they all go through a point in manufacture where an amide is produced in the 7 position.

If the Examiner's comment is correct, it is indicative that the Ochiai '216 patent is an extension of monopoly for a period far past that granted by the '888 Patent and the '606 Patent and for a process used in the industry for many years.

The Examiner observes and suggests:

> Requester appears to argue that 35 USC 271(g) permits the assignee of the US patent '216 to restrict the importation of any cephalosporin product into the United States until 2013, because of the breadth of the process of '216 including all processes of creating the 7 acyl amino group: a process they all use, and have used for many years, certainly longer than any effective filing date of Ochiai. What is needed, from the entire CAFC, as to whether the process of Ochiai, obtained on arguments of the narrow applicability of their process to their particular compounds, only, can be applied to any cephalosporin.

The Requestor agrees that 35 USC 271(g) permits the Patent Owner to restrict the importation of the cephalosporin products mentioned in the claims until 2013. The claim is very broad. Although the Requestor appreciates the question the Examiner raises and hopes the Court will work with the PTO on that question, the Requestor is trying to solve a much narrower question. That question focuses on the propriety of whether the '216 Patent process claims are appropriately rejectable under the doctrine of judicial double patenting over the product claims of the parent patents. If the Examiner does not apply that rejection to the claims of the '216 Patent, the Requestor does not have any way to present the argument to the Federal Circuit. The '216 Patent deals with an antibiotic; the patent is worth literally hundreds of millions of Dollars. This Request for Reexamination is the sole pathway for the Requestor to make arguments in this forum which will eventually be read by the Federal Circuit. The Patent Law does not permit the Requestor to make any additional arguments.

The Examiner is respectfully requested to accept Requestor's arguments and further reject the claims on that basis.

### b. **35 USC 103**

Third Party Requestor requests that claims 1-5 of the '216 Patent be rejected under 35 USC 103 over one or more of Chauvette (Attachment 2), Gottstein (Attachment 3), Dolfini (Attachment 5), or Fieser (Attachment 4). Each of the latter references from the chemical literature show the other starting material -- a cephalosporin -- and procedures for acylating the cephalosporin.

### a) **Claim 1**

Claim 1 of the '216 patent would have been obvious under 35 USC 103 over either of Chauvette or Gottstein.

Claim 1 of the '216 patent is directed to a process for preparing cephem compound **1**. The claim requires that the cephem compound be substituted as follows: $R^3$ is hydrogen or methoxy; $R^4$ is hydrogen or a residue of a nucleophilic compound (e.g. OAc); $R^5$ is hydroxyl or a protected hydroxyl; and $R^8$ is hydrogen or halogen. The claim further requires that **1** be prepared by introducing an acyl compound, represented by the incomplete structure **2**, into the amino group of compound **3**. Claim 1 does not contain any limitations on the acylation method by which **2** is introduced into **3**.

Chauvette was published in 1962. This reference discloses a process for synthesizing



cephem derivatives. The process is described in the first sentence of the second paragraph and involves the reaction of acid chlorides or mixed anhydrides with the amino group of compound **9**. Compound **9** is a species of amine **3**, specifically where $R^3$ is hydrogen and $R^4$ is acetate. According to sentence three of the second paragraph, the cephem derivatives were isolated variously as free acids, sodium salts, or potassium salts.

Chauvette's Table I presents a variety of compounds that were made using the Chauvette process, including the '216 patent's cephem compound **7**, which is listed on line 8 of Table I.

Gottstein was published in 1971. This reference also discloses a process for synthesizing cephem derivatives. The process involves the direct acylation of compound **9** with an S-carboxymethyl dithiocarbamate-carboxylic mixed anhydride (Experimental Section, Method A). Gottstein further illustrates the process by describing the preparation of cephem **10**, which was isolated as the sodium salt. Gottstein lists cephem **10** as "compound 14" in the second paragraph of the Experimental Section.



