**Defendant's Exhibit 17**

| Office Action in *Ex Parte* Reexamination | Control No. 90/004,950 | Patent Under Reexamination OCHIAI ET AL |
|---|---|---|
| | Examiner Emily Bernhardt | Art Unit 1624 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>22 September 2004</u>.    b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO-1449.    4. ☐ _____.

**Part II    SUMMARY OF ACTION**

1a. ☒ Claims <u>1-5</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☐ Claims _____ are patentable and/or confirmed.
4. ☒ Claims <u>1-5</u> are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have
   1☐ been received.
   2☐ not been received.
   3☐ been filed in Application No. _____.
   4☐ been filed in reexamination Control No. _____.
   5☐ been received by the International Bureau in PCT application No. _____.
   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/004,950- 90/005200  
Art Unit: 1624

Page 2

In view of patent owner's response filed 9/22/04 the following applies.

Various court documents filed (and/or indexed into eDAN as an "IDS") on 11/10/04, 12/8/04, 12/14/04, 12/17/04, 12/28/04, 12/30/04 and 1/6/05 on behalf of Symbol Technology or Lemelson Research Foundation in the ongoing litigation between said parties have been noted but patent owner has not provided any IDS statement for the examiner's consideration.

The 102/103 rejections over Heymes, Durckheimer, Katner and Ochiai are withdrawn in view of patent owner's discussion of where descriptive support can be found for the acyl reactant recited in the claims of US'216. The passages extracted from the earliest parent (US'888) as presented in tabular form on p. 18 evidence that the scope for the claimed acyl reactant is synonymous (if not verbatim) with that described in the specification of earliest parent and which specification is retained throughout the susbsequently filed parents in the parentage leading up to US'216. Thus 35 USC § 120 benefit is granted for claims 1-2, previously denied.

However, the nonstatutory double patenting rejections remain notwithstanding patent owner's traverse for the reasons set forth below.

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 3

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

**1.** Claims 1-5 remain rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over each of the claims of U.S. patent Nos., 4,298,606, 4,098,888 and 4,203,899 in view of Chauvette, Goldstein, Cocker, Fieser and Dolfini for reasons of record-see previous action.

Patent owner continues to stress that alternative pathways for making the final products allowed in various patents cited herein precludes any unwarranted extension of patent rights since the claimed process must be held as "independent and distinct" from the inventions of the patents cited but this point has already been addressed by the examiner. As discussed in the previous action the additional processes described by Ochiai make some additional final products but the process in US'216 is the sole process relied on to make ultimately all the products of Ochiai's invention including those covered by the '888 and '606 patents and employs compounds in '899 claims whose sole described purpose is as reactants in said process. Thus it is not seen how these sets of compound claims can be considered independent and distinct from the process claims later allowed.

Application/Control Number: 90/004,950- 90/005200  
Art Unit: 1624

Page 4

Patent owner's arguments made in part A of their traverse is not persuasive. It is not legally anomalous to drop the 103 rejection over various references while keeping the obviousness double patenting (ODP) rejection initially advanced by the reexam requester since the references in the ODP rejection are applied as secondary teachings for supporting a finding that the claims of product and starting material patents are not patentably distinct over the claims of the process which depend on both for patentability. Note in the MacAdams case, cited previously, the applicability of a primary reference, namely Neidinger, was insufficient to uphold a 103 rejection yet was relied on by the Board as a secondary teaching in making an ODP rejection under 37 CFR 1.196(b).

With regard to comments made in part B beginning on page 12 through page 14, the examiner never agreed that the Geneva Pharmaceutical case was similar to the Phillips Petroleum case- only that the latter was not similar to instant case. Patent owner states that products in US'088 can be made by clearly independent methods having nothing to do with the instantly claimed method of making. No such independent process is seen in the Ochiai disclosure but rather reliance on the amidation process of US'216 as a starting point for making all final products. Thus, patent owner's reliance on the facts in Phillips Petroleum as being controlling is misplaced. While the facts in the Geneva case are not identical to that present

herein, the similarities cannot be lightly dismissed. While the patents in the Geneva case had been subjected to various restriction requirements, the inability by Glaxo to show consonance between the divided groups of patented claims and earlier restriction requirements was tantamount to having no restriction requirement at all and when coupled with late-claiming of method of use claims and resulting patent term extensions, mirrors the facts present herein. As in the Geneva case, the instant process claims were never formally entered in earliest application such that they could be restricted and thus be withdrawn, if nonelected, and then be presented in a continuing case. The process is otherwise dependent on the particulars involved, namely reactants and final products which have already been patented.

