# Defendant's Exhibit 19

Printed 10/03/2006

APEA



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

# BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

Application Number: 90/004,950 90/005200  90005200
Filing Date: April 03, 1998
Appellant(s): OCHIAI ET AL

Harold C. Wegner and Stephen B. Maebius
For Appellant

## EXAMINER'S ANSWER

APEA

Printed 10/03/2006

90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 2

This is in response to the appeal brief filed 9/2/05 appealing from the Office

action mailed 5/11/05.

### (1) Real Party in Interest

A statement identifying by name the real party in interest is contained in the

brief.

### (2) Related Appeals and Interferences

A statement identifying the related appeals and interferences which will

directly affect or be directly affected by or have a bearing on the decision in the

pending appeal is contained in the brief.

### (3) Status of Claims

The statement of the status of claims contained in the brief is correct.

### (4) Status of Amendments After Final

The appellants' statement of the status of amendments after final rejection

contained in the brief is correct.

### (5) Summary of Claimed Subject Matter

The summary of claimed subject matter contained in the brief is

substantially correct. However the examiner does **not** agree that the claimed

Printed 10/03/2006    APEA    90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 3

process is one of plural **independent** and distinct methods described for making

instant cephem compounds.

### (6) Grounds of Rejection to be Reviewed on Appeal

The appellants' statement of the grounds of rejection to be reviewed on

appeal is substantially correct. The labelling of the 2nd double patenting rejection as

Schneller-based is not agreed with as discussed below.

### (7) Claims Appendix

A substantially correct copy of appealed claims 1-5 appears on page s 42-44

of the Appendix to the appellants' brief. The minor error is as follows: A

typographical error appears in the 2nd formula appearing in claim 3. The "$NH_2$"

group should be "$R^1$" consistent with original patent claims.

### (8) Evidence Relied Upon

Chauvette et al. J. Am Chem. Soc. Vol.84, p.3401-3402 (1962).

Gottstein et al., J.Med.Chem. Vol.14,p.770-772 (1971).

Reagents for Organic Synthesis, p.231-236 by Louis F. Fieser and Mary

Fieser (1967).

Dolfini et al, J.Med.Chem. Vol.14,p.117-119 (1971).

4,020,058    COCKER et al.    4-1977

4,202,893    HEYMES et al.    5-1980

Printed 10/03/2006
APEA
90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 4

| 4,758,556 | DURCKHEIMER et al. | 7-1988 |
| 4,098,888 | OCHIAI et al. | 7-1978 |
| 4,298,606 | OCHIAI et al. | 11-1981 |
| 4,203,899 | OCHIAI et al. | 5-1980 |
| 4,767,852 | ASCHER | 8-1988 |
| 4,224,371 | AMIARD et al. | 9-1980 |
| 4,486,425 | NAKAO et al. | 12-1984 |
| 4,327,210 | MONTAVON et al. | 4-1982 |
| 5,089,490 | DURCKHEIMER et al. | 2-1992 |
| 5,710,146 | DURCKHEIMER et al. | 1-1998 |
| 4,008,246 | OCHIAI et al. | 2-1977 |
| 4,080,498 | NUMATA et al. | 3-1978 |

## (9) Grounds of Rejection

The following ground(s) of rejection are applicable to the appealed claims:

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to

prevent the unjustified or improper timewise extension of the "right to exclude"

granted by a patent and to prevent possible harassment by multiple assignees. See

Printed 10/03/2006

APEA

90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 5

In re Goodman, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); In re Longi, 759

F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); In re Van Ornum, 686 F.2d 937, 214

USPQ 761 (CCPA 1982); In re Vogel, 422 F.2d 438, 164 USPQ 619 (CCPA

1970);and, In re Thorington, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be

used to overcome an actual or provisional rejection based on a nonstatutory double

patenting ground provided the conflicting application or patent is shown to be

commonly owned with this application.  See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a

terminal disclaimer.  A terminal disclaimer signed by the assignee must fully

comply with 37 CFR 3.73(b).


Claims 1-5 are rejected under the judicially created doctrine of obviousness-

type double patenting as being unpatentable over each of claims of U.S. Patent No.

