# Defendant's Exhibit 20

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

1

1    IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

2

3

4    In re:  Merged

5    re-examinations of U.S.

6    Pat. No. 5,583,216

7    issued December 10, 1996

8

9                        HEARING

10

11   Before:   JUDGE ADRIENE HANLON

12             JUDGE ROMULO DELMENDO

13             JUDGE FRED McKELVEY (via Teleconference)

14

15                        Washington, DC

16                        June 26, 2006

17

18

19

20

21   REPORTED BY:

22       DONALD R. THACKER

RECEIVED

JUL 1 4 2006

U.S. PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

2

1    APPEARANCES:

2

3         STEPHEN B. MAEBIUS, ESQ.

4         FOLEY & LARDNER LLP

5         Washington Harbour

6         3000 K Street N.W.

7         Washington, D.C. 20007-5143

8         202-672-5300

9         On behalf of Appellant

10

11

12

13

14

15

16

17

18

19

20

21

22

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

3

1                    P R O C E E D I N G S

2          MR. MAEBIUS:  Steve Maebius.

3          JUDGE HANLON:  I beg your pardon.

4          MR. MAEBIUS:  Steve Maebius.

5          JUDGE HANLON:  You are going to be

6    arguing -- that is number 2 on the calendar, you are

7    going to be arguing both of the appeals?

8          MR. MAEBIUS:  Yes, they are merged into a

9    single appeal.

10          JUDGE HANLON:  Okay, thank you.

11          Before we start the argument I would just

12    like to discuss Figures 1 and 2.  Have these figures

13    been considered by the examiner?

14          MR. MAEBIUS:  Figure 2 has not, and we are

15    prepared to go forward completely without Figure 2.

16          JUDGE HANLON:  Okay, as to Figure 1,

17    Figure 1 has been considered by the examiner?

18          MR. MAEBIUS:  Yes.

19          JUDGE HANLON:  Can you tell us when?

20          MR. MAEBIUS:  It was in the original

21    appeal brief.

22          JUDGE HANLON:  Okay, in the original

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

4

1  appeal brief, thank you.  So, whenever you are

2  ready.

3        MR. MAEBIUS:  I am going to refer today to

4  the two patents that relate to the final product

5  that are the basis of the double patenting

6  rejection, in '606 and '888, and I am just going to

7  refer to those as the final product patents, to make

8  it easy.

9        And the starting material patent is the

10  patent that ends in '899, so I will be referring to

11  that as a starting material patent.

12        Then there are five other references that

13  have been combined with the starting material and

14  final product patents, in the obviousness double

15  patent rejection on appeal.

16        The '216 claims on appeal do not extend

17  the monopoly of either the earlier starting material

18  patents or the final product patents because the

19  full scope of the final products can be made by an

20  independent and distinct process.

21        And also because the starting material can

22  be used in an independent and distinct method to

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL                    5

1    make different products outside the scope of the

2    final product patents that are the basis of the

3    rejection.

4              So, I want to jump right into poster 1, if

5    I could.

6              Would it be easiest for me to use the Elmo

7    machine for the off-site judge or should I use the

8    poster, the large poster?

9              JUDGE HANLON:  Fred, do you have a

10   preference?

11             JUDGE McKELVEY:  I have a copy of the

12   picture.  You can use the poster if you want for the

13   benefit of my colleagues.

14             MR. MAEBIUS:  Okay, thank you.

15             What we have here, we have a summary on

16   the left side of Figure 1, the claimed process of

17   the patent that is on appeal.  Basic reaction of the

18   2 aminothiazole with the cephem

19   amino-cephalosporanic acid amide to create the claim

20   one product that is shown in the Box.

21             What we have on the right side is the

22   independent pathway which is a displacement

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          6

1    reaction.  And I want to point out that in the

2    penultimate step of this displacement process, that

3    is actually the process described in our own

4    specification that was the basis of a restriction

5    earlier in the history of these patents.

6         We have blown up in the box at the top

7    part of the figure the restriction requirement,

8    where the examiner said that this was an independent

9    and distinct process from the claimed process of the

10   '216 patent on appeal.

11        Now, what we did during the course of the

12   re-examination when this displacement process was

13   called into question, we also had an expert

14   declaration from Dr. James Wuest, which further

15   explained how you could get --

16        JUDGE McKELVEY:  I have a question right

17   off the bat.

18        Where is this process described in the

19   '606 patent, the second process, on the right of

20   your figure?

21        MR. MAEBIUS:  In the '606 patent or the

22   '216 patent on appeal?

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

7

1          JUDGE McKELVEY:  No, the '606 patent.

2          MR. MAEBIUS:  Okay.

3          I know that we have cited the location in

4   the papers of record, I am trying to find it right

5   now in the issued '606 patent.

6          It is in column 2, lines 33 to 35, which

7   states that a process for preparing a cephem

8   compound, one which comprises reacting compound 9 or

9   a salt thereof with a nucleophilic compound.

10          So it is basically a displacement

11   reaction, as the examiner characterized it in the

12   restriction.

13          JUDGE McKELVEY:  Where is it otherwise

14   described in the patent, though?  Back on column 8

15   there is a paragraph C.

16          MR. MAEBIUS:  Yes, I see that additional

17   disclosure.

18          Yes, I am not sure if there is additional

19   description beyond that of the displacement process.

20   We have not argued in our original papers that the

21   specification described anything beyond the

22   penultimate step in the scheme that I have shown

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

8

1    here for the alternative pathway.

2         When the alternative process was

3    questioned during prosecution we submitted the

4    declaration of Dr. Wuest to show that there were

5    ways to make this reactant that results -- that is

6    utilized as the starting material in the

7    displacement process.

8         And that occurs by reacting the starting

9    material, the aminothiazole compound with the

10   penicillin sulfoxide which is shown at the top here.

11        And then by way of a rearrangement the

12   penicillin sulfoxide under it undergoes a

13   rearrangement into the 7ACA, and the declaration of

14   Dr. Wuest is supported by several references that

15   show that this process would be expected to work.

16        The examiner criticized the Wuest process

17   or the steps because they haven't actually been

18   carried out, nor were they described in the

19   specification of our '216 or '606 patent.

20        But the examiner never provided any

21   references to dispute the credibility of the expert

22   opinion of Dr. Wuest on this point.

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL                    9

1        The examiner also criticized --

2        JUDGE McKELVEY:  Let me ask a question.

3   Why weren't these processes put in there in this

4   '606 patent to draw a restriction requirement?

5        You say you are not relying on Section

6   121, and I understand that there is a history here

7   that some of these processes were not maybe

8   considered patentable.

9        But why weren't they put in there to find

10  out whether or not this process on the left in

11  particular is distinct from the compound claims, in

12  the '606?

