**Defendant's Exhibit 21**

SPECIAL DISPATCH REQUIRED
PATENT
Attorney Docket Nos. 087147-0265 & 087147-0416

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**In re merged reexaminations of U.S. Pat. No. 5,583,216, issued December 10, 1996**

| | |
|---|---|
| Attorney Docket Nos. 087147-0265 | 087147-0416 |
| Reexamination No. 90/004,950 | Reexamination No. 90/005,200 |
| Date Filed: April 3, 1998 | Filed: December 22, 1998 |
| U.S. Patent No. 5,583,216 | Group Art Unit: 1611 |
| Issued: December 10, 1996 | Examiner: Emily Bernhardt |

Entitled:   METHODS FOR THE MANUFACTURE OF CEPHEMS

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## DECLARATION OF

## HIROFUMI USAMI

### UNDER 37 CFR § 1.132

HIROFUMI USAMI declares and states:

1. THAT, he graduated from the Faculty of Pharmacy of what today is styled as the Kyoto Pharmaceutical University, Kyoto, Japan in March 1972;

2. THAT, he is a resident of 3-1-32-502, Kitamidorigaoka, Toyonaka city, Osaka, Japan.

3. THAT, he is and has been a member of the intellectual property department (or its predecessor Patent and Licensing Department) of Takeda Pharmaceutical Company Limited (renamed in 2004 from the former name of Takeda Chemical Industries, Ltd.) in Juso, Osaka, Japan ("Takeda"), continuously from April 1, 1972, and THAT, he was involved with the preparation of the text of the original United States application serial no. 642,356, that was filed on December 19, 1975 (sometimes hereinafter referred to as

1251734_1.DOC

Attorney Docket Nos. 087147-0265 & 087147-0416
Reexamination Nos. 90/004,950 and 90/005,200

the "Ultimate Parent"), and the prosecution of the Ultimate Parent and all subsequent applications and patents claiming priority thereon under 35 USC § 120 up to and through January 8, 1990 (with the time period including the preparation of the Ultimate Parent up through January 8, 1990 sometimes hereinafter being referred to as the "Relevant Period" and with the Ultimate Parent and all continuing applications claiming priority thereon under 35 USC § 120 being collectively referred to as the "Ochiai Family").

4. THAT, throughout the Relevant Period to February 1, 1984, he served for Takeda as a staff member and thereafter as Assistant Manager of the intellectual property department.

5. THAT, at all times during the Relevant Period he was directly involved in the preparation, procurement and related claiming strategies for the Ochiai Family, that was originally entrusted to John T. Miller of Wenderoth, Lind & Ponack.

6. THAT, the files of the Ochiai Family were transferred in 1979 to Harold C. Wegner and his firm – collectively hereinafter the "Wegner Firm" which includes for references up through September 30, 1980, to the firm of Stevens, Davis, Miller & Mosher, and thereafter until the end of the Relevant Period to the firm of Wegner & Bretschneider, and that the underlying facts in this case in terms of specific references to file histories in the Ochiai Family have been provided by Harold C. Wegner.

7. THAT, during the entire period of time of the preparation and pendency of the Ochiai Family prior to the transfer to the Wegner Firm in 1979 he was involved in the preparation and prosecution of the Ochiai Family, including preparation of the draft of the Ultimate Parent.

8. THAT, the principal reason for the time of the pendency of prosecution of Ochiai Family before the filing of the instant case was due to the controversy over the original definition of the 3-"tail" position on the cephem nucleus of the overall compounds –

[Chemical structure diagram showing a cephem compound with substituents $H_2N$, $R^8$, $R^3$, $NR^5$, $CH_2R^4$, COOH, labeled "Cephem"]

where the original claim 1 of the Ultimate Parent at page 81 of the original application is directed to compounds inclusive of those pictured above and wherein said original claim 1 has as the substituent at the 3- "tail" position the grouping nominated as —

$$-CH_2R^4$$

"wherein *** $R^4$ represents hydrogen or a residue of a nucleophilic compound[.]".

