**Defendant's Exhibit 24**



Atty. Dkt. No. 087147-0265

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**In re merged reexaminations of U.S. Pat. No. 5,583,216, issued December 10, 1996**

| | |
|---|---|
| Attorney Docket Nos. 087147-0265 | 087147-0416 |
| Reexamination No. 90/004,950 | Reexamination No. 90/005,200 |
| Date Filed: April 3, 1998 | Filed: December 22, 1998 |
| U.S. Patent No. 5,583,216 | Group Art Unit: 1624 |
| Issued: December 10, 1996 | Primary Examiner: Ms. Emily Bernhardt |
| Entitled: METHODS FOR THE MANUFACTURE OF CEPHEMS | |

### PETITION UNDER 37 C.F.R. § 41.3 TO THE CHIEF ADMINISTRATIVE PATENT JUDGE OF THE BOARD OF PATENT APPEALS AND INTERFERENCES TO ENTER AND CONSIDER THE REPLY BRIEF

Mail Stop Appeal Brief - Patents
Chief Administrative Patent Judge
Board of Patent Appeals and Interferences
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Appellants hereby petition under 37 C.F.R. § 41.3 for entry and consideration of the Reply Brief filed on January 13, 2006.

Appellants respectfully note that the filing of this petition should not stay the time for any action by the Board, as required by 37 C.F.R. § 41.3(d). Therefore, since the present reexamination has been pending since 1998 – *and on April 4, 2006 enters its ninth (9th) year of pendency*, Appellants respectfully request that an Oral Hearing be scheduled as soon as possible to expedite conclusion of the proceedings in this case.

The Primary Examiner issued a February 27, 2006 *Communication* which stated that the Reply Brief filed on January 13, 2006 has not been considered because it allegedly was

1

WASH_1562043.1

not in compliance with 37 C.F.R. § 41.41(a). The Examiner asserted that the Reply Brief contained three separate pieces of prohibited new evidence.

Appellants submit that the Reply Brief was in compliance with 37 C.F.R. § 41.41(a) and did not contain any prohibited new evidence.

## I. Executive Summary

Two years after the grant of the Ochiai patent that resulted from *In re Ochiai*, 71 F.3d 1565, 37 USPQ2d 1127 (Fed. Cir. 1995), the present reexamination on April 4th enters its ninth (9th) year with the Primary Examiner finding herself defending a legally indefensible double patenting rejection that boils down to a controversy over appellants' key contention that there is *at least one* independent and distinct method for making the final products of the instant process beyond the patented method. Responsive to a new argument in her Examiner's Answer that there is no such independent and distinct method not utilizing the starting material of a prior Ochiai patent, appellants have gone to her "shoes" and "pulled out" the "Alternative Method Patent" which is cited in rebuttal to impeach the veracity of her new argument. Instead of now withdrawing her rejection that is keyed to a demonstrably false assertion, she now attempts to procedurally disregard the entire Reply Brief.

Of course, even assuming, *arguendo,* that the Reply Brief were *not* considered, the principal Appeal Brief clearly and unequivocally establishes – particularly through the Dr. Wuest showing under 37 CFR § 1.132 – that there is *another* independent and distinct method that renders the entire point about the Alternate Method Patent moot.

## II. The Alternate Method Patent

The Examiner alleged in the February 27, 2006 Communication that the mere mention or citation of U.S. Patent 6,652,186 (herein: the "Alternate Method Patent") on pages 9-13 of the Reply Brief constituted inclusion of new evidence. Appellants submit that a mere mention or citation of a patent which is *not* prior art and in any event in reply to a <u>new</u> argument made by the Examiner in the Examiner's Answer does not constitute inclusion of new evidence.

2

Atty. Dkt. No. 087147-0265

### A. The Alternate Method Patent was *not* a Reply Brief Exhibit

37 CFR § 41.41(a)(2) states that the Reply Brief "…shall not include any new or non-admitted affidavit or other evidence." This CFR section does not define the term "other evidence". However, the corresponding MPEP section 1206(II), which describes the procedure associated with amendments, affidavits or other evidence filed with or after appeal, states that "[a]ffidavits or other evidence (e.g., declarations or exhibits) submitted after the date of filing a notice of appeal, but prior to the date of filing a brief pursuant to 37 CFR § 41.37, may be admitted if the Examiner determines that …" (emphasis added). Thus, MPEP § 1206(II) defines "other evidence" as declarations or exhibits.

