# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAKEDA PHARMACEUTICAL CO. LTD. | ) | |
| 1-1, Doshomachi 4-chome | ) | |
| Chuo-ku, Osaka 540-8645 JAPAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06CV01640TFH |
| | ) | |
| HON. JON W. DUDAS | ) | |
| Under Secretary of Commerce for Intellectual | ) | |
| Property and Director of the United States | ) | |
| Patent and Trademark Office | ) | |
| Madison Building | ) | |
| 600 Dulaney Street | ) | |
| Alexandria, VA 22314, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

*Attorney for Plaintiff Takeda
Pharmaceutical Co. Ltd.*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ARGUMENT ........................................................................... 2

III.    LEGAL ARGUMENT .......................................................................................... 3

        A.      There Is No Extension Of Patent Rights ................................................. 3

        B.      Takeda Promptly Filed Its Process Claims After A Favorable Change In
                U.S. Patent Law ........................................................................................ 4

        C.      The Board Improperly Diverged From Existing Precedent ..................... 7

                1.      The "Exact Facts" Of *Mosler Safe* Do Not Fit This Case .......... 9

                2.      The PTO's Reliance On *Mosler Safe* Is Unprecedented In The
                        More Than 200 Year History Of The PTO. ................................. 11

        D.      The PTO Tacitly Concedes That The Board's Opinion Is Factually
                Erroneous ................................................................................................ 11

                1.      Alternative Processes Developed After The Date Of Invention Can
                        Properly Be Considered In A Double Patenting Analysis ......... 12

                2.      The Cases Cited By The PTO Are Not On Point ...................... 15

        E.      The PTO's Procedural Challenges Should Be Rejected ........................ 16

                1.      The Duggan Declaration And Exhibits Are Properly Before This
                        Court ........................................................................................ 16

                        a)      This Court Is Not Limited To The Record Created Before The
                                PTO ........................................................................... 16
                        b)      No New Issues Are Presented ....................................... 17
                        c)      Takeda Did Not Intentionally Or Negligently Withhold Any
                                Evidence From The PTO ............................................. 18

                2.      Takeda Was Justified In Not Requesting A Remand Back From
                        The Board For Further Consideration Of The Gerlach Patent ......... 21

IV.     CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .................................................................. 16

*Fireball Gas Tank & I. Co. v. Commercial Acetylene Co.*, 239 U.S. 156 (1915) ................... 9-11

*Fregeau v. Mossinghoff*, 776 F.2d 1034 (Fed. Cir. 1985) ..................................................... 16, 20

*General Foods Corp. v. Studiengesellschaft Kohle, M.B.H.*, 972 F.2d 1272 (Fed. Cir. 1992) ......................................................................................................... 3, 9

*Gould v. Quigg*, 822 F.2d 1074 (Fed. Cir. 1987)............................................................... 16, 20

*Hoover Co. v. Coe*, 325 U.S. 79 (1945)......................................................................... 16

*Hyatt v. Dudas*, 393 F. Supp.2d 1 (D.D.C. 2005) ......................................................... 16

*In re Borah*, 354 F.2d 1009 (C.C.P.A. 1966) ............................................................... 9

*In re Henriksen*, 399 F.2d 253 (C.C.P.A. 1968) ......................................................... 6

*In re Hogan*, 559 F.2d 595 (C.C.P.A. 1977) ............................................................... 4, 6

*In re Kaplan*, 789 F.2d 1574 (Fed. Cir. 1986) ............................................................. 8

*In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995)................................................................. 1

*In re Ornitz*, 347 F.2d 586 (C.C.P.A. 1965) ............................................................... 15

*In re Wadlinger*, 496 F.2d 1200 (C.C.P.A. 1974)......................................................... 6

*Killian v. Watson*, 121 U.S.P.Q. 507 (D.D.C. 1958) ................................................... 18

*MacKay v. Quigg*, 641 F. Supp. 567 (D.D.C. 1986) ................................................... 16-19

*Merrill v. Yeomans,* 94 U. S. 568, 24 L. ed. 235 ......................................................... 9-10

*Miller v. Eagle Mfg. Co.*,151 U. S. 186, 38 L. ed. 121 Sup. Ct. Rep. 310................................. 9-10

*Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 US 354 (1888)......................... 9-11, 20

*Newman v. Quigg*, 877 F.2d 1575 (Fed. Cir. 1989)....................................................... 17

*Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985)......................... 13-15

*Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F. Supp. 1278 (D. Del. 1987)............................. 14

# TABLE OF AUTHORITIES

**Page(s)**

*Rohm & Haas Co. v. Roberts Chems.*, 245 F.2d 693 (4th Cir. 1957)..........................................6-7

*Saranac Automatic Mach. Corp. v. Wirebounds Patents Co.*, 282 U.S. 704 (1931)....................10

*Sewall v. Jones,* 91 U. S. 171, 23 L. ed. 275.................................................................9-10

*U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247 (Fed. Cir. 1989).................................14

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

35 U.S.C. § 103......................................................................................................15

35 U.S.C. § 121......................................................................................................19

35 U.S.C. § 145................................................................................................17, 20

35 U.S.C. § 251......................................................................................................6

## OTHER AUTHORITIES

3 Patent Law Fundamentals § 15:25 (2d ed. 2007) .....................................................13

4A, Chisum on Patents § 12.02[2][g] (2005)............................................................11

Legislative History of PPA, Sec. 7 ............................................................................5

## I.    INTRODUCTION

Ever since Takeda took advantage of a favorable change in U.S. process patent laws and filed claims directed to its novel process for making cephem compounds, Takeda has been faced with one battle after another with the PTO. The first lengthy battle with the PTO, which lasted nearly six years, involved just getting the '216 patent. The result of this first battle was the landmark *In re Ochiai* decision, where the Federal Circuit reversed the PTO's rejection of Takeda's process claims for applying an improper legal standard. On the merits, the Federal Circuit found Takeda's process claims unobvious. This decision resulted in Takeda's '216 patent, which is at issue in this case.

