## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO., LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>HON. JON W. DUDAS, )<br>    Under-Secretary of Commerce for )<br>    Intellectual Property and Director of )<br>    the Patent and Trademark Office )<br><br>    Defendant. )<br>    ) | Civil Action No. 06cv1640 (TFH) |

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### CROSS-MOTION FOR SUMMARY JUDGMENT

There is no dispute that after filing for patents in Great Britain and Japan for its cephem product and the corresponding process for making that product, Takeda removed the process claims from its patent application filed in the United States in 1975, and then delayed more than 14 years — until 1990 — before filing these process claims in its U.S. application. There is also no dispute that the process claimed in the '216 patent (the cephem process) at issue in this case makes the exact same product in the now-expired '606 patent (the cephem product). Finally, there is no dispute (for purposes of this motion) that where only one process exists to make a particular product, claims for that process and product are co-extensive, and must expire on the same day; otherwise, the later-expiring patent would be invalid for double patenting.

Thus, to resolve this case, this Court must resolve just one issue: Can Takeda use processes developed almost 30 years after its invention as "alternative processes" under *In re Cady* to overcome the double patenting rejection of the claims of the '216 patent over the claims of the '606 patent? As is evident from the briefs submitted by both sides, no Court has ever allowed such a

claim. Both parties agree that a double patenting rejection is appropriate where there is only one viable process to make a claimed product. And here, there was only one process to make the claimed cephem product at the time of its development in 1974, at the time Takeda filed its product claims in the U.S. in 1975, at the time Takeda first filed process claims in 1990, and throughout the entire life of the product patents (which expired in 1998).

Takeda offered no reason for its 14-year delay in filing the process claims. Takeda admits that it could have filed the process claims at the same time it filed its product claims in the U.S. in 1975. However, it argues that it deleted the process claims from its U.S. application before filing because they were not valuable. Yet, throughout the 1970s and 1980s, Takeda filed hundreds of patent applications for processes, and received hundreds of patents for processes, showing that it indeed felt process claims were valuable long before 1990.

Accordingly, this Court should affirm the Board's decision below and grant summary judgment in the USPTO's favor, and find that Takeda's process patent for making cephem products, filed more than 14 years after it filed patents on those same cephem products, is invalid for double patenting. Finding otherwise would give Takeda an unjust timewise extension of its patent rights over the cephem products claimed in its now-expired '606 patent.

## SUMMARY OF ARGUMENT

This Court should affirm the Board's double patenting rejection for two reasons.

First, as Takeda admits, it could have, but chose not to file its process claims earlier. Instead, Takeda intentionally deleted the process claims from its priority documents (the U.K. and Japanese patent applications) when it filed its U.S. application in 1975, and then waited for more than 14 years to file process claims. If this Court reverses the Board, it would reward Takeda's delay by giving

it a second 17-year patent term over the cephem product by claiming the process to make the product. Such an extension of Takeda's patent rights are unjust, and should not be allowed.

Second, as both parties agree, at the time that Takeda filed its patent, and throughout the entire life of Takeda's product patent (which expired in 1998), only one process existed to make Takeda's cephem product patent that was claimed in the '606 patent. Because no concurrent alternative process existed to make the cephem product, Takeda's challenge to the double patenting rejection fails.

The Court does not need to reach the remaining issues raised by Takeda in this case. As stated in the USPTO's opening brief, this Court should not allow Takeda to introduce the Duggan declaration or the Gerlach or Monguzzi references as evidence of an "alternative process." If, however, the Court does allow that evidence to come in, because those documents discuss processes published after 2001, they are irrelevant as a matter of law. Additionally, as explained in the USPTO's opening brief, the Supreme Court law relied on by the Board is still good, and controlling law. Finally, although Takeda complains about the delay in the reexamination process, that delay was caused in large part by Takeda. In fact, if Takeda truly wanted a quick resolution to this case, in addition to proceeding faster at the USPTO, it could have filed its appeal directly to the Federal Circuit, rather than delaying ultimate resolution by first filing here at the District Court.

For these reasons, and the reasons stated in the USPTO's motion for summary judgment, the USPTO respectfully submits that the Board's decision is correct and should be affirmed, and asks that this Court grant summary judgment in its favor.

