# DX 33

Reexam

CM1 11D10

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 087147/0265

Reexamination No. 90/004,950

Filed: April 3, 1998

U.S. Patent No. 5,583,216

Group Art Unit: 1611

Issued: December 10, 1996

Examiner: Mr. John M. Ford

Title: METHODS FOR THE MANUFACTURE OF CEPHEMS

### AMENDMENT AND REQUEST FOR RECONSIDERATION

Commissioner for Patents and Trademarks
Washington, D.C. 20231

APR 2 1 1999
GROUP 180

Sir:

In response to the outstanding Office Action mailed on January 14, 1999, please amend the above-captioned patent as follows:

### IN THE CLAIMS

Please cancel claims 3-5 and rewrite them in independent form as the following claims 6-8:

6. A process for preparing a cephem compound of the formula:



Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

wherein $R^3$ is hydrogen or methoxy, $R^4$ is hydrogen or a residue of a nucleophilic compound, $R^5$ is hydroxyl or a protected hydroxyl, and $R^8$ is hydrogen or a halogen, or a pharmaceutically acceptable salt or ester thereof, which comprises reacting a compound of the formula:

$$\begin{array}{c} R^3 \quad S \\ H_2N \underset{O}{\overset{}{\rule{0pt}{1.5ex}}} \!\!-\!\!\underset{N}{\rule{0pt}{1.5ex}} \!\!\diagup\!\!\diagdown \\ \text{COOH} \quad CH_2R^4 \end{array}$$

wherein $R^3$ and $R^4$ are as defined above,
or a salt or ester thereof, with a compound of the formula:

$$\begin{array}{c} R^1 \quad S \quad R^8 \\ \|\quad \diagdown\!\!\diagup \\ N \!-\!\!-\!\!-\!\! CCOOH \\ \| \\ NR^5 \end{array}$$

wherein $R^1$ is an amino group and $R^5$ and $R^8$ are as defined above, or a salt or reactive derivative thereof.

-2-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

7. A process of claim 6 wherein the amino group as $R^1$ is amino.

8. A process of claim 6 wherein the amino group as $R^1$ is a protected amino, and subsequent to said reaction the protective group is removed. --

Please add the following new claims:

-- 9. A process of claim 6 wherein $R^3$ and $R^8$ are hydrogen.

10. A process of claim 6 wherein the reactive derivative is selected from the group consisting of an acid halide, an acid anhydride, an active amide, and an ester.

11. A process of claim 10 wherein the acid anhydride is a mixed acid anhydride or a cyclic carboxy-anhydride.

12. A process of claim 1 wherein the cephem compound prepared by the process is a syn-isomer with respect to the oximino group.

13. A process of claim 6 wherein the cephem compound prepared by the process is a syn-isomer with respect to the oximino group.

## REMARKS

*1. Discussion of Amendments*

Claims 3-5 have been canceled so that they could be rewritten as new claims 6-8, with claim 6 corresponding exactly to claim 3 except in independent form, claim 7 corresponding to

-3-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

claim 4, and claim 8 corresponding to claim 5. No changes in wording were made other than those necessary for claim 3 to be in independent form and for claims 7 and 8 to have antecedent basis in claim 6.

Claims 9-13 are added to cover additional embodiments within the scope of original claim 1. Support for claim 9 is found in original claim 2. Support for claims 10 and 11 is found in column 6, lines 64-68 of the '888 specification. Support for claims 12 and 13 is found in column 10, lines 39-43 of the '888 specification.

Claims 6-13 do not enlarge the scope defined by the original claims.

No new matter has been introduced by claims 6-13.

*2. No Rejection Based on Obviousness-Type Double Patenting*

The Examiner clarified that there is no rejection in this reexamination based on obviousness-type double patenting in a communication mailed on March 9, 1999.

*3. Rejection Based on Chauvette, Gottstein, Cocker, Fieser, and Dolfini*

Claims 1-5 have been rejected under 35 U.S.C. 103(a) as being unpatentable over "Chauvette and Gottstein to which U.S. Patent No. 4,020,058 (Cocker et al.) is added, in view of Fieser and Dolfini" (Office Action at page 4, lines 8-9). Reconsideration of the rejection is respectfully requested.

