# DX 35
# (Part 3)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 087147/0265

| | |
|---|---|
| Reexamination No. 90/004,950 | Reexamination No. 90/005,200 |
| Filed: April 3, 1998 | Filed: December 22, 1998 |
| U.S. Patent No. 5,583,216 | Group Art Unit: 1624 |
| Issued: December 10, 1996 | Examiner: Ms. Emily Bernhardt |

**RECEIVED**

OCT 2 5 2002

TECH CENTER 1600/2900

Title: METHODS FOR THE MANUFACTURE OF CEPHEMS

## SUPPLEMENTAL PETITION TO STRIKE THE EXAMINER'S ANSWER BASED UPON NEW GROUNDS SUBSEQUENT TO THE FILING OF THE CURRENTLY OUTSTANDING *RENEWED PETITION TO THE OFFICE OF PETITIONS TO RECONSIDER THE ORIGINAL PETITION FILED APRIL 8, 2002 , UNDER 37 CFR § 1.181(a); MPEP § 1208*

Commissioner for Patents and Trademarks
Washington, D.C. 20231



Sir:

Comes now your petitioners Michihiko Ochiai et al. ("Ochiai") and respectfully pray for procedural intervention in this case from the Examiner's Answer dated February 8, 2002, viz., that it be stricken from the files because of new developments that have materialized since the still outstanding *RENEWED PETITION TO THE OFFICE OF PETITIONS TO RECONSIDER THE ORIGINAL PETITION FILED APRIL 8, 2002 , UNDER 37 CFR § 1.181(a); MPEP § 1208*

The filing of the instant paper is *not* part of the previous papers and is *not* a substitute for the previous papers which still remain outstanding. This petition is filed now, outside the time limit for the outstanding Renwed Petition, because this paper could not have been filed within that time limit, i.e., the Federal Circuit *Bogese* opinion had not as yet issued.

In the still outstanding *RENEWED PETITION TO THE OFFICE OF PETITIONS TO RECONSIDER THE ORIGINAL PETITION FILED APRIL 8, 2002 , UNDER 37 CFR § 1.181(a); MPEP § 1208*, it was expressly pointed out that "[n]othing underscores the new rejection [made in the Examiner's Answer] more than the statement in the Petition Decision that 'Patent Owner *** comments on the *Ex parte Bogese* decision cited by the examiner in support of the Obvious Double Patenting rejection suggesting that is it based on false premises of earlier cases and then proceeds through an analysis of *Woodbridge v. United States* which appears to have no bearing on this petition decision.' Clearly, this is a brand new ground of rejection that Ochiai should have a chance to traverse in the context of a non-final rejection."

Assuming, *arguendo*, that a rejection of this nature were permitted in a case such as this if there had been a *warning* to the applicants, clearly – here – there never was any warning of any kind (nor was the conduct here qualitatively or otherwise anything like the *Bogese* case).

The Federal Circuit made it clear that the *Bogese* case is applicable only *where* the conduct amounting to laches occurs *after* a "Hull

warning". As pointed out in the *Bogese* case itself (emphasis being added):

> [A]n administrative agency cannot impose a penalty or forfeiture without providing notice. *United States v. Chrysler Corp.,* 158 F.3d 1350, 1354 (D.C. Cir. 1998); *Gen. Elec. Co. v. EPA,* 53 F.3d 1324, 1329 (D.C. Cir. 1995). *** Bogese here received ample notice that an unreasonable delay could result in forfeiture. First, in *Ex parte Hull,* 191 USPQ [157,] 157 [(PTO Bd. App. 1975)], the PTO forecast its present ruling. In *Hull,* the applicant filed a chain of six continuation-in-part applications between 1963 and 1971. *Id.* at 158. Each continuation-in-part application was filed after the PTO had allowed the claims in the parent application and just prior to the date the issue fee for the parent application was due. *Id.* Each continuation-in-part application was filed with claims that corresponded either exactly or substantially to each of the claims in the parent application that previously had been allowed, as well as claims that were drawn to features that were disclosed in the continuation-in-part application for the first time. *Id.* The examiner rejected all claims of the last application of the chain on the ground of laches because by not allowing any of the previously allowed applications to issue as a patent, Hull had unjustifiably delayed the time that the public could enjoy the free use of the invention covered by the claims. *Id.* at 157. The Board reversed the examiner because:
>
> > [A] rejection on the basis [of laches], without prior warning in a preceding allowed application is inequitable. However, the appellant is hereby put on notice, that the filing of a future application in this series without permitting the present application to issue may result in a sustainable rejection based on his conduct which we find contrary to the purposes of the Constitution and patent laws.
>
> Id. at 160. Second, *the appellant here received the specific warning that Hull found necessary.* During the course of adjudicating the patentability of Bogese's patent claims and after Bogese had filed eleven file wrapper continuation

3

applications over an eight-year period, the examiner required Bogese to make a "substantive amendment to advance prosecution" or risk losing his right to a patent. *Bogese had an opportunity to respond to the PTO's requirement after the PTO gave that notice, but he did not,* and instead filed another file wrapper continuation application without making a substantive amendment to advance prosecution.