Claim 1 of the '216 patent would have been obvious under 35 USC 103 over Chauvette or Gottstein. Chauvette and Gottstein teach a process for preparing cephem derivatives, where an acyl group is introduced into the amino group of compound **9**. Given Chauvette or Gottstein, one of ordinary skill in the art would perceive compound **1** as a combination of acyl compound **2** and amine **3**. The two references, in view of claim 1 of either the '888 or '606 patent, suggest the preparation of compound **1** through the introduction of compound **2** into the amino group of compound **3**.

### b) Claim 2

Claim 2 is dependent upon claim 1. It introduces the further limitation that $R^3$ and $R^8$ of formulas **1, 2**, and **3** are hydrogen.

Claim 2 of the '216 patent would have been obvious under 35 USC 103 over Chauvette or Gottstein. Chauvette and Gottstein disclose amine **9**, which is compound **3** where $R^3$ is hydrogen and $R^4$ is acetate. For the reasons given in the preceding section, therefore, claim 2 would similarly have been obvious over the cited art.

### c) Claim 3

Claim 3 is dependent upon claim 1. It introduces the further limitation that the acylation process for the preparation of cephem 1 must include the reaction of amine **3** with acid **11**. The substituents of **11** are defined as for acyl compound **2**, except that $R^1$ can be an amino group, or a salt or reactive derivative of the amino group.



Fieser was published in 1967. This reference discloses a process in which a reagent, dicyclohexylcarbodiimide (DCC), mediates the introduction of an acyl group into an amino group using an acid of the acyl group. The first full paragraph on page 233 describes the reaction of an acid with an amino group of an amino acid. The second paragraph on page 233 describes the reaction of carboxylic acids with the amino group of D-glucosamine.

Claim 3 of the '216 patent would have been obvious under 35 USC 103 over Chauvette or Gottstein in view of Fieser. As discussed in the section on claim 1 of the '216 patent, the combination of the cited references would have rendered the procedure including the preparation of cephem **1** through the introduction of **2** into the amino group of **3** obvious. Fieser describes a process for introducing an acyl group into an amino group, where an acid is reacted with an amine. One of ordinary skill in the art, therefore, would have been motivated to combine

the acylation method of Fieser with the other references to arrive at a process where the acid **11** is reacted with amine **3** to provide cephem **1**.

### d) Claim 4

Claim 4 is dependent upon claim 3. It introduces the further limitation that $R^1$ of compound **11** is an amino group.

For the reasons provided in the section on claim 3, claim 4 of the '216 patent would similarly have been obvious over Chauvette or Dolfini in view of Fieser.

### e) Claim 5

Claim 5 is dependent upon claim 3. It introduces the further limitations that $R^1$ of compound **11** is a protected amino and the protective group is removed to provide a free amino group after **2** is reacted with amine **3**.

Dolfini was published in 1971. This reference discloses a process where an acyl group containing a protected amine is introduced into the amino group of **9** and the amine is subsequently deprotected. The last paragraph of the Experimental Section describes the process for the production of **12**, which is "compound II" in Dolfini. The first step of the process is the reaction of D-2-[N-(*tert*-butoxycarbonyl)amino]-2-(1,4-cyclohexadienyl)-acetic acid with isobutyl chloroformate to form a mixed anhydride (**13**). This step is described in detail in the first and second sentences of the experimental procedure for "compound IX." The second step of the process is the reaction of the mixed anhydride with compound **9**. This step is described by analogy from the third to the eleventh sentence of the experimental procedure for "compound IX." The final step of the process is the removal of the *tert*-butoxycarbonyl protecting group from the amino group of the cyclohexadienyl acetic acid group. This step is described, again by analogy, in the experimental procedure for "compound III."