Additional arguments presented in part C of patent owner's response are also not persuasive. As in MacAdams, the secondary references applied herein were solely applied to show that the process steps "would be so recognized by those skilled in the art" and would thus "not [be] seen to be drawn to a separate and patentably distinct invention". Furthermore, there is no legal mandate prohibiting the use of several patents which are themselves distinct from each other to prevent patent term extension *via* a subsequently issued patent. This was done as long ago as in Ex parte Zoss 114 USPQ 309.

Application/Control Number: 90/004,950-            Page 6
90/005200
Art Unit: 1624

**2.** Claims 1-5 remain rejected under the judicially created doctrine of nonstatutory double patenting (DP) over the claims of US'888 or US'606 for reasons set forth in the previous Office action. Several points (in parts A-C) are raised by the patent owner in attempting to overcome this rejection beginning on page 2 through page 11 as well as the Declaration by Mr. Usami .

With regard to part A it is not agreed that the processes described in Ochiai are independent of each other. The examiner has already stated that the additional processes disclosed in columns 2-4 only make additional "nucleophilic" derivatives from the preformed amide of formula IX. In other words, all instant final products are ultimately made *via* the claimed amidation process in US'216. The fact that a restriction was made among various sets of processes in the prosecution of the US'216 patent is not relevant to the instant DP rejection between compounds and process of making . No restriction was ever made between the subject matter claimed herein and the compounds **used** in the process and corresponding final products **made** by the process. A similar argument was made in the MacAdams case in which the Board responded by saying: "The indicated double patenting rejection, accordingly, is not seen to be precluded by 35 USC 121. It may, however, be obviated by the filing of a proper terminal disclaimer." . The additional process of making proposed by Dr. Wuest in the

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 7

Declaration filed 12/2/99 has been noted but is not persuasive since it is at best speculative, never described by Ochiai as a possible route in his own specification and perhaps most importantly appears to rely on an essential starting material (reactant A) apparently not available prior to Ochiai's earliest filing date. Thus said alternate process cannot be said to be in the public's possession prior to the filing(s) of Ochiai's cases.

With regard to part B patent owner now states there was no "serious consideration" given to patenting the process prior to the passage of a new law which is embodied in 35 USC § 271(g). This is in sharp contrast to patent owner's response to the 103 rejection as set forth in patent owner's brief beginning on p.18 and reliance on the earlier Wuest declaration which asserts the instant process to have patentable merit based on the presence of several structural features present in the reactants which would be expected to give undesirable results. Patent owner further contends that only a change in the law gave them the incentive to file instant process claims as detailed in the Usami declaration. The declaration which has been considered fails to provide any convincing reasons for the delay (whether intentional or not) in filing the instant process claims. In fact, the Declaration (see parts 1-24) is mainly directed to the prosecution of various compound cases. The Declaration says nothing about the late-claiming of process claims until the very