4,298,606, 4,098,888, and 4,203,899 in view of Chauvette, Goldstein, Cocker,

Fieser and Dolfini.  Although the conflicting claims are not identical, they are not

patentably distinct from each other because the process being claimed herein

makes final products already claimed in patents such as '888 and '606 (other

product patents according to reexam requester have terminal disclaimers in them)

Application/Control Number: 90/004,950-    Page 6
90/005200
Art Unit: 1624

and employs starting materials (corresponding to the acyl reactant used in '216),

some already claimed in US'899 (see claims 3,11 and 12) along with remaining

starting material, which is old as evidenced by one or more of the secondary

references. Also old is the basic amidation reaction as suggested by the secondary

references. This rejection was the original and sole basis for the first reexamination

request and later reiterated in the 2nd request (see on p.4) which is incorporated

herein. The teachings of Chauvette and Goldstein, Dolfini and Fieser as set forth

beginning on p.10 of the 2nd request for reexamination (i.e.90/005200 and are

incorporated herein. In short the first two references (Chauvette and Goldstein)

individually teach the actual process being claimed in the US'216 patent, namely

the formation of a 7-acylamino cephalosporin employing a first carboxy-type

reactant and a second amino-type reactant. Additionally these references teach that

the second reactant identified as formula VI in US'216 is old. Cocker was added

by the previous examiner in paper # 10 as another example of this very basic

amidation reaction. See in Cocker col.4-col.5. In this instance an imino group

(C=N) is present alpha to the reactive carboxy group which is also a feature present

in the instant thiazole reactant shown in the claims of US'216. Fieser was

especially applied to show that "carboxy" groups (claimed in claims 3-5 of

US'216) in particular are known acylating agents. It has been stressed in previous

Printed 10/03/2006    APEA    90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

actions that the acylating reagent embraced in claims 1 and 2 of the '216 patent is not limited to a particular type of compound(s) such as the carboxy-derived reactants taught in col.5 ( identified as formula V) but open to any possible source that would generate the acyl functional group. Dolfini was applied to show that amino groups not intended to be part of the reaction site (i.e. 2-amino thiazole reactant in the instant case) can be protected prior to amidation and that this is a well known expedient in the art of making cephalosporins. In summary it is urged that the relationship that thus exists among the patents is that of **one** invention **since no restriction had been made among products and processes** and the inventive contribution to the cephem art resides in the novelty/unobviousness of the 2-aminothiazolyl radical present in both starting material and final products as was decided in In re Ochiai in US'216. The instant process claims were introduced for the first time in the '216 patent, roughly 14 years after the first parent filing of what is now the '888 patent. Thus according to requester under 35 USC 271(g) Patentee is able to prevent the importation, sale and use of the product cephem compounds claimed in the earlier product patents until the year 2013.

### (10) Response to Argument

Appellant repeatedly urges throughout pages 11-20 and 28-32 that the products in US'088 and US'606 can be made by a plurality of **independent** and

Printed 10/03/2006    APEA    90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Page 8

distinct processes. No such independent process is seen in the Ochiai disclosure but

rather reliance on the amidation process in the claims of US'216 as a starting point

for making all final products. That is, the two reactants recited in the claims of

US'216 make **all** of the final products. $R^4$ in starting material as well as product

covers all of Appellants' final products not just some. Secondary process is

employed to convert a preformed $R^4$ product into another, that is, they are taught to

make some of the final products from a product that is produced by the basic

amidation process of US'216. This fact has never been refuted. The MPEP in

Chapter 800 on Restriction Practice, section 802.02 defines "independent"

inventions as having **no** disclosed relationship between 2 or more inventions

claimed- i.e. they are unconnected in design,operation, etc. There is no parallel

reaction(s) described for making instant cephems which rely on ultimate starting

reactants that are structurally distinct from the reactants actually employed in the

claimed process of US'216. The additional process of making proposed by Dr.

Wuest in the Declaration filed 12/2/99 and discussed on p.16 and later on pages

32-33 of the brief remains not persuasive since it is at best speculative, never

described by Ochiai as a possible route in his specification  and perhaps most

importantly appears to rely on an essential starting material (reactant A) apparently

not available prior to Ochiai's earliest filing date. Thus said alternate process

Printed 10/03/2006    APEA    90005200

Application/Control Number: 90/004,950-                          Page 9
90/005200
Art Unit: 1624

cannot be said to be in the public's possession prior to the filing(s) of the Ochiai

cases. These remarks were already made by the examiner in the previous response.

Additionally, the starting thiazole reactant is novel- no relevant art was found by

the examiner handling the US'899 patent as set forth in footnote 3 of p.18.