13       MR. MAEBIUS:  My understanding of the

14  prosecution history is that the process of

15  manufacturing claims were not pursued in earnest

16  until the enactment of 271(g) which for the first

17  time in U.S. law created meaningful protection for

18  process patents, so that if you imported a product

19  made by that process overseas you would be

20  committing an act of infringement.

21       So there wasn't a real incentive to pursue

22  any process claim at the time that these cases were

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          10

1    first filed in the U.S.

2              In addition to that there was case law

3    such as In re: Durden that perhaps created an

4    intimidating environment for the pursuit of process

5    claims in the chemical area.

6              There is a declaration that we have

7    submitted --

8              JUDGE McKELVEY:  Well, now, let's see.

9    That didn't intimidate Mr. Pleuddemann who got a

10   patent, the Pleuddemann case, which precedes at

11   least the Ochiai case that we have.

12             There were people who pursued these

13   so-called In re: Larsen claims and were successful,

14   in the -- on judicial review.

15             MR. MAEBIUS:  That is correct.  There are

16   decisions where process claims have been granted but

17   there wasn't a very significant incentive, given the

18   notorious decision during the chemical art until the

19   original decision in In re: Ochiai which restricted

20   Durden to its facts.

21             And in addition to that, from a foreign

22   applicant's perspective there wasn't a very strong

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          11

1    incentive to pursue process claims when the U.S.,

2    unlike the rest of the world, didn't provide for a

3    meaningful form of protection.

4          But that is correct, I concede that

5    Pleuddemann did lead to a process patent.

6          The other point I wanted to --

7          JUDGE McKELVEY:  You would also have to

8    concede, wouldn't you, that you could have put them

9    in and tried to get them?

10         MR. MAEBIUS:  Yes.

11         JUDGE McKELVEY:  There was no -- could you

12   have put these process claims in, and attempted to

13   obtain them along with the '606 compound claims?

14         MR. MAEBIUS:  Yes, we concede that.

15         The other point I want to make about the

16   alternative process is that the examiner criticized

17   the fact that with this alternative process it uses

18   the starting material, and the starting material of

19   the '899 patent is part of the basis of the double

20   patenting rejection.

21         But I want to point out that the starting

22   material patent expired only a few months after the

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

12

1 Ochiai '216 process patent issued.

2   So at that point in time the starting

3 material was freely available to the public who

4 could have used it in this alternative pathway that

5 was shown by Dr. Wuest.

6   JUDGE DELMONDO:  So, Mr. Maebius, I am

7 trying to understand your argument in the brief and

8 here today.

9   Why does the fact that you have these

10 alternative processes to make the previously claimed

11 compounds not extend the monopoly with respect to

12 the scope of protection that was already afforded

13 before?

14   MR. MAEBIUS:  Well, because the basic test

15 for restricting between a process of manufacture

16 and --

17   JUDGE DELMONDO:  But you said that there

18 was no restriction between the product and the

19 claimed process.

20   MR. MAEBIUS:  Right, and it doesn't matter

21 even if there is a restriction.  If you cross over

22 the line for the restriction there could be a double

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          13

1    patent.

2            But there is a basic test that has been

3    laid out in the MPEP that is based on sound

4    precedent for defining an independent and distinct

5    process of manufacture and the product, and that is

6    if you can make the product by way of an alternative

7    independent and distinct process, then you are

8    really not having a wholesale extension of the

9    monopoly of the product patent; you are only

10   patenting this one method of getting there.

11           The public, upon expiration of the final

12   product patent, is able to get there the other way.

13           And we think that is established in a long

14   line of cases including In re: Cady, Phillips and

15   other cases, where the --

16           JUDGE DELMONDO:  Didn't those cases deal

17   with where there was one form of protection or --

18           MR. MAEBIUS:  Yes.

19           JUDGE DELMONDO:  -- or were they talking

20   about in the context of no extension, you know, of

21   the type of fact circumstances we have here?

22           MR. MAEBIUS:  That is correct.  There are

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

14

1  cases like Phillips or Cady where there have been

2  restriction requirements, but the basic question was

3  under attack whether they should have been

4  restricted. And there is no -- the courts have

5  almost -- well to some extent they have erased the

6  boundary of protection from Section 121 by pointing

7  out if you cross over a line drawn in a restriction

8  or the restriction was a bogus restriction in the

9  first place, then you shouldn't enjoy the immunity

10  of Section 121. So there are cases that have held

11  that.

12          So, the court in Phillips, for example,

13  engaged in a very detailed analysis, and one of the

14  tests they addressed was if you have a

15  later-developed process, even though it wasn't fully

16  disclosed at the time of the process that is being

17  subjected to the rejection, should that be

18  permitted?

19          And the court in Phillips, relying upon a

20  decision from this board, Ex Parte Hogan, said that

21  a later-developed alternative process of making

22  should be relevant to the double patenting inquiry,

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

15

1  and should be a basis for finding lack of double

2  patenting.

3          So that was one of the other things the

4  examiner criticized in this case, that the Ochiai

5  specification didn't include this description of the

6  additional steps shown in the Wuest declaration.

7          And so we wanted to make the point in

8  Phillips, and footnote 49 of the Phillips decision

9  cites Ex Parte Hogan, which is a board decision

10  supporting the citation of later-developed processes

11  as a defense to double patenting.

12          The other aspect of this double patenting

13  rejection that is unique is the combination of

14  multiple patents.  And we are aware of no precedent

15  that authorizes the use of independent and distinct

16  patents with different expiration dates to be

17  combined into a double patenting rejection.

18          JUDGE McKELVEY:  Well, how are they being

19  combined?  I don't understand that argument.  How

20  are they being combined?

21          MR. MAEBIUS:  Well, the basis --

22          JUDGE McKELVEY:  It seems like the

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          16

1  examiner takes the '606, hooks it up with some prior

2  art, and says double patent; takes the '899, hooks

3  it up with some prior art; double patent; the '888

4  and hooks it up.

5         But how is he using the -- it seems to me

6  what he is really doing, or she, actually, Examiner

7  Bernhardt, is saying there are three grounds for

8  rejecting you here.  Where is it being combined?

9         MR. MAEBIUS:  The examiner uses the word

10 "and" in connection with the cited references in the

11 basic --

12        JUDGE McKELVEY:  Well, show me in the

13 examiner's analysis where that is being combined as

14 opposed to saying and instead of/or.

15        MR. MAEBIUS:  Well, the examiner is

16 clearly relying upon the existence of the starting

17 material together with the existence of the final

18 product structure, together with the five other

19 references.