9. THAT, Takeda, throughout the period of time that the applications leading to the present application that the Ochiai Family has been prosecuted, has always recognized the generic patentability of its technology wherein the 3-tail position could have the broad substitution defined by

$$-CH_2R^4$$

and that, indeed, in the Ultimate Parent as filed coverage for the 3-tail position was sought that was *identical* in scope to the instant definition in the application as filed as seen, *inter alia*, from original claim 1 in the Ultimate Parent as filed.

10. THAT, despite the clear recognition by the Examiner in the prosecution of the Ultimate Parent and throughout prosecution in the Relevant Period that the technology broad enough to encompass the original and present definition of the 3-tail position was fully patentable over the prior art, various technical reasons were used to

3

Printed 10/03/2006     REM     90005200

deny claims of this generic scope which were neither supported in law nor in practice and ultimately were withdrawn not later than 1989.

11. THAT, the first reason to deny the broad coverage was that claims with the broad definition did not comply with 35 USC § 121 because of a "misjoinder" of plural, patentably distinct inventions.

12. THAT, the first misjoinder rejection was entered into the Ultimate Parent prosecution based upon a restriction requirement amongst four groups of compounds:

"I. Compounds where $R^3$ is H and $R^4$ is *acetoxy* or H[.]"

"II. Compounds where $R^3$ is –$OCH_3$ and $R^4$ is *heterothio*[.]"

"III. Compounds where $R^3$ is H and $R^4$ is *heterothio*[.]"

"IV. Compounds where $R^3$ is –$OCH_3$ and $R^4$ is *acetoxy*."

Serial no. 642,356, Office Action dated July 12, 1976, p. 1.

13. THAT, Claim 1 – linking all four groups, was rejected (citing MPEP § 803), with the mere statement that the rejection was "under 35 USC [§] 121 as representing a misjoinder of inventions."

14. THAT, responsive to the election requirement and the "misjoinder" rejection, Group III was elected with a traverse against the "misjoinder" rejection.

15. THAT, in a second office action dated December 6, 1976, the misjoinder rejection was continued but modified to separate "Group C" where $R^4$ is "H" and Group "D" where $R^4$ is heterothio.

16. THAT, in a *third* office action dated July 19, 1977, the Examiner stuck to his position and *continued* the misjoinder rejection *but additionally* added a rejection under the first and second paragraphs of 35 USC § 112 for a laundry list of reasons applicable

4

Attorney Docket Nos. 087147-0265 & 087147-0416
Reexamination Nos. 90/004,950 and 90/005,200

to the definition of $R^4$ as the residue of a nucleophilic compound. Some claims were deemed allowable and, like the previous office actions, *no prior art rejection of any kind was made against any of the claims.*

17. THAT, responsive to the Examiner's persistence in rejection of the claims on purely formal grounds, the applicant narrowed the claims to conform to the "misjoinder" rejection and the case was allowed that led to the grant of the Ultimate Parent – an event which occurred before the Wegner Firm was involved with the prosecution of any Ochiai application.

18. THAT, when the Wegner Firm was entrusted with the Ochiai Family in 1979, an effort was made to restore the generic coverage for cephem compounds with at least the same broad generic coverage for the 3-tail substituent as in the original claims of the Ultimate Parent, an effort which continued up through the filing of the two, parallel immediate parent patents of the instant patent, which occurred only after the successful grant of petitions in each case, In re Ochiai (Zaharna, Gr. Dir.), after which claims having a definition for compounds with

$$-CH_2R^4$$

having the same broad definition as in the original claims of the Ultimate Parent were allowed.

19. THAT, Takeda gained such claims without any prolongation of the patent term of the Ultimate Parent through the filing of terminal disclaimers in the relevant generic patents.