In contrast, the Alternate Method Patent was not included with the Reply Brief as an exhibit. The Alternate Method Patent was merely cited in support of a reply refuting an incorrect new argument made by the Examiner for the first time in the Examiner's Answer. Thus, the mere citation of the Alternate Method Patent in the Reply Brief does not meet the definition of "new evidence" provided in MPEP § 1206 because the Alternate Method Patent was not included as an exhibit to the Reply Brief. The citation of the Alternate Method Patent is not new evidence but is a part of the Examiner's own "shoes" of patent information and presented not as evidence of patentability but solely to impeach the incorrect new statement quoted below. Thus, there is nothing in the citation of the Alternate Method Patent that runs afoul of the proscription under 37 CFR § 41.41(a)(2) that "[a] reply brief shall not include any new or non-admitted amendment, or any new or non-admitted affidavit or other evidence."

### B. The Exclusion of the Reply Brief Violates Due Process

It is not fair and against public policy to allow the Examiner to make a new argument in support of her rejection for the first time in the Examiner's Answer and then prevent the Appellants from rebutting the new argument by refusing to consider the Reply Brief. This is especially true in a reexamination, where the Appellants cannot reopen prosecution by filing a Request for Continuing Examination (RCE) or a Continuing application.

3

Atty. Dkt. No. 087147-0265

During the public comment period regarding the proposed Part 41 of 37 CFR, one public comment stated regarding 37 § CFR 41.41 that "appellants should always be permitted to have the last word." In the Discussion of Comments section of the Supplemental Information accompanying Part 41 of 37 CFR in the Federal Register, the USPTO replied that the "rules continue to permit the appellant to always have the last word." 69 F.R. 49980-81 (2004).

However, in the present appeal, the Examiner had the last word. The Examiner made a new argument in the Examiner's Answer in support of her rejection and then prevented the Appellants from "having the last word" by refusing to consider the Reply Brief. Appellants merely rebutted the Examiner's new argument and cited the Alternate Method Patent in support of their argument.

The whole purpose of a Reply Brief is to allow Appellants to rebut the Examiner's arguments rather than simply restate the arguments already made in the Appeal Brief. However, if the Examiner's non-entry of the Reply Brief is allowed to stand, then it provides an undesired incentive for future Examiners to save their best argument for the Examiner's Answer, because Appellants would not be able to corroborate their rebuttals of Examiner's new argument by citing to previously issued patents.

### 1. The Examiner Made a New Argument in the Answer

The citation of the Alternate Method Patent in the Reply Brief was made solely in support of a rebuttal argument to impeach the Examiner's new incorrect statement on Page 8 of the Examiner's Answer that there is no independent method for making the final products using "<u>starting reactants that are structurally distinct</u> from the reactants actually employed in the claimed process." (emphasis added). Specifically, in support of her double patenting rejection, the Examiner stated on page 8 of the Examiner's Answer that "[t]here is no parallel reaction(s) described for making instant cephems which rely on ultimate <u>starting reactants that are structurally distinct</u> from the reactants actually employed in the claimed process of US '216." (emphasis added).

4

Atty. Dkt. No. 087147-0265

This argument was made for the first time in the Examiner's Answer. Specifically, on page 3 of the Final Office Action mailed May 11, 2005, the Examiner rejected claims 1-5 of the present reexamination application over commonly owned '606, '888 and '899 patents in view of five secondary references. The Examiner argued on page 3 of the Final Office Action "the additional processes described by Ochiai make some additional final products but the process in US '216 is the sole process relied on to make ultimately all the products of Ochiai's invention including those covered by the '888 and '606 patents and employs the compounds in '899 claims whose sole described purpose is as reactants in said process." In other words, the Examiner asserted that the process of claims 1-5 of the present application is the sole process to make the compounds claimed in the '888 and '606 patents. The Examiner also asserted that the process of claims 1-5 of the present application has to employ as a reactant the compounds claimed in the '899 patent.

In the Appeal Brief, Appellants explained that process of claims 1-5 of the present application is *not* the sole process to make the compounds claimed in the '888 and '606 patents. Appellants also explained that the process of claims 1-5 of the present application does *not* have to employ as a reactant the compounds claimed in the '899 patent.

Specifically, Appellants pointed out on pages 28-33 of the Appeal Brief that a restriction requirement made by prior Examiner Rizzo states that there are two different methods of making the compounds of the '888 and '606 patents – the acylation process of claims 1-5 of the present application, in which 2-amino-thiazole is reacted with 7-ACA, and the displacement process which is not claimed in the present application. Furthermore, Appellants pointed out that Rule 132 Declaration of Dr. Wuest explains that the displacement process can use penicillin sulfoxide instead of 7-ACA as a reactant. (Dr. Wuest was, of course, compensated at an hourly rate for the preparation of his declaration.) This difference was graphically illustrated in a Figure which was attached to the Appeal Brief as an Exhibit.

In the Examiner's Answer, the Examiner maintained the double patenting rejection and the argument that the process of claims 1-5 of the present application is the sole process to make the compounds claimed in the '888 and '606 patents. Specifically, page 8 of the

5

Atty. Dkt. No. 087147-0265

Examiner's Answer stated that "the two reactants recited in the claims of US '216 [i.e., the present application] make **all** of the final products." (emphasis in original).