While the ink was still drying on Takeda's process patent, a third-party requestor filed a reexamination request with the PTO, thus beginning round two between Takeda and the PTO. This current battle, which has lasted for nearly a decade, has finally reached this Court for a decision. Having previously been reversed on the merits by the Federal Circuit (the PTO concedes that Takeda's process claims are otherwise patentable), the PTO now focuses its rejection on the double patenting doctrine. The purpose of double patenting is to prevent a later-granted patent from unjustly extending the rights conferred by an earlier-granted patent.

Importantly, both parties agree that the Board's decision cannot stand if Takeda is not claiming the only method for making the cephem compounds claimed in Takeda's expired '606 patent. The PTO concedes that there is an alternative method, having granted at least two patents to other parties who invented this alternative method. The Board's entire bases for applying double patenting in this case crumbles under the weight of this admission. Nonetheless, the PTO asks this Court to still affirm the Board's double patenting rejection by ignoring any evidence of this alternative process on legal and procedural grounds. The PTO's request that this relevant evidence be ignored should be rejected and summary judgment granted in Takeda's favor.

1

## II.    SUMMARY OF ARGUMENT

The PTO's attempts to rehabilitate the Board's unprecedented double patenting rejection should be rejected for at least four reasons.

*First*, the underlying purpose of double patenting is to prevent a later-granted patent from unjustly extending rights conferred by an earlier-granted patent. Here, it is undisputed and conceded by the PTO that Takeda is not claiming the only process for making the cephem products claimed in the expired '606 patent. And, despite the PTO's misguided arguments to the contrary, there is no requirement that this alternative process have been known as of the filing date of the '216 patent. Rather, existing case law expressly holds that subsequent processes may be considered in a double patenting analysis. As such, Takeda is not extending rights conferred by the earlier '606 patent and the underlying purpose for applying double patenting is critically absent from this case.

*Second*, the PTO's equitable challenges should be dismissed outright. There was nothing improper about Takeda taking advantage of a favorable change in law and filing its process claims in the first instance, as it had an absolute right to do so. The PTO's foray into the equitable "just versus unjust" debate is simply irrelevant since Takeda is not extending the patent rights from its expired '606 patent.

*Third*, it is clear from the Board's faulty legal analysis that the double patenting doctrine does not fit this case. The Board did not follow existing double patenting law. Rather, it relied upon a decision that the Supreme Court itself has discredited and limited to its "exact facts."

*Fourth*, the PTO's procedural arguments fare no better. The Duggan declaration is properly before this Court because Takeda has raised no new issues. Rather, this declaration merely provides further confirmation regarding the alternative process already presented to the PTO.

For at least these reasons, Takeda is entitled to summary judgment.

## III.    LEGAL ARGUMENT

### A.    There Is No Extension Of Patent Rights

The PTO (Opp. at 12) correctly states that the purpose of double patenting is to prevent a later-granted patent from unjustly extending rights conferred by an earlier-granted patent. Central in any double patenting analysis, however, is an inquiry into what rights are actually being conferred by each patent. *See General Foods Corp. v. Studiengesellschaft Kohle, M.B.H.*, 972 F.2d 1272, 1278 (Fed. Cir. 1992) ("Anything less than a process with all 9 steps is not what is claimed, and is, therefore, not patented. Claims must be read as a whole in analyzing a claim of double patenting."). The inquiry into what is actually being claimed is critical because there cannot be any debate on whether an extension of patent rights is just or unjust until *after* it is first shown that prior patent rights are, in fact, being extended.

Here, the PTO puts the proverbial cart before the horse by delving into an equitable "just versus unjust" debate, and brushing aside the fact that Takeda is <u>not</u> extending the rights conferred by its '606 patent given the admittedly alternative process disclosed in the Gerlach and Monguzzi patents. When properly focusing in the first instance on the "extension" argument, it becomes clear that the "just versus unjust" debate is a red herring and Takeda is entitled to summary judgment.

The expired '606 patent claimed a cephem product. During the term of the '606 patent, Takeda had the right to exclude members of the public from making the cephem products covered by the '606 patent. Once the '606 patent expired, however, Takeda lost all patent rights over the product that was claimed in the '606 patent. Takeda was left with only the '216 process patent which covers *one process* for making cephem products claimed in the expired '606 patent.

The public remains free to make the products of the expired '606 patent using any alternative process that does not infringe the '216 patent. One such alternative is the process described in the Duggan declaration. Given the PTO's concession regarding this alternative process, there is no doubt that Takeda's '216 patent does not extend the patent rights of its earlier '606 patent. Takeda no longer has patent rights over the product that was claimed in the '606 patent. The PTO cannot deny this fact.

Simply put, Takeda complied with all existing laws and regulations when it filed its process claims. And, importantly, these process claims are not the only way of making the cephem products claimed in Takeda's expired '606 patent. As such, Takeda is rightfully entitled to its '216 patent. *Accord In re Hogan*, 559 F.2d 595, 604 n. 13 (C.C.P.A. 1977) ("The 24 years of pendency herein may be decried, but a limit upon continuing applications is a matter of policy for the Congress, not for us.").

### B.    Takeda Promptly Filed Its Process Claims After A Favorable Change In U.S. Patent Law

The PTO also argues that it was unjust for Takeda not to have filed its process claims when Takeda filed its product claims. This argument is misplaced. Besides the fact that Takeda complied with all existing laws when it filed its patent application, the "just versus unjust" debate is irrelevant since Takeda is not extending the rights conferred by its expired '606 patent.