## ARGUMENT

As discussed more fully in the USPTO's opening brief, this case is a § 145 action seeking review of the Board's decision that Takeda's '216 patent is invalid for double patenting over Takeda's now-expired '606 patent. *See* USPTO's Br. at 10-20. Thus, Takeda bears the burden of showing that the Board committed reversible error. *Fregeau v. Mossinghoff*, 776 F.2d 1034 (Fed. Cir. 1985). The Board in this case determined that the claims to the process for making a particular cephem product (the '216 patent) are invalid for obviousness type double patenting over claims to that particular cephem product (the '606 patent). Because these process and product claims are inextricably linked, or as Takeda says, "co-extensive," the Board has found that Takeda's delay in prosecuting the claims of the '216 patent has resulted in an unjust, timewise extension of Takeda's patent rights. See PX 5 (Board Opinion), DX 24 at 17:19-18:4.

At the time of filing in 1975, the claimed cephem product could only be made by the process disclosed in that patent application. *See, e.g.*, Takeda's Opp. at 12-15. Where, as here, a product and a process are so tied together, the Court cannot allow two independent patents to issue. *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1386 (Fed. Cir. 2003) (finding later method of using product claims invalid for double patenting over earlier product claims); *Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354 (1888) (holding that later process patent could not be granted where patent already granted on product made by that earlier process). Otherwise, it would result in a situation, as here, where someone would pay royalties to Takeda for 17 years for the cephem product (which could only be made by one process), and then he would be forced to pay Takeda royalties for another 17 years on the only process for making the cephem product, whose patent already expired.

As the Federal Circuit stated in a similar context, "[i]t would shock one's sense of justice if an inventor could receive a patent upon a composition of matter, setting out at length in the specification the useful purposes of such composition, manufacture and sell it to the public, and then prevent the public from making any beneficial use of such product by securing patents upon each of the uses  to which it may be adapted. *Geneva*, 349 F.3d at 1386.  Like the case here, those methods of use in the *Geneva* case had been disclosed in the 1975 application, but not claimed until much later.  Therefore, under *Mosler Safe*, *Miller v.  Eagle Mfg. Co.*, 151 U.S. 186 (1894), and *Geneva*, this Court should affirm the Board's decision invalidating the '216 patent for double patenting.

A.    **Takeda's Intentional 14-year Delay in Filing its Process Claims Is an Unjust Extension of its Patent Rights.**

Citing *In re Hogan*, 559 F.2d 595 (C.C.P.A. 1977), *In re Henriksen*, 399 F.2d 253 (C.C.P.A. 1968), and *In re Borah*, 354 F.2d 1009 (C.C.P.A. 1966), Takeda argues that its deliberate 14-year delay in filing its process claims should be excused because Takeda has not violated any law.  Takeda Opp. at 5-6, 9.  Takeda's position that its delay is excusable has been squarely rejected by recent controlling Federal Circuit cases.  For example, in *Geneva*, the Federal Circuit explained that the patentee's delay in diligently filing its patent claims meant that the later filed claims were invalid for obviousness-type double patenting.  *Geneva*, 349 F.3d at 1382.  Specifically, the Federal Circuit stated that Glaxo's 25-year prosecution of its later, related patents could improperly extend protection for its invention in its earlier expired patents if double patenting were not found.  *Id.* at 1382.  The first patent in *Geneva* was filed in 1975 — the same year that Takeda began filing its applications in this case.  *Id.* at 1375.  Following the Federal Circuit's reasoning in *Geneva*, which

5

is consistent with the Supreme Court's holdings in *Mosler Safe* and *Miller*, it would be simply unfair to allow Takeda to continue forcing the public to pay royalties for the same products that the public had already paid for under the earlier, now-expired patents. Because Takeda waited so long to seek protection for its process claims, Takeda should not be entitled to a separate, second 17-year term for a process to make cephem products where Takeda's expired patents already excluded the public from making those same cephem products.

Even the old cases relied on by Takeda condemn the continuation practice that extended the life of patents before the GATT amendments were incorporated into U.S. law in 1995. *See, e.g., In re Henriksen*, 399 F.2d 253, 262 (C.C.P.A. 1968) ("we would express the postscript to this opinion, as did the dissenting opinion of the board, that it is unfortunate that a patent should be granted on an application depending upon another application filed over 20 years ago) (cited by Takeda); *Hogan*, 559 F.2d at 604 n. 13 (the 24 years of pendency may be decried) (cited by Takeda); *see also Crown Cork v. Ferninand Gutmann Co.*, 304 U.S. 159, 174 (1938) ("Thus, sweeping, indefinite and unclaimed disclosures, and adroit use of 'divisionals' . . . are permitted to extend a patent's statutory life and to increase a patentee's reward beyond that granted by Congress") (J. Black, dissenting).