   *a. The Instant Rejection Disregards Supreme Court Precedent And En Banc Federal Circuit Precedent*

The legal misunderstanding that underlies this rejection is best summarized on page 9, lines 8-17, of the Office Action, where the Examiner stated:

-4-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

> Judge Archer did not have, in a 3-judge panel, the authority to overrule <u>Larsen</u>, <u>Albertson</u> or <u>Durden</u>....
> Therefore, the 35 U.S.C. 103 rejection of claims 1-5, herein, based on the total combination of what the prior art teaches, is a valid rejection under In re Albertson, 141 U.S.P.Q. 730.

The Examiner seems to overlook that a three-judge panel of the Federal Circuit does have the authority to apply superior Supreme Court precedent against improper rejections made by the Patent Office based on inferior CCPA precedent, which is what the *Ochiai* panel did when it stated:

> ...*Graham* and its progeny, entitles an applicant to issuance of an otherwise proper patent unless the PTO establishes that the invention *as claimed* in the application is obvious over cited prior art, based on the specific comparison of that prior art with claim limitations.

*In re Ochiai*, 37 USPQ 2d at 1133 (Fed. Cir. 1995).

The Examiner also seems to have overlooked that a three-judge panel of the Federal Circuit does have the authority to apply its own *en banc* decisions to overrule improper rejections made by the Patent Office based on inferior CCPA precedent, which is what the *Ochiai* panel did when it stated:

> as we clearly indicated in *In re Dillon*, a recent in banc decision, "[w]hen any applicant properly presents and argues suitable method claims, they should be examined in light of all . . . relevant factors, free from any presumed controlling effect of *Durden*" or any other precedent. 919 F.2d 688, 695, 16 USPQ2d 1897, 1903 (Fed. Cir. 1990) (in banc), *cert. denied*, 500 U.S. 904 (1991). Having compared Ochiai's claims, limited as they are to the use of a particular nonobvious starting material for making a particular nonobvious end product, to the prior art of record, we reverse the rejection of claims 6 through 10 as an incorrect conclusion reached by incorrect methodology.

*In re Ochiai*, 37 USPQ2d at 1133.

Thus, the *Ochiai* panel had ample authority to do what it did, contrary to the Examiner's statement on page 9, lines 8-17 of the Office Action. *Graham v. Deere*, a decision

-5-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

of the Supreme Court, and *In re Dillon*, an *en banc* decision of the Federal Circuit, are superior to *Larsen*, *Albertson*, and *Durden*. Based on this superior precedent, the Federal Circuit specifically held that the kind of rejection now being made by the Examiner, which ignores the structures of the starting material and final product recited in the claimed process and instead focuses only on the reaction mechanism, is improper. In particular, the *Ochiai* panel stated:

> ...One having no knowledge of this acid could hardly find it obvious to make any cephem using this acid as an acylating agent, much less the particular cephem recited in claim 6. In other words, it would not have been obvious to those of ordinary skill in the art to choose the particular acid of claim 6 as an acylating agent for the known amine for the simple reason that the particular acid was unknown but for Ochiai's disclosure in the '429 application. As one of our predecessor courts had occasion to observe, in a case involving a highly analogous set of facts, "one cannot choose from the unknown." *Mancy*, 499 F.2d at 1293, 182 USPQ at 306. [footnote omitted]
> In addition, although the prior art references the examiner discussed do indeed teach the use of various acids to make various cephems, they do not define a class of acids the knowledge of which would render obvious the use of Ochiai's specifically claimed acid. [footnote omitted] The Board noted that Ochiai's specifically claimed acid is "similar" to the acids used in the prior art. Likewise, the examiner asserted that the claimed acid was "*slightly* different" from those taught in the cited references. Neither characterization, however, can establish the obviousness of the use of a starting material that is new and nonobvious, both in general and in the claimed process. <u>The mere chemical possibility that one of those prior art acids could be modified such that its use would lead to the particular cephem recited in claim 6 does not make the process recited in claim 6 obvious</u> "unless the prior art suggested the desirability of [such a] modification." *In re Gordon*, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed. Cir. 1984). <u>As we noted above, the examiner discussed no references containing any suggestion or motivation either (a) to modify known acids to obtain the particular one recited in claim 6, or (b) to obtain the particular new and nonobvious cephem produced by the process of claim 6. In short, the prior art contains nothing at all to support the conclusion that the particular process recited in claim 6 is obvious.</u>

*In re Ochiai*, 37 USPQ2d at 1131 (underlining added).