*** There is no basis for finding the PTO's action to be arbitrary on the facts of this case, given that Bogese filed twelve continuation applications over an eight-year period and *did not substantively advance prosecution of his application when required and given an opportunity to do so by the PTO.*

Wherefore, with the clear holding by the Federal Circuit that *Bogese* requires a "Hull Warning" as a condition precedent to there being any issue of prosecution laches, and with there being none, the Examiner's Answer should be stricken insofar as it relies upon the *Bogese* reasoning.

\*     \*     \*

Wherefore, favorable consideration in the form of striking the Examiner's Answer is courteously solicited.

Respectfully submitted,

Date___Oct. 18, 2002___

FOLEY & LARDNER
Customer Number: 22428
*22428*
     22428
PATENT TRADEMARK OFFICE
Telephone:     (202) 672-5569
Facsimile:     (202) 672-5399

_for_ Harold C. Wegner     _Reg no 35,264_
Registration No. 25,258

Stephen B. Maebius
Registration No. 35,264

4

Should additional fees be necessary in connection with the filing of this paper, or if a petition for extension of time is required for timely acceptance of same, the Commissioner is hereby authorized to charge Deposit Account No. 19-0741. To any such fees, and applicant(s) hereby petition for any needed extension of time.

This paper is being filed as six originals, one for each of the two reexamination files, with four additional originals being provided for each of the reviewers of this paper. If any reviewer would like their own personal electronic copy, they are invited to e-mail the undersigned at snacbtus@toleview.com and an E-copy will be sent by return.

# United States Court of Appeals for the Federal Circuit

01-1354
(Serial no. 08/376,290)

### IN RE STEPHEN B. BOGESE II

DECIDED:  September 13, 2002

Before NEWMAN, DYK, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

DYK, <u>Circuit Judge</u>.

Stephen B. Bogese II ("Bogese") appeals from a decision of the Board of Patent Appeals and Interferences ("Board") rejecting all claims of his application for patent, serial number 08/376,290 ("the '290 application").  <u>Ex parte Bogese II</u>, Appeal No. 1998-1360 (Bd. Pat. Apps. & Int., Sep. 25, 2000).  The Board held that the claims were unpatentable under 35 U.S.C. § 103 and that Bogese had forfeited his right to a patent under the doctrine of prosecution history laches.  Because the Board's decision that Bogese had forfeited his right to a patent was not arbitrary, capricious, or contrary to law, we affirm.  Because we hold that Bogese

6

forfeited his right to a patent, we do not reach the issue of whether the

claims are unpatentable under 35 U.S.C. § 103.

# BACKGROUND

This case has a long history. The '290 application at issue here

claims priority back to the June 14, 1978, filing date of application serial

number 05/915,457 ("the '457 application"). No patent issued from the

'457 application, which was abandoned in favor of a continuation

application, serial number 06/120,846 ("the '846 application"), on

February 12, 1980.[1] Prosecution of the '846 application twice reached

this court on appeal from a Board rejection. On March 23, 1984, we

affirmed-in-part and reversed-in-part the Board's rejection and remanded

the case to the Board. In re Bogese, 732 F.2d 169 (Fed. Cir. 1984)

(Table) (unpublished opinion). We affirmed the Board's rejection of

Bogese's broad claims but reversed its rejection of Bogese's narrow

claims directed to telephone modular jack connectors because we

concluded that a particular reference not relied on by the Board was

---

[1]    On December 10, 1980, Bogese filed a "continuation-in-part" application, serial
number 06/215,054 ("the '054 application") based on the '846 application. A "continuation-in-part"
application was permitted under 37 C.F.R. § 1.62, in effect at the time, and allowed applicants to file a
continuing application and simultaneously add new matter to the specification. The '054 application
and its progeny eventually led to the issuance of at least five U.S. patents claiming various aspects of
Bogese's connector technology, including U.S. Patent Nos. 4,457,570, 4,501,464, 4,577,921,
4,717,217, and 5,478,261.

pertinent, and Bogese had not had an opportunity to address an argument that those narrow claims were obvious in light of that and other references. On March 16, 1987, we summarily affirmed the Board's rejection of all pending claims as obvious under 35 U.S.C. § 103 in a two sentence opinion. In re Bogese, 818 F.2d 877 (Fed. Cir. 1987) (per curiam) (Table) (unpublished opinion). [2]

After our second decision, on April 6, 1987, Bogese filed a file wrapper continuation application, serial number 07/033,855 ("the '855 application) and abandoned the '846 application. [3] Bogese did not amend the claims that were the subject of our March 1987 decision, nor did he offer any argument addressing the rejection of those claims. Therefore, on July 13, 1987, the examiner issued a final rejection of all claims of the '855 application on the basis of our 1987 decision and as obvious in light of several prior art references.