Claim 5 of the '216 patent would have been obvious under 35 USC 103 over Chauvette or Gottstein in view of Fieser and further in view of Dolfini. As discussed in the section on claim 3 of the '216 patent, the combination of the cited references would have rendered the preparation of cephem **1** through the reaction of **11** with amine **3** obvious. Dolfini describes the introduction of an acyl group containing a protected amino group into compound **9** and the subsequent deprotection of the amino group. One of ordinary skill in the art would have been motivated, therefore, to combine the protection-deprotection step described by Dolfini with the other references to arrive at the process of claim 5.

### 2. Comments on Office Action and Patent Owner's Request for Reconsideration in Reexamination 90/004950

The Patent Owner's Request for Reconsideration was apparently filed with the PTO on November 6, 1998. In that Request for Reconsideration, the Patent Owner complains that the prior art cited by the Third Party Requestor is not "in any way closer to the claimed invention than was [the prior art] considered in "Ochiai I". The Patent Owner further contends that under the holding of In re Recreative Technologies Corp., 83 F.3d 1394, 1399, 38 U.S.P.Q. 2d 1776 (Fed. Cir. 1996) that since the "prior art is more remote than that cited in the patent file, then the 'reexamination should have been terminated when no other [new] ground of rejection was raised'." The Patent Owner then anomalously cites 35 U.S.C. 144 as somehow requiring the PTO to ignore any additional prior art because the statute requires that the Court "shall issue to the Commissioner its mandate and opinion, which shall be entered of record in the Patent and Trademark Office and shall govern the further proceedings in the case."

The Patent Owner has certainly offered no support for this novel reading of 35 U.S.C. 144.

The PTO did do as the Court directed. The "further proceedings in the case" simply involved accepting the "mandate and opinion" for the Court and proceeding consistently with the facts and laws decided by the Court. The issue in the Ochiai appeal was simply whether the patentability of the products and the feedstocks were to be considered in deciding the patentability of the process involved. The Court decided that issue; the further proceedings in the PTO involved issuing a patent. Had the case been appealed to the Supreme Court, the "further proceedings" would have constrained the Supreme Court to decide the matter based on the matter appealed and the facts as decided below. Said another way: the PTO has followed the law. The "case" -- the earlier patent prosecution -- in In re Ochiai has been laid to rest; the "case" is not the patent forevermore. The PTO may now appropriately decide any matter within its current statutory purview. Such matters include deciding questions under 35 U.S.C. 103 on prior art references not previously considered by the PTO. Just because the patentee labels the reference "not as good" doesn't take away the PTO's statutory authority to consider the reference and decide that the claims at issue would have been obvious to one of ordinary skill in the art over those references.

Certainly, as the Primary Examiner appropriately recognizes, the claims are extraordinarily broad. The level of proof offered by the Patent Owner in no way shows any unexpected results in these extraordinarily broad claims.

It should also be noted that in the Patent Owner's fervor to carry this argument beneath the holding in In re Ochiai, there is no substantive argument that the Primary Examiner made an incorrect decision in holding the process to have been obvious over the combination of the references cited by the Primary Examiner. In essence, the Patent Owner merely complains that the art cited by the Primary Examiner is less relevant but provides no technological reasons for it being so.

So centered on the need to drag this reexamination proceeding into the garage of In re Ochiai, the Patent Owner has overlooked a matter which was discussed at some length in the patent prosecution of the '216 patent. In particular, the Dolfini reference describes the introduction of an acyl group containing a protected amino group and the subsequent deprotection of that amino group. This is a concept that was lacking in the prior art cited during the patent prosecution and argued with some gusto by the Patent Owner.

With this concept in hand, certainly the PTO should be even more empowered to again reject these startlingly broad claims on prior art.

### III. Conclusion

The Third Party Requestor agrees with the 35 USC 103 rejection raised by the Examiner in Reexamination proceeding No. 90/004950. The judicial double patenting rejection also found in Reexamination proceeding No. 90/004950 has been demonstrated to be based in law. The judicial double patent would be affirmed by the Board of Patent Appeals and Interferences as well as by the U.S. Court of Appeals for the Federal Circuit, and should be included in a merged Reexamination proceeding.