Application/Control Number: 90/004,950- 90/005200  
Art Unit: 1624

Page 8

end on p.7. A review of declarant's statements on this page is not persuasive of any reasons, legal or otherwise, that prevented patent owner from pursuing the process claims in a timely manner. While the law enacted as 35 USC § 271(g) provided for increased patent protection of process claims by providing a remedy to US process patent holders for unauthorized importation of manufactured goods using the patented process, patent protection **already existed** for said patent owners if unauthorized use of the patented process occurred within the United States. Thus the new law was enacted to include as acts of patent infringement **any** misuse of patented US processes occurring within the US. See Pfizer Inc. v. Aceto Corp. 31 USPQ2d 1542 regarding the latter remarks. It was not enacted for the purpose of patent term extension which patent owner currently enjoys. Declarant's comment regarding the In re Ross decision misses the point. It is irrelevant that declarant was not aware of this decision or that the decision ever existed. In the absence of a statutory bar, any claims including process claims, in principle, can be overcome by a showing of unexpected results. That is fundamental of US patent law that has been in existence many years prior to the Ochiai series of cases. Thus patent owner's late-claiming of process claims was **not** the fault of any existing law that could have *a priori* prevented a successful outcome especially where patent owner was in possession of purported unexpected results as described in the Wuest

Application/Control Number: 90/004,950- 90/005200  
Art Unit: 1624

Page 9

Declaration. The Bio-Technology decision cited by patent owner on p.9 of their response may have been pro-patentee as patent owner describes it but it has nothing to do with the fact situation herein as there were no product patent claims owned by Genetech, only the process directed to the preparation of a natural product, hGH.

Remarks by Ochiai regarding In re Schneller (158 USPQ 210) miss the point. It is agreed that the facts in Schneller are not analogous to the facts herein. Specifically, in Schneller the early-filed claims dominated the later-filed claims. Here that is not the case. Thus, applicant's remarks soliciting withdrawal of a "Schneller-based double patenting rejection" are beside the point. Again, as stated above, Geneva is the more analogous case and the examiner does not rely on the facts in Schneller.

The rejection here is grounded in the fundamental principle of nonstatutory double-patenting--patentees cannot extend their patent rights beyond the statutory term simply by waiting to file additional claims. This principle is found, for example, in In re Longi, 225 USPQ 645 ("The purpose of this rejection is to prevent the extension of the term of a patent where an express statutory basis for the rejection is missing, by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent.") This principle is also in

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 10

Schneller, but that does not make the present rejection "Schneller-based." Furthermore, the Schneller formulation of the principle was recently cited by the Federal Circuit in Eli Lilly v. Barr Laboratories 251 F.3d 955, 968, 58 USPQ2d 1865, (Fed. Cir. 2001) ("the fundamental reason for the rule of obviousness-type double patenting is to prevent the unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." Citing Van Ornum (214 USPQ 761)(quoting Schneller (158 USPQ 210, 214)).

Remaining remarks not already addressed by the examiner that are present in part C are also not convincing of any error in maintaining this rejection. The Wadlinger case cited by patent owner doesn't add anything more that requires any additional comment by the examiner regarding patent owner's filing delay. The similarities with the Geneva case have been addressed in the previous response and in an earlier discussion above. Whether a restriction would have been made in the first Ochiai case had process and compound claims been present is hypothetical, not fact. Patent owner cannot excuse their delay in filing based on a prediction of what the PTO might have or have not done. Thus section 35 USC § 121 provides no shield to patent owner in the present case.

Based on the facts present herein terminal disclaimers are warranted.

Application/Control Number: 90/004,950- 90/005200  
Art Unit: 1624

Page 11

**THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire **2 months** from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings.** The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c).** A request for extension of time must be filed on or before the day on which a response to this action is due. The mere filing of a request will not effect any extension of time. An extension of time will be granted only for sufficient cause, and for a reasonable time specified.

The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted. In no event however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action. See MPEP § 2265.

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 12

Note also that filing of a Notice of Appeal (i.e. Reinstatement of Appeal) and filing of an Appeal Brief will require no additional fees as these have previously been paid.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Emily Bernhardt whose telephone number is 571-272-0664.

If attempts to reach the examiner by telephone are unsuccessful, the acting supervisor for AU 1624, James O. Wilson can be reached at 571-272-0661. The fax phone number for the organization where this application or proceeding is assigned is (571) 273-8300.

*signature*
JEAN F. VOLLANO
PRIMARY EXAMINER
SPRE TC 1600

*signature*
Emily Bernhardt
Primary Examiner
Art Unit 1624

*signature*
MICHAEL P. WOODWARD
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1600