References were initially applied which did not teach or suggest the reactants and

were withdrawn in the next action after counsel for assignee pointed to their

structural distinctness. See last entry in the Evidence Appendix. Thus to paraphrase

remarks made in In re Ochiai (on p.1128 of the decision): characterization of

specifically claimed reactants as "similar" or "analogous" to those in prior art

**cannot** establish obviousness of any use of starting material that is new and

nonobvious. Thus the factual evidence Appellants purport to have provided on

pages 16-20 and 28-32 is nonexistent. Thus it is not seen how the sets of

compound claims directed to final products and starting materials **whose sole**

**described purpose** is only in the amidation process can be considered to be

independent and distinct from the process claims later allowed.

Second, Appellants question the suitability of such a rejection where

different classes of invention are claimed in the various patents. Requester has

cited In re Lonardo in support of such a rejection involving a "cross statutory-class

judicial double patenting rejection". In that case the relationship that existed

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

between the two sets of claims was that of final product vs process of making such.

Various case law was cited in support of Appellants' position that where more than

one process of making exists, such a rejection (double patenting) is not sustainable.

However the cases mentioned beginning on p.14 of the Brief differ from the fact

pattern herein in at least the fact that no restriction has been imposed in the instant

case among products and process and there are corresponding product and starting

material patents linking the instant process. The Phillips Petroleum case (225

USPQ 1149) heavily relied on by appellants beginning on p.26 of the Brief is

distinguishable on its facts. The product claim (a particular crystalline form) of the

'851 patent was not even deemed to be made by the process steps recited in claim

16 of the '721 patent contra to the instant fact situation. See left column at p.1159

in that decision as well as left column on p.1157 which states that crystalline form

of polymer is only obtained after an additional fractionation step is conducted.

More importantly, it was stressed that the process claims were allowed because of

the novelty of the catalyst "essential to the processes". The process claims were

one of many uses urged for the novel catalyst. Unlike the Phillips Petroleum case,

all instant final products ultimately are made via the claimed amidation process in

US'216 since a second process disclosed in cols. 2-4 of US'216 merely makes

additional "nucleophilic" derivatives from preformed amide of formula IX. In the

Printed 10/03/2006
APEA
90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

General Foods case (23 USPQ 2d 1839) mentioned on p.15 of the Brief the two

processes claimed in separate patents were deemed drawn to "separate and distinct

inventions directed to different objectives" and thus no extension of patent

protection was seen to occur by the issuance of the second patent unlike the present

case which does now enjoy patent protection beyond the earlier expired patents.

Appellants in urging strict adherence to the decisional law of Mancy, Keuhl and

Pleudemann would seem to be giving the Board no choice but to view the instant

fact situation as similar to In re Boylan (157 USPQ 370) cited by the requester.

Note in Boylan a later case was claiming a process of defoaming employing an

earlier patented defoaming agent, i.e. compound claims vs use claims analogous to

instant reactants claimed in US'899 and use of such as reactants in claims of

US'216. The sole issue was same invention double patenting since appellants had

already filed a terminal disclaimer which met the court's approval. Also, the

MacAdams case (206 USPQ 445) cited by the requester is on point since the same

argument regarding what was "actually restricted" (in the present case only

restriction of record is between two sets of processes) in that case **did not apply** to

the use claims on appeal vs. compounds previously patented which were

employed for that use. The two sets of claims were deemed patentably indistinct in

light of secondary teachings rendering the claimed process of using well

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

recognized by those skilled in the art. See pages 448-449 therein. Thus there is

ample case law where the nonstatutory double patenting issue involved claims to

different categories of invention. A more recent decision, held invalid method of

use claims that were not originally presented in first parent over compound claims

solely employed for that use. Note Geneva Pharmaceuticals v. GlaxoSmithKline

PLC, 68 USPQ2d 1865 (CA FC 2003). Some common issues that existed between

this case and the present one is the voluntary later filing of use claims with no

formal restriction among the various patents that issued as well as an insufficient

reason for the delay in filing and consequent patent term extension.

Appellants' arguments regarding the use of multiple secondary references in the

ODP rejection  is not persuasive. It is not legally anomalous to drop the 103

rejection over various references while keeping the obviousness double patenting

(ODP) rejection initially advanced by the reexam requester since the references in

the ODP rejection are applied as secondary teachings for supporting a finding that

the claims of product and starting material patents are not patentably distinct over

the claims of the process which depend on both for patentability. Note in the

MacAdams case, cited previously, the applicability of a primary reference, namely

Neidinger, was insufficient to uphold a 103 rejection yet was relied on by the

Application/Control Number: 90/004,950-90/005200

90/005200

Art Unit: 1624

Board as a secondary teaching in making an ODP rejection under 37 CFR 1.196(b).

Additional arguments presented in Appellants' brief are also not persuasive. As in MacAdams, the secondary references applied herein were solely applied to show that the process steps "would be so recognized by those skilled in the art" and would thus "not [be] seen to be drawn to a separate and patentably distinct invention" . Furthermore, there is no legal mandate prohibiting the use of several patents which are themselves distinct from each other to prevent patent term extension *via* a subsequently issued patent. This was done as long ago as in Ex parte Zoss 114 USPQ 309. The reversal in Zoss was not due to reliance on several patents for the ODP rejection. It is also not agreed that the examiner in Zoss applied said patents in the alternative. Note the Board's remarks on p.310: "...rejection based on the claims of each of the Zoss **and** the Schildknect patent..."

Appellants also argues that the process would not have been obvious despite the components having been already claimed or known in view of potential competing sites of attack as disclosed by Dr.Wuest and discussed on p.24-28 of the Brief. However, the Declaration of Dr.Wuest filed 12/2/99 as part of paper #22 urging formation of instant amides would not have been expected based on the presence of the 2-amino group on the thiazole is not persuasive for more than one

Printed 10/03/2006

Page 14

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

reason. It is self-contradictory and thus cannot be given any meaningful weight. It

relies on the same disclosure including working examples in US' 216 to urge in

one part of the Declaration beginning on p.5 that unprotected 2-amino thiazoles

would interfere by reacting with itself and in a later section (paragraphs 42-43) that

one could employ the instant process without protecting the amino based on the

working examples- which in fact all employ a protected amino. It appears that

main claim 1 of the Ochiai patent embraces both protected and unprotected amino

since claim 5, ultimately dependent thereon, is limited to only protected amino ($R_1$

in the claim corresponds to amino according to the specification ). The later

published references discussed in paragraphs 44-49 of the Wuest Declaration

clearly emphasize Appellants' process is routine (i.e. no mention is made of

unexpected results notwithstanding the presence of the unprotected amino) and not

the result of an intensive research effort as declarant would have one believe.  In

fact no mention of multi-competing reaction sites was ever made in the Ochiai

specification much less "a detailed description" of how to solve the purported

synthetic obstacles alluded to throughout the Declaration. Earlier Takeda patents

(US'246 and '498) cited by Appellants in the IDS of 12/28/01 clearly refute

Appellants' contention that the prior art "would not have had a reasonable

expectation of success in an attempt to introduce an unprotected or protected 2-

Printed 10/03/2006

APEA

90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

aminothiazole..." into the instant process since both patents employ such reagents

to make cephems employing the same amidation process. See col.3, reactant (III)

in US'246 and col.5, reactant XIII in US'498. In summary to quote the previous

examiner in paper #17: "Appellants have shown no final variance from the

expected process. They proceeded as the prior art would have predicted." The

current examiner would add to this quote: "... and what later art steadfastly has

confirmed." Examples of patents whose patented final products are made by the

instant process are Amiard (US'371), Nakao (US'425), Montavon (US'210),

Ascher (US'852) and various Durckheimer patents (US'490, US'146, US'556) and

Heymes (US'893). Appellants' reliance on the facts in Phillips Petroleum as being

controlling is misplaced. While the facts in the Geneva case are not identical to that

present herein, the similarities cannot be lightly dismissed. While the patents in the

Geneva case had been subjected to various restriction requirements, the inability

by Glaxo to show consonance between the divided groups of patented claims and

earlier restriction requirements was tantamount to having no restriction

requirement at all **and when coupled with late-claiming of method of use claims**

**and resulting patent term extensions,** mirrors the facts present herein. As in the

Geneva case, the instant process claims were never formally entered in earliest

application such that they could be restricted and thus be withdrawn, if nonelected,

APEA

Printed 10/03/2006

90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

and then be presented in a continuing case. The process is otherwise dependent on

the particulars involved, namely reactants and final products which have already

been patented.

Indeed, in view of Appellants' arguments regarding the impropriety of the

various 103 rejections made in earlier actions that are now withdrawn, it would

seem more appropriate to sustain this rejection in view of the unifying link urged

present by the Ochiai panel in reversing (on last few lines of the decision) among

the patented final products, starting materials and claimed process.

### (9) Grounds of Rejection

Claims 1-5 are rejected under the judicially created doctrine of nonstatutory double

patenting over claims of U. S. Patent No. 4,098,888 or 4,298,606 since the claims,

if allowed, would improperly extend the "right to exclude" already granted in the

prior product patents. Requester's analysis of the double patenting issue also

covers this ground  as well- see page 8 in the second Reexamination Request. In

that section requester notes the inordinately large time gap (14+ years as

mentioned above) between the filing of the first product patent '888 and the filing

and issuance of the process claims of '216.

In the reply brief filed 4/8/02 Appellant urges this rejection is barred by the

Portola Packaging decision. The examiner disagrees. At the very least the US

Printed 10/03/2006

APEA

90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

patents relied on were not particularly cited by the examiner during the prosecution

of the US'216 patent. Additionally, Appellants should take note of MPEP 2242

(August 2001 Ed.) on p.2200-42, section 2 regarding compliance with Portola

Packaging, last paragraph which states: The Office may order and conduct

reexamination based on prior art that was cited but whose relevance to

patentability of the claims was not discussed in any prior related Office

proceeding." Accordingly, the rejection is proper to apply herein.

### (10) Response to Argument

In explaining the reason for the intentional delay in filing, Appellants state

that their process claims were not expected to survive the Durden, Albertson line

of cases which repeatedly refused process claims. In a short interview with

Appellants' representatives, Mr. Wegner and Mr. Maebius held on May 31,2001,

(addressed on p.23 of the earlier Brief filed 8/10/01), the present examiner

commented that such reasoning made in #22 was not consistent with the arguments

presented in the Wuest Declaration urging expected problems with the amidation

reaction in view of the structural makeup of the reactant which had other sites that

could presumably react. Such arguments could have been presented much earlier

than the actual filing of US'216 and may have been held persuasive by the

examiner handling the case or the Board in view of the earlier In re Ross decision

90005200

APEA

Printed 10/03/2006

Page 18

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

(134 USPQ 320) in which it was suggested to appellants in that case that

references showing unpredictability for the process being claimed should have

been provided to show unexpected results. Appellants' comment regarding Ross

made on p.23 footnote 10 in the Brief filed 8/10/01 misses the examiner's point.

The reversal in Alberston (subsequent to Ross) in no way dissuaded inventors from

presenting evidence of any unexpected results. Albertson conceded the same type

of functional groups were involved in their claimed process and thus apparently

had no arguments in support of unpredictability as apparently Ross might have had

but not shown only verbally argued. In fact in Albertson the CCPA noted "the

change that takes place by reduction has not been shown to be unexpectedly great"

(at p.732, right column) and later on the same page it is stated: "Only the predicted

reduction takes place."   Such remarks clearly infer the Court's readiness to

consider any and all timely filed evidence that could favor patentability even in a

period of time prior to any of the Ochiai chain of cases, which Appellant appear to

view as the "Dark Ages".  Thus the examiner is not persuaded of any error in

maintaining this rejection which meets the test set forth in the MPEP (section 804).

The claims of US'216 are disclosed in the earliest product parent as Appellant

strongly urges and the presently allowed claims improperly extend the "right to

exclude" already granted in the earliest product patent in view of the passage of the

Printed 10/03/2006

APEA

90005200

Page 19

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Process Patent Amendments Act of 1988 set forth in 35 USC 271 as discussed by

the reexam requester. In summary this rejection should be sustained since to not do

so would reward nondiligent inventors by issuing to them a "submarine patent"

that would give them patent protection far beyond what is statutorily intended and

also impact the patent protection of later filed product patents such as those already

mentioned above (Amiard, Nakao,etc.) who rely on the same basic process claimed

herein and whose products (in view of R4 scope in US'216) are covered by the

basic process claimed herein.

Appellants' additional arguments regarding the delay in presenting process

claims due to changes in the law is not persuasive. There are no "special claim

forms" involved herein. Appellants are simply reaping the benefits of an

unjustified patent term extension . Appellants' "vigorous fight" for product claims

does not explain the delay in filing process claims urged in the Wuest Declaration

as producing unexpected results. The much earlier Ross decision, not controverted,

is still on point.  Appellant further contends that only a change in the law gave

them the incentive to file instant process claims as detailed in the Usami

declaration. The declaration fails to provide any convincing reasons for the delay

(whether intentional or not) in filing the instant process claims. In fact, the

Declaration (see parts 1-24) is mainly directed to the prosecution of various

Printed 10/03/2006
90005200
APEA

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

compound cases. The Declaration says nothing about the late-claiming of process

claims until the very end on p.7. A review of declarant's statements on this page is

not persuasive of any reasons, legal or otherwise, that prevented Appellants from

pursuing the process claims in a timely manner. While the law enacted as 35 USC

§ 271(g) provided for increased patent protection of process claims by providing a

remedy to US process patent holders for unauthorized importation of manufactured

goods using the patented process, patent protection **already existed** for said patent

owners if unauthorized use of the patented process occurred within the United

States. Thus the new law was enacted to include as acts of patent infringement **any**

misuse of patented US processes occurring within the US. See Pfizer Inc. v. Aceto

Corp. 31 USPQ2d 1542 regarding the latter remarks. It was not enacted for the

purpose of patent term extension which Appellants currently enjoy. Declarant's

comment regarding the In re Ross decision misses the point. It is irrelevant that

declarant was not aware of this decision or that the decision ever existed. In the

absence of a statutory bar, any claims including process claims, in principle, can be

overcome by a showing of unexpected results. That is a fundamental of US patent

law that has been in existence many years prior to the Ochiai series of cases. Thus

Appellants' late-claiming of process claims was **not** the fault of any existing law

that could have *a priori* prevented a successful outcome especially where

Printed 10/03/2006       90005200

Application/Control Number: 90/004,950-
90/005200
Art Unit: 1624

Appellants were in possession of purported unexpected results as described in the
Wuest Declaration. The Bio-Technology decision cited by Appellants on p.38 of
their response may have been pro-patentee as Appellant describes it but it has
nothing to do with the fact situation herein as there were no product patent claims
owned by Genetech, only the process directed to the preparation of a natural
product, hGH.

Remarks concerning In re Schneller (158 USPQ 210) and later cases relying
on such as discussed on pages 36-37 miss the point. It is agreed that the facts in
Schneller are not analogous to the facts herein. Specifically, in Schneller the early-
filed claims dominated the later-filed claims. Here that is not the case. Thus,
applicant's remarks soliciting withdrawal of a "Schneller-based double patenting
rejection" are beside the point. Again, as discussed above, Geneva is the more
analogous case and the examiner does not rely on the facts in Schneller.

The rejection here is grounded in the fundamental principle of nonstatutory
double-patenting--patentees cannot extend their patent rights beyond the statutory
term simply by waiting to file additional claims. This principle is found, for
example, in In re Longi, 225 USPQ 645 ("The purpose of this rejection is to
prevent the extension of the term of a patent where an express statutory basis for
the rejection is missing, by prohibiting the issuance of the claims in a second patent

Printed 10/03/2006    APEA    90005200

Application/Control Number: 90/004,950-                    Page 22
90/005200
Art Unit: 1624

not patentably distinct from the claims of the first patent.")  This principle is also in

Schneller, but that does not make the present rejection "Schneller-based."

Furthermore, the Schneller formulation of the principle was recently cited by the

Federal Circuit in Eli Lilly v. Barr Laboratories 251 F.3d 955, 968, 58 USPQ2d

1865, (Fed. Cir. 2001) ("the fundamental reason for the rule of obviousness-type

double patenting is to prevent the unjustified timewise extension of the right to

exclude granted by a patent no matter how the extension is brought about."  Citing

Van Ornum (214 USPQ 761)(quoting Schneller (158 USPQ 210, 214)).

     Remaining remarks not already addressed by the examiner that are present

in the Brief on p.39 are also not convincing of any error in maintaining this

rejection. The Wadlinger case cited by Appellants  does not add anything more that

requires any additional comment by the examiner regarding Appellants' filing

delay. However, it is worth noting that Appellants in that case lamented to the

Court that in the original application they were not in possession of superior,

unexpected results to rebut the rejection applied against the use claims which were

then cancelled. This is contra to what appellant in the present case is urging. The

similarities with the Geneva case have been addressed in an earlier discussion

above. Whether a restriction would have been made in the first Ochiai case had

Printed 10/03/2006          APEA                    90005200

Application/Control Number: 90/004,950-                                    Page 23
90/005200
Art Unit: 1624

process and compound claims been present is hypothetical, not fact. Appellants

cannot excuse their delay in filing based on a prediction of what the PTO might

have or have not done. Thus section 35 USC § 121 provides no shield to

Appellants in the present case.

Based on the facts present herein terminal disclaimers are warranted.

For the above reasons it is believed that the rejections should be sustained.

Respectfully submitted,

Emily Bernhardt

**CONFEREES:**

MARK L. BERCH
PRIMARY EXAMINER
GROUP 120 - ART UNIT 1824

JAMES O. WILSON
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1600

WILLIAM R. DIXON, JR.
SPECIAL PROGRAM EXAMINER