20        The five other references are cited only

21 for the purpose of showing the oscillation reaction,

22 and when we argued that either the final product was

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

17

1    novel and unobvious, or the starting material was

2    novel and unobvious, the examiner's reaction was

3    always to rely upon both.

4            So I think it is clear from the record

5    that the examiner, and from the statement of the

6    rejection which uses the word "and," that these

7    references are collectively relied upon.

8            And if you don't have -- let's just

9    suppose that you took out the starting material

10   patent and we were dealing only with the rejection

11   based on the final product patent together with the

12   other references, you would be missing a critical

13   element of the claimed process which is the

14   aminothiazole starting material, a unique starting

15   material, that prior to the HEI specification, it

16   wasn't known that it could be reacted with the 7ACA

17   at the amide to generate the compounds that are the

18   final product of our claim.

19           JUDGE DELMONDO:  But two of these patents

20   do claim the compound that results from usual

21   now-claimed process of '216; right?  I believe you

22   conceded that on page 33 of your brief.

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

18

1    MR. MAEBIUS:  Yes, the final product of

2  the '216 process is substantially coextensive with

3  the two final product patents that are the subject

4  of the double patenting rejection.

5    JUDGE DELMONDO:  So in the examiner's

6  analysis it would be appropriate to take the

7  previously claimed compound as if it were prior art?

8    MR. MAEBIUS:  Well, for purposes of double

9  patenting the case law only authorizes the use of

10  the claim --

11    JUDGE DELMONDO:  Yes.

12    MR. MAEBIUS:  The existence of the

13  structural formula of those claims.

14    And we maintain that it is improper to

15  combine those two final product patents with the

16  starting material patent, because if you allow

17  double patenting based on multiple independent and

18  distinct patents, how are you going to allow

19  terminal disclaimers?

20    If patent A expires on one date, patent B

21  expires on another date, are you going to split the

22  difference and say it disclaims A at some point in

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

19

1  between?  Because the basis of the rejection is in

2  fact both patents.

3          And, I want to make one quick point about

4  Ex Parte --

5          JUDGE McKELVEY:  Mr. Maebius, there is a

6  lot of discussion here, but I am kind of a simple

7  guy.

8          What we have here is a starting material,

9  I am going to call it that.  And in part, though,

10  process patent precludes the use of that starting

11  material, isn't that right?

12          MR. MAEBIUS:  It precludes only one use of

13  the starting material.

14          JUDGE McKELVEY:  But it precludes in part

15  the process claim on appeal; 1, precludes use of the

16  compound that is part of the starting material, '899

17  patent?  I mean that is a yes or a no.

18          MR. MAEBIUS:  Yes.

19          JUDGE McKELVEY:  And it is also true,

20  isn't it, that the '606 patent or the disprocess

21  claim, precludes in part making some of the

22  compounds that are part the '606 patent, isn't

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL      20

1    that right?  Especially claim 15.

2            MR. MAEBIUS:  I don't agree that --

3            JUDGE McKELVEY:  Claim 15 -- go ahead --

4            MR. MAEBIUS:  I am sorry.  I don't agree

5    that it precludes making the compound.  It is only

6    precluding one way of making those compounds.

7            JUDGE McKELVEY:  Well, okay, but it is

8    precluding in part making the compounds by a method

9    described in the '606 patent.

10           MR. MAEBIUS:  Yes.

11           JUDGE McKELVEY:  Now, then, there is

12   another little issue here.  If you use the method of

13   this product or this process patent under

14   re-examination to make the product I will say in

15   Japan and you ship it into the U.S., because of the

16   271(g), the product, shipping it into the U.S.

17   causes infringement of this process claim.

18           MR. MAEBIUS:  That is correct.

19           JUDGE McKELVEY:  So in a sense the problem

20   continues to be use of the product in the

21   United States, from certain places continues the

22   life of the '606 patent, in part.

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

1      MR. MAEBIUS:  I agree.  But if that were

2   the test for double patenting basically every

3   process of making products would be subjected to

4   double patenting over every prior product patent,

5   whether or not there had been a restriction.

6      And that is why the case law --

7      JUDGE McKELVEY:  Well, wait a minute.  Why

8   is that so?  Why do you say that?

9      If it is the process described in the

10  product patent, then that is one thing, but what if

11  it is a new method of making the old compound that

12  is much more efficient?  Why would that be double

13  patenting?

14     MR. MAEBIUS:  Well, that could be the

15  subject of a completely separate patent application.

16  I think that relates to an improvement patent

17  situation.

18     But we filed a divisional to pursue one

19  process described in the final product patent for

20  making that final product, and the case law in Cady

21  and Phillips has always been that you wouldn't be

22  subjected to double patenting if it was an

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          22

1  independent and distinct process, there were other

2  ways to get to the final product.

3         So the public was free to make that final

4  product when the final product patent expired.

5         And, in this case --

6         JUDGE McKELVEY:  When was 271(g) enacted,

7  do you know off the top of your head?

8         MR. MAEBIUS:  I believe that was 1980 -- I

9  am sorry, '88, effective '89.

10        JUDGE McKELVEY:  '88, yes, okay.   '89,

11 okay.

12        MR. MAEBIUS:  I also want to point out the

13 examiner cited several cases including Geneva as

14 support for double patenting.  But although Geneva

15 did apply double patenting across different

16 statutory classes, the situation was different.

17        In that case the method -- there was a

18 method of use patent and the only use available for

19 the product was what was claimed in the method of

20 use patent.

21        So in that case effectively you were

22 extending the monopoly because there was no

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          23

1  alternative use involved.  Here we have alternative

2  uses of the starting material.

3          There is a citation in our brief to

4  Hatanaka, which is a reference of record, that shows

5  you can use the aminothiazole to make ampicillin

6  analogs.

7          And in addition to that, a different

8  examiner restricted the starting material patent

9  from the final product, pointing out that you could

10  use the starting material to make herbicides, and

11  that is mentioned on page 18 of our brief.

12          So, not only do you have the alternative

13  way of making the final product, you also have

14  alternative uses of the starting material to make

15  different things that are outside the scope of our

16  process.

17          There is a second --

18          JUDGE McKELVEY:  Well, in those cases,

19  could the applicant have -- did the applicant

20  present these claims in a single application?

21          MR. MAEBIUS:  In the starting material

22  patent, is that what you are referring to?

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL          24

1          JUDGE McKELVEY: Right.  I mean, what

2    happens here is, in large measure, since there is no

3    testimony on which is the most efficient method of

4    making these final cephems, I didn't find that in

5    Dr. Wuest's declaration, but --

6          (Interruption of the Tele Video

7    conferencing circuit.)

8          JUDGE McKELVEY: Okay, I am back on here.

9          MR. MAEBIUS: Yes, we got cut off in the

10   middle of your last question.

11         (The pending colloquy was read back by the

12   reporter.)

13         McKELVEY: I can go from there.  The

14   question I have from counsel is, is there any

15   testimony or evidence about which of these processes

16   is more likely to be used by one skilled in the art?

17         MR. MAEBIUS: We have no information in

18   that regard.

19         JUDGE McKELVEY: And which one might be

20   more efficient?

21         MR. MAEBIUS: We have no information in

22   that regard either.

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL    25

1    What we do know is that the cases leading

2    to the Ochiai patent were transferred to the Wegner

3    law firm in 1989 -- in 1979 they were transferred to

4    the Wegner firm to pursue the prosecution of the

5    final products.

6    And that in 1989, according to the

7    declaration that is in the record from Takeda's

8    in-house counsel that that is when the Wegner firm

9    explained the significance of the process patent

10    protection in the United States, in the aftermath of

11    the enactment of 271(g), and it was at that point

12    when Takeda considered pursuing the process of

13    manufacture claim.

14    JUDGE McKELVEY:  But it could have been

15    pursued earlier.

16    MR. MAEBIUS:  Yes, they could have been

17    filed earlier.

18    JUDGE McKELVEY:  So, Takeda's decision to

19    wait now imposes a burden on the public?

20    MR. MAEBIUS:  Well, I think to some extent

21    it is the public has the availability of the

22    alternative process, but we concede that the claims

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

26

1  could have been presented earlier.

2  JUDGE McKELVEY:  Well, do you contend that

3  because there never can be double patenting of a

4  process claim based on a composition or compound

5  claim made by that process?

6  MR. MAEBIUS:  Only in the instance when

7  there are not available alternative methods to make

8  that product.  In the Cady case that we cite in our

9  brief, the court states we are in agreement with the

10  appellants that the legal precedents are uniformly

11  to the effect that double patenting is not

12  sustainable when the product can be fabricated by

13  processes other than that secured by the issued

14  process patent.

15  And that decision was followed in the

16  Phillips case which we cite in our brief as well.

17  JUDGE McKELVEY:  Okay, thank you.

18  MR. MAEBIUS:  I also want to briefly

19  mention that the declaration of Dr. Wuest contains

20  arguments against the question of prima facie

21  obviousness in the form of showing the potentially

22  competing side reaction that would have prevented

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

27

1  someone from having a reasonable expectation of

2  success, given the complexity of the starting

3  material, the aminothiazole compound.

4       Even in the presence of the various five

5  different references cited by the examiner, a person

6  of ordinary skill still would not have had a

7  reasonable expectation of success because those

8  references didn't deal with an aminothiazole

9  starting material.

10       So, in addition to the expedient and

11  distinct argument we are making here, we want to

12  point out the lack of obviousness or the absence of

13  a reasonable expectation of success.

14       There is a second rejection in this case

15  that is also double patenting, that the examiner

16  says is a non-obviousness double patenting

17  rejection.

18       And after we argued in our brief initially

19  this rejection was based on Schneller, and after we

20  argued that Schneller was inapplicable, in the

21  examiner's answer the rejection is still being

22  maintained, but there is no authority cited in

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

28

1    support of the rejection anymore.

2            So, given that double patenting rests

3    entirely on judicially created precedent, we don't

4    know at this point what case the examiner is relying

5    upon for non-obviousness double patenting.

6            But, regardless of what authority there

7    is, to the extent it is based on unjustified delay,

8    we have been pointing to the declaration of Hirofumi

9    Usami, the in-house Takeda counsel, as the

10   explanation for why these process claims were not

11   initially pursued in the U.S.

12           And we have also cited the Waddlinger case

13   in our appeal brief for the proposition that

14   applicants are entitled to retroactively take

15   advantage of changes in the law without penalty.

16           So in conclusion, I just want to

17   emphasize, there is no wholesale extension of the

18   monopoly of either the final product patents or the

19   starting material patents in this case because we

20   have established the existence of an independent way

21   of making the final product as well as independent

22   ways of using the starting material.

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

29

1    We have relied on a declaration that

2    provides further support for the alternative

3    process, just as the applicants did in In re: Cady.

4    And that concludes my argument.

5    I will take any further questions, if

6    there are any.

7    JUDGE McKELVEY:  I don't have any more.

8    JUDGE HANLON:  Okay, thank you.

9    JUDGE DELMONDO:  Yes, I have just got one

10    question, which is that you were saying that if

11    Takeda had this process claim, process of making

12    this compound, and there was an importer who brought

13    the same product, but made by a different process,

14    then Takeda would not have an infringement action.

15    Is that your -- legally they would not

16    have an infringement action against them, that is

17    right?

18    MR. MAEBIUS:  That is correct.

19    JUDGE HANLON:  Okay.  Thank you.

20    MR. MAEBIUS:  Thank you.

21    JUDGE HANLON:  That concludes the hearing. —

22    (Whereupon, at 4:24 p.m., the hearing was

THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL

30

1    concluded.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

- June 26, 2006
In Re: Merged re-examinations of U.S. Pat. No. 5,583,216 issued December 10, 1996

Page 31

**A**

able 13:12
about 11:15 13:20
  19:3 24:15
absence 27:12
according 25:6
acid 5:19
across 22:15
act 9:20
action 29:14,16
actually 6:3 8:17
  16:6
addition 10:2,21
  23:7 27:10
additional 7:16,18
  15:6
addressed 14:14
ADRIENE 1:11
advantage 28:15
afforded 12:12
after 11:22 27:18
  27:19
aftermath 25:10
against 26:20 29:16
agree 20:2,4 21:1
agreement 26:9
ahead 20:3
allow 18:16,18
almost 14:5
along 11:13
already 12:12
alternative 8:1,2
  11:16,17 12:4,10
  13:6 14:21 23:1,1
  23:12,14 25:22
  26:7 29:2
although 22:14
always 17:3 21:21
amide 5:19 17:17
aminothiazole 5:18
  8:9 17:14 23:5
  27:3,8
amino-cephalosp...
  5:19
ampicillin 23:5
analogs 23:6
analysis 14:13
  16:13 18:6
another 18:21
  20:12
answer 27:21
anymore 28:1
anything 7:21
appeal 3:9,21 4:1
  4:15,16 5:17 6:10

6:22 19:15 28:13
appeals 3:7
APPEARANCES
  2:1
Appellant 2:9
appellants 26:10
applicant 23:19,19
applicants 28:14
  29:3
applicant's 10:22
application 21:15
  23:20
apply 22:15
appropriate 18:6
area 10:5
argued 7:20 16:22
  27:18,20
arguing 3:6,7
argument 3:11
  12:7 15:19 27:11
  29:4
arguments 26:20
art 10:18 16:2,3
  18:7 24:16
aspect 15:12
attack 14:3
attempted 11:12
authority 27:22
  28:6
authorizes 15:15
  18:9
availability 25:21
available 12:3
  22:18 26:7
aware 15:14

**B**

B 2:3 18:20
back 7:14 24:8,11
based 13:3 17:11
  18:17 26:4 27:19
  28:7
basic 5:17 12:14
  13:2 14:2 16:11
basically 7:10 21:2
basis 4:5 5:2 6:4
  11:19 15:1,21
  19:1
bat 6:17
before 1:11 3:11
  12:13
beg 3:3
behalf 2:9
being 14:16 15:18
  15:20 16:8,13
  27:21

believe 17:21 22:8
benefit 5:13
Bernhardt 16:7
between 12:15,18
  19:1
beyond 7:19,21
blown 6:6
board 14:20 15:9
bogus 14:8
both 3:7 17:3 19:2
boundary 14:6
box 5:20 6:6
brief 3:21 4:1 12:7
  17:22 23:3,11
  26:9,16 27:18
  28:13
briefly 26:18
brought 29:12
burden 25:19

**C**

C 3:1 7:15
Cady 13:14 14:1
  21:20 26:8 29:3
calendar 3:6
call 19:9
called 6:13
carried 8:18
case 10:2,10,11
  15:4 18:9 21:6,20
  22:5,17,21 26:8
  26:16 27:14 28:4
  28:12,19
cases 9:22 13:14,15
  13:16 14:1,10
  22:13 23:18 25:1
causes 20:17
cephem 5:18 7:7
cephems 24:4
certain 20:21
changes 28:15
characterized 7:11
chemical 10:5,18
circuit 24:7
circumstances
  13:21
citation 15:10 23:3
cite 26:8,16
cited 15:16,10,20
  22:13 27:5,22
  28:12
cites 15:9
claim 5:19 9:22
  17:18,20 18:10
  19:15,21 20:1,3
  20:17 25:13 26:4

26:5 29:11
claimed 5:16 6:9
  12:10,19 17:13
  18:7 22:19
claims 4:16 9:11,15
  10:5,13,16 11:1
  11:12,13 18:13
  23:20 25:22
  28:10
classes 22:16
clear 17:4
clearly 16:16
coextensive 18:2
colleagues 5:13
collectively 17:7
colloquy 24:11
column 7:6,14
combination 15:13
combine 18:15
combined 4:13
  15:17,19,20 16:8
  16:13
committing 9:20
competing 26:22
completely 3:15
  21:15
complexity 27:2
composition 26:4
compound 7:8,8,9
  8:9 9:11 11:13
  17:20 18:7 19:16
  20:5 21:11 26:4
  27:3 29:12
compounds 12:11
  17:17 19:22 20:6
  20:8
comprises 7:8
concede 11:4,8,14
  25:22
conceded 17:22
concluded 30:1
concludes 29:4,21
conclusion 28:16
conferencing 24:7
connection 16:10
considered 3:13,17
  9:8 25:12
contains 26:19
contend 26:2
context 13:20
continues 20:20,21
copy 5:11
correct 10:15 11:4
  13:22 20:18
  29:18
counsel 24:14 25:8

28:9
course 6:11
court 14:12,19 26:9
courts 14:4
create 5:19
created 9:17 10:3
  28:3
credibility 8:21
critical 17:12
criticized 8:16 9:1
  11:16 15:4
cross 12:21 14:7
cut 24:9

**D**

D 3:1
date 18:20,21
dates 15:16
DC 1:15
deal 13:16 27:8
dealing 17:10
December 1:7
decision 10:18,19
  14:20 15:8,9
  25:18 26:15
decisions 10:16
declaration 6:14
  8:4,13 10:6 15:6
  24:5 25:7 26:19
  28:8 29:1
defense 15:11
defining 13:4
delay 28:7
DELMENDO 1:12
DELMONDO 12:6
  12:17 13:16,19
  17:19 18:5,11
  29:9
described 6:3,18
  7:14,21 8:18 20:9
  21:9,19
description 7:19
  15:5
detailed 14:13
difference 18:22
different 5:1 15:16
  22:15,16 23:7,15
  27:5 29:13
disclaimers 18:19
disclaims 18:22
disclosed 14:16
disclosure 7:17
disclosure 7:17
discuss 3:12
discussion 19:6
displacement 5:22
  6:2,12 7:10,19

CONFIDENTIAL MATERIAL
Ace-Federal Reporters, Inc.

202-347-3700                                                                                    800-336-6646

- June 26, 2006
In Re: Merged re-examinations of U.S. Pat. No. 5,583,216 issued December 10, 1996

8:7
disprocess 19:20
dispute 8:21
distinct 4:20,22 6:9
  9:11 13:4,7 15:15
  18:18 22:1 27:11
divisional 21:18
doing 16:6
DONALD 1:22
double 4:5,14
  11:19 12:22
  14:22 15:1,11,12
  15:17 16:2,3 18:4
  18:8,17 21:2,4,12
  21:22 22:14,15
  26:3,11 27:15,16
  28:2,5
Dr 6:14 8:4,14,22
  12:5 24:5 26:19
draw 9:4
drawn 14:7
Durden 10:3,20
during 6:11 8:3
  10:18
D.C 2:7

**E**

E 3:1,1
earlier 4:17 6:5
  25:15,17 26:1
earnest 9:15
easiest 5:6
easy 4:8
effect 26:11
effective 22:9
effectively 22:21
efficient 21:12 24:3
  24:20
either 4:17 16:22
  24:22 28:18
element 17:13
Elmo 5:6
emphasize 28:17
enacted 22:6
enactment 9:16
  25:11
ends 4:10
engaged 14:13
enjoy 14:9
entirely 28:3
entitled 28:14
environment 10:4
erased 14:5
Especially 20:1
ESQ 2:3
established 13:13

28:20
even 12:21 14:15
  27:4
every 21:2,4
evidence 24:15
Ex 14:20 15:9 19:4
examiner 3:13,17
  6:8 7:11 8:16,20
  9:1 11:16 15:4
  16:1,6,9,15 17:5
  22:13 23:8 27:5
  27:15 28:4
examiner's 16:13
  17:2 18:5 27:21
example 14:12
existence 16:16,17
  18:12 28:20
expectation 27:1,7
  27:13
expected 8:15
expedient 27:10
expert 6:13 8:21
expiration 13:11
  15:16
expired 11:22 22:4
expires 18:20,21
explained 6:15 25:9
explanation 28:10
extend 4:16 12:11
extending 22:22
extension 13:8,20
  28:17
extent 14:5 25:20
  28:7

**F**

fabricated 26:12
facie 26:20
fact 11:17 12:9
  13:21 19:2
facts 10:20
few 11:22
figure 3:14,15,16
  3:17 5:16 6:7,20
figures 3:12,12
filed 10:1 21:18
  25:17
final 4:4,7,14,18,19
  5:2 13:11 16:17
  16:22 17:11,18
  18:1,3,15 21:19
  21:20 22:2,3,4
  23:9,13 24:4 25:5
  28:18,21
find 7:4 9:9 24:4
finding 15:1

firm 25:3,4,8
first 9:16 10:1 14:9
five 4:12 16:18,20
  27:4
FOLEY 2:4
followed 26:15
footnote 15:8
foreign 10:21
form 11:3 13:17
  26:21
formula 18:13
forward 3:15
Fred 1:13 5:9
free 22:3
freely 12:3
from 6:9,14 9:11
  10:21 14:6,20
  17:4,5,20 20:21
  23:9 24:13,14
  25:7 27:1
full 4:19
fully 14:15
further 6:14 29:2,5

**G**

G 3:1
generate 17:17
Geneva 22:13,14
getting 13:10
given 10:17 27:2
  28:2
go 3:15 20:3 24:13
going 3:5,7 4:3,6
  18:18,21 19:9
granted 10:16
grounds 16:7
guy 19:7

**H**

HANLON 1:11 3:3
  3:5,10,16,19,22
  5:9 29:8,19,21
happens 24:2
Harbour 2:5
Hatanaka 23:4
having 13:8 27:1
head 22:7
hearing 1:9 29:21
  29:22
HEI 17:15
held 14:10
herbicides 23:10
Hirofumi 28:8
history 6:5 9:6,14
Hogan 14:20 15:9
hooks 16:1,2,4

**I**

immunity 14:9
imported 9:18
importer 29:12
imposes 25:19
improper 18:14
improvement
  21:16
inapplicable 27:20
incentive 9:21
  10:17 11:1
include 15:5
including 13:14
  22:13
independent 4:20
  4:22 5:22 6:8
  13:4,7 15:15
  18:17 22:1 28:20
  28:21
information 24:17
  24:21
infringement 9:20
  20:17 29:14,16
initially 27:18
  28:11
inquiry 14:22
instance 26:6
instead 16:14
Interruption 24:6
intimidate 10:9
intimidating 10:4
involved 23:1
in-house 25:8 28:9
issue 20:12
issued 1:7 7:5 12:1
  26:13

**J**

James 6:14
Japan 20:15
judge 1:11,12,13
  3:3,5,10,16,19,22
  5:7,9,11 6:16 7:1
  7:13 9:2 10:8
  11:7,11 12:6,17
  13:16,19 15:18
  15:22 16:12
  17:19 18:5,11
  19:5,14,19 20:3,7
  20:11,19 21:7
  22:6,10 23:18
  24:1,8,19 25:14
  25:18 26:2,17
  29:7,8,9,19,21
judicial 10:14

judicially 28:3
jump 5:4
June 1:16
just 3:11 4:6 17:8
  28:16 29:3,9

**K**

K 2:6
kind 19:6
know 7:3 13:20
  22:7 25:1 28:4
known 17:16

**L**

lack 15:1 27:12
laid 13:3
LARDNER 2:4
large 5:8 24:2
Larsen 10:13
last 24:10
later-developed
  14:15,21 15:10
law 9:17 10:2 18:9
  21:6,20 25:3
  28:15
lead 11:5
leading 25:1
least 10:11
left 5:16 9:10
legal 26:10
legally 29:15
Let 9:2
let's 10:8 17:8
life 20:22
let 3:12 14:1 15:22
likely 24:16
line 12:22 13:14
  14:7
lines 7:6
little 20:12
LLP 2:4
location 7:3
long 13:13
lot 19:6

**M**

machine 5:7
made 4:19 9:19
  26:5 29:13
Maebius 2:3 3:2,2
  3:4,4,8,14,18,20
  4:3 5:14 6:21 7:2
  7:16 9:13 10:15
  11:10,14 12:6,14
  12:20 13:18,22
  15:21 16:9,15

- June 26, 2006
In Re: Merged re-examinations of U.S. Pat. No. 5,583,216 issued December 10, 1996

Page 33

18:1,8,12 19:5,12
19:18 20:2,4,10
20:18 21:1,14
22:8,12 23:21
24:9,17,21 25:16
25:20 26:6,18
29:18,20
maintain 18:14
maintained 27:22
make 4:7 5:1 8:5
11:15 12:10 13:6
15:7 19:3 20:14
22:3 23:5,10,14
26:7
making 14:21
19:21 20:5,6,8
21:3,11,20 23:13
24:4 27:11 28:21
29:11
manufacture 12:15
13:5 25:13
manufacturing
9:15
material 4:9,11,13
4:17,21 8:6,9
11:18,18,22 12:3
16:17 17:1,9,14
17:15 18:16 19:8
19:11,13,16 23:2
23:8,10,14,21
27:3,9 28:19,22
matter 12:20
maybe 9:7
McKELVEY 1:13
5:11 6:16 7:1,13
9:2 10:8 11:7,11
15:18,22 16:12
19:5,14,19 20:3,7
20:11,19 21:7
22:6,10 23:18
24:1,8,13,19
25:14,18 26:2,17
29:7
mean 19:17 24:1
meaningful 9:17
11:3
measure 24:2
mention 26:19
mentioned 23:11
merged 1:4 3:8
method 4:22 13:10
20:8,12 21:11
22:17,18,19 24:3
methods 26:7
middle 24:10
might 24:19

minute 21:7
missing 17:12
monopoly 4:17
12:11 13:9 22:22
28:18
months 11:22
more 21:12 24:16
24:20 29:7
most 24:3
MPEP 13:3
much 21:12
multiple 15:14
18:17

**N**

N 3:1
never 8:20 26:3
new 21:11
non-obviousness
27:16 28:5
notorious 10:18
novel 17:1,2
now-claimed 17:21
nucleophilic 7:9
number 3:6
N.W 2:6

**O**

O 3:1
obtain 11:13
obviousness 4:14
26:21 27:12
occurs 8:8
Ochiai 10:11,19
12:1 15:4 25:2
off 6:17 22:7 24:9
OFFICE 1:1
off-site 5:7
of/or 16:14
okay 3:10,16,22
5:14 7:2 20:7
22:10,11 24:8
26:17 29:8,19
old 21:11
one 5:20 7:8 13:10
13:17 14:13 15:3
18:20 19:3,12
20:6 21:10,18
24:16,19 29:9
only 11:22 13:9
16:20 17:10 18:9
19:12 20:5 22:18
23:12 26:6
opinion 8:22
opposed 16:14
ordinary 27:6

original 3:20,22
7:20 10:19
oscillation 16:21
other 4:12 11:6,15
13:12,15 15:3,12
16:18,20 17:12
22:1 26:13
otherwise 7:13
out 6:1 8:18 9:10
11:21 13:3 14:7
17:9 22:12 23:9
27:12
outside 5:1 23:15
over 12:21 14:7
21:4
overseas 9:19
own 6:3

**P**

P 3:1
page 17:22 23:11
papers 7:4,20
paragraph 7:15
pardon 3:3
part 6:7 11:19 19:9
19:14,16,21,22
20:8,22
Parte 14:20 15:9
19:4
particular 9:11
Pat 1:6
patent 1:1 4:9,10
4:11,15 5:17 6:10
6:19,21,22 7:1,5
7:14 8:19 9:4
10:10 11:5,19,22
12:1 13:1,9,12
16:2,3 17:10,11
18:16,20,20
19:10,17,20,22
20:9,13,22 21:4
21:10,15,16,19
22:4,18,20 23:8
23:22 25:2,9
26:14
patentable 9:8
patenting 4:5 11:20
13:10 14:22 15:2
15:11,12,17 18:4
18:9,17 21:2,4,13
21:22 22:14,15
26:3,11 27:15,16
28:2,5
patents 4:4,7,14,18
4:18 5:2 6:5 9:18
15:14,16 17:19

18:3,15,18 19:2
28:18,19
pathway 5:22 8:1
12:4
penalty 28:15
pending 24:11
penicillin 8:10,12
penultimate 6:2
7:22
people 10:12
perhaps 10:3
permitted 14:18
person 27:5
perspective 10:22
Phillips 13:14 14:1
14:12,19 15:8,8
21:21 26:16
picture 5:12
place 14:9
places 20:21
Pleuddemann 10:9
10:10 11:5
point 6:1 8:22 11:6
11:15,21 12:2
15:7 18:22 19:3
22:12 25:11
27:12 28:4
pointing 14:6 23:9
28:8
poster 5:4,8,8,12
potentially 26:21
precedent 13:4
15:14 28:3
precedents 26:10
precedes 10:10
precludes 19:10,12
19:14,15,21 20:5
precluding 20:6,8
preference 5:10
prepared 3:15
preparing 7:7
presence 27:4
present 23:20
presented 26:1
prevented 26:22
previously 12:10
18:7
prima 26:20
prior 16:1,3,17:15
18:7 21:4
problem 20:19
process 4:20 5:16
6:2,3,9,9,12,18
6:19 7:7,19 8:2,7
8:15,16 9:10,14
9:18,19,22 10:4

10:16 11:1,5,12
11:16,17 12:1,15
12:19 13:5,7
14:15,16,21
17:13,21 18:2
19:10,15 20:13
20:17 21:3,9,19
22:1 23:16 25:9
25:5,12,22 26:4,5
26:14 28:10 29:3
29:11,11,13
processes 9:3,7
12:10 15:10
24:15 26:13
product 4:4,7,14
4:18 5:2,20 9:18
12:18 13:5,6,9,12
16:18,22 17:11
17:18 18:1,3,15
20:13,14,16,20
21:4,10,19,20
22:2,4,4,19 23:9
23:13 26:8,12
28:18,21 29:13
products 4:19 5:1
21:3 25:5
proposition 28:13
prosecution 8:3
9:14 25:4
protection 9:17
11:3 12:12 13:17
14:6 25:10
provide 11:2
provided 8:20
provides 29:2
public 12:3 13:11
22:3 25:19,21
purpose 16:21
purposes 18:8
pursue 9:21 11:1
21:18 25:4
pursued 9:15 10:12
25:15 28:11
pursuing 25:12
pursuit 10:4
put 9:3,9 11:8,12
p.m 29:22

**Q**

question 6:13,16
9:2 14:2 24:10,14
26:20 29:10
questioned 8:3
questions 29:5
quick 19:3

CONFIDENTIAL MATERIAL
Ace-Federal Reporters, Inc.

- June 26, 2006
In Re: Merged re-examinations of U.S. Pat. No. 5,583,216 issued December 10, 1996

Page 34

| R | | | | |
|---|---|---|---|---|
| **R** 1:22 3:1 | 12:22 14:2,7,8,8 | 25:20 | Tele 24:6 | 23:10 |
| re 1:4 10:3,13,19 | 21:5 | someone 27:1 | **Teleconference** | used 4:22 12:4 |
| 13:14 29:3 | rests 28:2 | sorry 20:4 22:9 | 1:13 | 24:16 |
| **reactant** 8:5 | results 8:5 17:20 | sound 13:3 | tell 3:19 | uses 11:17 16:9 |
| reacted 17:16 | retroactively 28:14 | so-called 10:13 | terminal 18:19 | 17:6 23:2,14 |
| reacting 7:8 8:8 | review 10:14 | specification 6:4 | test 12:14 13:2 21:2 | using 16:5 28:22 |
| reaction 5:17 6:1 | **re-examination** | 7:21 8:19 15:5 | testimony 24:3,15 | usual 17:20 |
| 7:11 16:21 17:2 | 6:12 20:14 | 17:15 | tests 14:14 | utilized 8:6 |
| 26:22 | **re-examinations** | split 18:21 | **THACKER** 1:22 | U.S 1:9 9:17 10:1 |
| read 24:11 | 1:5 | start 3:11 | thank 3:10 4:1 5:14 | 11:1 20:15,16 |
| ready 4:2 | right 5:4,21 6:16 | starting 4:9,11,13 | 26:17 29:8,19,20 | 28:11 |
| real 9:21 | 6:19 7:4 12:20 | 4:17,21 8:6,8 | thereof 7:9 | |
| really 13:8 16:6 | 17:21 19:11 20:1 | 11:18,18,21 12:2 | thing 21:10 | **V** |
| **rearrangement** | 24:1 29:17 | 16:16 17:1,9,14 | things 15:3 23:15 | various 27:4 |
| 8:11,13 | **ROMULO** 1:12 | 17:14 18:16 19:8 | think 13:13 17:4 | very 10:17,22 |
| reasonable 27:1,7 | | 19:10,13,16 23:2 | 21:16 25:20 | 14:13 |
| 27:13 | **S** | 23:8,10,14,21 | though 7:14 14:15 | via 1:13 |
| record 7:4 17:4 | **S** 3:1 | 27:2,9 28:19,22 | 19:9 | Video 24:6 |
| 23:4 25:7 | salt 7:9 | statement 17:5 | three 16:7 | |
| refer 4:3,7 | same 29:13 | states 1:1 7:7 20:21 | time 9:17,22 12:2 | **W** |
| reference 23:4 | saying 16:7,14 | 25:10 26:9 | 14:16 | Waddlinger 28:12 |
| references 4:12 | 29:10 | statutory 22:16 | today 4:3 12:8 | wait 21:7 25:19 |
| 8:14,21 16:10,19 | says 16:2 27:16 | step 6:2 7:22 | together 16:17,18 | want 5:4,12 6:1 |
| 16:20 17:7,12 | scheme 7:22 | **STEPHEN** 2:3 | 17:11 | 11:15,21 19:3 |
| 27:5,8 | Schneller 27:19,20 | steps 8:17 15:6 | top 6:6 8:10 22:7 | 22:12 26:18 |
| referring 4:10 | scope 4:19 5:1 | Steve 3:2,4 | **TRADEMARK** | 27:11 28:16 |
| 23:22 | 12:12 23:15 | still 27:6,21 | 1:1 | wanted 11:6 15:7 |
| regard 24:18,22 | second 6:19 23:17 | Street 2:6 | transferred 25:2,3 | **Washington** 1:15 |
| regardless 28:6 | 27:14 | strong 10:22 | tried 11:9 | 2:5,7 |
| rejecting 16:8 | Section 9:5 14:6,10 | structural 18:13 | true 19:19 | wasn't 9:21 10:17 |
| rejection 4:6,15 5:3 | secured 26:13 | structure 16:18 | trying 7:4 12:7 | 10:22 14:15 |
| 11:20 14:17 | see 7:16 10:8 | subject 18:3 21:15 | two 4:4 17:19 18:3 | 17:16 |
| 15:13,17 17:6,10 | seems 15:22 16:5 | subjected 14:17 | 18:15 | way 8:11 13:6,12 |
| 18:4 19:1 27:14 | sense 20:19 | 21:3,22 | type 13:21 | 20:6 23:13 28:20 |
| 27:17,19,21 28:1 | separate 21:15 | submitted 8:3 10:7 | | ways 8:5 22:2 |
| relate 4:4 | several 8:14 22:13 | substantially 18:2 | **U** | 28:22 |
| relates 21:16 | ship 20:15 | success 8:2 17,13 | under 8:12 14:3 | Wegner 27:2,4,8 |
| relevant 14:22 | shipping 20:16 | successful 10:13 | 20:13 | well 10:8 12:14 |
| relied 17:7 29:1 | show 8:4,15 16:12 | sulfoxide 8:10,12 | undergoes 8:12 | 14:5 15:18,21 |
| rely 17:3 | showing 16:21 | summary 5:15 | understand 9:6 | 16:12,15 18:8 |
| relying 9:5 14:19 | 26:21 | support 22:14 28:1 | 12:7 15:19 | 20:7 21:7,14 |
| 16:16 28:4 | shown 5:20 7:22 | 29:2 | **understanding** | 23:18 25:20 26:2 |
| **REPORTED** 1:21 | 8:10 12:5 15:6 | supported 8:14 | 9:13 | 26:16 28:21 |
| reporter 24:12 | shows 23:4 | supporting 15:10 | uniformly 26:10 | were 8:4,18 9:7,15 |
| requirement 6:7 | side 5:16,21 26:22 | suppose 17:9 | unique 15:13 17:14 | 9:22 10:12,13 |
| 9:4 | significance 25:9 | sure 7:18 | **United** 1:1 20:21 | 13:19 17:10 18:7 |
| requirements 14:2 | significant 10:17 | sustainable 26:12 | 25:10 | 21:1 22:1,21 25:2 |
| respect 12:11 | simple 19:6 | | unjustified 28:7 | 25:3 28:10 29:10 |
| rest 11:2 | since 24:2 | **T** | unlike 11:2 | weren't 9:3,9 |
| restricted 10:19 | single 3:9 23:20 | take 18:6 28:14 | unobvious 17:1,2 | wholesale 13:8 |
| 14:4 23:8 | situation 21:17 | 29:5 | until 9:16 10:18 | 28:17 |
| restricting 12:15 | 22:16 | Takeda 25:12 28:9 | Usami 28:9 | word 16:9 17:6 |
| restriction 6:4,7 | skill 27:6 | 29:11,14 | use 5:6,7,12 15:15 | work 8:15 |
| 7:12 9:4 12:18,21 | skilled 24:16 | Takeda's 25:7,18 | 18:9 19:10,12,15 | world 11:2 |
| | some 9:7 14:5 16:1 | takes 16:1,2 | 20:12,20 22:18 | wouldn't 11:8 |
| | 16:3 18:22 19:21 | talking 13:19 | 22:18,20 23:1,5 | 21:21 |

- June 26, 2006
In Re: Merged re-examinations of U.S. Pat. No. 5,583,216 issued December 10, 1996

Page 35

| | |
|---|---|
| **Wuest** 6:14 8:4,14 8:16,22 12:5 15:6 26:19 **Wuest's** 24:5 | **899** 4:10 11:19 16:2 19:16 |
| **1** | **9** |
| **1** 3:12,16,17 5:4,16 19:15 **10** 1:7 **121** 9:6 14:6,10 **15** 20:1,3 **18** 23:11 **1979** 25:3 **1980** 22:8 **1989** 25:3,6 **1996** 1:7 | **9** 7:8 |
| **2** | |
| **2** 3:6,12,14,15 5:18 7:6 **20007-5143** 2:7 **2006** 1:16 **202-672-5300** 2:8 **216** 4:16 6:10,22 8:19 12:1 17:21 18:2 **26** 1:16 **271(g)** 9:16 20:16 22:6 25:11 | |
| **3** | |
| **3000** 2:6 **33** 7:6 17:22 **35** 7:6 | |
| **4** | |
| **4:24** 29:22 **49** 15:8 | |
| **5** | |
| **5,583,216** 1:6 | |
| **6** | |
| **606** 4:6 6:19,21 7:1 7:5 8:19 9:4,12 11:13 16:1 19:20 19:22 20:9,22 | |
| **7** | |
| **7ACA** 8:13 17:16 | |
| **8** | |
| **8** 7:14 **88** 22:9,10 **888** 4:6 16:3 **89** 22:9,10 | |

CONFIDENTIAL MATERIAL

## CERTIFICATE OF NOTARY PUBLIC & REPORTER                 36

I, DONALD R. THACKER, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn; that the testimony of said witness was taken in shorthand and thereafter reduced to typewriting by me or under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Notary Public in and for the
District of Columbia

My Commission Expires:          MAY 14, 2011