20. THAT, a principal reason for the filing of several continuing applications was due to the dilemma that was faced by Takeda which was unable to promptly obtain

Printed 10/03/2006                        REM                              90005200

Attorney Docket Nos. 087147-0265 & 087147-0416
Reexamination Nos. 90/004,950 and 90/005,200

claims to cover competitors' later developed compounds within the scope of its generic claims because of the refusal of the Examiner to allow generic claims and the long appeal pendency at the Board of Patent Appeals and Interferences that was the norm in the 1980's, which led Takeda to the decision to seek more specific coverage to cover competitors' embodiments and then to continue to seek generic coverage in remaining continuing applications.

21. THAT, without the strategy of the foregoing paragraph, Takeda could have waited for several years for the ultimate grant of a patent to cover its competitors' products while undergoing a lengthy appellate process, whilst instead it was able under the strategy of obtaining coverage to cover the competitors' embodiments without such undue delay.

22. THAT, the course of action of the foregoing paragraph was recommended to Takeda by the Wegner Firm because it was their counsel that it could take many years for the process of an appeal to the Board of Patent Appeals and Interferences and ultimately to the CCPA (advice given until 1982) or Federal Circuit (advice given from 1982) to resolve the various artificial barriers to generic claim coverage based upon the experience of the Wegner Firm on Markush issues.

23. THAT, the period of time needed to gain allowance of the generic compound coverage replicating that of the original Ultimate Parent as filed as to

$$-CH_2R^4$$

was without intentional delay nor any intention to provide extended time coverage for the generic claims, as evidenced by the filing of terminal disclaimers for claims to generic coverage embracing the scope of claims granted in the patent corresponding to the Ultimate Parent as finally granted.

24. THAT, there was no intention in the grant of a patent to the definition of

6

Attorney Docket Nos. 087147-0265 & 087147-0416
Reexamination Nos. 90/004,950 and 90/005,200

$$-CH_2R^4$$

in the present case as being any broader than in the original Ultimate Parent in the application as filed as the coverage scope for this 3-tail group is *identical*.

25. THAT, there was never any presentation of a claim to a method of making cephem compounds identical or comparable to the instant claims in the Ultimate Parent because it was the understanding of Takeda in the period 1975-1979 before representation by the Wegner Firm on the Ochiai Family that claims of this nature were not valuable in terms of protection of pharmaceutical compounds because of the absence of a law in the United States comparable to European laws relating to importation of products of patented processes (which was only enacted much later as 35 USC § 271(g)), and that it was his understanding and that of Takeda that claims of this type were not considered patentable under the case law of the United States at the time.

26. THAT, in 1989 the Wegner Firm explained the change in the law making method claims of the type herein meaningful from an enforcement standpoint, prior to which there had been no reconsideration within Takeda of the original understanding of unpatentability of such claims.

27. THAT, until the 1989 recognition of the change in the law, there was never any intention to present claims of the present type in the Ochiai Family.

28. THAT, in preparation for this declaration he has been given a copy of the opinion of the Court of Customs and Patent Appeals styled as *In re Ross*, 305 F.2d 878, 134 USPQ 320 (CCPA 1962), and studied the opinion for the purpose of recalling whether he had ever seen that case before or heard of the case before or understood that such case provided guidance that claims to a method of making a patentable product could be obtained based upon that case, and THAT he has no recollection of any kind of the *Ross* case from the Relevant Period.

29. THAT, all statements made herein of his own knowledge are true and all statements made on information and belief are believed to be true; and further that these

Printed 10/03/2006    REM    90005200

Attorney Docket Nos. 087147-0265 & 087147-0416
Reexamination Nos. 90/004,950 and 90/005,200

statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both (18 U.S.C. 1001) and that such willful false statements and the like may jeopardize the validity of the application or any patent issuing thereon.

FURTHER SAYETH DECLARANT NOT.

This the 22nd day of September, 2004.

Respectfully submitted,

*[signature]*
Hirofumi Usami

FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
Tel: (202) 672-5569
Fax: (202) 672-5399