However, the Examiner's Answer also added a new argument in support of the double patenting rejection. Page 8 of the Examiner's Answer stated that "[t]here is no parallel reaction(s) described for making instant cephems which rely on ultimate <u>starting reactants that are structurally distinct</u> from the reactants actually employed in the claimed process of US '216." (emphasis added). This is a completely different argument from the argument in the final Office Action that the process of claims 1-5 of the present application is the sole process to make the compounds claimed in the '888 and '606 patents. The second argument provided by the Examiner allows that there could be a process other than the process of claims 1-5 of the present application that can be used to make the compounds claimed in the '888 and '606 patents. However, the Examiner's second argument asserts that the reactants in the other process would not be structurally distinct from the reactants recited in claims 1-5 of the present application. In other words, the Examiner was now requiring Appellants to show not only that there is a different method to make the compounds claimed in the '888 and '606 patents, but that the different method contains structurally distinct reactants from those recited in claims 1-5 of the present application.

### 2. The Alternate Method Patent was Cited to Rebut the New Argument

Clearly, even without the Reply Brief being considered, it is clear from the principal Appeal Brief that there are independent and distinct methods for making the final product recited in claims 1-5 of the present application and in the '888 and '606 patents. However, in view of the new statement made in the Examiner's Answer it is seen necessary to refute this manifestly incorrect assertion.

The statement on page 8 of the Examiner's Answer that "[t]here is no parallel reaction(s) described for making instant cephems which rely on ultimate starting reactants that are structurally distinct from the reactants actually employed in the claimed process of US '216" is clearly incorrect as manifested by the Alternate Method Patent that was cited in rebuttal thereto. In reply to the new argument in the Examiner's Answer, pages 9-12 of the

6

Atty. Dkt. No. 087147-0265

Reply Brief describes an alternative method of making the cephem compound claimed in the '606 and '888 patents by using <u>starting reactants</u> which are <u>structurally distinct</u> from the 2-amino-thiazole reactant of claims 1-5 of the present application. This alternative method <u>does not even use a thiazole</u> reactant to make the cephem compounds! This alternative method is illustrated in Figure 2 on page 13 the Reply Brief. This Figure 2 is attached to this Petition. Appellants cited the Alternate Method Patent which describes this alternative method to show that this method was not simply made up by Appellants for the purpose of rebutting the new argument in the Examiner's Answer. Therefore, the Alternate Method Patent confirms that the new argument made by the Examiner in her Examiner's Answer is incorrect.

To the extent that the 37 CFR § 41.41(a)(2) could permit an Examiner to rely upon a new incorrect assertion in her Answer and then be able to deny consideration of a patent from her own "shoes" that impeaches her statement at the very first opportunity to do so, this interpretation of 37 CFR § 41.41(a)(2) is manifestly against public policy and cannot stand.

### III.    Curran Article

The Examiner alleged in the February 27, 2006 Communication that a discussion in the Reply Brief of the Curran Article which was previously attached to the Appeal Brief, and, prior to that, was cited during prosecution in paragraph 49 of the Weuest Declaration, as an exhibit was somehow improper.

37 C.F.R. § 41.41(a)(2) states that "[a] reply brief shall not include any new or non-admitted amendment, or any new or non-admitted affidavit or other evidence." Since the Curran article was attached as an exhibit to the Appeal Brief it cannot be considered to be "new or non-admitted other evidence." Thus, there is nothing in 37 C.F.R. § 41.41(a)(2) that prohibits Appellants from citing and discussing the Curran Article in the Reply Brief!

The Examiner states in the February 27, 2006 Communication that "Appellant is attempting to rebut the Examiner's rebuttal of a newly presented argument in the [Appeal] Brief." In response, Appellants note that this is the whole purpose of a Reply Brief - to rebut the Examiner's rebuttal of an argument in the Appeal Brief! Does the Examiner expect

7

Atty. Dkt. No. 087147-0265

Appellants to merely copy the same argument from the Appeal Brief into the Reply Brief without making an attempt to rebut the arguments she made in the Examiner's Answer?

Furthermore, Appellants note that 37 C.F.R. § 41.41(a)(2) does not prohibit new rebuttal arguments in a Reply Brief. 37 C.F.R. § 41.41(a)(2) also does not prohibit using the exhibits from the Appeal Brief to support new rebuttal arguments in a Reply Brief or relying on the exhibits from the Appeal Brief in a different way in the Reply Brief than that in the Appeal Brief. Therefore, the reliance on the Curran Article in the Reply Brief to rebut an argument in the Examiner's Answer does not violate 37 C.F.R. § 41.41(a)(2).

### IV.    Citation To The MPEP And Court Decisions

The Examiner alleged in the February 27, 2006 Communication that citation to the MPEP and court decisions in the footnotes on pages 33-35 of the Reply Brief also apparently violates 37 CFR § 41.41(a)(2).

#### A.    The MPEP and Court Decisions were not Included as Exhibits

As discussed with respect to the Alternate Method Patent above, 37 CFR § 41.41(a)(2) states that the Reply Brief "...shall not include any new or non-admitted affidavit or other evidence." This CFR section does not define the term "other evidence". However, the corresponding MPEP section 1206(II), which describes the procedure associated with amendments, affidavits or other evidence filed with or after appeal, states that "Affidavits or other evidence (e.g., declarations or exhibits) submitted after the date of filing a notice of appeal, but prior to the date of filing a brief pursuant to 37 CFR § 41.37, may be admitted if the Examiner determines that ..." (emphasis added). Thus, MPEP § 1206(II) defines "other evidence" as declaration or exhibits.

In contrast, the MPEP and the court decisions were not included with the Reply Brief as an exhibit. They were merely cited in support of a reply refuting an incorrect argument made by the Examiner for the first time in the Examiner's Answer. Thus, the mere citation of the MPEP and the court decisions does not meet the definition of "new evidence" provided in MPEP § 1206 because they were not included as an exhibit to the Reply Brief.

8

Atty. Dkt. No. 087147-0265

### B. Rule 41.41(a)(2) Does not Cover the MPEP and Court Decisions

Alternatively, even if the prohibition in 37 CFR § 41.41(a)(2) is interpreted to cover mere citation rather than attachment of an exhibit, then citing the MPEP and court decisions should not be considered to be "other evidence". The MPEP and court decisions are easily available to the Examiner electronically and do not fall into the same category of evidence as affidavits, declarations, etc.

### C. Appellants Should be Able to Cite the MPEP and Court Decisions in a Reply Brief to Rebut Incorrect Arguments in the Examiner's Answer

Appellants merely rebutted the Examiner's incorrect legal argument in the Examiner's Answer and cited the MPEP and controlling court decisions in support of their argument. The citation of the MPEP and the court decisions in the footnotes on Pages 33-35 of the Reply Brief was made solely in support of a rebuttal argument to impeach the Examiner's incorrect legal statement on Page 18 of the Examiner's Answer. Specifically, the Examiner stated on Page 18, lines 15-16 of the Examiner's Answer that "[t]hus the Examiner is not persuaded of any error in maintaining this rejection which meets the test set forth in the MPEP (section 804)."

In response, Appellants noted that the version of the MPEP in force when the patent which is the subject of the present reexamination was filed, did not contain the corresponding MPEP section 804 mentioned in the Examiner's Answer. Thus, the reliance on section 804 of the MPEP by the Examiner's Answer was incorrect.

Appellants note that the non-final Office Action mailed July 22, 2004 mentioned "the test set forth in MPEP § 804" on page 20. However, the final Office Action mailed May 11, 2005 did not mention or explicitly rely on section 804 of the MPEP. The final Office Action stated on page 9 that the facts of the present case were different from those of *In re Schneller* and that the Examiner was not relying on *Schneller*. Since the "test set forth on MPEP § 804" (i.e., the test in MPEP § 804(II)(B)(2) which describes the "right to exclude" type of double patenting rejection) mentioned in the non-final action is based solely on the *Schneller* decision, it appeared from the final Office Action that the Examiner had withdrawn her

WASH_1562043.1

Atty. Dkt. No. 087147-0265

reliance on MPEP § 804 as supporting this type of a rejection. Therefore, the Appeal Brief did not directly address the MPEP § 804 issue. However, the Examiner brought up the MPEP § 804 issue again in the Examiner's Answer. Thus, Appellants pointed out in the Reply Brief that the Examiner's reliance on MPEP § 804 in the present application was not proper. Appellants cited the MPEP and court decisions to support this argument.

The whole purpose of a Reply Brief is to allow Appellants to rebut the Examiner's arguments rather than simply restate the arguments already made in the Appeal Brief. However, if the Examiner's non-entry of the Reply Brief is allowed to stand, then it provides an undesired incentive for future Examiners to save their best legal argument for the Examiner's Answer, because Appellants would not be able to corroborate their rebuttal arguments to Examiner's incorrect argument by citing the MPEP or controlling court decisions.

## V.   Conclusion

Wherefore, entry and consideration of the Reply Brief and further action as per the prayer above are respectfully solicited.

A check for the amount of $400 stated in 37 C.F.R. § 41.20(a) is enclosed to cover the fee for this petition.

As required by 37 C.F.R. § 41.3(e)(1), this petition is filed within 14 days from the February 27, 2006 communication from the Examiner which stated that the Reply Brief has not been considered.

10