Nonetheless, the record is clear that Takeda filed its process claims shortly after a change in law that strengthened U.S. process patent protection and for the first time made the instant process claims meaningful in the U.S. Takeda complied with all existing laws in filing its continuation application and the PTO cannot properly argue otherwise. Takeda provides the following history of how it came to the decision to file for process patent protection. The

4

following facts were explained to the PTO during the nearly ten-years this reexamination has

been pending before the PTO.  *See* Usami Decl. (DX 21 at paragraphs 25-27).

Prior to 1989, the United States patent laws did not provide meaningful protection for

process patents.  Indeed, U.S. patent law lagged behind its foreign counterparts in this regard.

The legislative history of the Process Patent Amendment Act (PPA) details the shortcoming in

U.S. process patent protection prior to its enactment:

> ***The purpose of the bill is to provide meaningful protection to owners of patented processes.***  Under current patent law, owners of such patents have remedies for unauthorized use of the process only if the process was used in the United States.  As a consequence, while a domestic manufacturer using the patented process would infringe the process patent, a foreign manufacturer who imports the product would not.  There is also no remedy against parties who use or sell the product, regardless where it is made …
> As a consequence, the unfettered ability of others to import, sell or use a product made by the patented process severely diminishes the value of a U.S. process patent …
> The laws of many other industrialized countries protect process patent owners there against unauthorized sale or use of products made by the patented process, or the importation of such products into these countries.  This bill would expand the scope of our patent laws to tailor them more closely to the laws of these countries and, thereby, provide owners of process patents in the United States the protection now available to owners of foreign process patents.

Legislative History of PPA, Sec. 7 (emphasis added), attached as PX 25.  Because of this

deficiency in U.S. process patent protection, Takeda did not file process claims in the U.S.,

although it did file such claims in foreign countries offering more meaningful patent protection.

Takeda never intended to file process claims in the U.S.

When Congress passed the PPA, however, Takeda filed process claims in the U.S. to take

advantage of the favorable change in U.S. patent laws.  *See* Usami Decl. (DX 21 at paragraphs

25-27).  Takeda did not delay filing its process claims.  Rather, it merely made the decision in

the first instance to file its process claims after the favorable change in U.S. law. The simple fact remains that the U.S. patent laws gave Takeda the right to file a continuation application directed to its novel process. And, Takeda did nothing wrong in exercising its rights under the then existing laws. *See In re Hogan*, 559 F.2d at 604 n. 13 ("The 24 years of pendency herein may be decried, but a limit upon continuing applications is a matter of policy for the Congress, not for us."); *In re Henriksen*, 399 F.2d 253, 261-262 (C.C.P.A. 1968) (holding that the PTO Board could not arbitrarily restrict an applicant from filing a continuation application twenty years after the initial application filing date or impose a limit on the number of continuation applications that the applicant could file because it is "for the Congress to decide, with the usual opportunity for public hearing and debate, whether such a restriction as sought by the board is to be imposed"). The PTO has no authority to abridge rights granted by Congress because the PTO has no substantive rulemaking authority.

Under similar facts, courts have found a change in patent law an appropriate basis for adding process claims to a patent. *See, e.g., Rohm & Haas Co. v. Roberts Chems.*, 245 F.2d 693 (4th Cir. 1957).[1] In *Rohm & Haas*, the patentee, like Takeda, originally filed its patent application with only product claims. ***Nine years later***, after passage of the 1952 Patent Act, the patentee filed a reissue application, seeking to add process claims to its earlier patent. 245 F.2d at 697-98.[2] The PTO reissued the earlier patent with the new process claims. During litigation over the patent, however, the defendant argued that the patent was invalid because the PTO should not have reissued the patent with the new process claims. 245 F.2d at 698. In particular,

---

[1]       *Rohm & Haas* was adopted by the C.C.P.A. (the Federal Circuit's predecessor court) in *In re Wadlinger*, 496 F.2d 1200, 1208 (C.C.P.A. 1974), and thus has precedential value.

[2]       The Patent Act (35 U.S.C. § 251) allows a patentee to reissue its patent whenever through error a patent is deemed wholly or partly inoperative by reason of the patentee claiming more or less than he or she had a right to do.

the defendant (like the PTO in this case) argued that "the inventor could have included process claims in his original application if he had seen fit to do so and they would have been granted … having failed to do so for nine years his right to correction has been lost by unreasonable delay." 245 F.2d at 698.  The court rejected this argument:

> In considering the line of argument, however, ***we must give heed to the particular circumstances of this case***.  It is true that process claims were available at the time of the original grant and that their omission was obvious from a casual inspection of the patent, and a serious question would be presented if it were shown that intervening rights had accrued during the long interval between the grant of the original and the application for the reissued patent.  But no such contingency has arisen, ***and the filing of the application of reissue as so late a date is explained by the changes in law which clarified the rights of the patentee***.

*Rohm & Haas*, 245 F.2d at 698 (emphasis added).  In sum, the *Rohm & Haas* court considered the change in U.S. patent laws as an acceptable reason for the nine-year passage of time between the patentee's original and reissued patent.  Thus, assuming this Court determines a need to get into a "just versus unjust" debate, which it does not for the reasons discussed above, taking advantage of the favorable change in patent law would be a sufficient reason to push this debate in Takeda's favor.  Nonetheless, because Takeda is not extending the patent term of its expired '606 patent, the Court need not address this issue.

## C.    The Board Improperly Diverged From Existing Precedent

The Board diverged from existing double patenting case law in an attempt to shoehorn a double patenting rejection into a case where such a rejection simply does not belong.  Rather than focusing on the recognized grounds for double patenting, the Board focused almost entirely on the time between Takeda's product and process claim applications.  This was the wrong focus because Takeda is not extending any patent rights and never intentionally delayed in filing process claims in the U.S.  Rather, the proper focus of a double patenting rejection is on whether

claims in an earlier patent are the same or an obvious variation of claims in a later patent because

this helps determine whether the later patent is actually extending the term of the earlier patent:

> All proper double patenting rejections, of either type, rest on the fact that a patent has been *issued* and later issuance of a second patent will continue protection beyond the date of expiration of the first patent, of the very same invention claimed therein (same invention double patenting) or of a mere variation of that invention which would have been obvious to those of ordinary skill in the relevant art (obviousness-type double patenting). In the latter case, there must be some clear evidence to establish why the variation would have been obvious which can properly qualify as "prior art."

*In re Kaplan*, 789 F.2d 1574, 1579-80 (Fed. Cir. 1986). Critically absent from this case is a

finding by the Board that Takeda's process claims are either the same as or an obvious variation

of Takeda's earlier product claims.

The PTO attempts to re-write the Board's opinion by asserting that the Board based its

rejection on one of the two recognized grounds for double patenting, *i.e.*, obviousness type

double patenting. (PTO Opp. at 8 & 17.) This is inaccurate. The Board never stated that its was

relying upon obviousness-type patenting to support its rejection. Rather, the Board made it clear

that it was not to be pigeon holed into following a traditional double patenting analysis in this

case:

> We believe there may be a tendency to try to "pigeon hole" every double patenting situation into one of these two recognized categories of double patenting. However, *we decline to hold that every double patenting must fit precisely into one of the two categories. In our view, the focus should be on whether a second patent unjustly extends the patent rights of a first patent*. Each case, of course, must be decided on its facts.

Board Op. at 14 (emphasis added). The Board's over-emphasis on the time between Takeda's

product and process patent applications should be rejected, especially given that the Federal

Circuit's predecessor court has already held that narrowly focusing on this issue is improper. *See*

*In re Borah*, 354 F.2d 1009, 1017 (C.C.P.A. 1966) ("We see … that as a matter of law the extension of protection objection is not necessarily controlling.").

Having declined to follow a traditional double patenting analysis mandated by existing Federal Circuit precedent, the Board then proceeded to recognize an unprecedented double patenting rejection based upon *Mosler Safe* -- a basis never considered by any of the patent examiners during the nearly ten years this reexamination has been pending before the PTO.  *See* Board Op. at 14 ("As applied to the facts of this case, we think a decision of the Supreme Court ***provides support for the decision of the Examiner to reject claims 1-5 on appeal based upon double patenting*.") (emphasis added).  The PTO cannot avoid summary judgment by mischaracterizing what the Board actually held.[3]

### 1.    The "Exact Facts" Of *Mosler Safe* Do Not Fit This Case

The PTO tries to justify the Board's reliance on *Mosler Safe*, (PTO Opp. at 16-17 & 23-24), despite the fact the Federal Circuit has expressly held "[n]o other kind of 'double patenting' is recognized …."  *General Foods*, 972 F.2d at 1278.  In particular, the PTO argues that the Supreme Court's decisions in *Mosler Safe* and *Miller* support the new double patenting rejection devised by the Board.  (PTO Opp. at 8-9.)

Takeda pointed out in its opening brief, however, that the Supreme Court's later decision in *Fireball Gas Tank & I. Co. v. Commercial Acetylene Co.*, 239 U.S. 156 (1915) recognized the conflict between *Mosler Safe* and its prior decisions, including *Miller*, *Sewall* and *Merrill*. Indeed, Takeda cited the following passage from *Fireball Gas Tank*:

> The Mosler Case, it was said in *Miller v. Eagle Mfg. Co.* 151 U. S. 186, 197, 38 L. ed. 121, 127, 14 Sup. Ct. Rep. 310, held "that a patent having issued for a product, as made by a certain process, a later patent could not be granted for the

---

[3]    The PTO's breadth of obviousness-type double patenting argument (PTO Opp. at 20-21) is irrelevant since the Board did not rely upon this basis for its rejection.

process which results in the product." The process was a purely mechanical process, and **the ruling, it would seem, must be confined to the exact facts of the case, for in Miller v. Eagle Mfg. Co. it was said that "a single invention may include both the machine and the manufacture it creates, and in such cases, if the inventions are really separable, the inventor may be entitled to a monopoly of each**." And *Sewall v. Jones,* 91 U. S. 171, 23 L. ed. 275, was cited for the purpose of showing that there might be a patent for the process and one for the product. *Merrill v. Yeomans,* 94 U. S. 568, 24 L. ed. 235, was also cited as holding that "where a patent described an apparatus, a process, and a product, and the claims covered only the apparatus and the process, the law provided a remedy by a surrender of the patent and a reissue, for the purpose of embracing the product."

239 U.S. at 165-166 (emphasis added). As shown above, the Supreme Court in *Fireball Gas Tank* clearly recognized the conflict between *Mosler Safe* and its earlier decisions. The court resolved this conflict by limiting *Mosler Safe* to its "exact facts," thus destroying its precedential value.

In arguing that *Mosler Safe* should be broadly applied to support the Board's new double patenting rejection, the PTO glosses over the fact that, for all intents and purposes, the Supreme Court overruled *Mosler Safe* in *Fireball Gas Tank*. (PTO Opp. at 24.) The *Saranac* case,[4] cited in the PTO's brief at page 24, found it "unnecessary" to consider the effect of *Mosler Safe* and thus did nothing to expand *Mosler Safe* beyond its exact facts. And, despite the PTO's arguments to the contrary (PTO Opp. 8-9), the "exact facts" of *Mosler Safe* do not fit this case.

The Supreme Court itself distinguished *Mosler Safe* on the basis that it related to a "purely mechanical process." *Fireball Gas Tank*, 239 U.S. at 165-166. Certainly, the present case does not involve a "purely mechanical process" and can be distinguished on this basis alone. The PTO cannot rebut this distinction, or the others mentioned in Takeda's opening brief (Takeda Br. at 9-11). Rather, the PTO makes vague generalizations in trying to shoehorn the

---

[4]      *Saranac Automatic Mach. Corp. v. Wirebounds Patents Co.*, 282 U.S. 704 (1931).

*Mosler Safe* facts to fit this case.  (PTO Opp. at 8-9.)  Nonetheless, the Supreme Court has held that *Mosler Safe* must be limited to its "exact facts," not vague generalizations of those facts.

> **2.    The PTO's Reliance On *Mosler Safe* Is Unprecedented In The More Than 200 Year History Of The PTO.**

As noted in Takeda's opening brief, the Board's reliance on *Mosler Safe* is unprecedented in the more that 200 year history of the PTO.  Indeed, Takeda can find but one prior instance where *Mosler Safe* was ever referenced by anyone in the PTO in connection with a double patenting rejection.  According to a learned patent law treatise, that historic event happened in 1890, and was made by an examiner rather than being made *sua sponte* by the Board as in this case.  In that case (*Ex Parte Chambers*), a patent examiner rejected process claims in a pending patent application over apparatus claims in a prior patent based upon *Mosler Safe*.  Professor Chisum reports, however, that the PTO Commissioner himself reversed that rejection, finding "a clear line of division" between the apparatus and process claims.  *See* 4A, Chisum on Patents § 12.02[2][g] (2005), attached as PX 26.  Notably, *Chambers* was decided before *Fireball Gas Tank*.

Although the PTO concedes in this case that an alternative process exists and based upon this concession there clearly is no extension of Takeda's earlier patent rights, the PTO nonetheless maintains that the Board's rejection should be upheld.  Such an inconsistent result should not be sanctioned by this Court.  Certainly, the PTO has diverged from a normal application of double-patenting law.  The Board's opinion is legally erroneous and Takeda is entitled to summary judgment for this reason alone.

> **D.    The PTO Tacitly Concedes That The Board's Opinion Is Factually Erroneous**

Assuming *arguendo* that *Mosler Safe* supports the Board's new double patenting rejection, the PTO has admitted that an alternative process exists.  Based upon this admission,

the Board's decision is factually erroneous.  Indeed, the Board itself acknowledged that its rejection is improper if there is an alternative process for making the cephem compounds previously claimed in the '606 patent (beyond the process claimed in the '216 patent).  (Board Op. at 26).  The PTO agrees.  (PTO Opp. at 21, fn. 4.)

With its opening brief, Takeda presented a declaration of Dr. Angelina Duggan in which she further confirmed that there is at least one such alternative process (beyond the process claimed in the '216 patent) of making the cephem compounds previously claimed in the '606 patent, as evidenced by the Monguzzi and Gerlach patents issued by the PTO.  PX6, Duggan Decl. ¶¶ 125-141 and PX10 and 11.  Despite its unfounded allegations of surprise over this declaration,[5] the PTO does not challenge the technical merits of Dr. Duggan's declaration.  (PTO Opp. at 21, fn. 4.)  Indeed, when given the opportunity to do so, the PTO never even responded to Takeda's offer to take Dr. Duggan's deposition and challenge her factual assertions.  *See* email correspondence between counsel, attached as PX 27.  Nonetheless, it is undisputed that there is at least one alternative process (beyond the process claimed in the '216 patent) of making the cephem compounds previously claimed in the '606 patent.  Thus, the Board's opinion rests upon an erroneous factual finding and should be reversed on this basis alone.  *See* Board Op. at 26.

### 1.     Alternative Processes Developed After The Date Of Invention Can Properly Be Considered In A Double Patenting Analysis

To try and overcome its admission regarding the alternative process, the PTO argues that an alternative process must have been known at the filing date of Takeda's '216 patent.  (PTO

---

[5]     Takeda informed the PTO long before briefing began that Takeda would be filing an expert declaration.  Because of this fact, the parties agreed to give the PTO additional time to file its opposition so that it could depose Takeda's expert.  Indeed, additional time for an expert deposition was expressly mentioned in the parties proposed briefing schedule to this Court.  The PTO's allegation of surprise is specious.

Opp. at 18-19, 22.)  This argument should be rejected for being contrary to existing case law.

The *Phillips* decision (*Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555, 562 (D. Del.

1985)) cited by both Takeda and the PTO expressly holds that alternative processes of making a

claimed product developed after the date of the invention of the product can be used to rebut a

double patenting rejection.  In addressing this exact point, the *Phillips* court held that "it would

be logical to consider even a later developed process to ascertain whether one patent standing

alone provides all the protection that the inventor is entitled to."  604 F. Supp. at 568; *see also* 3

Patent Law Fundamentals § 15:25 (2d ed. 2007) ("It is appropriate to consider alternative

processes, albeit subsequent, in determining whether claims drawn to process and product

constitute separate and distinct inventions.") (citing *Phillips Petroleum Co. v. U.S. Steel Corp.*,

604 F. Supp. 555, 568 (D. Del. 1985)).

     In *Phillips*, the defendant argued (like the PTO here, PTO Opp. at 18-19), that the inquiry

into alternative processes should end at the filing date of the subject patent application.  *See Phillips*,

604 F. Supp. at 567-86.  The *Phillips* court rejected this argument for two reasons.  *First*, the Court

found that this argument "inappropriately weds priority of invention with the double patenting

doctrine.  The purpose of the former is to determine who, among potential inventors, is considered

first for purposes of United States patent law.  The primary, albeit not the only purpose of the latter

doctrine is to prevent the claim of like subject matter in more than one patent."  604 F. Supp. at 568.

*Second*, the *Phillips* court found that "consideration of subsequent advancements in the art in the

double patenting analysis neither expands nor contracts the scope of the invention claimed.  It

merely serves as an aid in determining whether the whole of the inventor's contribution to the art

was deserving of one or more than one patent."  *Id.*

Ultimately, the *Phillips* court "decline[d] to conduct the double patenting analysis with blinders so as to avoid recognition or discourage disclosure of advances in process technology as a means of making a product patent." *Id* (emphasis added). The court's double patenting analysis was affirmed by the Federal Circuit. *See U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247 (Fed. Cir. 1989).[6]

The *Phillips* court noted that neither it nor the parties could find any prior legal precedent directly addressing the timing requirement for an alternative process in a double patenting analysis. *See* 604 F. Supp. at 567. The *Phillips* court did, however, cite as follows to a prior opinion from the PTO (*Ex Parte Hogan*):

> In Ex Parte Hogan, *supra*, the Board of Patent Appeals was asked to determine whether a later-disclosed process could be considered in defeating a double patenting rejection. ***The Board deemed such subsequent developments in the art relevant to the double patenting inquiry***. *See Hogan*, No. 436-63, slip op. at 5. Although the decision is of no precedential value, it does illustrate the procedure which the Board of Patent Appeals, with its particular expertise, deems appropriate.

*Phillips*, 604 F. Supp. at 568 n. 49. Takeda requested a copy of the *Hogan* decision from the PTO weeks ago but, as of the filing of this brief, has not yet received a definitive response from the PTO regarding production of this opinion to Takeda. *See* PX 28 (email correspondence between counsel for the parties). Nonetheless, it appears that the *Phillips* court reviewed a copy

---

[6]    The district court initially ruled on summary judgment that there was no double patenting. *See Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985). Following trial, the district court issued a second opinion, *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F. Supp. 1278, 1309-13 (D. Del. 1987), again holding that there was no double patenting and adopting the prior summary judgment ruling. 673 F.Supp at 1312. The second district court opinion was affirmed by the Federal Circuit in *U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1253 (Fed. Cir. 1989), in which the Federal Circuit stated that it had "carefully considered defendants' arguments regarding … double patenting … We find none persuasive of error in the district court disposition of any of those issues and none of sufficient import to require discussion here of that disposition."

of the *Hogan* decision and, from the court's decision, *Hogan* contradicts the position taken by the PTO in this case.

In view of the holding in *Phillips*, which was affirmed by the Federal Circuit, and in view of the PTO's own *Hogan* decision, this Court can properly consider the alternative process described in the Duggan declaration. The PTO's request to ignore this evidence should be rejected.

### 2.    The Cases Cited By The PTO Are Not On Point

The PTO cites to a host of irrelevant cases to support its request to ignore the Duggan declaration. (PTO Opp. at 18 & 21-22.) This legal "authority" should be dismissed as being irrelevant. In particular, the *Dystar*, *Ajinomoto* and *Lilly* cases cited by the PTO concern obviousness over the prior art, enablement and best mode, respectively, not double patenting.[7] While these legal inquiries are tied to the applicant's filing date, they have no bearing on the double-patenting issues in this case. *See*, *e.g.*, *Phillips*, 604 F. Supp. at 567-68. And, the one case cited by the PTO addressing double patenting (*In re Ornitz*, 347 F.2d 586 (C.C.P.A. 1965)) does not address when an alternative process must exist to be considered in a double patenting analysis. The *Phillips* court rejected citation to similar off-point cases by the defendant in that case. *Phillips*, 604 F. Supp. at 567-68. After having months to research this issue, the PTO cannot cite to a single shred of on-point legal authority even remotely suggesting that the alternative process described in the Duggan declaration should be ignored.

---

[7]    The portion of 35 U.S.C. § 103 cited by the PTO also concerns obviousness in the context of prior art known at the time the invention was made, not in the context of double patenting analysis which involves claims of commonly owned, non-prior art patents.

E.    **The PTO's Procedural Challenges Should Be Rejected**

1.    **The Duggan Declaration And Exhibits Are Properly Before This Court**

The PTO argues (PTO Opp. at 27-28) that this Court should ignore the Duggan declaration (and the Gerlach and Monguzzi patents) because some of this evidence was not presented to the PTO during reexamination. As explained below, Takeda has a right to supplement its evidence on issues already raised below.

a)    **This Court Is Not Limited To The Record Created Before The PTO**

The law is well-settled that Takeda is entitled to present new evidence for issues already raised before the PTO. This principle is firmly rooted in Supreme Court, Federal Circuit and this Court's precedent. *See*, *e.g.*, *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (holding that a patent applicant may "present to the court ***evidence that the applicant did not present to the PTO***.")(emphasis added, footnotes omitted); *Hoover Co. v. Coe*, 325 U.S. 79, 83 (1945) ("It is evident that alternative rights of review are accorded an applicant,- one by appeal to the United States Court of Customs and Patent Appeals [the predecessor to the Federal Circuit], the other by bill in equity filed in one of the federal district courts. In the first the hearing is summary and solely on the record made in the Patent Office; in the other a formal trial is afforded on proof ***which may include evidence not presented in the Patent Office***.") (emphasis added, footnotes omitted); *Gould v. Quigg*, 822 F.2d 1074, 1076 (Fed. Cir. 1987) ("While the evidentiary record before the Board serves as the 'evidentiary nucleus' of the district court proceeding in an section 145 action, ***the parties are entitled to submit additional evidence***.") (emphasis added); *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1036-37 (Fed. Cir. 1985) (considering new evidence presented via a declaration and at trial); *Hyatt v. Dudas*, 393 F. Supp.2d 1, 6 n.7 (D.D.C. 2005) ("Although parties may present new evidence in Section 145 proceedings, they are prohibited from

presenting new issues 'at least in the absence of some reason of justice put forward for failure to present the issue to the Patent Office.'"); *MacKay v. Quigg*, 641 F. Supp. 567, 568 (D.D.C. 1986) ("A district court may only evaluate 'new' evidence if it supplements issues previously raised before the PTO.").  Indeed, the cases cited by the PTO (*MacKay* and *Quigg*) stand for the unremarkable proposition that an applicant cannot raise ***new issues*** for the first time on appeal.

The PTO's argument that this Court should ignore the Duggan declaration (or the cited Monguzzi or Gerlach references) is flatly rejected by the case authority cited above because this evidence merely "supplements issues previously raised before the PTO."  *MacKay*, 641 F. Supp. at 568.

> A district court action under 35 U.S.C. § 145 is a *de novo* determination of patentability.  It is not limited to the record before the PTO.  Unless a party is prejudiced thereby or due process is denied, ***expeditious justice is better served by avoiding artificial restrictions on the district court's authority to resolve all issues reasonably raised in the proceeding***.

*Newman v. Quigg*, 877 F.2d 1575, 1579 (Fed. Cir. 1989).

### b)    No New Issues Are Presented

With the Duggan declaration, Takeda merely provided supplemental evidence for an issue already raised below, *i.e.*, that Takeda is not claiming the only method available to make the cephem compounds claimed in Takeda's expired '606 patent.  Takeda has argued from the inception of this nearly decade-long reexamination proceeding that alternative non-infringing processes exist.  For example, Takeda presented a lengthy argument regarding the alternative, non-infringing displacement processes in its appeal brief to the PTO (DX 18 at pages 11-20).  Takeda also presented a detailed declaration from Dr. Wuest describing the alternative process described in the '216 patent specification.  (DX 23, at paragraph 50).  The PTO concedes that Takeda has previously presented evidence on the ***issue*** of whether alternative processes exist.

(PTO Opp. at 7.)  The declaration of Dr. Duggan simply confirms, as conceded by the PTO, that an alternative non-infringing process is also described in the Monguzzi and Gerlach patents. This alternative process is also a displacement process.  As such, the PTO cannot properly argue that the Duggan declaration raises new *issues* not already raised before the PTO.

This court's decision in *MacKay v. Quigg* is illustrative of this point.  In *MacKay*, this Court would not allow an applicant to present evidence regarding commercial success because "in the brief submitted to the Board, plaintiffs failed to argue on, or present any evidence regarding, the issues of commercial success or copying in order to support their claim of 'nonobviousness.'"  In contrast, Takeda's appeal briefs to the Board (and prior arguments to the examiner) are replete with arguments and evidence of an alternative process.  The Board rejected Takeda's evidence regarding the displacement process disclosed in the '216 specification, and Takeda has simply "strengthened its case with additional material" in form of the Duggan declaration describing another displacement process disclosed in the Gerlach and Monguzzi patents.  *Killian v. Watson*, 121 U.S.P.Q. 507, 507 (D.D.C. 1958).

### c)    Takeda Did Not Intentionally Or Negligently Withhold Any Evidence From The PTO

The PTO argues that the Duggan declaration should be excluded because it was intentionally or negligently withheld from the PTO.   Besides being factually wrong, the PTO reads the case law out of context in making this argument.  As demonstrated in this Court's *MacKay* decision, the focus is on "evidentiary areas" rather than individual pieces of evidence. *MacKay*, 641 F. Supp. at 571 ("In light of the evidence already submitted in the PTO proceedings, the Court finds that there has been no suppression *in this evidentiary area*, so that plaintiffs may introduce additional evidence to strengthen its prior art argument.").   The case law ties the inquiry into whether evidence has been intentionally or negligently withheld to evidence

relating to new issues not raised below. Here, there is no question that Takeda has already presented evidence to the PTO explaining that there are alternative methods of making the previously claimed cephem compounds.

For example, in its appeal brief to the PTO (DX 18), Takeda argued that a second alternative process of making the cephem compounds is disclosed in the specification of the '216 patent. This unclaimed, alternative process is called a "displacement" process.[8] A prior declaration submitted on behalf of Takeda by Dr. James Wuest (DX 23, ¶50), an expert in the claimed technology, explained that the unclaimed displacement process could use least one different starting material from those claimed in the '216 patent and, thus, was an alternative to the claimed acylation process. In the Board opinion on appeal, the Board rejected this declaration as being speculative.

When Takeda appealed to this Court, it searched for and found another expert to bolster Dr. Wuest's opinion regarding the displacement process, given the PTO's rejection of the Wuest declaration. That expert, Dr. Angelina Duggan, provided an undisputed declaration opining that alternative, noninfringing displacement processes are shown in the Gerlach and Monguzzi patents. The PTO concedes the accuracy of Dr. Duggan's conclusions. Thus, as in *MacKay*, Takeda is merely strengthening its position before this Court regarding the alternative displacement process. Thus, the PTO's narrow focus on the individual pieces of evidence is

---

[8]    The PTO examiner in charge of the application which eventually issued as the '216 patent made a restriction requirement between the claimed acylation process and the unclaimed displacement process (U.S. application serial no. 462,492, paper number 10, mailed May 23, 1991) (copied in DX 18, pages 29-30). A restriction requirement is a finding by the PTO that there are two separate inventions are being claimed in one application. *See* 35 U.S.C. § 121. In response to the restriction requirement, Takeda claimed the acylation process which claims eventually issued in the '216 patent, and cancelled claims directed to the displacement processes.

misplaced.  And, in any event, Takeda has never intentionally or negligently delayed in presenting any individual pieces of evidence at any point during this reexamination.

When Takeda learned of the Gerlach patent, it promptly submitted the Gerlach patent to the examiner and to the Board during the briefing process at the PTO.  Both, however, chose not to review this evidence on procedural grounds.  Similarly, Takeda's initial contact with Dr. Duggan was after it filed this case against the PTO.  And, Takeda did not learn of the Monguzzi patent until after briefing before the Board had already been completed.  Indeed, the PTO did not even issue the Monguzzi patent until briefing had already concluded before the Board.  In sum, Takeda has not intentionally or negligently withheld any evidence from the PTO.  Whenever Takeda has located relevant evidence, it has been promptly presented to the PTO and now to this Court.  *Accord Fregeau v. Mossinghoff*, 776 F.2d 1034, 1035-36 (Fed. Cir. 1985) (noting that the applicant had submitted a declaration of Dr. Lindsay during prosecution, which had been rejected by the examiner, and then "[a]t the trial before the district court under 35 U.S.C. § 145, ***appellant submitted an additional report prepared for the litigation by Dr. Lindsay which set forth additional data and a theory on how magnetism could act to enhance the flavor of beverages***.") (emphasis added).  And, contrary to the PTO's assertion (PTO Opp. at 28), there is no requirement in the law that the evidence presented in this case must have been unavailable to Takeda during the time this case was pending before the PTO.  Rather, as noted above, Takeda is entitled to present new evidence in this proceeding so long as it is directed to issues already raised below.  *See Gould*, 822 F.2d at 1076 (noting that appellants are "***entitled*** to submit additional evidence") (emphasis added).

2.    **Takeda Was Justified In Not Requesting A Remand Back From The Board For Further Consideration Of The Gerlach Patent**

Finally, the PTO argues that Takeda waived consideration of the Gerlach patent because it chose not to have the case sent back to the examiner's technology center for consideration of the Gerlach patent. Takeda disagrees. The present reexamination application was initially assigned by the PTO to examiner Ford who issued <u>six</u> non-final office actions, each containing different rejections from the prior office action(s). After Examiner Ford mailed the sixth non-final office action on February 14, 2001, Takeda filed a first appeal brief to the PTO Board. The PTO assigned a different examiner, Emily Bernhardt, to prepare an examiner's answer to Takeda's appeal brief. Examiner Bernhardt mailed a first examiner's answer on February 8, 2002. The examiner's answer contained a new double patenting rejection over the '606 patent apparently based on *In re Schneller*, 397 F.2d 350 (C.C.P.A. 1968). This new ground of rejection violated PTO's own rules at the time against making new rejections in an examiner's answer.

Takeda filed <u>five</u> petitions in the PTO between 2002 and 2004 requesting that the PTO withdraw the improper new ground of rejection in the examiner's answer. However, Takeda did not receive a final agency action from the PTO on the merits of the five petitions and did not receive any reply to the last four petitions. On February 20, 2004, Takeda was forced to file a complaint for writ of mandamus against the PTO in the U.S. District Court for the Eastern District of Virginia to obtain a final agency action. Civ. Action No. 04-188-A, E.D. Va. (PX 29). Count 2 of the complaint asked the Court to strike the new double patenting rejection which was made in violation of PTO's own rules. After Takeda negotiated with the PTO, the suit was dismissed with the PTO's promise to decide the outstanding petitions. On April 13, 2004,

Takeda received a decision from the PTO granting the relief requested in the outstanding petitions. The PTO reopened prosecution of the present reexamination.

On May 11, 2005, examiner Bernhardt issued a first final office action since the reexamination began more than seven years earlier. In the this office action, the examiner altered the reasoning of the *In re Schneller*-type double patenting rejection to an alleged *Geneva*-type[9] double patenting rejection.

On September 2, 2005, Takeda filed a second appeal brief (DX 18) to the Board in response to the final rejection. On November 16, 2005 examiner Bernhardt mailed a second examiner's answer in the present reexamination (DX 19). The second examiner's answer again contained a new argument in support of the double patenting rejection that was not found in any prior rejection.[10] In response to the new argument, Takeda filed a reply brief on January 13, 2006. In the reply brief, Takeda cited to and discussed the Gerlach patent (PX 11) to rebut the new argument in the second examiner's answer. The examiner refused to enter or consider the reply brief, because in her opinion, the discussion of the Gerlach patent constituted new evidence.

On March 10, 2006, Takeda filed a petition to the Board to have Takeda's reply brief containing the discussion of the Gerlach patent considered by the Board. On May 25, 2006, the Board issued a decision on petition in which the Board gave Takeda a choice: request a remand to the PTO technology center for consideration of Takeda's petition to enter the reply brief or proceed with the appeal without consideration of the reply brief.

---

[9]    *Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373 (Fed. Cir. 2003).

[10]    Specifically, p. 8 of the second examiner's answer (DX 19) stated that "[t]here is no parallel reaction(s) described for making instant cephems which rely on ultimate <u>starting reactants that are structurally distinct</u> from the reactants actually employed in the claimed process of US '216." (emphasis added).

Takeda decided to proceed without consideration of the reply brief given the fact that the prosecution of the present reexamination was in its eighth year, and because the PTO has:

i) issued more than half a dozen non-final office actions with different grounds of rejection from the prior office actions;

ii) made new grounds of rejection or new arguments in support of rejection in two examiner's answers;

iii) failed to reply to four Takeda petitions requesting final agency action; and

iv) required a writ of mandamus lawsuit to force a decision on Takeda's four previous petitions.

The Board then issued an Opinion on July 31, 2007 in which it made the new, unprecedented rejection based on *Mosler Safe* which is the subject of the present litigation. Based upon these facts, Takeda was certainly justified in wanting to bring the present dispute as quickly as possible to this Court.

**IV.    CONCLUSION**

For all these reasons, Takeda respectfully requests that this Court grant summary judgment that Takeda is entitled to a Reexamination Certificate confirming its rights to all claims in the '216 patent, and further requests that this Court deny the PTO's cross-motion for summary judgment.

Dated: June 1, 2007

Respectfully submitted,

  /s/  Clarence Edward Polk, Jr.
_____
C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300

Attorney for Plaintiff Takeda
Pharmaceutical Co. Ltd.