Takeda argues that it should be permitted to extend its rights in the absence of a change in law. But as discussed in the USPTO's motion for summary judgment, in 1995 Congress expressly changed the law to tie the term of a patent's monopoly to the filing date rather than the issue date. *See* USPTO's Br. at 13. This change further encouraged patentees to diligently seek patent protection of their rights, although patentees were already obligated to do so anyway. *See In re Bogese*, 303 F.3d 1362 (Fed. Cir. 2002); *Symbol Techs., Inc. v. Lemelson*, 422 F.3d 1378 (Fed. Cir. 2005); *Geneva*, 349 F.3d at 1382; *see also* PX 5, Bd. Opinion at 25 ("[T]he law encourages

6

individuals to diligently seek to protect their 'rights' and not delay to the prejudice of others.  The 'others' in this case is the public.")

Takeda's argument that it had an "absolute right" to delay the filing of its prosecution claims (Takeda's Opp. at 2) and that the USPTO's equitable argument is a red herring are based on an abrogated decision, and do not reflect the current state of the law.  As the Federal Circuit stated in *In re Bogese*, "[n]owhere does *Henriksen* suggest or imply that the USPTO must allow dilatory tactics in the prosecution of applications or that the USPTO lacks inherent power to prohibit unreasonable delay in prosecution."  *In re Bogese*, 303 F.3d at 1368 n.6.  Takeda admitted during the hearing before the Board that it could have filed its process claims with the product claims in 1975:

> JUDGE MCKELVEY: There was no — could you have put these process claims in, and attempted to obtain them along with the '606 compound claims?
>
> MR. MAEBIUS:        Yes, we concede that.

DX. 24, Oral Hearing Transcript at 11:11-14.  And while Takeda might have been permitted to obtain this process patent if it had diligently presented its claims, Takeda should not be permitted to delay the filing to unjustly extend its rights over the cephem product claimed in a now-expired patent.

**B.     No Case Supports Takeda's Position That a Process Developed At Any Time Can Be Used to Defeat a Double Patenting Rejection.**

Takeda relies on *In re Cady*, 77 F.2d 106 (C.C.P.A. 1935), for the proposition that a double patenting rejection on a later process claim is not appropriate where more than one viable process exists to make a product claimed in an earlier patent.  As the *Cady* court stated, "[t]here would be

force in the [double patenting] argument, if there were but one process, and the only possible result thereof was the single product; but the more philosophical way to view the question is to ask whether the two patents cover the same invention when properly construed.  They do not; one being only for a process of making, and the other for the thing made, ***with disclosure of another process***."  *Id*. at 109 (citations omitted) (emphasis added).  For purposes of deciding this motion, the USPTO agrees with this proposition.  Unlike the *Cady* case, however, the alternative process here "was not disclosed," nor did it exist at the time that Takeda's patent was initially filed in 1975.  *See* PX 10 and 11 (the Gerlach and Monguzzi patents).

Because Takeda has no concurrent alternative process, Takeda's sole argument in this case is that this Court can "properly" look to processes disclosed to the public in 2002 and 2005 — almost thirty years after Takeda's invention — to determine whether it is entitled to a patent for its process invented in 1974.  Takeda has not cited any authority whatsoever to support its position.  Not even the non-binding cases of *Phillips Petroleum Co. v. U.S. Steel Corp.*, 604 F. Supp. 555 (D. Del. 1985) ("*Phillips I*") or *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F. Supp. 1278, 1316-17 (D. Del. 1987) ("*Phillips II*"), upon which Takeda relies, supports this position.

First, the *Phillips I* court was faced with a double patenting rejection of a later product claim that was based on an earlier expired process claim.  In 1953, Phillips had filed a patent application describing both a process for making solid crystalline polypropylene as well as the product itself.  *Phillips I*, 604 F. Supp. at 557-58.  Claims for Phillips' process issued on March 4, 1958, and expired on March 4, 1975.  Claims for the product, however, were involved in litigation spanning several decades (related to which of a number of companies was the first inventor entitled to a patent on the product), and did not issue until March 13, 1983.  The *Phillips* court found significant the fact

that the process claims in the earlier, expired patent did not make the product claimed in the later patent. *Id.* at 567 (The process claim "results in a product other than the solid crystalline polypropylene of" the patent at issue). Because the claimed process did not make the later claimed product, the *Phillips* court found there could be no double patenting. *Id.* Additionally, because both parties agreed that a party could infringe the product claim without infringing the earlier process claim, the court found this fact also supported its finding of no double patenting. *Id.*

In contrast, Takeda has repeatedly admitted (and the USPTO agrees) that the process claims in the '216 patent make the exact same product claimed in the now-expired '606 patent. *See, e.g.,* DX 18, Takeda's Appeal Brief to the Board at 33; DX 20, Transcript of Oral Hearing before the Board at 17:19-18:4, 20:11-21:1. Thus, unlike the case in *Phillips*, Takeda is using its own self-imposed delay to unjustly extend its patent rights by using its process patent to exclude others from making the same product that was claimed in the now-expired '606 patent.

Second, even if the earlier patented process in the *Phillips* case did make the later-claimed product, the *Phillips* decision does not control this Court. The decision is 22 years old, from another district court, and its reasoning on various double patenting issues has not been adopted by any Court. Takeda implies in a footnote that the Federal Circuit adopted the district court's reasoning in this opinion, but as Takeda itself then points out, the parties actually appealed a later, post-trial decision of the district court, which did not include much of the discussion that was contained in the earlier opinion. *See Phillips II*, 673 F. Supp. at 1278*; see also U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247 (Fed. Cir. 1989). Moreover, the court in *Phillips II* found as a matter of fact that that the process claimed in the earlier, expired patent did not make the product in the later patent, and that fact precluded a finding of double patenting.

Third, the *Phillips I* court specifically stated that the "peculiar sequence of events" in its case warranted the court looking at the alternative process developed around the same time as Phillip's process (called the "Natta" process). *Id.* at 568. In *Phillips I*, the district court found it notable that the product patent at issue in the case disclosed both of the two alternative processes — the Phillips process and the Natta process. *Id.* at 568 ("It would be anomalous in a double patenting inquiry to ignore a process which is disclosed in the very patent being examined by the Court. . . . [O]n these facts, it is appropriate to consider the [Natta] organometallic process."). Therefore, the *Phillips I* opinion cannot be analogized to the facts in this case where Takeda disclosed no other alternative process, nor did any exist, at the time of the 1975 application for the '606 patent.

Even if this Court here decided to follow the reasoning in *Phillips I*, then the Gerlach and Monguzzi processes that Takeda has put forth come much too late. Under *Phillips I*, these alternative process here would have had to have been developed and disclosed in the 1970s, at around the same time as Takeda's initial patent application. At the very least, Takeda's 1990 process patent application needed to disclose these alternative processes. Yet Takeda did not disclose either the Gerlach or the Monguzzi processes in any of its patent applications at any time. Instead, the alternative processes were not disclosed to the public until almost 30 years after Takeda first filed its patent application in the U.S., and more than 12 years after Takeda filed its process application. Consequently, *Phillips* does not help Takeda here.

In fact, the USPTO could not find any case that held that a patentee could rely on scientific advances that occurred in the art ***after the filing date*** for any issue relating to patentability. As noted in a different context by the Federal Circuit's predecessor in *In re Hogan*, 559 F.2d 595, 604 (C.C.P.A. 1977) (cited by Takeda), no rational distinction could be made in treating patentability in

one manner with respect to the applicant, and a different manner with respect to the Examiner. Yet this is exactly what Takeda is advocating. Takeda well knows that the Examiner could never use the later developed processes shown in Gerlach or Monguzzi to try to defeat patentability. Takeda therefore is precluded from using those references to establish patentability. *Id.; see also In re Glass*, 492 F.2d 1228, 1232 (C.C.P.A. 1974) (applicant could not rely on what occurred in the art after his filing date because "application sufficiency under s 112, first paragraph, must be judged as of its filing date." That principle applies equally to the USPTO.).

**C.    Takeda's Remaining Arguments Are Merely A Sideshow.**

**1.    Takeda was permitted to apply for, and received numerous process patents before the "change in law" in 1989.**

Takeda tries to excuse its delay by claiming that the enactment of 35 U.S.C. § 271(g) made process claims valuable for the first time. That assertion is incorrect. Before Section 271(g) was enacted, an entity could make an unpatented product by a patented process overseas, and import that unpatented product without violating the patent laws. *See Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir.1996) ("[p]rior to the enactment of the [Process Patents Amendments Act of 1988], a patentee holding a process patent could sue for infringement if others used the process in this country, but had no cause of action if such persons used the patented process abroad to manufacture products, and then imported, used, or sold the products in this country"); *see also Zoltek Corp. v. United States*, 51 Fed.Cl. 829, 836 (2002) (stating that "if a private party practiced even one step of a patented process outside the United States, it avoided infringement liability, as [section 271(a)] was limited to acts committed within the United States"). This loophole encouraged potential infringers to make unpatented products using patented processes overseas, rather than in

11

the U.S., to avoid a charge of infringement. Section 271(g) was added to the patent statute to simply extend patent coverage where product claims were not patentable. Here, Takeda was able to, and did in fact, patent its products and prevent the importation of its claimed products. Thus, section 271(g) did not give Takeda any additional rights, and the analysis in *Rohm & Haas Co. v. Roberts Chems.*, 245 F.2d 693 (4th Cir. 1957), is inapplicable to this case.

On pages 4-7 of its brief, Takeda argues that, before the enactment of section 271(g), "because of [the] deficiency in U.S. process patent protection, ***Takeda did not file process claims in the U.S.***" Takeda Opp. at 5 (emphasis added). Nothing could be further from the truth. In fact, from January 1976 until 1989, Takeda applied for and received hundreds of process patents. *See, e.g.,* DX. 30. In fact, Mr. Ochiai and three of his co-inventors have at least one patent on a process that issued two weeks after he filed his initial application in the U.S. on the patents at issue. *See* DX. 31, U.S. Patent No. 3,929,775, entitled "Process for Producing Cephalosporin Derivatives," filed on December 3, 1971 and issued on December 30, 1975.

Most telling, Takeda also applied for and received patents that contained both product and process claims. For example, U.S. Patent No. 3,984,401, entitled "Process for Producing Lactol-Type Cephalosporins," filed on December 7, 1973, and issued on October 5, 1976 (the "'401 patent"), had claims for the process of making a specific product (a lactol-type cepholosporin), and claims to the same product (a lactol-type cephalosporin). *See, e.g.,* DX. 32 (compare product claim 1 at cols: 17:10 to 18:4 with process claim 16 at col. 19:17-53).

Takeda deliberately deleted the process claims from its U.S. application at issue in this case instead of prosecuting both process and product claims at the same time. *Compare* DX 14 (the U.K. application) with PX 9 (the '606 patent). As with its other patents filed in the U.S., Takeda had an

12

obligation to diligently present the process claims in this case, or risk losing them. *See, e.g., Geneva*, 349 F.3d at 1382, *Mosler Safe*, 127 U.S. at 354. Because, Takeda chose to delay the filing of the process claims for 14 years, these claims should now be held invalid for double patenting.

2.    ***Mosler Safe* and *Miller* have not been overruled or limited.**

Takeda essentially rehashes its argument presented in its opening brief regarding the applicability of the Supreme Court's holdings in *Mosler Safe & Lock Co. v. Mosler, Bahmann & Co.*, 127 U.S. 354 (1888) and *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894). Accordingly, the USPTO responds by directing the Court to its brief at pages 16-17 and 23-24.

Takeda also argues that *Mosler Safe* and *Miller* should not be followed because the Federal Circuit stated in *General Foods Corp. v. Studiengesellschaft Kohle, M.B.H.*, 972 F.2d 1272, 1278 (Fed. Cir. 1992) that no other kind of double patenting is recognized other than same invention and obviousness type double patenting. *See* Takeda's Opp. at 9-10. It is beyond obvious that the Federal Circuit has no power to overrule the Supreme Court. But in any event, as the USPTO explained in its opening brief, obviousness type double patenting encompasses rejections broader than simply obviousness rejections. *See* USPTO Br. at 14-17. Additionally, as numerous courts have noted, the obviousness type double patenting doctrine prevents an applicant from extending patent protection for an invention beyond the statutory term by claiming a slight variant, just as Takeda is trying to do here. *See, e.g.*, *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003) (finding obviousness type double patenting, and noting that GSK's long delay in prosecution would extend GSK's patent rights if double patenting weren't found); *Mosler Safe*, 127 U.S. at 354 (a later patent could not be granted for the process which results in the product where product patent previously issued); *In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993) ("By adopting the easy course of

13

filing a continuation or divisional application to gain a narrow claim, a patentee could gain an extension of the term on a species when the broad genus later issued. This practice would extend the exclusionary right past the 17-year limit mandated by Congress. Under Supreme Court precedent, only one patent can issue for each patentable invention."), citing *Miller*, 151 U.S. at 197.

### 3.      Takeda does not have an unfettered right to introduce new evidence.

As the USPTO explained in its opening brief, Takeda does not have the unfettered right to introduce new evidence into a Section 145 proceeding. The policy of encouraging full disclosure to *administrative* tribunals is a compelling reason for Article III courts to fashion limitations on the admissibility of supplementary evidence in actions such as the case *sub judice. DeSeversky v. Brenner,* 424 F.2d 857, 858 (D.C. Cir. 1970). For that reason, despite the "de novo" label accorded judicial review under Section 145, courts have limited the admissibility of certain kinds of evidence. In a Section 145 proceeding, the plaintiff has a trial *de novo* and may introduce evidence not previously presented to the Patent Office, but the plaintiff is precluded from presenting new evidence "which he was negligent in failing to submit to the Patent Office," *California Research Corp. v. Ladd,* 356 F.2d 813, 821 n. 18 (D.C. Cir. 1966), nor can the plaintiff present new issues, "at least in the absence of some reason . . . for failure to present the issue to the Patent Office." *DeSeversky*, 424 F.2d at 858. This requirement promotes judicial economy, "since the application of Patent Office expertise in the first instance may either obviate the need for judicial consideration, or illuminate the issues and facilitate the court's disposition." *Id.* at 859.

As explained in the USPTO's opening brief, Takeda waived its right to have the Gerlach patent considered by this Court, and thus no longer has the right to try to introduce it here. And although Takeda did not expressly waive its right to rely on the Monguzzi patent in the proceedings

before the USPTO, Takeda has not demonstrated why it failed to present that patent to the USPTO. *DeSeversky*, 424 F.2d at 858; *see also* DX 24, *Hyatt v. Dudas*, Civil Action No. 03-901 (HHK) (D.D.C. September 30, 2005), Memorandum Opinion (Docket # 46), denying request for reconsideration (Docket # 55).

That said, even if this Court allows Takeda to introduce this new evidence, it is irrelevant to this case. The statements in the Duggan declaration, and both the Monguzzi and Gerlach patents all deal with inventions developed more than 25 years after the invention at issue in this case.

    **4.**    **The long time for the reexamination is both irrelevant to the issue this Court needs to decide and Takeda's fault.**

The relevant time period for the delay in this case starts from the date that Takeda first filed its initial patent application (December 19, 1975) and ends on the date Takeda first presented process claims to the USPTO (April 3, 1990). Despite this, Takeda complains of a different "delay" — that which occurred in the reexamination of the '216 patent that was filed in April 1998, over 9 years ago. The length of time that the '216 patent has been in reexamination, however, is not relevant to any issue before this Court. Notably, Takeda contributed in large part to the long pendency of the reexamination. First, although Takeda complains that the initial examiner made numerous non-final office actions, Takeda chose to amend its claims in the reexamination, which required the examiner to review and examine new claims. DX 33 (Takeda's Amendment). And then, after prosecuting the amended claims, Takeda "amended" back to the original claims. DX 34 (Takeda's Second Amendment). Takeda also sought and received numerous extensions of time, and filed other long, complicated petitions that the Patent Office had to review, consider, and rule on. *See, e.g.,* DX 35 (providing several example petitions that Takeda filed during the reexamination). As the USPTO

Petitions Office noted several times, these petitions were delaying the proceedings. *See, e.g.,* DX 36. After filing an appeal, Takeda then repeatedly sought to re-open prosecution, rather than continue with that appeal. *See, e.g.,* DX 35 - DX 37. Yet in all that time, while making all of those submissions over the last nine years, Takeda failed to produce the ***only*** evidence it relies on here — the Duggan declaration and the Gerlach and Monguzzi patents.

Indeed, if Takeda were truly interested in a quick resolution, it would have appealed the Board's rejection of its patent directly to the Federal Circuit. Instead, in yet another example of Takeda's delay, Takeda appealed to this District Court. By this course of action, Takeda gets additional time for a final decision in this case, which can then be appealed to the Federal Circuit.

<u>**CONCLUSION**</u>

The claims of the '216 patent, filed more than fourteen years after the filing of Takeda's original specification, are invalid for obviousness-type double patenting over the claims of the' 606 patent. Because Takeda waited more than 14 years to file its process claims over products it had previously patented, allowing the Reexamination Certificate to issue would provide Takeda an unjust, timewise extension of its patent monopoly. Therefore the USPTO respectfully requests that the Court affirm the Board's decision, and grant summary judgment for the USPTO.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843


Of Counsel

STEPHEN WALSH
Acting Solicitor
SHANNON M. HANSEN
WILLIAM G. JENKS
Associate Solicitors

United States Patent and Trademark Office

17