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

### b. Newly Cited Cocker Teaches Away From The Presently Claimed Invention

As previously shown, Gottstein, Chauvette, Fieser, and Dolfini are all farther removed from the starting material of the presently claimed invention than the prior art's starting material that was originally considered by the Federal Circuit in *Ochiai*. The Examiner does not dispute this. Instead, the Examiner cites a new reference, Cocker, which in no way remedies the deficiencies of the four references. Like Gottstein, Chauvette, Fieser, and Dolfini, Cocker is also structurally farther removed from the Ochiai starting material than the previously considered prior art in the *Ochiai* appeal. Cocker furthermore teaches away from the presently claimed invention (as explained below).

The starting acid used by Cocker in the examples has the following structure:

[Chemical structure: a five-membered ring containing O, with a substituent C(=N-O-R)-COOH]

Note that Cocker's structure is farther removed from the closest prior art considered in the *Ochiai* appeal, as depicted in the previously submitted chart, which is reproduced on the following page for the Examiner's convenience.

-7-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

## OCHIAI REEXAMINATION: STARTING ACID
### OCHIAI CLAIM 1 (BOTH *IN RE OCHIAI* AND REEXAMINATION)[1]

[Structure: 2-aminothiazole ring with substituent $-C(=N-O-R)-COOH$]

### PRIOR ART IN THE PRIOR PROCEEDING
*In re Ochiai*, 71 F.3d 1565, 37 UPSQ2d 1127 (Fed. Cir. 1995)[2]

[Structure: thiophene ring with substituent $-C(=N-O-R)-COOH$]

### CHAUVETTE IN THE INSTANT REEXAMINATION[3]

[Structure: thiophene ring with $-CH_2-COOH$ substituent]

---

[1] This same compound is pictured in the Appellants' Brief in *In re Ochiai*, at page 3; the "R" group in claim 1 may be, for example, hydrogen or methoxy; no distinction is claimed as to the nature of the R group versus the prior art considered in *In re Ochiai*.

[2] Cook et al., U.S. Patent 4,024,133 and Gregson et al., U.S. Patent 4,024,134, shown as closest prior art in Appellants' Brief in *In re Ochiai*, at page 2 (along with corresponding prior art substituted for thienyl either pyridyl or isothiazolyl).

[3] Chauvette et al., *Chemistry of Cephalosporin Antibiotics. II. Preparation of a New Class of Antibiotics and the Relation of Structure to Activity*, 84 J. Am. Chem. Soc. 3401-02 at 3402, Table 1, Compound 8 (1962).

-8-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

In addition to the obvious structural differences between Cocker's starting material and the Ochiai starting material evident on the preceding page, Cocker actually teaches away from the presently claimed invention in several respects. First, though Cocker mentions a thienyl or furyl moiety for use in the starting acid (neither of which is closer to the presently claimed starting acid than the previously considered prior art), Cocker's examples utilize only furyl which is even farther removed than thienyl. This preferred furyl starting acid is farther removed from the Ochiai starting acid than any of the references' starting acids previously considered by the Federal Circuit. In addition, Cocker's cephem starting material has a P group at the 3-position which represents hydrogen or halogen, whereas the corresponding group in the cephem starting material of Ochiai's claim 1 is $CH_2R^4$.

There is nothing in any of the five cited references that would have led one of ordinary skill to imagine the particular Ochiai starting material of claim 1; there is nothing that would have enabled one to make such a compound even if it were imagined; and there would have been no recognized benefit for making the compound even if it were possible to do so. Perhaps sensing the weakness of the cited combination of prior art, the Examiner asks himself in the paragraph bridging pages 4-5 of the Office Action:

> What is the motivation? It is, among others, an economic motivation. If 7-acyl amino cephalosporins are known antibiotics, then others would find it obvious to vary the acyl to produce a different compound by known means. That is what bench
> chemists (pure chemistry) do. They design the molecule. They know what they are going to get. They know what the product will be.

This proposed motivation is grossly inadequate. What economic motivation is the Examiner talking about? If there are known antibiotics that are known to work, what economic factor would motivate one to alter them? How would one choose to alter them in a particular way? Which of the five references' starting materials cited in this rejection would be altered and how? Why would one of ordinary skill in the art not just decide to use Cocker's starting cephem material (which is outside the scope of instant claim 1) instead of that used in the other references? What part of any of these references would motivate one to use an amino-thiazolyl

-9-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

moiety in the starting acid? Surely the Examiner does not mean to suggest that all antibiotics or even all compounds are obvious simply because "pure" chemists will eventually make them.

Given that the prior art cited in the instant rejection is even farther removed from Ochiai's particular nonobvious starting material than the prior art originally considered by the *Ochiai* panel, and given that Cocker teaches away from the presently claimed invention, the instant rejection stands on far worse ground than the original rejection that was appealed to the Federal Circuit. The Examiner appears to be making the exact same errors in this reexamination made by Examiner Rizzo and overruled by the Federal Circuit in *Ochiai*:

> In light of the above, the examiner's errors are evident. First, the examiner concluded that one of ordinary skill in the art would "recognize the use of '2-aminothiazolyl' if the final products sought were to contain this moiety." The prior art, however, contains nothing at all to suggest that one seek this concededly nonobvious final product. The examiner erred by indulging in an essentially hindsight comparison of the functioning of the new acid in claim 6 as a precursor to the claimed cephem with that of other acids in the prior art processes that produced other cephems. Such a comparison uses Ochiai's specification as though it were prior art in order to make the claim to a method that uses the nonobvious acid to make the nonobvious cephem appear to be obvious. Second, the examiner incorrectly drew from *Durden*, a case turning on specific facts, a general obviousness rule: namely, that a process claim is obvious if the prior art references disclose the same general process using "similar" starting materials. [footnote omitted] No such *per se* rule exists. <u>Mere citation of *Durden, Albertson,* or any other case as a basis for rejecting process claims that differ from the prior art by their use of different starting materials is improper, as it sidesteps the fact-intensive inquiry mandated by section 103</u>.

*In re Ochiai*, 37 USPQ2d at 1131-1132. The underlined sentence perfectly captures the error of what the Examiner has done here in the outstanding Office Action by citing the same case law already held to be inadequate for this kind of rejection without even attempting to conduct the 103-mandated "fact-intensive inquiry" of comparing the claim limitations to the prior art. As shown above, that inquiry reveals prior art <u>farther removed</u> than that already considered.

Accordingly, withdrawal of the rejection under 35 U.S.C. 103(a) based on Chauvette, Gottstein, Cocker, Fieser, and Dolfini is requested.

-10-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

*4. Rejections Based On Denial Of Ochiai's Earliest Filing Date*

Claims 1 and 2 have been rejected under 35 U.S.C. 103(a) as obvious over Heymes et al., U.S. Patent 4,202,893. Claims 1 and 2 have been rejected under 35 U.S.C. 103(a) as obvious over Durckheimer et al., U.S. Patent 4,758,556. Claims 1 and 2 have been rejected under 35 U.S.C. 103(a) as obvious over Ochiai et al., U.S. Patent 4,203,899. The '899 reference is also stated by the Examiner to be "a 35 U.S.C. 102 disclosure, as it is the same as applicants" (Office Action at page 9, lines 5-6). Reconsideration of the rejections is respectfully requested.

Each of the rejections is based on a denial of Ochiai's earliest filing date. The Examiner has asserted that claims 1 and 2 are not entitled to the benefit of priority under 35 U.S.C. 120 of the earliest Ochiai disclosure (which is reflected in Ochiai's '888 patent) because the claims are allegedly beyond the written description support found in the first disclosure because the scope of acyl radical in claim 1 is beyond what was disclosed in the '888 specification. In support of this argument, the Examiner has cited *In re Scheiber*, 199 USPQ 782, and *In re Gosteli*, 10 USPQ2d 1614. Neither of these two cases are controlling here.

*Scheiber* merely stands for the proposition that a reference may anticipate a claim even though it discloses no more than is disclosed in the applicant's previously filed disclosure. In other words, the standard for determining entitlement to priority under 35 U.S.C. 120 is different than the standard for determining anticipation by a reference under 35 U.S.C. 102. A claim may have only one effective filing date and be anticipated by a reference that discloses only as much as the applicant's previously filed disclosure that is sought to be relied upon for priority. In *Scheiber,* the applicant admitted that his claims were directed to general three-dimensional systems not supported by his earlier applications. 199 USPQ 782, 784.

-11-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

*Scheiber* is inapplicable to the present case. The patentee has never admitted that instant claims 1 and 2 are not supported by the previous '888 patent, nor does the patentee contend that either claim 1 or 2 is entitled to more than one filing date.

*Gosteli* also radically differs from the present case. The issue in *Gosteli* centered on whether certain generic claims were supported by a much smaller subgenus in the originally filed disclosure. The claims at issue were rejected with an anticipating patent to Menard under section 102(e). If Gosteli were entitled to the benefit of the foreign priority date, then the 102(e) reference would have been removed. In a manner similar to Scheiber, Gosteli argued that rights under section 119 should be determined by using the following analysis: "(1) what is the subject matter disclosed in the [priority] appliction, and (2) whether that subject matter removes Menard." 10 USPQ2d 1614, 1616.

The court disagreed with this analysis and ruled that Gosteli was not entitled to the benefit of a foreign priority date because the foreign priority application did not support the claims of the United States application as required by section 112. The court noted that the United States application of Gosteli claimed 21 antibiotic compounds subgenerically in a Markush group, and based on these 21 compounds, further generically claimed a far larger Markush group in an independent claim. <u>The foreign priority application only described two species plus a small subgenus within the scope of the much larger genus that Gosteli later sought to add.</u> By contrast, as explained below, Ochiai's original '888 disclosure gives several generic descriptions of the concept of introducing the acyl radical into the amino group of the cephem material recited in instant claim 1, <u>and</u> it describes almost every conceivable species within the scope of claim 1, which is tantamount to a description of the genus and a proper basis for priority under section 120.

-12-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

*a. Implicit Support For Claims 1 And 2 In The '888 Specification*

The Examiner contends that the '888 specification does not disclose certain ways of introducing the acyl radical of claim 1. This is untrue. First, the '888 specification generically states in several different places that, not only is the acid of formula (V) used, but also "a reactive derivative thereof", which relates to the part of the acid (V) other than the acyl radical, can be used (see column 1, lines 52-53; column 2, lines 28-29; and column 6, lines 64-68 of the '888 specification). These "reactive derivatives" are also covered in the scope of original claim 3 (now claim 6). By the specification's reference to these "reactive derivatives", one of ordinary skill in the art would readily understand that these are all species which cause an acyl radical to be introduced into the final product. Furthermore, column 7, lines 54-59 of the '888 specification states as follows (emphasis supplied):

> The compounds [V] employed as the starting material in this reaction may be prepared by, e.g. the processes (6) to (9) mentioned above, *and are used in that condition obtained by these processes or after removal of the protecting groups and/or conversion of the groups.*

In addition, column 6, lines 64-68 of the '888 specification states that reactive derivatives of formula (V) used as starting materials include "acid halide, acid anhydride, mixed acid anhydride, cyclic carboxy-anhydride, active amide, ester, etc., thereof." Collectively, this disclosure provides ample support for the concept of introducing an acyl radical having the formula recited in instant claim 1. The common denominator with all of these reactive derivatives is that they lead to introduction of an acyl radical. That is the underlying reaction mechanism, which would have been readily understood by those of ordinary skill in the art. Reading the '888 specification, one of ordinary skill in the art would have immediately recognized that Ochiai possessed and described the generic concept of claim 1 and furthermore, disclosed almost every conceivable species falling within that generic concept.

-13-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

It is hornbook law that a description of species amounting in the aggregate to the same thing as the genus will be accepted as support for the genus. This point was underscored by the CCPA in *In re Johnson* when it distinguished *In re Welstead*:

> In Welstead the applicant was attempting to introduce into his claims a new subgenus where "* * * the specification * * * contained neither a description * * * of the [subgenus] * * * nor descriptions of the species thereof amounting in the aggregate to the same thing * * *." Welstead conceded the absence from his disclosure of compounds of the "second type" within the new subgenus. Welstead is thus clearly distinguishable from the present case, in which appellants' grandparent application contains a broad and complete generic disclosure, coupled with extensive examples fully supportive of the limited genus now claimed. Indeed, Welstead might have well been cited by the board in support of a decision contrary to that reached, in view of what this court there implied concerning the possibility that "descriptions of species amounting in the aggregate to the same thing" may satisfy the description requirements of *35 USC 112*, paragraph one.

Furthermore, "[T]he specification *as a whole* must be considered in determining whether the scope of enablement provided by the specification is commensurate with the scope of the claims." *In re Johnson*, 194 USPQ 187, 195 (CCPA 1977), citing *In re Moore*, 169 USPQ 236, 238-239 (CCPA 1971) (emphasis in original).

The several generic references to "reactive derivatives" of formula (V), coupled with the expansive list of species disclosed in the '888 specification, amounts in the aggregate to the same thing as introduction of the acyl radical into the amino group of the cephem material recited in instant claim 1.

### b. *Inherent Support For Claims 1 And 2 In The '888 Specification*

Furthermore, claims 1 and 2 are inherently supported by the '888 specification. In *Kennecott Corp. v. Kyocera International, Inc.*, 5 USPQ2d 1195 (Fed. Cir. 1987), a rejection similar to that in the present case was appealed to the Federal Circuit. The rejection in *Kennecott* concerned a limitation added to a product claim to state that the product had "a predominantly

-14-

equiaxed microstructure". The Examiner rejected the limitation as "new matter" because the specification nowhere referred to an "equiaxed microstructure" or suggested that the product in the examples had any equiaxed microstructure, predominant or otherwise.

However, the applicants showed that the product of the working examples in the original disclosure did possess this characteristic. In other words, they showed that the product of their invention produced as taught in the specification **necessarily and inherently** possessed "a predominantly equiaxed microstructure". The Court sided with the applicants, holding that:

> . . .anyone with a microscope would see the microstructure of the product of the [earlier] application. The disclosure in a subsequent patent application of an **inherent property** of a product does not deprive that product of the benefit of an earlier filing date. Nor does inclusion of a description of that property in later-filed claims change this reasonable result. [Emphasis supplied.]

In the instant case, the scope of claim 1 is supported by the reaction mechanism which is an inherent and necessary part of the process disclosed in the '888 specification. Inherently, one of ordinary skill in the art would recognize the mechanism underlying the process described in the '888 specification as the introduction of the acyl radical having the structure recited in instant claim 1 into the amino group of the cephem starting material. Each of the species of formula (V) and their reactive derivatives specifically described in the '888 specification, when reacted with the recited cephem starting material, inherently and necessarily introduces an acyl radical into the amino group of the cephem starting material.

<u>This concept would have been immediately envisaged by one of ordinary skill in the art reading the '888 specification, and was unquestionably possessed by Ochiai, who otherwise would not have known to include other examples of reactive derivatives of formula (V) (such as acid halides and acid anhydrides) that result in the same introduction of an acyl radical into the amino group of the cephem starting material.</u>

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

*5. Separate Patentability Of claims 6-11, 12, And 13*

As noted above, claims 6-8 are simply claims 3-5 rewritten in independent form. The Examiner has already indicated that these claims are entitled to the earliest filing date.

In addition, claims 9-11, 12, and 13 are verbatim supported by the '888 specification. There is no question that they are entitled to the benefit of Ochiai's earliest filing date, so they cannot be rejected on the intervening prior art discussed above under section 4.

*6. Incorporation By Reference Of All Previous Arguments*

The patentee hereby incorporates by reference all prior arguments in support of patentability of the instant claims made during the appeals to the Board of Appeals and CAFC.

*7. The Interview*

Contrary to the Examiner's statements concerning the interview, no agreement was reached at the interview. The interview summary record, a form filled out by the Examiner, clearly indicates that "no agreement was reached". The Examiner stated his concerns about double patenting at the interview, and the patentee's representatives directed the Examiner's attention to the restriction requirement discussed by the Examiner in his initial Order Granting Reexamination, which was the reason that the Examiner denied that obviousness-type double patenting raised a substantial new question of patentability in the first instance. Thus, the discussion of double patenting at the interview merely repeated information already in the record.

In accordance with the above remarks, patentee respectfully requests confirmation of

-16-

Reexamination No. 90/004,950
Ochiai et al., U.S. Patent No. 5,583,216

the patentability of all original claims and an indication that the newly added claims are also patentable.

Respectfully submitted,

April 14, 1999

Harold C. Wegner
Reg. No. 25,258

Stephen B. Maebius
Reg. No. 35,264

FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
Washington, D.C. 20007-5109
Tel: (202) 672-5569
Fax: (202)672-5399

Should additional fees be necessary in connection with the filing of this paper, or if a petition for extension of time is required for timely acceptance of same, the Commissioner is hereby authorized to charge Deposit Account No. 19-0741 for any such fees, and applicant(s) hereby petition for any needed extension of time.

-17-