---

[2]    The opinion stated: "[t]he final decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (board) affirmed the examiner's final rejection under 35 U.S.C. § 103 of all remaining claims in the patent application of Stephen B. Bogese, II, serial No. 120,846. On the basis of the board's July 15, 1986, opinion, the said final decision is affirmed." In re Bogese, No. 86-1699, slip op. at 1 (Fed. Cir. 1987) (emphasis in original).

[3]    Under 37 C.F.R. § 1.62, in effect at the time, applicants could file a "file wrapper continuation" application, which had the effect of abandoning the pending application and physically transferring the file history of the abandoned application into a new application for further prosecution. The new application contained the same claims and specification that existed in the abandoned application.

On January 13, 1988, Bogese filed a new file wrapper continuation application, serial number 07/144,687 ("the '687 application"),[4] and then abandoned the '855 application. Again, Bogese did not amend the claims that previously had been rejected by the PTO and this court or make any argument that the claims should be allowable. Therefore, the examiner again issued a final rejection on April 26, 1988. On October 26, 1988, Bogese filed a file wrapper continuation application, serial number 07/267,724 ("the '724 application"), and then abandoned the '687 application. Bogese's pattern of receiving a final rejection from the PTO, not amending his application or claims, filing a file wrapper continuation application exactly or almost exactly six months later without any amendments, and abandoning his prior application, occurred eight more times between 1989 and 1994, culminating in the filing of application serial number 08/266,804 ("the '804 application") on June 28, 1994.

In the examiner's final rejection of the '804 application mailed on August 22, 1994, the examiner expressly warned appellant:

> [T]he next continuation of this series may be rejected by invoking the equitable doctrine of laches, absent any substantive amendment to advance prosecution.
>
> The doctrine of laches, meaning undue delay in claiming one's rights, may result in the loss of those rights. In this case, the loss may be the right to a priority date, or the right to a patent.

---

[4]      Under 35 U.S.C. § 133 and 37 C.F.R. § 1.134, Bogese was required to file his file wrapper continuation application within six months of the final rejection of the claims in the parent application to preserve the priority date of the parent application.

The case record shows a plurality of continuations with no substantive amendments to advance prosecution, which, in effect, may be using the Patent Office and patent laws as a means for officially suppressing or overlooking any invention disclosed, but not yet claimed, thereby obtaining inequitable benefits of the patent system.

Priority of invention requires reasonable diligence of one first to conceive, and last to reduce to practice (filing and claiming). See 35 U.S.C. § 102(g).

Prompt disclosure to the public, with no undue delay, is required for consideration of a patent grant. See Ex parte Hull, 191 USPQ 157 [USPTO Bd. of Apps.] 1975.

(Emphasis added).

Despite the examiner's warning, on January 23, 1995, Bogese filed another file wrapper continuation application, serial number 08/376,290 ("the '290 application") without making any amendment or argument regarding the claims that had been rejected.  In an Office action mailed March 16, 1995, the examiner rejected all the pending claims for three reasons:  "on the doctrine of Res Judicata based on the decision of the Court of Appeals for the Federal Circuit dated March 16, 1987"; as being unpatentable under 35 U.S.C. § 103 in view of several prior art references; and because "applicant has forfeited the right to a patent." The examiner explained the last reason as follows:

Applicant has pursued a deliberate and consistent course of conduct that has resulted in an exceptional delay in advancing the prosecution and the issuance of a patent.  The record shows that a decision by the Court of Appeals for the Federal Circuit dated March 16, 1987, for application

06/120,846, which is a continuation of 05/915,457, filed
June 14, 1978. Subsequent to the above CAFC decision,
Applicant has filed 11 patent applications in which
Applicant has clearly made no attempt to advance the
examination of the claimed invention. The effect has been to
postpone the issuance and term of a patent that it would
appear that applicant has always intended to secure.
Applicant has deliberately postponed meaningful
prosecution, deliberately postponed the grant of any patent to
which he may be entitled, and deliberately postponed the
free public enjoyment of any invention on which a patent
may have issued. These deliberate actions are an evasion of
the patent statute and defeat its benevolent aim. Woodbridge
v. United States, 263 U.S. 50 (1923).

On September 18, 1995, Bogese for the first time made a

substantive response to the Office action by amending the claims of the

'290 application and submitting affidavits in support of his arguments

that his claimed invention was not obvious. Bogese also traversed the

forfeiture rejection, urging that "[i]t cannot be the law that one who has

complied with clear statutory authority in all respects has somehow

forfeited his right to a patent." Bogese urged that at all times during

prosecution of his chain of applications he had complied with the

requirements of 35 U.S.C. § 120, and therefore, was entitled to the benefit

of the original June 14, 1978, priority date and to a patent. The examiner

was not persuaded by Bogese's amendments and arguments and, on

November 28, 1995, again rejected all the pending claims. Following a

December 31, 1995, request for reconsideration and February 21, 1996,

11

Advisory Action, appellant filed a notice of appeal to the Board on November 8, 1996.

In its September 25, 2000, decision the Board refused to sustain the examiner's rejection based on <u>res judicata</u> because Bogese, in response to the examiner's rejection, had amended his claims after they had been rejected by this court in our 1987 decision. However, the Board sustained the examiner's rejection based on 35 U.S.C. § 103 because Bogese's claimed invention would have been obvious to one of ordinary skill in the art in light of the cited references. Furthermore, the Board sustained the examiner's rejection based on Bogese's forfeiture due to his delay in prosecuting the patent applications. The Board cited the general grant of power to the PTO to examine and issue patents (provided by 35 U.S.C. § 131) and a prior Board opinion, <u>Ex parte Hull</u>, 191 USPQ 157, 159 (Feb. 20, 1975), as providing the authority for the rejection based on forfeiture. The Board found that:

> From our viewpoint, the conduct of the appellant from March 1987 until September 18, 1995, which effectively permitted the appellant to retain the benefit of the filing date of June 14, 1978 while at the same time delaying prosecution of the applications, is so egregious in defeating the policy of the patent laws of promoting science and the useful arts as to be presumed unreasonable in light of all the circumstances in this case. In particular, we note that, as evidenced by the documents filed in support of the petition to make special (Paper No. 13) in Application No. 06/120,846, which was granted (Paper No. 14), on the basis of infringing activity by competitors, the appellant was keenly aware, as early as the summer-fall of 1979, that connectors embodying the

appellant's invention were being developed and exploited commercially in the market place.

Ex parte Bogese II, slip op. at 33-34. The Board explained that the harm of extraordinary delay in prosecution is not only in delay in disclosure of the invention to the public but also the "deliberate delay of the term of any monopoly granted by a patent . . . when the industry has developed and matured to such a point as to be more financially beneficial to the applicant and hence more harmful or prejudicial to the public." Id. at 35. The Board held that an inventor who, "intentionally or by reason of culpable neglect, is guilty of action which unduly postpones the time the public would be entitled to the free use of the invention has thus defeated the policy of the patent law, thereby losing the right to a patent, regardless of whether the delay in the patent term also results in delay of the disclosure of the invention to the public." Id. at 35-36 (citation omitted). Finally, the Board stated that Bogese could not "flout the examiner's requirement that any future request for a file wrapper continuation be accompanied by a substantive amendment to advance prosecution and then claim to have prosecuted an application in compliance with the applicable patent statute and regulations." Id. at 37.

Bogese filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

# DISCUSSION

## I

Our review of a decision of the Board is governed by the Administrative Procedure Act, 5 U.S.C. § 706. <u>Dickinson v. Zurko</u>, 527 U.S. 150, 165, 50 USPQ2d 1930, 1937 (1999). Under that statutory provision, we will set aside legal actions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and set aside factual findings that are "unsupported by substantial evidence." 5 U.S.C. § 706; <u>In re Gartside</u>, 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1776 (Fed. Cir. 2000).

## II

On this appeal the primary issues are: (1) whether the PTO is authorized to reject a patent application where the applicant fails to advance prosecution of his application for an unreasonably long period; and (2) if the PTO is so authorized, whether it acted arbitrarily in rejecting the applicant's patent application here. Bogese contends that no statutory, regulatory, or case law support exists for the PTO's action in this case. We disagree.

## III

In <u>Symbol Technologies, Inc. v. Lemelson Medical</u>, 277 F.3d 1361, 1368, 61 USPQ2d 1515, 1520 (Fed. Cir. 2002), in the context of an infringement case, this court recently held that the equitable doctrine of

laches may be applied to bar enforcement of a patent that issued after

unreasonable and unexplained delay in prosecution, even though the

patent applicant complied with pertinent statutes and rules. We found

that the Supreme Court had recognized the doctrine of prosecution history

laches in at least four decisions, including General Talking Pictures Corp.

v. Western Electric Co., 304 U.S. 175, 37 USPQ 357 (1938), Crown Cork

& Seal v. Ferdinand Gutmann Co., 304 U.S. 159, 37 USPQ 351 (1938),

Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463 (1924), and

Woodbridge v. United States, 263 U.S. 50 (1923). Further, the passage of

the Patent Act of 1952, Pub. L. No. 82-593, 66 Stat. 792, specifically

those sections now codified at 35 U.S.C. §§ 120 and 121, which entitled

continuation and divisional applications to the filing dates of their parent

applications, did not foreclose the application of prosecution history

laches to bar enforcement of a patent claim. Symbol Techs., 277 F.3d at

1365-66, 61 USPQ2d at 1518. Thus, in Symbol Technologies we held

that a patent may be rendered unenforceable if it was obtained after an

unreasonable and unexplained delay in prosecution.

Whatever the views of the individual panel members concerning

the correctness of our decision in Symbol Technologies, we are

nonetheless bound by it, and we see no basis for denying the power to the

PTO itself that we have recognized exists in the district courts in

infringement actions. It necessarily follows that the PTO has the

authority to reject patent applications for patents that would be unenforceable under our holding in Symbol Technologies.

Indeed, we think the PTO's authority to sanction undue delay is even broader than the authority of a district court to hold a patent unenforceable.[5] The PTO is the administrative agency that is "responsible for the granting and issuing of patents . . . ." 35 U.S.C. § 2 (2000). Like other administrative agencies, the PTO may impose reasonable deadlines and requirements on parties that appear before it. The PTO has inherent authority to govern procedure before the PTO, and that authority allows it to set reasonable deadlines and requirements for the prosecution of applications.[6]

---

[5]     Although the PTO, both in the Board decision below and in its brief on appeal, relies on 37 C.F.R. § 1.111 as supporting its action, Ex parte Bogese II, slip op. at 37, n.14, Appellee's Brief at 4, 18, 38, 43, 49, and 50, that section appears to be inapplicable here. That section provides "[t]he applicant's or patent owner's reply must appear throughout to be a bona fide attempt to advance the application . . . to final action." 37 C.F.R. § 1.111(b) (2001) (emphasis in original). The cited section, both as it existed in 1995, and currently, applies to replies to Office actions. See 37 C.F.R. § 1.111(a) (1995) ("After the Office action, if adverse in any respect, the applicant or patent owner, if he or she persists in his or her application for a patent or reexamination proceeding, must reply thereto and may request reconsideration or further examination, with or without amendment."); 37 C.F.R. § 1.111(a)(1) (2001) ("If the Office action after the first examination (§ 1.104) is adverse in any respect, the applicant or patent owner, if he or she persists in his or her application for a patent or reexamination proceeding, must reply and request reconsideration or further examination, with or without amendment."). Section 1.113 effectively defines a reply as including an appeal, amendment, or petition. See 37 C.F.R. § 1.113(a) (2001) ("On the second or any subsequent examination or consideration by the examiner the rejection or other action may be made final, whereupon applicant's, or . . . patent owner's reply is limited to appeal in the case of rejection of any claim (§ 1.191), or to amendment as specified in § 1.114 or § 1.116. Petition may be taken to the Commissioner in the case of objections or requirements not involved in the rejection of any claim (§ 1.181).") However, a file wrapper continuation application, governed by section 1.60 of the 1995 regulations, is not included with the definition of a reply. While section 1.111 recognizes the general requirement of good faith in prosecution, its terms are not directly applicable to file wrapper continuation applications.

[6]     The dissent suggests that In re Henriksen, 399 F.2d 253, 158 USPQ 224 (CCPA 1968), is to the contrary. In Henriksen the PTO adopted "a literal reading of section 120 . . . that the law permitted claiming only the benefit of a sequence of two or three applications and no more." Id. at 256. The limited holding in that case, which was based on a detailed review of the legislative history of the 35 U.S.C. § 120 and the long-standing interpretation by the Patent Office and patent bar, was that the statute itself "provides no limit to the number of applications that may be copending." Id. at

To be sure, an administrative agency cannot impose a penalty or forfeiture without providing notice. United States v. Chrysler Corp., 158 F.3d 1350, 1354 (D.C. Cir. 1998); Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1329 (D.C. Cir. 1995). Here, Bogese does not claim that he was not provided with notice of what the PTO required of him or the potential consequences of non-compliance. Bogese here received ample notice that an unreasonable delay could result in forfeiture. First, in Ex parte Hull, 191 USPQ at 157, the PTO forecast its present ruling. In Hull, the applicant filed a chain of six continuation-in-part applications between 1963 and 1971. Id. at 158. Each continuation-in-part application was filed after the PTO had allowed the claims in the parent application and just prior to the date the issue fee for the parent application was due. Id. Each continuation-in-part application was filed with claims that corresponded either exactly or substantially to each of the claims in the parent application that previously had been allowed, as well as claims that were drawn to features that were disclosed in the continuation-in-part application for the first time. Id. The examiner rejected all claims of the last application of the chain on the ground of laches because by not allowing any of the previously allowed applications to issue as a patent,

---

260-61. In this case the PTO did not adopt a mechanical rule based on a misconstruction of the statutory requirements. Nowhere does Henriksen suggest or imply that the PTO must allow dilatory tactics in the prosecution of applications or that the PTO lacks inherent power to prohibit unreasonable delay in prosecution.

17

Hull had unjustifiably delayed the time that the public could enjoy the
free use of the invention covered by the claims. Id. at 157. The Board
reversed the examiner because:

> [A] rejection on the basis [of laches], without prior warning
> in a preceding allowed application is inequitable. However,
> the appellant is hereby put on notice, that the filing of a
> future application in this series without permitting the
> present application to issue may result in a sustainable
> rejection based on his conduct which we find contrary to the
> purposes of the Constitution and patent laws.

Id. at 160. Second, the appellant here received the specific warning that
Hull found necessary. During the course of adjudicating the patentability
of Bogese's patent claims and after Bogese had filed eleven file wrapper
continuation applications over an eight-year period, the examiner
required Bogese to make a "substantive amendment to advance
prosecution" or risk losing his right to a patent. Bogese had an
opportunity to respond to the PTO's requirement after the PTO gave that
notice, but he did not, and instead filed another file wrapper continuation
application without making a substantive amendment to advance
prosecution.

On appeal, Bogese makes no serious claim that the PTO acted
unreasonably on the facts of this case in requiring him to make a
"substantive amendment to advance prosecution" or in finding forfeiture.[7]

---

[7]         In his reply brief in this court, as in his reply brief before the Board, appellant urges
that the delay in prosecution should be excused based on "a flood that destroyed Appellant's corporate

Rather, Bogese challenges the PTO's authority to require applicants to

advance prosecution, urging that he was entitled to continue his chain of

continuation applications. We disagree and hold that the PTO has

authority to order forfeiture of rights for unreasonable delay. There is no

basis for finding the PTO's action to be arbitrary on the facts of this case,

given that Bogese filed twelve continuation applications over an eight-

year period and did not substantively advance prosecution of his

application when required and given an opportunity to do so by the PTO.

    Appellant makes a number of additional arguments, which we

conclude are without merit.

    First, appellant argues that much of the delay in prosecution was

due to the actions of the PTO and not those of the appellant. Appellant

regards as particularly important the "cumulative delay of 30 months

between the filing of each of Appellant's 11 continuation applications and

issuance of substantially identical first Office action final rejections."

Appellant's Reply Br. at 13. However, a delay by the PTO cannot

excuse the appellant's own delay.

    Second, appellant cites State Industries, Inc. v. A.O. Smith Corp.,

751 F.2d 1226, 1235-36, 224 USPQ 418, 423-24 (Fed. Cir. 1985), for the

proposition that it is permissible to "maintain[ ] pendency of an

application . . . while competitors' products appear on the market in an

offices and . . . diverted Appellant's attention to saving his company." The Board properly found these

19

effort to later draft and obtain the allowance of claims that read on the

competitors' products." Appellant's Reply Br. at 21. An applicant's

attempt to obtain new claims directed to inventions that he or she believes

are fully disclosed and supported in an earlier application, however, is

easily distinguishable from appellant's failure to further the prosecution

of his application toward the issuance of any claims.

Accordingly, we hold that the PTO did not err in rejecting

Bogese's claims because Bogese forfeited his right to a patent.

For the foregoing reasons, we affirm.

COSTS

No costs.

[DISSENTING OPINION NOT ATTACHED]

---

claims to be unsupported. Ex parte Bogese II, slip op. at 34.

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 18, 2002, service of a true and complete copy of this paper was made upon E. Thomas Wheelock, attorney for the Third Party Requester, by depositing the same in the United States mail in an envelope properly addressed to E. Thomas Wheelock, Morrison & Foerster, 755 Page Mill Road, Palo Alto, California 94304-1018, with sufficient first class postage affixed.


_____
Stephen B. Maebius

*Reexam*

PATENT



# THE UNITED STATES PATENT AND TRADEMARK OFFICE   #52

Attorney Docket No. 087147/0265

| | |
|---|---|
| Reexamination No. 90/004,950 | Reexamination No. 90/005,200 |
| Date Filed: April 3, 1998 | Filed: December 22, 1998 |
| U.S. Patent No. 5,583,216 | Group Art Unit: 1611 |
| Issued: December 10, 1996 | Examiner: Emily Bernhardt |
| Entitled: METHODS FOR THE MANUFACTURE OF CEPHEMS | |

### PETITION TO THE DIRECTOR FOR FINAL ACTION WITH "SPECIAL DISPATCH" CONSIDERATION OF THIS CASE UNDER 37 CFR § 1.182

Commissioner for Patents and Trademarks
Washington, D.C. 20231
Sir:

Now comes your petitioner Ochiai and requests intervention in this case to provide the statutory "special dispatch" treatment to this reexamination that is mandated by the statute – something manifestly denied to the patentee in a case that as from April 5, 2003, has entered its sixth (6th) year of reexamination. The Director is respectfully requested to either immediately (a) grant the outstanding relief requested or (b) certify that the previous decision is final and authorize the filing of a civil action in the Eastern District of Virginia for further relief.

Petitioner prays that the Director or his designated subordinate issues a decision to the aforementioned petition on a priority basis.

This is a special, unique situation of the type envisioned for decision under 37 CFR § 1.182, i.e., despite the "special dispatch" mandate of the statute, the reexamination is now in its sixth (6th) year of pendency. Among the many odd quirks of this reexamination, there has never been even one (1) final rejection in the case. It is well settled that "'all' reexaminations, not just some of them, 'will be conducted with

Reexamination Nos. 90/004,950 & 90/005,200
Ochiai et al., U.S. Patent No. 5,583,216

special dispatch.'" *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988)(quoting 35 USC § 305). There are no exceptions. *Id.*

In this case, nevertheless, appeals have been taken directly from a non-final rejection not once, but twice. The first time, the case was withdrawn from the appeal with the entry of a new, non-final rejection. The second time, a *new ground of rejection* was added to the case *but with an Examiner's Answer*. Of course, new grounds of rejection are prohibited under the present facts, 37 CFR § 1.193(a)(2), and once an examiner's answer contains a new ground of rejection, "prosecution must be reopened." MPEP § 1208.[1] This is the procedural issue, pure and simple, that stands awaiting decision.

Yet, despite a timely petition that is fully briefed and argued, the decision on petition denied even a *consideration* to the entire record on various grounds, *inter alia*, that it would be "tedious" for the Office to do so. Tedious! In a case of sufficient importance where the patent in question had reached the Federal Circuit in a time-consuming appeal. *In re Ochiai*, 71 F.3d 1565 (Fed. Cir. 1995). Tedious – at the expense of due process.

But the decision on petition once again thwarts judicial review – it was issued with the directive that reconsideration to the Office and not the courts was the appropriate channel to take. The matter is quite simple – as seen from the petition on reconsideration that remains outstanding: Ochiai has never been given the opportunity

---

[1] Similarly, when the Board's Decision contains a new rejection under 37 CFR § 1.196(b), Appellant may submit a showing of facts, i.e., evidence. 37 CFR § 1.196(b)(1).

-2-

Reexamination Nos. 90/004,950 & 90/005,200
Ochiai et al., U.S. Patent No. 5,583,216

to present evidence responsive to the new ground of rejection. Due process is denied.
This is akin to the situation where the Supreme Court reversed a denial of due process
where the petitioner had "never [been] afforded a proper opportunity to respond to the
claim against him. *** Procedure of this style has been questioned even in systems,
real and imaginary, less concerned than ours with the right to due process."[2] It is
axiomatic that "[t]he fundamental requisite of due process of law is the opportunity to
be heard."[3] It is a central theme of the American judicial system that a party should

---

[2] *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 468 (2000) (Ginsburg, J.), rev'g
*Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, 175 F.3d 1343 (Fed. Cir. 1999). In
the footnote following this quotation, Justice Ginsburg quotes from "[a] well known
work," *Nelson v. Adams,* 529 U.S. at 468 n. 2. As quoted by Justice Ginsburg:

" 'Herald, read the accusation!' said the King.

On this the White Rabbit blew three blasts on the trumpet, and then unrolled the
parchment scroll, and read as follows:

'*The Queen of Hearts, she made some tarts,*
*All on a summer day:*
*The Knave of Hearts, he stole those tarts,*
*And took them quite away!'*

'Consider your verdict,' the King said to the jury.

'Not yet, not yet!' the Rabbit interrupted. 'There's a great deal to come before
that!'"

*Nelson v. Adams,* 529 U.S. at 468 n. 2 (quoting L. Carroll, Alice in Wonderland
and Through the Looking Glass 108 (Messner 1982)) (original emphasis by Justice
Ginsburg).

[3] *Nelson,* 529 U.S. at 468 (Ginsburg, J.)(quoting *Mullane v. Central Hanover
Bank & Trust Co.,* 339 U.S. 306, 314 (1950), quoting *Grannis v. Ordean,* 234 U.S.
385, 394 (1914)).

Reexamination Nos. 90/004,950 & 90/005,200
Ochiai et al., U.S. Patent No. 5,583,216

have "actual notice and a meaningful opportunity to be heard ***."[4] Thus,
"[p]rocedure of this style has been questioned even in systems, real and imaginary, less
concerned than ours with the right to due process."[5] There are numerous other cases to
the same effect.[6]

  Indeed, in both 35 USC § 134 and 35 USC § 305 Congress recited that the
appeals may be had in reexamination proceedings. The PTO has determined, through
binding precedent and formal rulemaking, how appeals are to proceed. 37 CFR §§
1.191-*et seq.* The rules explicitly prohibit an examiner's answer from containing new
grounds of rejection under the facts of this case. *Cf.* 37 CFR § 1.193(a)(2). Whether
an examiner's answer contains new grounds of rejection under the facts of this case is
petitionable. 37 CFR § 1.181; MPEP § 1208.02.

---

[4] *In re Altman*, 254 B.R. 509, 516 (D.Conn. 2000).

[5] *Altman*, 254 B.R. at 516 (quoting *Nelson v. Adams USA, Inc.*, 529 U.S. 460,
468 n. 2 (2000), *referring* to L. Carroll, *Alice in Wonderland and Through the Looking
Glass* 108 (Messner, 1982)).

[6] *Tuxford v. Vitts Networks, Inc.*, 2003 WL 118242 (D.N.H. 2003)(quoting
*Lucente v. International Business Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002)
and citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000))("[A] court may not
deprive an affected party the right to file a response to an amended pleading if the
party so desires."); *Nieto v. Kapoor*, 210 F.R.D. 244, 247 (D.N.M. 2002)(quoting
*Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) (quoting Fed.R.Civ.P. 15(a)).
("'Th[e] opportunity to respond' is 'fundamental to due process[.]'"); *Viking Indus.
Sec., Inc. v. N.L.R.B.*, 225 F.3d 131, 136 (2nd Cir. 2000)(quoting *Nelson v. Adams
USA, Inc.*, 529 U.S. 460 (2000)) ("[D]ue process ... demand[s] a more reliable and
orderly course.").



Reexamination Nos. 90/004,950 & 90/005,200
Ochiai et al., U.S. Patent No. 5,583,216

While the agency may change its regulations, it must do so in a reasoned manner. *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983), *SEC v. Chenery Corp.*, 332 U.S. 194 (1947). Rules may neither be amended nor rescinded except by the same process required for its promulgation. *United States v. Nixon*, 418 US 686 (1974). While an agency may change its interpretation of a statute or regulation to a different interpretation consistent with the statute or regulation, the agency bears the burden of explaining why it is deviating from its practice. *Allentown Mack Sales and Serv., Inc. v. NLRB*, 522 U.S. 359, 374-376 (1998)(citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 52).

By following its own rules, the PTO will foster justness by presenting straight forward issues that can be swiftly and uniformly decided in each similar individual situation. Unfortunately, for petitioner's case, the PTO decided to effectively amend or rescind both Rules 181 and 193(a)(2) without a legitimate reason or official notice. Thus, the PTO acted arbitrarily and capriciously.

The matter before the Office now is quite simple: The Office has the choice of either (a) granting the relief requested – providing the patentee due process by remanding the case to the Primary Examiner to reopen prosecution – to the extent that the new ground of rejection is maintained, or (b) denying the petition and thereby certifying the case for further action to the judicial system for review of such denial.

Reexamination Nos. 90/004,950 & 90/005,200
Ochiai et al., U.S. Patent No. 5,583,216


      The petition fee under 37 CFR § 1.17(h) is included in the check filed with this

petition.

                                      Respectfully submitted,

Date: _April 30, 2003_           _____
                     for Harold C. Wegner   Reg No 35264
                     Registration No. 25,258

                     _____
                     Stephen B. Maebius
                     Registration No. 35,264

FOLEY & LARDNER
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
Tel: (202) 672-5569
Fax: (202)672-5399

Should additional fees be necessary in connection with the filing of this
paper, or in a petition for extension of time is required for timely acceptance
of same, the Commissioner is hereby authorized to charge Deposit Account
No. 19-0741 for any such fees; and applicant(s) hereby petition for any.