The undersigned Third Party Requestor requests that the PTO determine that a substantial new question of patentability has been raised by this Request for Reexamination and further requests that: a.) claims 1-5 of the '216 Patent be found to be unpatentable under judicial double-patenting over the claims of co-owned '888 or '606 patents and claim 1 of the '899 patent, and b.) claims 1-5 of the '216 patent be found to be unpatentable under 35 USC 103 over Chauvette and Gottstein particularly in view of Fieser and Dolfini for the reasons discussed above.

Third Party Requestor also requests that the reexamination proceeding granted as a result as a result of this Request be consolidated with pending reexamination proceeding No. **90/004950**.

Respectfully submitted,

Date: December 21, 1998            By: _____

E. Thomas Wheelock
Registration No. 28,825

Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5739
Facsimile: 650.494.0792

Enclosures:      PTO-1449
Index (with Attachments 1-12)

Courtesy Copy: Examiner Ford and
Special Programs Examiner

It is certified that a copy of this request has been served in its entirety on the patent owner through the attorney of record found in the patent file as provided in 37 CFR 1.33(c). The name and address of the party served and the date of service are:

Harold C. Wegner
Foley & Lardner
Washington Harbour, Suite 500
3000 K Street, N.W.
Washington, D.C. 20007-5109

Date Of Service: 12/21 , 1998 Signature: _____

E. Thomas Wheelock

# ATTACHMENTS

| Number | Description |
|--------|-------------|
| 1 | '216 patent with Certificate of Correction (one column, center mounted) |
| 2 | '606 patent |
| 3 | '888 patent |
| 4 | '899 patent |
| 5 | Chauvette |
| 6 | Gottstein |
| 7 | Fieser |
| 8 | Dolfini |
| 9 | Request for Reexamination with attachments as submitted 04.03.98 (Pending reexamination proceeding No. 90/004950) |
| 10 | In re Robert LONARDO |
| 11 | '216 patent Restriction Requirement dated 05.23.91 |
| 12 | Applicant's election without traverse dataed 05.30.91 |

5,583,216

1

## METHODS FOR THE MANUFACTURE OF CEPHEMS

### CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of application Ser. No. 203,410, filed Jun. 7, 1988, now U.S. Pat. No. 4,973,684, granted Nov. 27, 1990, and also a continuation of Ser. No. 203,409, filed Jun. 7, 1988, now U.S. Pat. No. 4,912,212, granted Mar. 27, 1990, each of which is in turn a division of Ser. No. 674,364, filed Nov. 26, 1984, now abandoned, which is a continuation of now abandoned Ser. No. 191,934 filed Sep. 29, 1980, which is a continuation-in-part of Ser. No. 071,032, filed Aug. 28, 1979, now U.S. Pat. No. 4,298,606, granted Nov. 3, 1981, which is a division of now abandoned Ser. No. 900,233, filed Apr. 26, 1978, which is a continuation-in-part of Ser. No. 642,356 filed Dec. 19, 1975, now U.S. Pat. No. 4,098,888, granted Jul. 4, 1978.

In accordance with a first aspect of the invention there is provided a process for preparing a cephem compound of the formula:



wherein $R^3$ is hydrogen or methoxy, $R^4$ is hydrogen or a residue of a nucleophilic compound, $R^5$ is hydroxyl or a protected hydroxyl, and $R^8$ is hydrogen of a halogen, or a pharmaceutically acceptable salt or ester thereof, which comprises introducing an acyl group of the formula:



wherein $R^5$ and $R^8$ are defined above into the amino group of the molecule of the formula:



wherein $R^3$ and $R^4$ are as defined above or a salt or ester thereof. In a preferred embodiment, $R^3$ and $R^8$ are hydrogen.

In accordance with a second aspect of the invention there is provided a process, wherein the introduction is preformed by reacting a compound of the formula: